Keith Beauchamp (012434)
Shelley Tolman (030945)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5493
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Michelle Lapointe*
Norma Ventura*
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
michelle.lapointe@splcenter.org
norma.ventura@splcenter.org

Matthew J. Schlesinger*
Jason A. Carey*
Terra White Fulham*
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tfulham@cov.com

[Additional Counsel Listed on Signature Page]

[*Admitted Pro hac vice]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; and J.V.S., on his own behalf and on behalf of his minor child H.Y., <br><br>　　　　　　Plaintiffs, <br>　　v. <br><br>United States of America, <br><br>　　　　　　Defendant. | No. CV-20-0065-PHX-SMB <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO TRANSFER** |

{00487874.1 }

Plaintiffs present claims under the Federal Tort Claims Act (FTCA) for the harm they suffered when their families were separated by U.S. government officials at the U.S.-Mexico border. For the sake of judicial efficiency, Plaintiffs request transfer to the judge overseeing an earlier-filed case arising from the same federal policy and bringing nearly identical claims. Despite the obvious similarities between the cases, the United States seeks to avoid transfer by pointing to immaterial differences between the plaintiffs' allegations and minimizing the judicial economy that transfer of the cases to a single judge would accomplish.

Both cases will require resolution of substantially the same questions of law arising from an overarching federal policy and its implementation by government officials in the same region during the same time period. The cases allege strikingly parallel facts of government conduct that resulted in similar harms to the separated plaintiff parents and children. In light of the substantially similar factual and legal questions likely to arise in these cases, and in the interest of judicial economy, this case should be transferred to Judge Bolton under Local Rule 42.1(a).

**I.     Plaintiffs Satisfy The Requirements For Transfer Under Local Rule 42.1(a)**

Transfer is appropriate here because multiple Local Rule 42.1(a) factors are satisfied. *See Smith v. Sperling*, No. 11-cv-0722, 2011 WL 4101508, at *1 (party seeking transfer need only show one of the LR 42.1(a) factors applies). Though Defendant attempts to characterize plaintiffs' claims as "unrelated," Def.'s Resp. in Opp. to Mot. to Transfer at 5, ECF No. 13 ("Opp'n"), the cases arise from substantially the same event—the implementation of the government's family separation policy—and are likely to call for determination of substantially similar questions of law— particularly the application of the FTCA and state tort law. As the cases progress, numerous efficiencies may be achieved by having one Court address jurisdictional and discovery issues likely to arise in both cases.

      A.     ***A.P.F.* and *C.M.* Raise Substantially the Same Questions of Law, and Transfer Would Conserve Resources and Promote Judicial Economy**

Local Rule 42.1(a) provides that where the cases "call for determination of substantially the same questions of law" or "would entail substantial duplication of labor if heard by different Judges," transfer is appropriate. LR 42.1(a)(3); (a)(5). Both factors counsel in favor of transfer here.

This case and *C.M., et al. v. United States*, No. 2:19-cv-05217 (D. Ariz. Sept. 19, 2019) bring claims under the FTCA for intentional infliction of emotional distress and negligence arising from the United States' policy of separating families at the southwest border, and specifically, the implementation of that policy in the Yuma Customs and Border Protection (CBP) sector in the spring of 2018. Defendant argues that plaintiffs' "state law claims for negligence and intentionally tortious conduct . . . turn on the specific allegations contained in each complaint." Opp'n at 6. This argument ignores multiple questions of law likely to arise in both cases.

As a threshold matter, both cases will require resolution of the legal issue of the United States' amenability to suit under the FTCA. In *C.M.*, the United States has raised jurisdictional defenses in a motion to dismiss, including arguments that the claims are barred under the due care and discretionary function exceptions to the FTCA, and that plaintiffs failed to allege claims for which there is a private person analog. Mot. & Mem. in Supp. of the United States of America's Mot. to Dismiss at 2, No. 2:19-cv-05217 (D. Ariz. Dec. 23, 2019), ECF No. 18. The United States reasonably can be expected to raise in *A.P.F.* the same or similar jurisdictional defenses it has asserted as a basis for dismissal of the claims in *C.M.* Defendant concedes as much when it admits that "[b]oth lawsuits present the issue of whether a court has subject matter jurisdiction based on plaintiffs' challenges . . ." Opp'n at 6.

