JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| A.P.F., on his own behalf and on behalf of his minor child, O.B.; and J.V.S. on his own behalf and on behalf of his minor child, H.Y., | Case no. 2:20-CV-00065-SMB |
|---|---|
| Plaintiffs, | **MOTION AND MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS** |
| v. | |
| United States of America, | |
| Defendant. | |

Defendant United States of America respectfully moves this Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. The grounds for this motion are set forth in the below memorandum in support.

## **INTRODUCTION**

Plaintiffs – two adult male aliens suing on behalf of themselves and their respective alien children – bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, seeking damages based on the separation of each

father from his child in Arizona following their illegal entries into the United States. Plaintiffs assert state law claims for intentional infliction of emotional distress ("IIIED") (Count 1), negligence (Count 2), and loss of child's consortium (Count 3).

Plaintiffs' claims based upon the separations are barred by the FTCA's due care and discretionary function exceptions, 28 U.S.C. § 2680(a), there is no private person analog for such claims, and a private person could not be held liable under applicable state law.  28 U.S.C. § 1346(b)(1).  Moreover, Plaintiffs' claims based upon the alleged abuse of their children in foster care are barred by the discretionary function exception and the contractor exclusion.  Plaintiffs' claims based upon the purported interference with their asylum claims are barred by the misrepresentation exception, 28 U.S.C. § 2680(h), and because there is no private person analog to the processing of asylum claims.  Plaintiffs' claims based upon the conditions of their confinement are predicated upon constitutional violations and thus are not cognizable under the FTCA, and Plaintiffs fail to state a claim under applicable state law.  Finally, Plaintiff A.P.F.'s claim based upon the alleged failure to provide timely medical treatment to his son must be dismissed for failure to state a claim.

## **BACKGROUND**

Plaintiffs illegally crossed into the United States with their children between ports of entry in Arizona in May 2018.  Compl. ¶¶ 27, 29, 72, 168.  Their apprehension by Customs and Border Protection ("CBP") occurred when the Department of Homeland Security ("DHS") was directed by the President to end "catch and release" practices and to exercise its federal statutory authority to detain aliens during the pendency of their immigration proceedings, and for DHS to refer to the Department of Justice ("DOJ") for

prosecution all 8 U.S.C. § 1325 offenses.  Compl. ¶ 57.  The apprehensions occurred

following the Attorney General's direction to federal prosecutors to adopt a "zero-

tolerance" policy for criminal immigration offenses.  Compl. ¶¶ 51, 61.

Plaintiffs were amenable to prosecution under 8 U.S.C. § 1325(a) because of their

illegal entries into the United States.  Plaintiffs and their children were separated by CBP,

with Plaintiffs subsequently detained by U.S. Immigration and Customs Enforcement

("ICE") in secure adult detention facilities. Their children, rendered unaccompanied alien

children ("UACs") because Plaintiffs were amenable to criminal prosecution, were

placed in the care and custody of the Office of Refugee Resettlement ("ORR"), a

component of the Department of Health and Human Services ("HHS").   Compl. ¶¶ 12,

27, 28,101, 190.  ORR transferred the children to licensed facilities operated by grantees,

where the children spent their days.  Compl. ¶¶ 141, 216.   The children spent nights in

foster homes.  *Id.*  After being separated for approximately ten weeks, Plaintiffs and their

children were reunited and released.   Compl. ¶¶ 130, 231.[1]

## **LEGAL FRAMEWORK**

## **I.    Relevant Immigration Statutory and Regulatory Framework**

Under the Immigration and Nationality Act ("INA"), any alien present in the

United States without being admitted or paroled is inadmissible and subject to removal.

*See* 8 U.S.C. § 1182(a)(6)(A)(i).  Individuals in DHS custody also may be amenable to

criminal prosecution for criminal immigration violations.  Those criminal immigration

---

[1] For purposes of this motion only, the United States assumes the truth of
Plaintiffs' factual allegations.

statutes authorize DHS to refer individuals to DOJ for prosecution.

In this action, each Plaintiff was an applicant for admission under 8 U.S.C. § 1225(a)(1).  *See* 8 U.S.C. § 1225(a)(1) (defining as "applicant for admission" an alien who "arrives in the United States" or is "present in the United States" but "has not been admitted."); Compl. ¶¶ 27, 28, 73, 168.  As such, Plaintiffs and their children were required to "be inspected by immigration officers[.]"  8 U.S.C. § 1225(a)(3).  Under § 1225(b)(1), aliens who are inadmissible for lack of documentation or for fraud or misrepresentation under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) are amenable to removal "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i) (referred to as "expedited removal").  Aliens covered by 8 U.S.C. § 1225(b)(2) include all applicants for admission other than those processed for expedited removal pursuant to § 1225(b)(1).  Congress has mandated the detention of certain inadmissible applicants for admission pending removal proceedings and removal, *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and 8 U.S.C. § 1225(b)(2)(A); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (section 1225 "mandate detention of applicants for admission until certain [removal] proceedings have concluded.").  Such individuals may be released only if they are granted parole under narrowly prescribed circumstances.  8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii); *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1132 (N.D. Ill. 2018).  The detention of aliens also is statutorily authorized by 8 U.S.C. § 1226(a) ("an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