These threshold legal issues are common to both cases and do not turn on any factual variations among plaintiffs within or between the cases.[1]  Tellingly, the United States did not reference *any* individual facts relating to the *C.M.* plaintiffs in its motion to dismiss.  *See* Mot. & Mem. in Supp. of the United States of America's Mot. to Dismiss at 3 n.1, No. 2:19-cv-05217 (D. Ariz. Dec. 23, 2019), ECF No. 18 ("Plaintiffs' Complaint contains allegations specific to each Plaintiff.  For purposes of this motion, a summary of those allegations is not necessary.").  Instead, the United States relied on generalized defenses that do not turn on facts unique to each plaintiff.  It makes little sense for two different judges in the same District to resolve these same purely legal issues within months of each other.

The cases are likely to involve substantially similar questions of law beyond the motion to dismiss stage as well.  Defendant argues that transfer is inappropriate because *C.M.* brings two causes of action, negligence and intentional inflection of emotional distress, while *A.P.F.* includes those same two torts and raises an additional claim, for loss of a child's consortium.[2]  The causes of action need not be identical, but only raise *substantially similar* questions of law, for transfer to be appropriate.  *See Smith* 2011 WL 4101508, at *3.  As to the merits of the negligence and intentional infliction of emotional distress claims, both cases will call for determination of *substantially* the same questions of law; *inter alia*, whether the following government actions taken according to its family separation policy amounted to extreme and outrageous conduct

---

[1] Even accepting as true Defendant's argument that the torts of negligence and intentional infliction of emotional distress turn on facts unique to each plaintiff, it is beside the point.  Plaintiffs' motion concerns transfer for the sake of judicial efficiency, not common resolution as to all issues of liability and damages.

[2] Defendant asserts that the *A.P.F.* Plaintiffs have brought more than one additional tort claim, Opp'n at 6, but this is incorrect. *A.P.F.* Plaintiffs allege additional facts that relate to the three causes of action but did not bring standalone causes of action arising from medical issues or sexual abuse. *See. A.P.F.* Compl. at 53-58 (Claims for Relief).  The abuse and medical neglect allegations are encompassed by the intentional infliction of emotional distress, negligence, and loss of consortium claims.

intended to cause emotional distress and/or a failure to act with ordinary care and prudence so as to not cause harm:  (1) forcibly separating children from their parents without a determination that the parents are unfit or present a danger to the child, (2) detaining parents and children separately while not informing each of the others' whereabouts, (3) failing to track children's cases as related to their parents', (4) subjecting parents and children to inhumane detention conditions prior to their separation, and (5) impeding communication between separated families. These issues, among others, are common to both cases.  Two judges need not duplicate the efforts required to review and make determinations as to these legal questions.

Transfer of this case will also promote discovery efficiencies. Plaintiffs in both cases will seek discovery from the United States relating to the development and implementation of the family separation policy. This will include witnesses and documents relating to the government's decision to implement an across-the-board policy of forcibly separating parents from their children, sending the parents to ICE facilities around the country while holding their children in federal Office of Refugee Resettlement (ORR) custody. The placement of plaintiffs and their children in different ICE facilities and ORR facilities across the country is of no moment where a common defendant—the United States—will have possession or control of most relevant documents. Discovery will also include witnesses and documents likely to be located in the Yuma CBP sector—the same region where all plaintiffs in both cases crossed the border and were detained and separated.  Substantial efficiencies will be gained by having a single district judge oversee discovery and handle disputes relating to discovery concerning the same issues.

Defendant repeatedly cites *Lexington Insurance Co. v. Scott Homes Multifamily, Inc.*, 2013 WL 4026883, Case No. CV-12-02119-PHX-JAT (D. Ariz. Aug. 7, 2013), to argue that factual variations preclude transfer, but that case is inapposite. There, the court considered whether transfer was appropriate in an insurance action involving two parties common to both cases and "some overlap in at least one of the legal issues in

1  both suits." *Id.* at *2.  The *Lexington* court noted that each case involved two separate
2  judgments for two separate plaintiff owners of two separate apartment complexes "built
3  at different times and suffer[ing] from different damages," as well as material
4  differences in the insurance policies at issue. *Id.* at *1.  Concluding that one case
5  involved "a number of legal issues that will not be addressed" in the other case and
6  "completely different sets of facts," the court denied transfer. *Id.* at *2. By contrast
7  here, plaintiffs in both *A.P.F.* and *C.M.* allege that an overarching policy of family
8  separation carried out by immigration officials in Arizona harmed them and their
9  children.