## II.     Legal Framework for the Immigration Custody and Release of Minor Aliens

4

The immigration custody and release of UACs is governed by 6 U.S.C. § 279 and 8 U.S.C. § 1232.  The *Flores* Settlement Agreement also governs the custody and release of alien minors.  *See D.B. v. Cardall*, 826 F.3d 721, 731 (4th Cir. 2016).[2]  In 2002, Congress enacted the Homeland Security Act ("HSA"), which created DHS.  The HSA transferred to DHS the responsibility for immigration enforcement, and transferred to ORR the responsibility for "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).  Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  8 U.S.C. § 1232(b)(3).  ORR must place UACs "in the least restrictive setting that is in the best interest of the child."  8 U.S.C.§ 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).  ORR may place children in a secure facility only if it determines that the child poses a danger to herself or others, or has been charged with a criminal offense.  8 U.S.C. § 1232(c)(2)(A).

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF No. 101).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The *Flores* Settlement Agreement is a consent decree enforced in the Central District of California that governs the care and custody of alien minors.  It "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Settlement Agreement ¶ 9).[3]  The Ninth Circuit held that the *Flores* Settlement Agreement applies to both accompanied and unaccompanied minors.  *Flores*, 828 F.3d at 905.  Pursuant to the *Flores* Settlement Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]" *Flores*, 828 F.3d at 902-03 (quoting *Flores* Agreement ¶ 12).[4]  The *Flores* Settlement Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id*. at 906; *see also Dominguez-Portillo*, 2018 WL 315759 at, *9 ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

Moreover, the *Flores* Settlement Agreement does not provide any rights to adult detainees, including rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-*

---

[3] *See also Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, *2 (W.D. Tex. Apr. 9, 2007) (*Flores* is "binding legal standard"); *United States v. Dominguez-Portillo*, No. 17-4409, 2018 WL 315759, *7 (W.D. Tex. Jan. 5, 2018) (same); *Bunikyte*, 2007 WL 1074070 at *8 (the agreement is "a court order directing the parties to comply with its terms.").  The HSA expressly preserved all agreements including the *Flores* Settlement Agreement.  *See Flores v. Sessions*, 862 F.3d 863, 870-71 (9th Cir. 2017) (citing 6 U.S.C. § 552).

[4] DHS's regulations provide additional protections to minors by requiring that they must be detained "in the least restrictive setting appropriate to the juvenile's age and special needs . . . ." 6 C.F.R. § 115.14(a).

*Portillo*, 2018 WL 315759 at *14-15; *Bunikyte*, 2007 WL 1074070 at *16.  The preferential release to a parent "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908; *Bunikyte*, 2007 WL 1074070 at *16 (no preference for releasing parents who have violated immigration laws.).

**III.    Executive Branch Directives Regarding Immigration Enforcement**

During the time period relevant to this action, there were several executive branch directives relating to the enforcement of federal immigration laws.  In January 2017, Executive Order No. 13767 ("EO 13767") stated that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]"  EO 13767 § 2(b), 82 Fed. Reg. 8793 (Jan. 30, 2017).  EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id*. § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole."  *Id*. § 11(d).

On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal

1   entry under 8 U.S.C. § 1325.[5]

2   On April 6, 2018, a Presidential Memorandum was issued entitled "Ending 'Catch

3   and Release' at the Border of the United States and Directing Other Enhancements to

4   Immigration Enforcement."  83 Fed. Reg. 16179 (Apr. 13, 2018), which noted that EO

5   13767 had "directed the Secretary of Homeland Security to issue policy guidance

6   regarding the appropriate and consistent use of detention authority under the Immigration

7   and Nationality Act (INA), including termination of the practice known as 'catch and

8   release,' whereby aliens are released in the United States shortly after their apprehension

9   for violations of our immigration laws."  That same day, the Attorney General issued a

10  "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. Department

11  of Justice, *News Release: Attorney General Announces Zero-Tolerance Policy for

12  Criminal Illegal Entry* (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter

13  referred to as "Zero Tolerance Memorandum").  This memorandum directed federal

14  prosecutors along the Southwest border to immediately accept for prosecution, to the

15  extent practicable, all § 1325(a) offenses referred for prosecution.   Compl. ¶ 51.

16  Consistent with EO 13767, the April 2018 Presidential Memorandum, and the

17  Zero Tolerance Memorandum, DHS referred for prosecution adult aliens – including

18  those traveling with children – who unlawfully entered the United States on the

19  Southwest border in violation of § 1325 or other criminal immigration statutory

20  provisions.  Compl. ¶¶ 46, 51.  Alien minor children of those adults were transferred to

---

[5] *See* U.S. Department of Justice, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

ORR custody as UACs.  Compl. ¶¶ 27, 29, 33, 141, 216.