10  *A.P.F.* and *C.M.* will require determination of substantially the same questions of
11  law relating to the applicability of the FTCA in the particular circumstance of family
12  separation.  Because "[a] principal factor [under Local Rule 42.1(a)] is whether party
13  economy or judicial economy is substantially served by transfer to another judge,"
14  transfer is warranted here. *City of Phoenix v. First State Ins. Co.*, No. CV-15-00511-
15  PHX-NVW, 2016 WL 4591906, at *20 (D. Ariz. Sept. 2, 2016).

     **B.**    ***A.P.F.* and *C.M.* Arise from Substantially the Same Transaction or Event, As the Significant Factual Similarities Between the Cases Makes Clear**

18  The cases "arise from substantially the same transaction or event."  LR
19  42.1(a)(1).  The cases arise out of a singular event—the government's implementation
20  of a policy of wholesale separation of families arriving at the southwest border.
21  *Compare A.P.F.* Compl. ¶ 11 ("The government's policy of forcibly taking children
22  from their parents caused extraordinary trauma to thousands of families, including
23  Plaintiffs…"), *with C.M.* Compl. ¶ 1 (same).  Both cases allege that the policy was
24  implemented to deter other families from migrating to the United States, despite the
25  government's knowledge of the harms the policy would inflict on separated families.
26  *See A.P.F.* Compl. ¶¶ 15, 36–65; *C.M.* Compl. ¶¶ 21–34.  And both cases allege that
27  Defendants made plaintiffs' harms worse by implementing its policy with carelessness
28

and disregard for the physical safety and well-being of plaintiffs. *See A.P.F.* Compl. ¶¶ 263–95; *C.M.* Compl. ¶¶ 35–58.[3]

Ignoring the obvious similarities in the complaints' allegations concerning the family separation policy, Defendant instead highlights minor factual differences between the plaintiffs' experiences in the *A.P.F.* and *C.M.* cases. A comparison of the complaints, however, reveals remarkably similar facts among the individual plaintiffs in both cases. All plaintiffs in both *C.M.* and *A.P.F.* entered the United States during an approximately 10-day period in May 2018. All plaintiffs in both cases crossed the border in the Yuma CBP Sector and were detained by CBP and then separated from their children during their time in CBP custody. *See C.M.* Compl. ¶¶ 70-71; 77; 119; 127; 171; 182; 304-306 (C.M. and B.M. crossed on May 9, 2018 near San Luis, Arizona and separated within a day; L.G. and B.G. crossed on May 16, 2018 near San Luis and were separated within a day; M.R. and J.R. crossed on May 8, 2018 near San Luis and were separated on their second day of detention; V.C. and G.A. crossed on May 8, 2018 and were separated within two days); *A.P.F.* Compl. ¶¶ 72; 98-99; 168; 187-89 (A.P.F. and O.B. crossed on or about May 15, 2018 and were separated about two days later; J.V.S. and H.Y. crossed on May 8, 2018 near Yuma and were separated on their second day of detention).[4]

All plaintiffs in both cases allege harsh conditions of confinement during their time in CBP custody, including extremely cold temperatures, limited food, inadequate sanitary facilities, and overcrowding. *Compare A.P.F.* Compl. ¶¶ 82, 86-89; 172-176 *with C.M.* Compl. ¶¶ 71, 75; 124; 173-78; 237-38; 330. After the separations, *A.P.F.* child Plaintiff O.B. and *C.M.* children plaintiffs J.R., L.A., G.A., were all sent to

---

[3] The family separation policy has already been subject to a class-wide challenge for injunctive relief, of which plaintiffs in both the *A.P.F.* and *C.M.* cases are a part. *See Ms. L. v. U.S Immigration & Customs Enf't*, 331 F.R.D. 529, 541 (S.D. Cal. 2018) (certifying class).

[4] Immigration documents reflect that all *A.P.F.* plaintiffs were apprehended by officials after crossing the border near San Luis.