## ARGUMENT

**I.      Plaintiffs' Claims Are Barred By the FTCA's Due Care and Discretionary Function Exceptions**

### A.  Overview of the Due Care and Discretionary Function Exceptions

The United States is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the United States.  *See United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Absent a specific waiver, sovereign immunity bars the suit for lack of subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).  The FTCA is a limited waiver of sovereign immunity that authorizes suits against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The FTCA's waiver of sovereign immunity is subject to several exceptions set forth in 28 U.S.C. § 2680, which "are designed to protect certain important governmental functions and prerogatives from disruption."  *Molzof v. United States*, 502 U.S. 301, 311 (1992); *see also Richards v. United States*, 369 U.S. 1, 13 n.28 (1962).   Foremost among these exceptions are those in section 2680(a), which bar:

> Any claim [1] based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or [2] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (bracketed numerals added).

The first part of section 2680(a) is referred to as the FTCA's "due care exception," and the second part is referred to as the "discretionary function exception."  As the legislative history of section 2680(a) states:

> The bill is not intended to authorize a suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion.  Nor is it desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.

H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The due care exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  "Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citations omitted); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception). The due care exception was created because the "Tort Claims Act did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations." *Dupree*, 247 F.2d at 824 (citation and internal quotation marks omitted); *see also Dalehite*, 346 U.S. at 42 ("[T]he [agency's] regulations, for instance, could not be attacked by claimants under the Act by virtue of the first phrase of § 2680(a)."); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based upon employees' acts "performed under and in furtherance of the regulation . . . even though the regulation

may be irregular or ineffective").  Thus, the FTCA precludes a claim based upon the actions of employees carrying out a statutory or regulatory scheme.

Regarding the discretionary function exception, the Supreme Court has enunciated a two-prong test for determining whether it applies.  First, courts must determine whether the act "involv[es] an element of judgment or choice."  *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  Courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow[.]"  *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).   To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both specific and mandatory, as well as conduct that violates said statute, regulation, or policy.  *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (citation omitted).

Second, if the conduct does involve judgment or choice, courts then look to "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Gaubert*, 499 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 536). "The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing"' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536-537.  It is immaterial whether various policy considerations actually were considered, because "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."

11

*Gaubert*, 499 U.S. at 325.[6]  Furthermore, when there is discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Id.* at 324; *Nurse*, 226 F.3d at 1001.  The exception applies even if the government's conduct was negligent or an abuse of discretion.  *Id.* at 323.

### B.  The Due Care and Discretionary Function Exceptions Bar Plaintiffs' Claims Based Upon The Separations

Plaintiffs assert that the government wrongfully separated them from their children while they were detained in Arizona following their apprehensions at the border. Plaintiffs acknowledge that the separations from their children stemmed from the executive branch's enforcement of federal criminal immigration laws.  *See* Compl. ¶ 51.

Plaintiffs, who illegally entered the United States and thus were amenable to prosecution, appropriately do not contest any criminal referrals or charging decisions pursuant to 8 U.S.C. § 1325 or ensuing criminal custody, because prioritizing enforcement of federal law and subsequent prosecutorial decisions are classic discretionary functions shielded by the FTCA's discretionary function exception and prosecutorial immunity.[7]  Nor do they challenge their immigration detentions pending

---

[6] *See also Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("[T]he challenged decision need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis."); *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989) (the Government need not "prove that it considered these factors and made a conscious decision on the basis of them").

[7] *See Mejia-Mejia v. ICE*, No. 18-1445, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019) (zero tolerance policy "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General"); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("The Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws."); *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998); *Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir.), *cert. denied*, 389 U.S. 841 (1967).

their removal proceedings.   *See Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2019); [8] *see also W.S.R.*, 318 F. Supp. 3d at 1133 (there is no authority for "the proposition that the substantive due process to family integrity dictates release of the parents (as distinct from reunification).").  Rather, Plaintiffs' claims are based on the separations of parent and child while they were in federal immigration detention. However, Plaintiffs' illegal entries occurred at a time when the Executive Orders and other executive branch directives cited *supra* 7-9, instructed federal agencies to strictly enforce federal immigration statutes, including referral of adult aliens for prosecution for criminal illegal entry and detention of adult aliens pending removal proceedings.  It was this faithful execution of federal statutes that resulted in the challenged family separations.

For the due care exception to apply, the government need only be authorized by statute or regulation to take the course of action that caused the harm.  In *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985), two plaintiffs drowned and one was injured as they attempted to walk across a diversion dam.  The plaintiffs alleged that the government was negligent in its maintenance of the dam.  However, responsibility for the

---

[8]  Plaintiffs assert that they are members of the class that brought suit in *Ms. L v. ICE*.  Compl. ¶¶ 64, 129, 211.  In *Ms. L*, the plaintiffs challenged the government's separation of alien parents and their minor children when both are held in immigration detention and when there has been no showing that the parent is unfit or poses a danger to the child.  *Ms. L*, 302 F. Supp. 3d at 1162.  They did not challenge the government's initial separation of parent and child when the parent is referred for criminal prosecution for violating the federal criminal laws.  *Id*.  Nor did the plaintiffs challenge the decision to detain adult aliens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention with parole in strictly limited circumstances.  *Id.* at 1159 n.3.  Rather, the plaintiffs sought re-unification while the parent is in immigration custody.