Cayuga Centers in New York City, a private facility contracted by ORR to hold "unaccompanied" immigrant children, while *A.P.F.* child Plaintiff H.Y. and *C.M.* child Plaintiff B.M. were placed at Safe Haven for Children (Lutheran Services), an ORR-contracted facility in New York City, both on May 11, 2018. *See A.P.F.* Compl. ¶ 141; *C.M.* Compl. ¶¶ 211; 282; 356. The *C.M.* plaintiffs allege that B.M. faced physical abuse while in ORR custody, while the *A.P.F.* plaintiffs allege that O.B. and H.Y. suffered sexual abuse while in ORR custody. *Compare* C.M. Compl. ¶ 101 *with A.P.F.* Compl. ¶¶ 125; 141-143; 218-19. Three of the *C.M.* plaintiff families and both sets of the *A.P.F.* plaintiffs were reunified at an ICE facility in Port Isabel, Texas, in late July 2018, following the injunction in the *Ms. L.* case. All adult plaintiffs in both *A.P.F.* and *C.M.* are members of the *Ms. L.* class. The government fails to explain why the placement of plaintiffs and their children in different ICE facilities and ORR facilities—*after* its decision to separate the children from their parents—precludes transfer.

      Defendant argues that because Plaintiffs alleged facts relating to the *manner* in which the separations occurred, having one judge oversee both cases will not result in any efficiency gains. But individual immigration agents did not make assessments about parental fitness or danger to children when they separated the plaintiff families in both cases. Moreover, plaintiffs across both cases allege strikingly similar facts about the cruelty of the moments of separation in CBP custody. *Compare C.M.* Compl. ¶¶ 78-79 (officials ordered C.M. to bathe her then five-year-old son and then say goodbye to him) *with A.P.F.* Compl. ¶¶ 181-185 (plaintiff J.V.S. ordered to bathe his then six-year-old daughter H.Y. and then hand her over to officials); and *C.M.* Compl. ¶ 249 (officials forcibly ripped five-year-old L.A. from her mother's arms) *with A.P.F.* Compl. ¶¶ 98-99 (officials wrenched seven-year-old O.B. from his father's arms and then ripped their hands apart). Nor does Defendant explain why the existence of individual ORR caseworker evaluations of the separated children is fatal to transfer. To the contrary, having one judge gain familiarity with the roles various government actors played in the execution of the family separation policy serves judicial economy.

In short, in addition to the obvious parallels between the two cases that arose from the same federal policy operating during the same time period, the complaints reflect remarkably similar individual facts. These factual similarities further underscore the appropriateness of transfer under Local Rule 42.1(a)(1).

## II.  Transfer To Judge Bolton Is Appropriate Under Local Rule 42.1(d)

Defendant does not address Plaintiffs' argument that, should the motion to transfer be granted, *A.P.F.* should be assigned to Judge Bolton. As outlined in Plaintiffs' motion, because *C.M.* is the case with the lowest case number and no substantive matters have been resolved in the present case, assignment to Judge Bolton is proper should the motion to transfer be granted. *See Frisancho v. Brewer*, No. 10-cv-926, 2010 WL 11453974, at *1 (D. Ariz. June 25, 2010) (Bolton, J.).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' motion, the motion to transfer should be granted.

Respectfully submitted this 5th day of March, 2020.

COPPERSMITH BROCKELMAN PLC

By s/ Keith Beauchamp
   Keith Beauchamp
   Shelly Tolman

SOUTHERN POVERTY LAW CENTER
   Michelle Lapointe*
   Norma Ventura*

SOUTHERN POVERTY LAW CENTER
   Paul R. Chavez*
   P.O. Box 370037
   Miami, FL 33137
   Telephone: (786) 347-2056
   paul.chavez@splcenter.org

COVINGTON & BURLING LLP
   Matthew Schlesinger*
   Jason Carey*
   Terra White Fulham*

<div style="margin-left: 2em;">

COVINGTON & BURLING LLP
   Swati R. Prakash*
   The New York Times Building
   620 Eighth Avenue
   New York, NY 10018-1405
   Telephone: (212) 841-1174
   sprakash@cov.com

COVINGTON & BURLING LLP
   Jessica R. Hanson
   1999 Avenue of the Stars, Suite 3500
   Los Angeles, CA 90067-4643
   Telephone: (424) 332-4800
   jhanson@cov.com

*Attorneys for Plaintiff*

</div>

{00487874.1}

- 10 -