care and maintenance of the dam was transferred to a water-users' association pursuant to a federal statute, which provided in relevant part that the Secretary of the Interior was "*authorized, in his discretion*, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe.  43 U.S.C. § 499 (emphasis added).  The Ninth Circuit held that the due care exception barred any claim based on the decision to transfer such maintenance responsibility because such decision was authorized by federal statute.  *Borquez*, 773 F.2d at 1053.[9]

As relevant here, the government acted pursuant to its *authority* under 8 U.S.C. § 1325 to refer Plaintiffs for prosecution based on their unlawful entries, detain Plaintiffs during the pendency of their removal proceedings, and transfer Plaintiffs' children to HHS custody pursuant to the TVPRA, 8 U.S.C. § 1232(b)(3), once they were classified as UACs, 6 U.S.C. § 279(g).  Indeed, EO 13767 expressly instructed DHS to exercise its statutory authority to detain aliens during the pendency of their immigration proceedings, and, under the TVPRA, once the children were determined to be UACs such transfers were mandated.  Accordingly, the due care exception bars Plaintiffs' separations claims.[10]

---

[9] *Accord Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by regulations protected by due care exception); *Powell*, 233 F.2d at 855 (actions taken pursuant to and in furtherance of regulations protected by the due care exception).

[10] Plaintiffs' allegations that the separations violated their constitutional right to family integrity are of no moment because the due care exception applies even when the execution of federal statutes and regulations results in a violation of one's constitutional rights.  *See Welch v. United States*, 409 F.3d 646, 652-53 (4th Cir. 2005) (detention of alien pursuant to 8 U.S.C. § 1226(c) pending removal determination protected by due

Further, Plaintiffs cannot avoid the due care exception by challenging the government's classification of their children as UACs.  The Ninth Circuit has stated unequivocally that a challenge to an agency's interpretation of a statute as "arbitrary or contrary to law may not be tested in an action under the FTCA.  The legislative history of the FTCA makes it clear that Congress did not intend that 'the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.'"  *Baie v. Sec'y of Defense*, 784 F.2d 1375, 1376-77 (9th Cir.), *cert. denied*, 479 U.S. 823 (1986) (citing H.R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945)).  Thus, any claims under the FTCA that necessarily turn on a plaintiff's challenge to an agency's interpretation of a federal statute are barred by 28 U.S.C. § 2680(a).

Even in other circuits where courts permit an inquiry into whether an agency exercised "due care" in its interpretation of the statute or regulation at issue, the due care exception still applies when no controlling legal authority clearly precluded that particular interpretation.  *See Nwozuzu v. United States*, 712 F. App'x 31, 33 (2d Cir. 2017) (because of "legal uncertainty" at the time, the government's interpretation of the derivative citizenship statute at section 321(a) of the INA as requiring lawful permanent resident ("LPR") status is protected by the due care exception); *Doe v. Stephens*, 851 F.2d 1457, 1462 (D.C. Cir. 1988) (decision by VA to follow regulations invalidated by statute protected by due care exception because agency could not be faulted for its "failure to predict the precise statutory interpretation that led [a court] to reject the

care exception even though detention without bail hearing violated alien's Due Process rights).

15

agency's" understanding of statute).  At the time of the separations in this action, there was no authority which clearly precluded an alien minor's classification as a UAC when a parent was to be referred for prosecution for illegal entry into the United States and transferred to federal criminal custody, and federal prosecutors had been directed to prioritize prosecution of all § 1325(a) offenses.  Rather, case law at that time permitted a broad interpretation of what it means for a parent to be unavailable to "provide care and physical custody."  *See D.B.*, 826 F.3d at 734 (minor was "unaccompanied alien child" even though living with mother in family home because mother's lack of fitness precluded her from being able to "provide what is necessary for the child's health, welfare, maintenance, and protection" and thus was not "available"); *accord Dominguez-Portillo*, 2018 WL 315759 at *6 ("the lack of clearly established parental rights in these circumstances and under case law[.]").[11]

Moreover, so long as Plaintiffs were to be held in secure adult detention facilities (rather than released), reunification of parent and child was impermissible.  As explained above, the *Flores* Settlement Agreement provides for the release of alien children from government custody only to certain adults, and that list does not include parents who are in secure adult detention because releasing a child to an adult in such detention would not be a release.  *See also Bunikyte*, 2007 WL 1074070 at *16 (to comply with the *Flores* Settlement Agreement, ICE must "releas[e] the children to adult relatives not in custody,

---

[11] Notably, in *Ms. L*, the court acknowledged that one of the children was rendered unaccompanied as a result of her mother being placed in immigration detention.  *Ms. L*, 310 F. Supp. 3d at 1138.

16

adult friends designated by their parents, or even state-operated foster care[.]").[12]  Thus,

upon strict enforcement of federal statutes to detain adult aliens in adult detention

facilities pending removal proceedings, family separations would have been occasioned

by Plaintiffs' secure detention instead of release.

Finally, Plaintiffs allege that during the separations, "the government provided

only limited information about the children's locations and safety, and afforded only

minimal opportunities for the families to communicate[.]"  Compl. ¶ 14; *see also id.* ¶¶ 9,

11, 266, 306, 316.  However, the due care exception likewise bars any other claims that

are inextricably tied to such physical separations, including Plaintiffs' challenges to

limited communications between and about family members while the adult aliens were

in secure detention facilities.  *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001)

(claims that are "inextricably tied" or "inextricably linked" to the conduct protected by

section 2680(a) are also barred).  This is so because the harms from the allegedly lacking

communications are a direct consequence of the physical separations.  *See Moore v.

Valder*, 65 F.3d 189, 196-97 (D.C. Cir. 1995) (claims not "sufficiently separable" from

those protected by § 2680(a) are also barred); *Johnson v. U.S. Dep't of Interior*, 949 F.2d

332, 339 (10th Cir. 1991) (claims that cannot be considered apart from each other are

both barred); *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (same).

---

[12] Paragraph 14 of the *Flores* Settlement Agreement lists to whom a minor can be released "from [DHS] custody."  Further, Paragraph 21 of the *Flores* Settlement Agreement governs when minors can be held in secure detention. Minors not described in paragraph 21 may not be held in a secure detention facility for any period of time. Plaintiffs do not allege that the circumstances allowing for the secure detention of minors pursuant to paragraph 21 of the *Flores* Settlement Agreement are present here. Moreover, minors subject to secure detention pursuant to paragraph 21 are not held in secure *adult* detention facilities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, any challenge to the frequency of communications between and about separated family members is barred by the discretionary function exception.  Plaintiffs have identified no mandatory directives prescribing in specific terms the regularity with which alien adults in secure detention facilities must be permitted to communicate with their children.  Further, claims relating to the conditions of one's detention in a secure facility are in essence a challenge to discretionary, policy-based decision-making regarding conditions of confinement that is shielded by the discretionary function exception.  *See Antonelli v. Crow*, No. 08–261, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) (citing cases in which conditions of confinement claims barred by the discretionary function exception).

Plaintiffs also allege that the government failed to adequately track alien minors who were separated from their parents because the computer tracking systems within DHS were inadequately designed or did not sufficiently interface with other systems.  *See* Compl. ¶¶ 257, 274, 306, 316.  Because Plaintiffs do not allege that these alleged deficiencies caused their separations or hindered their reunifications, such alleged tracking failures are of no moment.[13]  In any event, an agency's decisions regarding the design and maintenance of its computer systems and databases is a policy-based discretionary function involving, among other things, considerations of how to "allocate resources among various objectives."  *Cruz v. United States*, 684 F. Supp. 2d 217, 224 (D.P.R. 2010) (dismissing claim that VA negligently designed and maintained inadequate computer systems and safeguards).  As such, any challenge by Plaintiffs to the

---

[13] Notably, all Plaintiffs were reunified with their children within the thirty-day period ordered by the court in *Ms. L.  See* Compl. ¶¶ 130, 227.

18

government's allegedly deficient tracking systems is barred by the discretionary function exception.  *See also Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database system that failed to reveal immigration status protected by discretionary function exception).

### C.  Plaintiffs' Claims Based Upon the Alleged Abuse of their Children in Foster Care are Barred by the Discretionary Function Exception

Plaintiffs allege that their children were abused by other children while in foster care.  Compl.  ¶¶ 142-151, 218-220.  Plaintiff J.V.S. further alleges that a "grandmother" in the foster home where H.Y. resided used offensive language, and H.Y. was locked alone in a room as punishment.  Compl. ¶¶ 221-222.  Plaintiffs base their IIED and negligence claims, in part, on the government "exposing children to the risk and reality of abuse while in ORR custody," Compl. ¶¶ 306, 316, and "allowing [the children] to be held in locations that did not adequately protect them from sexual assault[.]"  Compl. ¶ 320; *see also id*. ¶ 321  (Defendant "fail[ed] to properly supervise other federal employees and federal contractors responsible for the care of Plaintiffs while they were in Defendant's custody.").  In essence, Plaintiffs assert that the government failed to properly monitor the grantees in whose care their children were placed.  This argument, however, is foreclosed by the discretionary function exception, which bars claims based upon the allegedly negligent selection and supervision of contractors.  *See United States v. Varig Airlines*, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Marlys Bear Medicine v. United States*, 241 F.3d 1208, 1214 (9th Cir. 2001) (selection of contractor protected by

discretionary function exception); *In re Consolidated United States Atmospheric Testing Litig.*, 820 F.2d 982, 995-96 (9th Cir. 1987) (alleged negligent failure to supervise contractor protected by discretionary function exception).[14]   Plaintiffs attempt to overcome the discretionary function exception by asserting that ORR's monitoring of the grantees caring for their children failed to comply with Paragraph 12 of the *Flores* Settlement Agreement.  Compl. ¶ 294 (ORR is to place children in "facilities that are safe . . . and that are consistent with the [government's] concern for the particular vulnerability of minors[.]").  However, this paragraph sets forth the broad goal of safety in placing UACs but it does not prescribe a specific course of action that ORR must follow in selecting and monitoring grantees in whose custody and care the UACs are placed.  *Gaubert*, 499 U.S. at 322 (discretion is removed only when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[.]"); *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) ("The existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.").

In *Walding v. United States,* 955 F. Supp. 2d 759 (W.D. Tex. 2013), the plaintiff UACs alleged "repeated sexual, physical and emotional abuse" when in the custody of a grantee pending adjudication of their immigration status, and asserted that ORR was negligent in failing to ensure the safety of the minors while at the grantee's facility and in selecting and supervising the grantee.  *Id.* at 763.  The court held that their claims were barred by the discretionary function exception because the selection of a contractor to

---

[14] The discretionary function exception also bars claims based upon allegations of negligent supervision of federal employees.  *See, e.g., Doe,* 557 F.3d at 1084.

provide custody and care of UACs is left to ORR's discretion and "it is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Id*. at 771-72.  Further, ORR had discretion regarding how to supervise the contractor which involved "policy decisions concerning how to allocate its resources to oversee the facilities and personnel."  *Id*. at 783.  Finally, ORR's decisions regarding how to respond to complaints of abuse also were protected by the discretionary function exception because ORR has been "given discretion and specifically empowered to make policy judgments concerning how to respond to information obtained during monitoring."  *Id*. at 784.

As in *Walding*, Plaintiffs' claims challenging ORR's selection and supervision of grantees who provided care to and custody of their children are barred by the discretionary function exception.  Moreover, the alleged abuse of Plaintiffs' children is even further removed from the government than in *Walding*.  Here, the alleged abuse of Plaintiffs' children occurred not at the hands of a contractor's employees (as in *Walding*), but by other children in the foster care homes where the contractor placed the children. Furthermore, to the extent Plaintiffs allege that the acts or omissions of the grantees, Cayuga Centers and Lutheran Services, were negligent, any claim based upon such allegations are barred by the contractor exclusion to the FTCA.  *Logue v. United States*, 412 U.S. 521, 526 (1973); *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005); *Walding*, 955 F. Supp. 2d at 802-03.

**II.    There is No Private Person Analog for the Enforcement of Immigration Statutes, Determination of Asylum Claims, or Conditions of Detention**

Jurisdiction under the FTCA exists only if a plaintiff alleges circumstances where

a private person would be liable under state law.  28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674.  The provision is known as the "private analog" requirement.  Only the federal government has the authority to enforce federal immigration laws, and applicable state law does not impose liability on private persons for failing to enforce federal law.  Thus, no private analog exists here.

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform."  *United States v. Olson*, 546 U.S. 43, 46 (2005) (internal quotation marks omitted).  It does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotation marks omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).  Only the federal government is in the position, and has the authority, to enforce federal immigration laws.  Plaintiffs' alleged harms stem from the federal government's decision to strictly enforce federal immigration statutes.  The government's faithful execution of federal statutes resulted in Plaintiffs' referrals for criminal prosecution, rendering their children UACs.  Once Plaintiffs' children were classified as UACs, the TVPRA, 8 U.S.C. § 1232(b), required their transfer to HHS custody.  The United States has not waived its sovereign immunity because decisions regarding whether to enforce federal law have no private person counterpart.  *See Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir.1997) (decision regarding whether to take enforcement action under federal law

is not conduct for which private individual could be held liable and thus did not give rise to a FTCA action); *see also Elgamal v. United States*, No.13-867, 2015 WL 13648070 at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"), *aff'd by Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018).

Furthermore, even if considered separately from the executive branch's decision to enforce federal law, the determination that Plaintiffs' children were UACs also is non-cognizable under the FTCA.  The government's classification of an alien's immigration status is an immigration-related function exclusively vested in the federal government for which there is no private person analog.  In *Akutowicz v. United States*, 859 F.2d 1122, 1125-26 (2d Cir. 1988), a citizen challenged the Department of State's wrongful revocation of his U.S. citizenship after the agency determined that Akutowicz had expatriated himself under the provisions of § 349(a)(1) of the INA, 8 U.S.C. § 1481(a)(1) (1982).  *Id*. at 1123-24.  The agency's Board of Appellate Review reversed the decision and reinstated Akutowicz's citizenship.  *Id*. at 1124.  Akutowicz then filed suit under the FTCA alleging, *inter alia*, that the State Department negligently deprived him of his citizenship.  *Id*.  Applying the familiar standard that "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred," *id*. at 1125 (quoting *Chen v. United States*, 854 F.2d 622 (2d Cir.1988)), the Second Circuit held that no such private person analogy existed.  In particular, the court held that there is no analog for "action[s] of the type that private persons could not engage in and hence could

not be liable for under local law." *Id*. (quoting *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37-38 (2d Cir.1987); *see also Jayvee Brand v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983). That the State Department allegedly erred in its interpretation and application of the pertinent provisions of the INA was of no moment. The Second Circuit affirmed, holding that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id*. at 1126.

The Ninth Circuit likewise has held that there is no private person counterpart to the federal government's administration and enforcement of federal immigration laws. In *Bhuiyan v. United States*, No. 14-0013, 2017 WL 2837023 (D.N. Mar.I. June 30, 2017), the plaintiff, a citizen of Bangladesh residing in a U.S. territory, brought suit under the FTCA alleging that the federal government improperly classified his immigration status, resulting in the plaintiff being placed in removal proceedings. Relying on *Akutowicz*, the district court dismissed the FTCA claims on the ground that there is no private person analog for the alleged duty of the government to accurately administer federal immigration benefits. *Id*. at *4. The Ninth Circuit affirmed the dismissal of the action, holding that "there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits." *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019); *see also Elgamal*, 714 F. Appx. at 742 ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well.").[15]

---

[15] *See also Figueroa v. United States*, 739 F. Supp. 2d 138, 142 (E.D.N.Y.2010) (dismissing FTCA claim for negligent issuance of passport for lack of a private analog); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D.Ill.1997) (in matters relating to the naturalization of aliens, "only the United States has the power to act," and,

Thus, not only is there no private person analog for determinations of an alien's immigration status, there also is no private person counterpart for claims based upon the allegedly negligent processing of Plaintiffs' asylum claims.  Compl. ¶¶ 306, 316.

Moreover, a private person analog is lacking because "[p]rivate persons cannot establish facilities to detain other persons – only the government can, either on its own or through a governmental contractor."  *McGowan v. United States*, 825 F.3d 118, 127(2d Cir. 2016).  Notably, Plaintiffs do not contest the lawfulness of their immigration detention.  Rather they claim that family members should have been detained together. In other words, Plaintiffs challenge *where* and *with whom* they were detained.  There can be no private person analog, though, for claims challenging where or with whom one's immigration detention occurs because such decisions cannot be performed by private persons.  *See Id.* at 126-127 (federal prisoner's claim challenging move from halfway house to detention facility not cognizable under FTCA because decisions relating to location and conditions of detention not made by private persons).

### III.    Plaintiffs Have Not Stated Actionable Claims Under State Law

#### A. Plaintiffs' Separations Claims Are Non-Cognizable Under Arizona Law

Plaintiffs allege that the separations occurred in Arizona.  Compl. ¶ 11.  The FTCA's waiver of jurisdiction applies only when a private person would be liable under the laws of the state where the allegedly negligent act or omission occurred.   28 U.S.C. §1346(b)(1).  Under Arizona law, a person has not suffered a legally cognizable injury

"[a]ccordingly . . . there is no private analog under state law"); *accord Appleton v. United States*, 180 F. Supp. 2d 177, 185 (D.D.C. 2002) (reviewing applications to import ammunition is exclusively a governmental function without any private counterpart).

when that person is lawfully incarcerated and the alleged harm flows solely from the incarceration. *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017).

In *Muscat*, the plaintiff, whose mental disabilities included a severe lack of impulse control, was on probation for inappropriately touching a minor. The plaintiff was living in a group home that was responsible for his supervision. Left unattended at an event, the plaintiff followed a minor into a restroom. The plaintiff was charged with attempted kidnapping and attempted molestation, pleaded guilty, and was sentenced to several years in prison. He brought a negligence claim against the company responsible for his supervision, alleging that its negligent supervision failed to prevent him from committing the crimes which resulted in his incarceration. He claimed to suffer harm including mental and emotional anguish and anxiety as a result of the incarceration. *Id.* at 196-97, 198. The court held that while the company had a duty under Arizona law to supervise him, the plaintiff did not suffer a legally cognizable injury because he experienced no injury distinct from the consequences of his lawful incarceration. *Id.* at 198. The court explained, "[n]o properly-convicted criminal has a legally protected interest in being free from the inherent consequences of the resulting sentence[,]" and "recognizing the legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the long-established public policy of personal accountability for criminal behavior." *Id.* at 198-99.

*Muscat* bears directly on Plaintiffs' claims in this action. Plaintiffs crossed into the United States in criminal violation of federal immigration law, and, consequently, were to be referred for federal criminal prosecution and also subject to immigration

detention.  As a direct consequence, their minor children were separated from Plaintiffs pursuant to the dictates of federal statutes.  Plaintiffs admit that the separations caused their harms.  Compl. ¶¶ 1, 2, 26, 27.  The alleged harms here were a direct consequence of Plaintiffs' unlawful conduct; thus, no cognizable injury under Arizona law exists.

### B.  Plaintiffs' Claim for Delayed Treatment of O.B. Fails under State Law

Plaintiff A.P.F. alleges that the government failed to provide minor O.B. with medical assistance when he was in immigration custody.  *See*, *e.g.*, Compl. ¶¶ 273, 319. However, Plaintiffs admit that that O.B. was taken from immigration detention to a hospital for medical treatment.  Compl. ¶¶ 91-93.  To state a negligence claim, a plaintiff must allege that he suffered actual damages.  *See Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).  The Complaint does not allege that O.B. suffered any injury caused by the delay in medical care.  Thus, Plaintiffs have failed to state a claim under Arizona law for the allegedly negligent delay in obtaining medical treatment for O.B.[16]

### C.  Plaintiffs' Interference with Asylum Allegations are Barred By the Misrepresentation Exception

Plaintiffs contend that the government tried to "compel them to abandon their asylum claims" by "deliberately misrepresenting to them that that they had to agree to deportation to see their children again."  Compl. ¶ 287; *see also* Compl. ¶ 288 ("Defendants' misrepresentations . . . violated the constitutional guarantee of procedural due process."). These alleged misrepresentations form part of the grounds for Plaintiffs' IIED and

---

[16] In their motion to transfer, Plaintiffs state that they do not bring a stand-alone medical negligence claim, but that the alleged "medical neglect" is "encompassed by the intentional infliction of emotional distress, negligence, and loss of consortium."  Dkt. # 17 at 4 n.2.

negligence claims.  Compl. ¶¶ 306, 316.

Plaintiffs' interference with asylum claims are barred by the misrepresentation exception of the FTCA, which bars "[a]ny claim arising out of . . . misrepresentation [or] deceit[.]"  28 U.S.C. 2680(h).  The exception "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation." *Pauly v. U.S. Dep't of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003) (citing *United States v. Neustadt*, 366 U.S. 696, 702 (1961)).   In *Pauly*, farmers alleged that the Department of Agriculture ("USDA") fraudulently induced them into an agreement that allowed the agency to capture a portion of the appreciation of the farm.  The Ninth Circuit held that the claim fell squarely within the misrepresentation exception, because "the injuries they claim are entirely the result of allegedly inaccurate information provided by [the Government employee], either by design (fraud) or by inadvertence (negligent misrepresentation)." *Id*. at 1151.  *Pauly* bears directly on Plaintiffs' allegations that they were induced into an agreement because of misrepresentations made by the government.  Accordingly, Plaintiffs' claims of asylum interference are barred by section 2680(h).

### D.  Plaintiffs' Conditions of Confinement Claims Are Not Cognizable Under The FTCA And Are Not Actionable Under Arizona Law

Plaintiffs challenge the conditions of their confinement at the CBP facilities where they were detained with their children following their apprehensions.  Compl. ¶¶ 269-72, 307, 317.  Plaintiffs allege they were subjected to "inhumane detention conditions prior to their separation" including a lack of proper food, clean drinking water, hygiene products, clothing, and restroom facilities, and the holding facilities were cold and not properly ventilated.  *Id*.

1    The FTCA does not waive the United States' sovereign immunity for claims based

2    on constitutional violations.  *See Meyer*, 510 U.S. at 475.  In *Aguilar v. United States*, the

3    court dismissed nearly identical allegations regarding food, crowding, and sanitation at a

4    CBP detention facility, holding that a conditions of confinement claim is more properly

5    characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or

6    restrictions of pretrial confinement. . .  [and] the United States is not vicariously liable for

7    constitutional torts of its officials since the United States has not waived sovereign

8    immunity from such actions.'"  *Aguilar v. United States*, No. 1:16-048, 2017 WL

9    6034652, *4 (S.D. Tex. June 7, 2017).[17]

10

11

12    Plaintiffs' conditions of confinement claims also cannot survive under Arizona

13    law.  The conditions of which Plaintiffs complain at most resulted in *de minimis* injuries,

14    and are thus not actionable under Arizona law.  *See, e.g., Amari v. Scottsdale Healthcare*

15    *Hospitals*, No. 17–0443, 2018 WL 2928040 (Ariz. Ct. App. 2018);  *Fishman v.*

16    *Washington–Adduci*, No. 13–04729, 2017 WL 3319107, * 7 (C.D. Cal. Aug. 3, 2017)

17    (FTCA claims dismissed because alleged harms caused by improper temperature, water,

18    and sanitation while detained were *de minimis*) (citing cases).

19

20    Moreover, Plaintiffs' allegations regarding the conditions of their confinement are

21    insufficient to state a claim for IIED under Arizona law.  A plaintiff must set forth

22

23    sufficient factual allegations that the challenged conduct was so outrageous in character

24

25

26    _____

[17] *Accord Thompson v. United States*, No. 1:14–0894, 2015 WL 5567934, *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is a constitutional claim that cannot be brought under FTCA); *Sutter v. United States*, No. 17-07245,  2019 WL 1841905, * 4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted).

27

28

and extreme in degree as to exceed all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d at 559, 563 (Ariz. Ct. App. 1995).  Further, "a line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'" *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982); *see also* Restatement (Second) of Torts § 46, comment j ("[T]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").  Whether a defendant's conduct may be regarded as extreme and outrageous is initially examined by the court as a matter of law.  *Tunoa v. Corr. Corp. of Am.*, No 12-2359, 2013 WL 12327499, at *9 (D. Ariz. Feb. 25, 2013).

Plaintiffs were lawfully detained by CBP after illegally crossing into the United States, and admit they were provided food, water, toilet facilities, and medical attention. Compl. ¶¶ 86, 92, 175, 182.  Plaintiffs allege the kinds of ordinary discomforts and inconveniences of detention that do not state a claim for IIED under Arizona law.  *See Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (recognizing "mere discomfort and inconvenience" of confinement); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (noting that confinement is uncomfortable and unpleasant).

## CONCLUSION

For the foregoing reasons, this action must be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

Dated: March 17, 2020                         Respectfully Submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285
Attorneys for the United States of America

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America