Keith Beauchamp (012434)
Shelley Tolman (030945)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5488
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Gillian Gillers*
Norma Ventura*
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Telephone: (404) 521-6700
gillian.gillers@splcenter.org
norma.ventura@splcenter.org

Matthew J. Schlesinger*
Jason A. Carey*
Terra White Fulham*
COVINGTON & BURLING LLP
One City Center, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tfulham@cov.com

[Additional Counsel Listed on Signature Page]

[*Admitted *pro hac vice*]

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| A.P.F., on his own behalf and on behalf of his minor child, O.B.; and J.V.S., on his own behalf and on behalf of his minor child, H.Y., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-20-00065-PHX-SRB <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> **(Oral Argument Requested)** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ........................................................................................................ 5

I.     The Court Has Subject Matter Jurisdiction Because the Government, if a
       Private Person, Would Be Liable for Its Actions. ..................................... 6

       A.     The Government's Conduct Has Private Analogues in Arizona Law. ......... 7

       B.     There Is No Exception to Defendant's Waiver of Sovereign
              Immunity Based on the Performance of Any "Uniquely
              Governmental Function." .................................................................. 8

II.    The Due Care Exception Does Not Apply Because No Statute or
       Regulation Mandated Separating Families, and Defendant Did Not Act with
       Due Care. .................................................................................................. 12

       A.     No Federal Statute or Regulation Mandated Plaintiffs' Forcible and
              Prolonged Separation. ..................................................................... 13

              1.     Plaintiffs' Detentions Did Not Mandate the Separations. ............... 14

              2.     No Statute or Regulation Mandated the Re-classification of
                     the Plaintiff Children as UACs. .......................................... 17

              3.     The Government Applies the Wrong Legal Standard in Its
                     Application of the Due Care Exception. ................................. 19

       B.     The Separation of Children from Their Parents at the Hands of
              Government Agents Was Done Without Due Care. ................................ 19

III.   The Discretionary Function Exception Does Not Shield the Government's
       Unconstitutional Acts of Separating Plaintiffs. ........................................ 21

       A.     The Government's Actions in Separating Families Were
              Unconstitutional. .......................................................................... 21

       B.     Plaintiffs' Separations Did Not Result From the Enforcement of
              Federal Law. ................................................................................ 22

       C.     Defendant's Repackaging of Plaintiffs' Allegations as Claims Barred
              by the Discretionary Function Exception Is Not a Basis for
              Dismissal. ................................................................................... 23

{00498084.1 }

i

1

IV.    Plaintiffs Plausibly State Claims Under Arizona Law. ..........................................26

2

3

A.    Plaintiffs' Allegations of Interference with Asylum Do Not Warrant
       Dismissal of Any Claims Under the Misrepresentation Exception. ...........27

4

B.    Plaintiffs' Factual Allegations Regarding Their Initial Detention Are
       Not Grounds for Dismissal of Any Claims. .................................................28

5

6

C.    Plaintiffs State Claims for IIED, Negligence, and Loss of
       Consortium. ....................................................................................................29

7

CONCLUSION ...............................................................................................................30

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

{00498084.1 }

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. United States*
No. 16-CV-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017)...................................28

*Akutowicz v. United States*,
859 F.2d 1122 (2d Cir. 1988) ...............................................................................10

*Antonelli v. Crow*,
No. 08-CV-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012) .................................24

*Baie v. Sec'y of Def.*,
784 F.2d 1375 (9th Cir. 1986) ..................................................................................18

*Baires v. United States*,
No. 09-05171, 2011 WL 1743224 (N.D. Cal. May 6, 2011)......................................25

*Bates v. Mortg. Elec. Registration Sys., Inc.*,
694 F.3d 1076 (9th Cir. 2012) ..................................................................................18

*Berkovitz by Berkovitz v. United States*,
486 U.S. 531 (1988)...........................................................................................24, 25

*Bhuiyan v. United States*,
No. 14-0013, 2017 WL 2837023 (D.N. Mar. I. June 30, 2017) ................................10

*Bickler v. Senior Lifestyle Corp.*,
No. 09-CV-00726, 2010 WL 2292985 (D. Ariz. June 8, 2010) .............................8, 30

*Block v. Neal*,
460 U.S. 289 (1983)..................................................................................................27

*Borquez v. United States*,
773 F.2d 1050 (9th Cir. 1985) ..................................................................................19

*Bunikyte, ex rel. Bunikiene v. Chertoff*,
No. A-07-CA-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) .............................16

*C.M. v. United States*,
No. 19-CV-05217, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020).......................*passim*

{00498084.1 }

iii

*Chadd v. United States*,
 794 F.3d 1104 (9th Cir. 2015) ................................................................. 21

*Chehade Refai v. Lazaro*,
 614 F. Supp. 2d 1103 (D. Nev. 2009) ...................................................... 25

*Chen v. United States*,
 854 F.2d 622 (2d Cir. 1988) ...................................................................... 9

*Cruz v. United States*,
 684 F. Supp. 2d 217 (D.P.R. 2010) .......................................................... 24

*D.B. v. Cardall*,
 826 F.3d 721 (4th Cir. 2016) .................................................................... 18

*DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,
 144 Ariz. 6 (1985) .................................................................................... 30

*Dobek v. Wal-Mart Stores, Inc.*,
 No. 03-CV-297, 2007 WL 2069832 (D. Ariz. July 17, 2007) .................... 8

*Doe v. DiGenova*,
 779 F.2d 74 (D.C. Cir. 1985) .................................................................... 18

*Doe v. Stephens*,
 851 F.2d 1457 (D.C. Cir. 1988) ................................................................ 19

*Dugard v. United States*,
 835 F.3d 915 (9th Cir. 2016) ...................................................................... 6

*Elgamal v. United States*,
 No.13-867, 2015 WL 13648070 (D. Ariz. July 8, 2015), *aff'd sub nom*
 *Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018) .......................... 10

*Faber v. United States*,
 56 F.3d 1122 (9th Cir. 1995) .................................................................... 25

*Fazaga v. F.B.I.*
 916 F.3d 1202 (9th Cir. 2019) .................................................................. 21

*FDIC v. Craft*,
 157 F.3d 697 (9th Cir. 1998) ................................................................. 5, 7

{00498084.1 }

iv

*Flores v. Reno*,
    Stipulated Settlement Agreement, No. 85-CV-4544 (C.D. Cal. Jan. 17,
    1997) ................................................................................................................. 26

*Flores v. Sessions*,
    No. 85-CV-4544, 2018 WL 4945000 (C.D. Cal. July 9, 2018)............................ 16, 25

*Garcia-Feliciano v. United States*,
    No. 12-CV-1959 SCC, 2014 WL 1653143 (D.P.R. Apr. 23, 2014)........................... 13

*Gen. Dynamics Corp. v. United States*,
    139 F.3d 1280 (9th Cir. 1998) .......................................................................... 23

*Gonzalez v. United States*,
    No. 12-CV-01912, 2013 WL 942363 (C.D. Cal. Mar. 11, 2013)........................ 12, 14

*Harris v. Fleming*,
    839 F.2d 1232 (7th Cir. 1988) .......................................................................... 29

*Hydrogen Tech. Corp. v. United States*,
    831 F.2d 1155 (1st Cir. 1987)............................................................................ 20

*Indian Towing Co. v. United States*,
    350 U.S. 61 (1955)......................................................................................... 6, 8

*Jacinto-Castanon de Nolasco v. U.S. I.C.E*,
    319 F. Supp. 3d 491 (D.D.C. 2018)........................................................ 15, 16, 17, 25

*Jayvee Brand, Inc. v. United States*,
    721 F.2d 385 (D.C. Cir. 1983).......................................................................... 10

*In re Katrina Canal Breaches Consol. Litig.*,
    627 F. Supp. 2d 656 (E.D. La. 2009) ............................................................... 14

*Liranzo v. United States*,
    690 F.3d 78, 97 (2d Cir. 2012) ......................................................................... 10

*Lyttle v. United States*,
    867 F. Supp. 2d 1256 (M.D. Ga. 2012) ........................................................... 21

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*,
    241 F.3d 1208 (9th Cir. 2001) ......................................................................... 26

*Martinez v. United States*,
    No. 13-CV-955, 2018 WL 3359562 (D. Ariz. July 10, 2018).......................... 7

{00498084.1 }

v

*McGowan v . United States*,
    825 F.3d 118 (2d Cir. 2016) ................................................................. 12

*Mejia-Mejia v. U.S. Immigration & Customs Enf't*,
    No. 18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) .................. 23

*Millbrook v. United States*,
    569 U.S. 50 (2013) ............................................................................... 5

*Miracle v. Hobbs*,
    No. 19-CV-04694, 2019 WL 7631153 (D. Ariz. Dec. 16, 2019) .................. 5

*Ms. L. v. U.S. I.C.E  (Ms. L. II)*,
    302 F. Supp. 3d 1149 (S.D. Cal. 2018) .............................................. 11, 22

*Ms. L. v. U.S. I.C.E.*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ........................................... *passim*

*Muscat v. Creative Innervisions LLC*,
    244 Ariz. 194 (Ct. App. 2017) ............................................................. 11

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
    527 F.2d 1252 (2d Cir. 1975) .......................................................... 20, 21

*Nurse v. United States*,
    226 F.3d 996 (9th Cir. 2000) .............................................................. 21

*Nwozuzu v. United States*,
    712 F. App'x. 31 (2d Cir. 2017) ........................................................... 18

*Pankratz v. Willis*,
    155 Ariz. 8 (Ct. App. 1987) ............................................................ 7, 30

*Pauly v. U.S. Dep't of Agric.*,
    348 F.3d 1143 (9th Cir. 2003) ............................................................ 28

*Plascencia v. United States*,
    No. 17-02515, 2018 WL 6133713 (C.D. Cal. May 25, 2018) ..................... 25

*Prescott v. United States*,
    973 F.2d 696 (9th Cir. 1992) .............................................................. 20

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) .............................................................. 22

{00498084.1 }

vi

*Renteria v. United States*,
    452 F. Supp. 2d 910 (D. Ariz. 2006) ......................................................... 27

*Sauceda v. United States*,
    No. 07-CV-2267, 2009 WL 3756703 (D. Ariz. Nov. 5, 2009) ..................................... 9

*Save the Peaks Coal. v. U.S. Forest Serv.*,
    No. CV09-8163-PCT-MHM, 2010 WL 3800896 (D. Ariz. Sept. 22,
    2010) ................................................................................... 20

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) .................................................................. 9

*Estate of Smith v. Shartle*,
    No. 18-CV-00323, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020) ................................... 8

*Smith v. United States*,
    375 F.2d 243 (5th Cir. 1967) ................................................................ 23

*Sutter v. United States*,
    No. 17-07245, 2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) .................................... 29

*Thompson v. United States*,
    No. 14–0894, 2015 WL 5567934 (M.D. Pa. Sept. 21, 2015) .................................... 29

*United States v. Armstrong*,
    517 U.S. 456 (1996) ........................................................................ 23

*United States v. Dominguez-Portillo*,
    No. EP-17-MJ-4409-MAT, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .................. 18

*United States v. Gaubert*,
    499 U.S. 315 (1991) ........................................................................ 21

*Walding v. United States*,
    955 F. Supp. 2d 759 (W.D. Tex. 2013) ................................................ 23, 26

*Welch v. United States*,
    409 F.3d 646 (4th Cir. 2005) ....................................................... 12, 13, 20

*Wilson v. Lynaugh*,
    878 F.2d 846 (5th Cir. 1989) ................................................................ 29

*Xue Lu v. Powell*,
    621 F.3d 944 (9th Cir. 2010) ............................................................ 9, 12

{00498084.1 }

*Zabriskie v. Fed. Nat. Mortg. Ass'n,*
    109 F. Supp. 3d 1178 (D. Ariz. 2014) ........................................................... 4

**Statutes**

8 U.S.C. § 1232(b)(2)(A) ............................................................................ 10

8 U.S.C. § 2680(h) ...................................................................................... 28

28 U.S.C. § 1346(b)(1) ............................................................................ 5, 7

28 U.S.C. § 2671 ........................................................................................ 26

28 U.S.C.§ 2674 ........................................................................................... 7

28 U.S.C. § 2680(a) ................................................................. 5, 13, 18, 20

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................... 4

Federal Rule of Civil Procedure 12(b)(6) ............................................... 4, 26

**Executive Orders**

Exec. Order No. 13767 (82 Fed. Reg. 8793 (Jan. 30, 2017)) ...................... 15

Exec. Order No. 13841 (83 Fed. Reg. 29435 (June 25, 2018)) .................... 15

{00498084.1 }

**PRELIMINARY STATEMENT**

In May 2018, Plaintiff Abel came to the United States with his seven-year-old son, Obet, and Plaintiff José came with his five-year-old daughter, Herlinda, seeking asylum from persecution in their home country of Guatemala. When they arrived, U.S. agents forcibly separated Abel and José from their children, sent the children to government facilities thousands of miles away, and gave the fathers no information about their children's whereabouts or wellbeing. The separations, which lasted ten weeks, caused Plaintiffs lasting trauma and suffering.

Defendant ("the United States" or "the Government") intentionally inflicted these harms on Plaintiffs. Indeed, this pain and trauma was Defendant's goal: it implemented a policy of forcibly separating parents and their children to deter other migrants from seeking asylum. Plaintiffs seek damages under the Federal Tort Claims Act ("FTCA") for the harms suffered as a result of Defendant's tortious conduct, asserting counts of intentional infliction of emotional distress ("IIED"), negligence, and loss of consortium.

In its Motion to Dismiss, Defendant argues the Court lacks subject-matter jurisdiction under the FTCA. Defendant is wrong. Defendant's arguments for dismissal in this regard are substantially similar to those rejected by this Court in a related case challenging Defendant's forcible separation of asylum-seeking parents and children, *C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, at *1 (D. Ariz. Mar. 30, 2020). Dismissal is unwarranted here for the same reasons it was unwarranted in that case.

Arizona law supplies a private person analogue for the Court to consider each of the torts Plaintiffs allege under the FTCA, and the statutory exceptions to FTCA jurisdiction identified in Defendant's motion do not apply. Because no statute or regulation mandated the forcible separation suffered by Plaintiffs and the Government failed to act with due care, the due care exception does not apply. The discretionary function exception to jurisdiction does not apply because Defendant's actions were

1    unconstitutional in violation of Plaintiffs' Fifth Amendment rights to family integrity and

2    to equal protection.

3         Defendant's arguments for failure to state a claim are also deficient.  Plaintiffs

4    plausibly pled claims for IIED, negligence, and loss of consortium. Instead of addressing

5    the sufficiency of Plaintiffs' allegations, the Government parses Plaintiffs' factual

6    allegations to create strawmen to knock down. The Motion to Dismiss should be denied.

7                                    **BACKGROUND**

8         Plaintiffs—two fathers and their children, aged five and seven at the time—came

9    to this country to seek asylum in May 2018, fleeing violent persecution in their home

10   country of Guatemala. Compl. ¶¶ 26, 28, 66-73, 167-68. Shortly after crossing the border

11   into Arizona, Plaintiffs encountered Customs and Border Protection ("CBP") officers

12   who took them into custody at CBP facilities, and placed them in small, freezing concrete

13   cells crowded with twenty to thirty other migrant families. *Id*. ¶¶ 74-82, 168-71. Plaintiffs

14   were stripped of their personal possessions and held in these overcrowded "hieleras,"

15   with no source of warmth or privacy, no room to lie down, limited food and water, and

16   the sounds of crying and coughing children. *Id*. ¶¶ 82-94, 170-76. While in the hieleras,

17   Plaintiffs observed CBP officials taking the other children in the cell away from their

18   parents—sometimes by physical force. *Id*. ¶¶ 95-97, 177-78.

19        Soon these officials came for Obet and Herlinda ("Plaintiff Children"). Officials

20   took the Plaintiff Children, hysterical and screaming, out of the facility, providing no

21   information to their frantic and grieving fathers about where their children were being

22   taken. *Id*. ¶¶ 2-3, 98-100, 105, 180, 187-190, 192. Obet and Herlinda were sent to an

23   ORR-contracted facility in New York, where they were placed with foster families with

24   other children. *Id*. ¶¶ 27, 29, 141, 215-16. In this setting, the trauma of their involuntary

25   separation from their fathers was compounded by unwanted physical and sexual contact

26   from other children. *Id*. ¶¶ 124-26, 141-51, 217-20. *See generally id.* ¶¶ 12, 301.

27

28

Meanwhile, Abel and José ("Plaintiff Fathers") were transferred to ICE detention facilities. Compl. ¶¶ 106, 190, 196. They spent weeks asking about their children's whereabouts without receiving any information—or, in some instances, being told that they would never see their children again. *See, e.g., id.* ¶¶ 13, 108-11, 114, 192, 197-99. The fathers were kept in the dark regarding their children's deteriorating mental and physical health in ORR custody, as they were unable to even speak by telephone for several weeks. *Id.* ¶¶ 13, 117-18, 204-07.  When they eventually learned their children's locations and contact information—through their own efforts and without assistance from the United States—the fathers could speak with their children on only a few occasions, for a few minutes at a time. *Id.* ¶¶ 14, 117-22, 207, 285.

Plaintiffs experienced this trauma because Defendant had decided that their suffering was a way to deter families from seeking asylum in the United States. *Id.* ¶¶ 5, 15, 36-65. In February 2017, Defendant considered the systematic separation of parents and children arriving at the U.S.-Mexico border as a method to deter the arrival of asylum seekers from Central America, despite knowing the extraordinary harm such separation would inflict. *Id.* ¶¶ 37-41. Defendant pilot tested this policy under the guise of enforcing criminal immigration laws, targeting parents arriving with children for prosecution. *Id.* ¶¶ 45-50, 60. Defendant improperly re-classified the children of such parents as "unaccompanied alien children" ("UACs")—a designation intended for children who arrive at the border truly "unaccompanied" by family members—and sent the children far from their parents without documenting the familial relationship, making reunification highly difficult. *Id.* ¶¶ 7, 9, 46-50, 59, 263-66, 274-84.

In April 2018 Defendant scaled these pilot efforts and announced a "Zero Tolerance" policy. Though ostensibly implemented to prioritize enforcement of immigration laws, the policy was designed to inflict inordinate pain and suffering on families like Plaintiffs to deter other migrants from Latin America from seeking asylum in the United States. *Id.* ¶¶ 37-45, 51-60, 260. The pretextual nature of the enforcement

rationale is laid bare by the indiscriminate manner in which Defendant separated families arriving at the U.S.-Mexico border—separating families like Plaintiffs who were never charged with any crimes, as well as families who presented at a port of entry and thus could not have been charged with improper entry. *Id*. ¶¶ 57-58.

Indeed, Abel and José were never charged with a crime or pled guilty, nor were they convicted or sentenced. *Id*. ¶¶ 107, 196. Nor were they ever found to be unfit to retain custody of their children. *See id.* ¶¶ 64, 129, 211. Nevertheless, both remained separated from their young children for 10 weeks. *Id*. ¶¶ 27, 29, 130-132, 235. They were not reunited until a federal district judge ordered the Government to reunite them, along with several thousand families separated under similar circumstances. *Id*. ¶¶ 64, 129, 211. Plaintiffs are still affected by the mental and emotional trauma caused by the Government's cruel actions. *Id*. ¶¶ 152-65, 235-50, 297-302.

## **LEGAL STANDARD**

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)—in a facial challenge to this Court's subject matter jurisdiction—and for failure to state a claim pursuant to Rule 12(b)(6). *See C.M. v. United States*, No. 19-CV-05217, 2020 WL 1698191, at *1 (D. Ariz. Mar. 30, 2020) ("'[A] facial attack . . . asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.'" (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004))). Thus, the Court must "accept[] the allegations of the complaint as true and afford[] plaintiffs the benefit of all favorable inferences that can be drawn from the alleged facts." *Id.* (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint's "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Zabriskie v. Fed. Nat. Mortg. Ass'n*, 109 F. Supp. 3d 1178, 1181 (D. Ariz. 2014) (quoting

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)). "In determining whether an asserted claim can be sustained, '[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.'" *Miracle v. Hobbs*, No. 19-CV-04694, 2019 WL 7631153, at *2 (D. Ariz. Dec. 16, 2019) (alteration in original) (internal citation omitted).

## ARGUMENT

Plaintiffs bring claims of intentional infliction of emotional distress ("IIED"), negligence, and loss of child's consortium against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. "The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort.'" *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (quoting *Levin v. United States*, 568 U.S. 503, 506 (2013)). The FTCA confers federal jurisdiction over tort claims for the "negligent or wrongful act or omission of" Government actors "under circumstances where the United States, if a private person, would be liable to the claimant[.]" 28 U.S.C. § 1346(b)(1).

This jurisdiction is subject to statutory exceptions, including (1) the due care exception, *see* 28 U.S.C. § 2680(a) (excluding "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid") and (2) the discretionary function exception, *see id.* (excluding any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . ."). The "'plaintiff bears the burden of persuading the court that it has subject[-]matter jurisdiction under the FTCA's general waiver of immunity,' and the United States bears the burden of proving that an exception applies." *C.M.*, 2020 WL 1698191, at *2 (quoting *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992)) (alteration in *C.M.*). Once a court's jurisdiction is established, a motion to dismiss for failure to state a claim for underlying

torts is analyzed according to the law of the state where the act or omission occurred. *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

Defendant argues that Plaintiffs' FTCA claims are barred because (1) there is no private person analogue for Plaintiffs' claims, (2) the due care exception applies, and (3) the discretionary function exception applies. Defendant's Mot. to Dismiss, ECF No. 21 (Mar. 17, 2020) ("Mot.") at 9-25. The Court recently rejected these arguments, when it denied the Government's motion to dismiss IIED and negligence claims brought pursuant to the FTCA by similarly-situated plaintiffs. *C.M.*, 2020 WL 1698191, at *1. Defendant's jurisdictional arguments fail here as well.

Defendant additionally argues that Plaintiffs fail to state claims based on "delayed treatment" of medical care and "conditions of confinement," and that the FTCA's misrepresentation exception bars "interference with asylum claims." These facts are among the numerous allegations supporting Plaintiffs' claims for IIED, negligence, and loss of child's consortium, all of which are adequately pled, and not barred by the misrepresentation exception.

## I.   The Court Has Subject Matter Jurisdiction Because the Government, if a Private Person, Would Be Liable for Its Actions.

Plaintiffs meet their burden of establishing subject matter jurisdiction under the FTCA by "show[ing] that 'a private individual under like circumstances would be liable under state law.'" *C.M.*, 2020 WL 1698191, at *2 (quoting *United States v. Muniz*, 374 U.S. 150, 153 (1963)). "Although the federal government 'could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.'" *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)). Thus, the FTCA is broadly understood to waive sovereign immunity for tortious conduct even when the federal Government is engaged in "uniquely governmental functions," even though private persons do not conduct the same functions. *See Indian Towing Co. v. United States*, 350

U.S. 61, 64 (1955) (rejecting argument that 28 U.S.C.§ 2674 excludes "liability for negligent performance of 'uniquely governmental functions,'" and noting that "the statutory language is 'under like circumstances,'" not "under the same circumstances").

### A.     The Government's Conduct Has Private Analogues in Arizona Law.

This Court has jurisdiction pursuant to the FTCA because private persons have been held liable, under Arizona law, for IIED, negligence, and loss of consortium under circumstances similar to those alleged here.[1] *First*, courts have recognized claims of IIED under Arizona law in analogous circumstances, including this Court in nearly identical circumstances in *C.M.*, 2020 WL 1698191, at *2.  *See also Pankratz v. Willis*, 155 Ariz. 8, 10, 22 (Ct. App. 1987) (upholding IIED verdict in favor of parent whose in-laws facilitated and concealed the disappearance of parent's child); *Martinez v. United States*, No. 13-CV-955, 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018) (denying government's summary judgment motion on IIED claim against CBP agents where those agents separated a family, threatened incarceration, and offered to release the plaintiff's children if he confessed). This Court has recognized the viability of an Arizona-based IIED claim where, as here, the complaint contained "ample factual allegations suggesting that the government's separation of families was motivated by malice."  *C.M.*, 2020 WL 1698191, at *2; *see, e.g.*, Compl. ¶¶ 5, 15, 74, 79-86, 169, 194, 263-64.

*Second*, Arizona has recognized negligence claims in analogous circumstances where a person tasked with the custody of another breached a duty of care. Arizona law recognizes that private persons may have a duty of care arising from a "special relationship" with individuals in their care and custody, and can be liable for negligence by breaching that duty. In *Estate of Smith v. Shartle*, for instance, the court found that the

---

[1] To determine whether Plaintiffs have adequately pled a private person analogue for the United States' conduct, courts look to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). Here, as Defendant and its officers apprehended, detained, and separated Plaintiffs in Arizona, Arizona law applies. *See, e.g.*, Compl. ¶¶ 11, 27, 29, 74-77, 168-70.

1   Bureau of Prisons had a duty, analogous to that of a nursing home, to provide care for

2   persons "who are dependent upon them to make daily housing and safety

3   determinations," and that the court had jurisdiction over negligence claims for breach of

4   that duty. No. 18-CV-00323, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020).

5   Moreover, in nearly identical circumstances, this Court found that "Federal immigration

6   officials . . . are tasked with the care and custody of those they detain, and owe detainees

7   at least a minimal level of care." *C.M.*, 2020 WL 1698191, at *2. Given these recognized

8   duties under Arizona law, the Government had a duty to avoid harming Plaintiffs while

9   Plaintiffs were in government custody, and can be liable for a breach of that duty.

10         *Third*, Arizona law recognizes loss of consortium claims in analogous

11   circumstances. In *Bickler v. Senior Lifestyle Corp.*, No. 09-CV-00726, 2010 WL 2292985

12   (D. Ariz. June 8, 2010), the court denied the defendant's motion for summary judgment

13   on a loss of consortium claim brought by adult sons and daughters whose mothers

14   suffered mentally (including in not recognizing their adult children) after the mothers

15   were pushed to the ground at a nursing home run by the defendant. *Id.* at *6; *see also*

16   *Dobek v. Wal-Mart Stores, Inc.*, No. 03-CV-297, 2007 WL 2069832, at *4 (D. Ariz. July

17   17, 2007) ("Arizona courts treat loss of consortium claims as one body of law, regardless

18   of whether the plaintiff is a child or a parent.").

19         **B.      There Is No Exception to Defendant's Waiver of Sovereign Immunity

20                 Based on the Performance of Any "Uniquely Governmental Function."**

21         Ignoring *Indian Towing*, Defendant argues that there is no private person analogue

22   to its challenged conduct because "[o]nly the federal government has the authority to

23   enforce federal immigration laws[.]" Mot. at 22. This argument should be rejected here,

24   as it was in *C.M.*

25         As an initial matter, Defendant inaccurately characterizes "Plaintiffs' alleged

26   harms" as "stem[ming] from the federal government's decision to strictly enforce federal

27   immigration statutes." *Id*. As discussed below and alleged in the Complaint, Plaintiffs'

28

claims arise from the Government's malicious and reckless administration of the family separation policy, for which enforcement of immigration law served only as a thin pretext. *See, e.g.*, Compl. ¶ 57 (even families who presented at ports of entry were separated), ¶¶ 58, 107, 196 (parents who were not criminally charged still had their children taken), ¶¶ 17-20, 145-47, 156-165, 235-54 (family separation policy caused irreparable harm), ¶¶ 263-67 (Defendant applied the family separation policy in a deliberately inhumane manner). Thus, Defendant's argument that it "has not waived its sovereign immunity because decisions regarding whether to enforce federal law have no private person counterpart" is misplaced. Nor does *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997), support Defendant's argument. In that case, the government agency had no relationship with the plaintiffs "to which state law would attach a duty of care in purely private circumstances." *Id.* at 537. Here, as discussed above, the United States did have a relationship with Plaintiffs that gave rise to a duty of care. *See C.M.*, 2020 WL 1698191, at *2.

Even if Plaintiffs' harms were the result of the United States' enforcement of immigration laws, the Court would still have jurisdiction. In waiving the United States' sovereign immunity from tort claims through the FTCA, "Congress did not require a claimant to point to a private person performing a governmental function." *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). The Government's conduct in separating Plaintiffs may still be analogized to tortious conduct by private individuals even if the Government's actions are purportedly related to a "uniquely governmental" function. *See Sauceda v. United States*, No. 07-CV-2267, 2009 WL 3756703, at *6 (D. Ariz. Nov. 5, 2009) (finding CBP's conduct leading to an arrest analogous to the use of unreasonable force by a private person effecting a citizen's arrest, and finding that "Arizona law imposes a duty on every person 'to avoid creating situations which pose an unreasonable risk of harm to others'") (quoting *Ontiveros v. Borak*, 136 Ariz. 500, 509 (1983)). *Chen v. United States*, on which Defendant relies, is distinguishable: it found there was no

private person analogue for claims solely grounded in the government's violation of its own regulations. 854 F.2d 622, 626 (2d Cir. 1988). In contrast, Plaintiffs' claims are not based solely on Defendant's violation of its own regulations.[2]

The other cases the Government cites—all of which deal with adjudication of immigration petitions—do not lend it any support here. Plaintiffs do not challenge adjudication of immigration status as the Government argues; indeed, no such adjudication ever took place. *Cf. Elgamal v. United States*, No.13-CV-867, 2015 WL 13648070 at *5 (D. Ariz. July 8, 2015), *aff'd sub nom Elgamal v. Bernacke*, 714 F. App'x 741 (9th Cir. 2018) (denial of petition for adjustment of immigration status); *Akutowicz v. United States*, 859 F.2d 1122, 1125-26 (2d Cir. 1988) (revocation of citizenship status); *Bhuiyan v. United States*, No. 14-0013, 2017 WL 2837023 (D.N. Mar. I. June 30, 2017) (classification of immigration status); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983) (finding no private person analogue to federal "quasi-legislative or quasi-adjudicative action").

The Government's unprecedented decision to label children it took from their parents without due process as UACs is not a "classification of an alien's immigration status" entitled to immunity. Mot. at 23. In contrast to the adjudicatory processes undergirding the actions challenged in the cases cited by Defendant, *see Akutowicz*, 859 F.2d at 1123-26; *Jayvee Brand*, 721 F.2d at 390—all designed to implement the constitutional guarantee of due process—no adjudicatory process, regulation, or precedent authorized the Government to classify children whom it unlawfully took from their parents as "unaccompanied" within the meaning of the TVPRA (the *Trafficking Victims Protection Reauthorization Act*). *See* 8 U.S.C. § 1232(b)(2)(A) (outlining procedures for when federal government "apprehen[ds] or discover[s]" an

---

[2] The Government's reliance on *Liranzo v. United States* is puzzling, as that case wholly supports Plaintiffs' argument. There, the court found a private person analogue for immigration detention claims in a citizen's arrest. 690 F.3d 78, 97 (2d Cir. 2012).

unaccompanied child—not when the government renders a child unaccompanied); *Ms. L. v. U.S. I.C.E.*, 310 F. Supp. 3d 1133, 1139 (S.D. Cal. 2018) (describing "minor children who were apprehended at the border without their parents" as "true 'unaccompanied alien children'" in contrast to "migrant children detained with their parents at the border and who were thereafter separated from their parents"); Compl. ¶¶ 72-81, 167-70 (Plaintiff Fathers entered and were apprehended with Plaintiff Children).

Defendant's argument that *Muscat v. Creative Innervisions LLC* bars Plaintiffs' claims also fails. 244 Ariz. 194, 198 (Ct. App. 2017); Mot. at 26. In *Muscat*, the court held that injuries stemming solely from the plaintiff's lawful incarceration could not be remedied through tort law. The plaintiff in *Muscat* sued the group home he lived in for negligently failing to supervise him during an outing, which he alleged led him to commit a crime for which he was convicted and incarcerated. 244 Ariz. at 197. The plaintiff claimed that as a result of the group home's failure to supervise him, he suffered injuries that arose solely from his lawful incarceration, including "loss of freedom, [and] loss of participation in life's activities[.]" *Id*. at 198. Defendant distorts *Muscat* to suggest that all Government conduct connected to an individual's *civil detention* is immune from accountability under tort law. *Muscat* is inapposite. The forced and prolonged separation of children from their parents is not the "inherent consequence" of Plaintiffs' civil detention in the same way "loss of freedom" is the "inherent consequence" of conviction for a crime. Plaintiffs were not convicted and did not serve a criminal sentence upon entry; additionally, the prolonged, post-sentence separation of a parent from his or her child is not an "inherent consequence" of a misdemeanor entry conviction. *See Ms. L. v. U.S. I.C.E.* (*Ms. L. II*), 302 F. Supp. 3d 1149, 1164 (S.D. Cal. 2018) (Government's failure to reunite mother with her child following separation upon the mother's prosecution for misdemeanor entry gave rise to a plausible due process claim).

Finally, Defendant's inaccurate attempt to minimize Plaintiffs' factual allegations that Defendant "interfer[ed] with Plaintiffs' right to seek asylum in the United States by

using Plaintiffs' distress at their separation to coerce Plaintiffs to sign documents authorizing their removal from the United States" as a claim of "negligent processing of [their] asylum claims," Mot. at 25, is not a basis for finding no private person analog. Plaintiffs assert claims for IIED, negligence, and loss of consortium, which have analogs in Arizona law, as explained *supra* in Part I.A. That the Government used Plaintiff Fathers' distress at their separation to coerce them to sign documents authorizing their removal simply supports Plaintiffs' claims for IIED and negligence. *See* Compl. ¶¶ 62, 114-116, 213, 287-88, 306, 316; *Xue Lu*, 621 F.3d at 950 (finding that a federal immigration official's demand for sexual favors in return for exercising favorable discretion on an individual's asylum application alleged actionable IIED).

Similarly, Defendant's attempt to cast Plaintiffs' claims as challenging "where or with whom they were detained"—a wholly inaccurate proposition—should be rejected. Plaintiffs do not challenge where and with whom they were detained; they challenge as tortious Defendant's conduct in separating them and intentionally and recklessly subjecting them to harm. Compl. ¶¶ 303-30. *McGowan v. United States*, an out-of-circuit case on which Defendant relies, involved a false imprisonment claim that the plaintiff analogized to the New York tort of wrongful confinement in solitary confinement. 825 F.3d 118, 126 (2d Cir. 2016). The court rejected this analogy because the action challenged—the solitary confinement itself—could not be analogized to a private person's conduct. *Id.* Here, Plaintiffs are not challenging detention itself, nor are they alleging torts under New York law; therefore, *McGowan* is inapposite.

**II.     The Due Care Exception Does Not Apply Because No Statute or Regulation Mandated Separating Families, and Defendant Did Not Act with Due Care.**

Courts evaluate whether the due care exception applies with the two-prong test developed in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). *See C.M.*, 2020 WL 1698191, at *3; *Gonzalez v. United States*, No. 12-CV-01912, 2013 WL 942363, at *3 (C.D. Cal. Mar. 11, 2013). The first prong requires a finding that the "statute or

regulation" at issue specifically mandates a course of action. *Welch*, 409 F.3d at 652. If such a statutory or regulatory mandate exists, then under the second prong, the government actor must "exercise[] due care in following the dictates of that statute or regulation." *Id*. at 652 (citing *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995)). "Otherwise stated, the due care exception applies only when an official was 'reasonably executing the mandates of' a statute or regulation." *C.M.*, 2020 WL 1698191, at *3 (citing *Welch*, 409 F.3d at 651). This Court already rejected Defendant's argument that the due care exception shields it from liability for harms resulting from its family separation policy. *Id*. at *3. Similarly here, Defendant fails to carry its burden of showing that the due care exception applies. No statute or regulation mandated the separation of Plaintiffs, and even if these separations had been mandated, Defendant failed to act with due care—an assertion it does not contest. Accordingly, the due care exception does not bar Plaintiffs' claims.

### A.    No Federal Statute or Regulation Mandated Plaintiffs' Forcible and Prolonged Separation.

The due care exception requires that government action be mandated, not merely authorized, by a statute or regulation. *Welch*, 409 F.3d at 652. Here, Defendant fails to identify any statute or regulation mandating the prolonged separation of Plaintiffs. Rather, it argues that executive orders instructed strict immigration enforcement, "including referral of adult [noncitizens] for prosecution for criminal illegal entry and detention of adult [noncitizens] pending removal proceedings," and that "[i]t was this faithful execution of federal statutes that resulted" in the family separations. Mot. at 13.

Defendant's argument fails to invoke the due care exception for two reasons. *First*, actions pursuant to executive orders and directives are not protected by the due care exception. *See* 28 U.S.C. § 2680(a) (government employees must be acting "in the execution of a *statute or regulation*" (emphasis added)); *Garcia-Feliciano v. United State*s, No. 12-CV-1959, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (due care

exception did not apply "because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct."); *C.M.*, 2020 WL 1698191, at *3 ("[F]amily separation was established by executive policy—not by a statute or regulation—which is not covered by the due care exception[.]"). *Second*, neither the Executive Orders nor the federal statutes cited by Defendant *mandate* the course of action that caused Plaintiffs' harm—forcibly removing children from their parents' custody, without a finding of parental unfitness, based solely on the parents' "amenab[ility] to prosecution," Mot. at 3, 4, 12; re-classifying the children as UACs, despite the children's arrival to the United States with their fathers; sending the children to ORR custody thousands of miles away; and failing to reunite them for several months.

Defendant's claim that it separated families in the course of enforcing immigration laws is insufficient to invoke the due care exception. *See Gonzalez v. United States*, 2013 WL 942363, at *4 ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action, the Court finds that Plaintiff's claims are not barred by the due care exception."); *In re Katrina Canal Breaches Consol. Litig.*, 627 F. Supp. 2d 656 (E.D. La. 2009) (rejecting the due care exception absent sufficient proof the government was following a congressional mandate, and in light of extensive allegations of a lack of due care pled by plaintiffs). Contrary to Defendant's arguments, neither "amenability to prosecution" nor civil immigration detention requires separating migrant families, as explained further below. Further, no statute or regulation required the classification of Plaintiff Children as "unaccompanied" pursuant to the TVPRA.

1.     Plaintiffs' Detentions Did Not Mandate the Separations.

Defendant's argument that Plaintiffs were "amenable to prosecution" for improper entry is not sufficient to invoke the due care exception. Defendant cites no statute or regulation requiring parents who are "amenable to prosecution" to be separated from their children. In *C.M.*, this Court rejected the due care exception where the Government "cite[d] no statute or regulation requiring the detention of individuals who are 'amenable

1    to prosecution' in facilities different from those who are not 'amenable to prosecution.'"

2    2020 WL 1698191, at *3.[3]

3        The Government also cites no statute or regulation mandating the separation of

4    families where the parent is held in civil detention pending removal. The Government

5    argues that its detention of Plaintiffs occurred pursuant to EO 13767, which calls for

6    detention pending removal proceedings "to the extent permitted by law." EO 13767 § 6,

7    82 Fed. Reg. 8793 (Jan. 30, 2017). But the laws regarding immigration detention do not

8    mandate separation of families.  They have been enforced for decades without mandating

9    the practice of family separation, which was first implemented as a coordinated policy in

10   2017. Compl. ¶¶ 7, 45, 51; *Jacinto-Castanon de Nolasco v. U.S. I.C.E.*, 319 F. Supp. 3d

11   491, 502 (D.D.C. 2018) ("immigration officials administered the same statutes and

12   regulations through 2017 without routinely separating families").

13       Moreover, President Trump's executive order purporting to end the family

14   separation policy, while requiring continued compliance with immigration laws, makes

15   clear that separating migrant families at the border was not mandated by statute or

16   regulation. *See* Compl. ¶ 63; Exec. Order No. 13841 (83 Fed. Reg. 29435 (June 25,

17   2018)) (confirming that it was both "the policy of this Administration to rigorously

18   enforce our immigration laws . . . [and] also the policy of this Administration to maintain

19   family unity, including by detaining [noncitizen] families together where appropriate and

20   consistent with law and available resources"). Indeed, that executive order expressly

21   acknowledges the possibility of detaining immigrant families together. As explained in

22

23   ───────────────

     [3] Contrary to Defendant's assertion, Plaintiffs do not acknowledge that the separations
24   stemmed from enforcement of criminal immigration laws. Mot. at 12. Plaintiffs were
     never charged with a crime nor placed in criminal custody. Compl. ¶¶ 107, 108, 196.
25   Nothing in the Complaint indicates that Plaintiffs were "referred for prosecution." Mot. at
     26. Plaintiffs also allege that enforcement of immigration law was a pretext for family
26   separation. Compl. ¶¶ 53, 57-58, 107, 196.

27   (continued...)

28

*Jacinto-Castanon*, "the fact that [an individual] may be subject to some form of immigration detention does not explain why [they] must be detained separately . . . . The same goal of detention can be accomplished, for example, by temporarily detaining families together in family residential facilities." 319 F. Supp. 3d at 501.[4]

The Government further asserts that separation was mandatory because children could not be held in "secure adult detention facilities" under the terms of the *Flores* settlement. Mot. at 16. But Defendant never explains why these adults were required to be in "secure" facilities in the first place, and none of its cited statutes or regulations requires as much. A court in this circuit rejected a similar argument. In *Flores*, the court held that the *Ms. L* injunction—which generally prohibits family separations—does not conflict with the *Flores* agreement or require Defendants to violate it. 2018 WL 4945000, at *4 (Government can detain families in family facilities or release them on parole or bond; parents may waive their children's *Flores* rights).[5] In short, even accepting Defendant's decision to place Plaintiff Fathers in civil detention pending removal, no statute or regulation mandated separating them from their children.

---

[4] Moreover, "[a]bsolutely nothing prevents [Defendant] from reconsidering [its] current blanket policy of family detention and reinstating prosecutorial discretion." *Flores v. Sessions*, No. 85-CV-4544, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018) (citing 8 U.S.C. § 1226(a)(2)(A) (providing that the Attorney General has the discretion to release certain aliens on a bond) and 8 U.S.C. § 1182(d)(5)(A) (providing that the Attorney General has the discretion to parole certain aliens)). Even the Government acknowledges these statutory options for release. Mot. at 4.

[5] *Bunikyte, ex rel. Bunikiene v. Chertoff*, cited by Defendant, nowhere held that *Flores* requires separation of families. To the contrary, even though the plaintiffs were in a detention center that operated as a "secure facility," the Government "agree[d] that separating the minor Plaintiffs from their parents by releasing the children to adult relatives would be traumatizing and detrimental to them." No. A-07-CA-164, 2007 WL 1074070, at *3 (W.D. Tex. Apr. 9, 2007).

{00498084.1 }

2.  <u>No Statute or Regulation Mandated the Re-classification of the Plaintiff Children as UACs.</u>

While Defendant argues that "Plaintiffs cannot avoid the due care exception by challenging the government's classification of their children as UACs," Mot. at 15, it does not claim that its classification of Plaintiff Children as "unaccompanied" under the circumstances here—where Plaintiffs arrived in the United States together—was mandated by the TVPRA or any other statute or regulation. Indeed, courts have found that the TVPRA does not contemplate the designation of children such as Plaintiffs as UACs. *See*, *e.g.*, *C.M.*, 2020 WL 1698191, at *3 n.4 (rejecting Government's argument "that parents who are 'amenable to prosecution' under immigration statutes are 'unavailable to provide care or custody' to their children," thereby necessitating the children's transfer to ORR custody); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2 (children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants" in separating families "are not true unaccompanied minors within the meaning of the" TVPRA); *Ms. L.*, 310 F. Supp. 3d at 1139 ("true 'unaccompanied alien children'" are distinct from "migrant children detained with their parents at the border and who were thereafter separated from their parents").

Indeed, Congress has rejected the Government's approach, noting that "[c]hildren who are apprehended by DHS while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody."  House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill, 2006: *Report Together with Additional Views (to accompany H.R. 2360)*, 109th Cong., 1st Session, 2005, H. Rep. 109-79 (cited by *Bunikyte*, 2007 WL 1074070, at *2). Congress instead expressed an expectation that the Government would release families, use alternatives to detention, or detain families together in appropriate spaces. *Id.*

The Government misleadingly suggests that a parent is not "available"—and therefore his child may be deemed "unaccompanied"—when the parent is "transferred to

federal criminal custody." Mot. at 16. But Plaintiffs here were never charged with a crime and were in DHS custody only. Compl. ¶¶ 107, 108, 196-200, 212, 223. Nor did the Government make any finding of parental unfitness, as it did in *D.B. v. Cardall*, 826 F.3d 721, 726-27 (4th Cir. 2016) (ORR determined parent was not "available to provide care and physical custody" based on a determination that the parent's home did not "appear to be a safe and stable environment").[6]

*Baie v. Secretary of Defense*, cited by Defendant as establishing that "any claims under the FTCA that necessarily turn on a plaintiff's challenge to an agency's interpretation of a federal statute are barred by 28 U.S.C. § 2680(a)," Mot. at 15, is inapposite. In *Baie*, the court held that the discretionary function—not the due care exception—barred such FTCA claims. Mot. at 15; *see Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986). But Defendant never argues that its decision to re-classify accompanied children as UACs is protected by the discretionary function exception.

Further, the Government's reliance on *Nwozuzu v. United States* is misplaced. Mot. at 15. There, the court found that the "the government acted with due care in interpreting [a citizenship statute] to mandate detention," given the "legal uncertainty" that existed as a result of conflicting court decisions on the issue. 712 F. App'x. 31, 33 (2d Cir. 2017). In contrast here, Defendant cannot cite a single precedent authorizing the forcible family separations. *Doe v. Stephens* is also inapposite; in that case, the government agency followed its own *regulations* (rather than executive policy or informal agency action), which appeared to authorize the agency's conduct, and thus was entitled to the due care exception even though the regulations were later invalidated. 851

---

[6] *United States v. Dominguez-Portillo* did not address whether the Government properly classified defendants' children as UACs following the defendants' prosecution for misdemeanor entry. No. EP-17-4409, 2018 WL 315759, at *6 (W.D. Tex. Jan. 5, 2018). Rather, it held, "given the slim records in these cases and the lack of clearly established parental rights in these circumstances and under case law, Defendants have not met the high burden required under the outrageous government conduct doctrine" to warrant dismissal of criminal charges.

18

F.2d 1457, 1461-62 (D.C. Cir. 1988).

3.  The Government Applies the Wrong Legal Standard in Its Application of the Due Care Exception.

Perhaps recognizing that it cannot show that it was reasonably applying the mandates of a statute or regulation, Defendant argues for a different legal standard, asserting, "[f]or the due care exception to apply, the government need only be authorized by statute or regulation to take the course of action that caused the harm." Mot. at 13. However, the case on which Defendant relies, *Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985), is inapposite. There, a statute explicitly authorized the government to transfer responsibility for maintaining and operating a dam to a corporation. The court held that the due care exception bars challenges "to the legality of statutes and regulations," and noted that the plaintiffs' claim "represent[ed] a challenge to the statutory authority of the government" to transfer responsibility to the corporation. *Id.* at 1052. Here, in contrast, Plaintiffs do not challenge the legality of any statute or regulation. Indeed, there is no statute "explicitly authorizing the government to detain parents and children in separate facilities before it has charged either with a crime." *See C.M.*, 2020 WL 1698191, at *3. The Government seeks to manufacture such authority by stringing together a series of statutes and regulations, using executive action as the connective tissue. *See* Mot. at 13-14. However, it cites no statute or regulation expressly authorizing the forcible and prolonged separation of children from their parents as a result of the parent's immigration-related detention. While the Government certainly had a policy and practice of forcible and prolonged separation of parents and children, that policy and practice was neither mandated nor authorized by "the faithful execution" of federal immigration statutes. *See* Mot. at 12-13.

**B.  The Separation of Children from Their Parents at the Hands of Government Agents Was Done Without Due Care.**

Even if the Government has satisfied the first prong of the due care exception, it must still show that it acted with "due care." *Welch*, 409 F.3d at 652; *Prescott*, 973 F.2d

at 701-03 (Government's burden to show all elements of an FTCA exception). Defendant does not even attempt to argue that it has met the second prong of the due care exception; by failing to do so, it fails to prove a required element to the due care exception, and therefore waives its protection. *See Save the Peaks Coal. v. U.S. Forest Serv.*, No. 09-CV-8163, 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010) (arguments not raised in opening brief are waived). In any event, Plaintiffs have alleged sufficient facts to show the lack of care with which government agents executed the family separation policy.

"Due care" under § 2680(a) "'implies at least some minimal concern for the rights of others.'" *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley v. United States*, 351 U.S. 173, 181 (1956)); *see Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987) (standard for due care is "one of reasonableness").

The Government did not act with even minimal concern for others in separating Plaintiffs Fathers from Plaintiff Children. *See* Compl. ¶¶ 5, 15, 36-65, 254, 295. Government officers treated Plaintiffs with cruelty. *See id.* ¶¶ 2-4, 74-151, 167-222. Plaintiffs were detained in freezing cells with little space to sleep, little food to eat, and with no proper consideration for their medical needs. *Id.* ¶¶ 79-94, 102-03, 170-76, 195, 268-73. Plaintiff Fathers were forced to watch, or were physically restrained, while their terrified and crying children were taken from them, and were led to believe they might never be reunited. *See, e.g., id.* ¶¶ 2-3, 95-101, 104-05, 111, 169, 187-94. Officers ignored Plaintiff Fathers' pleas for information about their children, and even when Plaintiffs were finally able to speak to their children, the calls were short and infrequent. *See, e.g., id.* ¶¶ 9-10, 14, 108, 114, 117-23, 191-94, 201-07. Plaintiff Children suffered under the Government's care. *Id.* ¶¶ 12, 124-26, 141-51, 217-20, 301. Plaintiffs' allegations show Defendant's failure to act with "at least some minimal concern for the rights of others." *See Myers & Myers, Inc.*, 527 F.2d at 1262; *see also, e.g., Lyttle v. United States*, 867 F. Supp. 2d 1256, 1299-1300 (M.D. Ga. 2012).

Defendant claims that the due care exception bars claims that are "inextricably tied" to the physical separations, including allegations that Defendant failed for weeks to give Plaintiff Fathers information about their children or facilitate communication between them. Mot. at 17. However, Defendant has not demonstrated that this exception applies to its separation of Plaintiffs. Moreover, Defendant's denial of information and contact demonstrates its lack of care, as required to establish the second prong of the due care test. *See* Compl. ¶¶ 9-10, 108, 114, 117-23, 191-94, 201-07. Finally, the cases Defendants cite discuss the discretionary function exception and policy decisions, not any mandatory authority covered by the due care exception.

## III.   The Discretionary Function Exception Does Not Shield the Government's Unconstitutional Acts of Separating Plaintiffs.

To invoke the discretionary function exception, Defendant must show that its actions (1) involve an element of judgment or choice and (2) are based on considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (burden is on the government). The exception does not shield government officials from liability when their actions are unconstitutional. *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply"); *Fazaga v. F.B.I.* 916 F.3d 1202, 1251 (9th Cir. 2019) (same).

### A.   The Government's Actions in Separating Families Were Unconstitutional.

The Government's actions in separating migrant families are not protected by the discretionary function exception because Plaintiffs have adequately pled that these actions violated Plaintiffs' constitutional rights. *See, e.g.*, Compl. ¶¶ 5, 34, 255-62, 296, 313. *See Nurse*, 226 F.3d at 1002 (reversing dismissal of plaintiff's FTCA claims pursuant to the discretionary function exception where plaintiff alleged a constitutional

violation). Plaintiffs plausibly pled that the Government's separation of families was unconstitutional because it violated the Plaintiffs' Fifth Amendment right to family integrity. Compl. ¶¶ 255-58, 296. In *Ms. L.*, the court found that the Government's "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their [substantive] due process claim." 310 F. Supp. 3d at 1145; *see also Ms. L. II*, 302 F. Supp. 3d at 1167 (denying government's motion to dismiss substantive due process claims based on separation of children from parents during immigration detention).

Plaintiffs also plausibly pled that the Government's conduct violated their constitutional right to equal protection under the law. Compl. ¶¶ 255, 259-62; *see Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 518-19 (9th Cir. 2018), *cert. granted sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 139 S. Ct. 2779 (2019) (affirming finding that plaintiffs stated equal protection claim challenging Government's rescission of Deferred Action for Childhood Arrivals program where they pled (1) that the action "disproportionately impacts Latinos," (2) "a history of animus toward persons of Hispanic descent," and (3) "the unusual history behind the rescission") (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977)). Plaintiffs' plausible allegations of constitutional violations preclude the application of the discretionary function exception.

### B.   Plaintiffs' Separations Did Not Result from the Enforcement of Federal Law.

Defendant asserts that "prioritizing enforcement of federal law and subsequent prosecutorial decisions are classic discretionary functions shielded by the FTCA's discretionary function exception and prosecutorial immunity." Mot. at 12. To the extent this is an affirmative argument for dismissal, Defendant's argument fails because Plaintiffs' separation was not the result of the enforcement of any federal laws, as

discussed *supra* in Part II.A. The authority cited by Defendant is inapposite. *Cf. Mejia-Mejia v. U.S. I.C.E.*, No. 18-CV-1445, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019) (noting that the plaintiff's "claims rest, in part, on conduct that amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General"); *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (selective prosecution); *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) (negligent prosecution); *Smith v. United States*, 375 F.2d 243, 247-48 (5th Cir. 1967) (failure to prosecute). In *C.M.*, this Court squarely rejected an identical argument. 2020 WL 1698191, at *4.

### C.     Defendant's Repackaging of Plaintiffs' Allegations as Claims Barred by the Discretionary Function Exception Is Not a Basis for Dismissal.

Defendant also argues that individual allegations in the Complaint comprise claims that are barred by the discretionary function exception. *See* Mot. at 18-21 (singling out allegations of "frequency of communications between and about separated family members"; "conditions of one's detention in a secure facility"; the failure to track separated families; and "alleged abuse of child plaintiffs in foster care"). These are not standalone claims, but rather facts that demonstrate the ways in which the harm of family separation was compounded. Compl. ¶¶ 263-95. They also show that Defendant acted with intent or recklessness and fell below its duty of care. *See id.* ¶¶ 303, 306-11, 312-24.

For example, Defendant mischaracterizes Plaintiffs' allegations that Defendant exposed Plaintiff Children to the risk and reality of abuse while in ORR custody. Mot. at 19. Plaintiffs' claims do not center on Defendant's role in selecting or supervising ORR contractors. *Cf. Walding v. United States*, 955 F. Supp. 2d 759, 763, 790 (W.D. Tex. 2013) (dismissing causes of action for "negligent supervision" and "negligent selection" of contractors by ORR). Rather, the abuse of Plaintiffs in ORR custody is among the numerous harms Plaintiffs suffered as a result of Defendant's family separation policy, which Plaintiffs plausibly allege was unconstitutional and therefore unprotected by the

1    discretionary function exception. *See supra* Part III.A; Compl. ¶¶ 55, 265, 289-95

2    (Defendant's implementation of its family separation policy "caused a sudden increase in

3    the number of children, including very young children, in ORR custody," which resulted

4    in ORR's reliance on "ill-prepared" external resources to house children).

5         In short, Plaintiffs' allegations regarding abuse in ORR custody, detention

6    conditions, and the Government's failure to track families or facilitate communication do

7    not comprise freestanding claims, but rather state facts that, together with the forcible

8    separation of Plaintiffs' families and other allegations, give rise to Plaintiffs' claims of

9    IIED, negligence, and loss of consortium.[7] Compl. ¶¶ 303-30. This Court in *C.M.* rejected

10   a nearly identical challenge by the Government to isolated factual allegations regarding

11   detention conditions, limited communication among separated parents and children, and

12   the Government's failure to track families. *See C.M.*, 2020 WL 1698191, at *4, n.5. The

13   Court declined to "parse the Complaint to assess whether claims with respect to

14   individual factual allegations are barred," noting that the complaint incorporated all facts

15   into each count, and that evaluation of which facts could or could not prove a claim

16   would be premature. *Id.* at *4. The same conclusion applies here, where Plaintiffs'

17   Complaint also incorporates all facts into each count. Compl. ¶¶ 303, 312, 325.

18        In any event, the Government's piecemeal arguments lack merit because the

19   actions at issue do not involve an element of judgment or choice, given Plaintiffs'

20   allegations that Defendant's actions violated multiple mandatory, non-discretionary

21   duties. *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 544 (1988) ("When a suit

22   charges an agency with failing to act in accord with a specific mandatory directive, the

23

24   ───────────────

25   [7] In the cases cited by Defendant to exclude Plaintiffs' factual allegations regarding
     detention and record-keeping, such allegations comprised the core of each plaintiff's
26   claim. *See, e.g.*, *Antonelli v. Crow*, No. 08-CV-261, 2012 WL 4215024, at *3 (E.D. Ky.
     Sept. 19, 2012) (prisoner plaintiff alleged a "litany of perceived wrongs" relating to
27   conditions of confinement); *Cruz v. United States*, 684 F. Supp. 2d 217, 219 (D.P.R.
     2010) (claim regarding negligent design and maintenance of computer system).

28

discretionary function exception does not apply."); *Faber v. United States*, 56 F.3d 1122, 1125-26 (9th Cir. 1995) (refusing to apply the discretionary function exception where the government "failed to follow specifically prescribed policies"). Plaintiffs have plausibly alleged that the conditions in the detention centers where Plaintiff Children were held, and Defendant's failure to ensure that children placed in ORR custody were in safe facilities, violated the requirements of the *Flores* settlement agreement. Compl. ¶¶ 272-73, 294, 313 (citing *Flores v. Reno*, Stipulated Settlement Agreement ¶ 12.A, No. 85-CV-4544 (C.D. Cal. Jan. 17, 1997), *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016), *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019)).[8] Moreover, Plaintiffs have plausibly alleged that Defendant's failure to track separated families and permit regular communications between the fathers and children violated federal law and policy, including Plaintiffs' constitutional rights. *See* Compl. ¶¶ 286, 313, 316; *see Jacinto-Castanon*, 319 F. Supp. 3d at 501 (Government "directly and substantially burdened plaintiffs' right to family integrity" where it "continued to detain Ms. Jacinto-Castanon and her sons in separate facilities for many weeks with only periodic phone calls"); *Ms. L.*, 310 F. Supp. 3d at 1144 (failure to track separated children cannot satisfy due process requirements).

In addition, none of the isolated actions that Defendant argues are protected by the discretionary function exception result from "the kind [of governmental decisions] that the discretionary function exception was designed to shield," *i.e.* "legislative and administrative decisions grounded in social, economic, and political policy." *Berkovitz*, 486 U.S. at 536-37. Defendant failed to prepare, monitor or supervise federal employees and contractors once it placed a large number of children in ORR custody through

---

[8] Courts in this circuit have held that the discretionary function exception did not apply to claims relating to immigration detention where plaintiffs alleged a violation of policy, statute, or the Constitution. *Plascencia v. United States*, No. 17-02515, 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018); *Baires v. United States*, No. 09-05171, 2011 WL 1743224, at *8 (N.D. Cal. May 6, 2011); *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1125 (D. Nev. 2009).

1  improper classification of accompanied children as UACs as a result of its family

2  separation policy. Compl. ¶¶ 48, 264, 265, 290-94, 321. Defendant ignored concerns

3  raised by ORR employees that ORR lacked the systems needed to handle an increase in

4  children in its custody. Compl. ¶ 48. This conduct does not reflect "weighing of practical

5  and policy considerations [that] represents the kind of policy judgment that Congress

6  intended to protect through the discretionary function exception[.]" *Marlys Bear Med. v.*

7  *U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001).[9]

8          Moreover, "once the Government has undertaken responsibility for the safety of a

9  project, the execution of that responsibility is not subject to the discretionary function

10  exception." *Id.* at 1215. In *Flores v. Reno*, the Government reached a settlement in which

11  it assumed responsibility to ensure that children placed in ORR custody are in "facilities

12  that are safe" and addressed the government's "concern for the particular vulnerability of

13  minors." Compl. ¶ 294; *Flores v. Reno*, Stipulation Settlement Agreement § V ¶ 12.A. In

14  contrast to the cases Defendant relies upon, Defendant's deliberate failure to prepare

15  ORR to handle the influx of children does not represent a weighing of how to allocate

16  limited resources, but instead represents a failure to meet its "duty to maintain safety

17  measures once undertaken." *Marlys Bear Med.*, 241 F.3d at 1216-17. For these and other

18  reasons, Defendant's citation to the out-of-circuit decision in *Walding* is misplaced.[10]

19  **IV.    Plaintiffs State Claims Under Arizona Law.**

20          While Defendant moves to dismiss this action pursuant to Rule 12(b)(6) for failure

21  to state a claim, Mot. at 1, the only arguments it appears to make are that "Plaintiffs have

22  failed to state a claim under Arizona law for the allegedly negligent delay in obtaining

23  ---

24  [9] Because Plaintiffs challenge Defendant's conduct in exposing children to abuse in ORR custody, and not the conduct of independent contractors, the contractor exclusion does not apply. *See* Mot. at 21; 28 U.S.C. § 2671 (FTCA contractor exclusion).

26  [10] In *Walding*, the court rejected plaintiffs' argument that a constitutional violation by the government precluded discretionary function immunity because plaintiffs failed to allege a constitutional violation. 955 F. Supp. 2d at 788. Here, Plaintiffs have adequately alleged a constitutional violation that limited Defendant's discretion. *See supra* Part III.A.

28

{00498084.1 }                                          26

1   medical treatment for O.B.," Mot. at 27, and that "Plaintiffs' allegations regarding the

2   conditions of their confinement are insufficient to state a claim for IIED under Arizona

3   law," Mot. at 29. The Government also argues that "Plaintiffs' interference with asylum

4   claims are barred by the misrepresentation exception of the FTCA[.]" Mot. at 27.

5        The Complaint states three claims: IIED, negligence, and—on behalf of Abel and

6   José only—loss of consortium, based on Defendant's forcible separation of Plaintiff

7   Fathers and Children from each other, and on other Government actions relating to those

8   separations. Compl. ¶¶ 303-30. Defendant does not argue that the Complaint fails to state

9   these claims. Rather, Defendant isolates individual allegations and argues that these

10  allegations, standing alone, do not state claims. But this Court already rejected the

11  Government's attempt to "parse the Complaint" in this way. *C.M.*, 2020 WL 1698191,

12  at *4. This conclusion applies with equal force here. The Court should deny Defendant's

13  motion to dismiss for failure to state a claim.

14       **A.    Plaintiffs' Allegations of Interference with Asylum Do Not Warrant**
15            **Dismissal of Any Claims Under the Misrepresentation Exception.**

16       Defendant mischaracterizes Plaintiffs' allegations to argue that Plaintiffs pled

17  "interference with asylum claims" and that such claims are barred by the FTCA's

18  misrepresentation exception. Mot. at 27-28 (citing 8 U.S.C. § 2680(h)). Plaintiffs' actual

19  claims are not barred by that exception.

20       The misrepresentation exception applies where harms are "*wholly attributable* to

21  reliance on the Government's negligent misstatements." *Block v. Neal*, 460 U.S. 289, 297

22  (1983) (emphasis added). Courts consider the "essence" or "gravamen" of the lawsuit.

23  *Renteria v. United States*, 452 F. Supp. 2d 910, 915 (D. Ariz. 2006). The exception does

24  not apply where Plaintiffs allege "injury independent of that caused by the erroneous

25  information." *Id.*; *see also Block*, 460 U.S. at 297.

26       Plaintiffs do not bring misrepresentation claims, nor are the Defendant's

27  communication and tracking failures the "essence" of their claims. Rather, Plaintiffs'

28

1    claims are principally based on their forcible separation. One of the many ways

2    Defendant caused severe emotional distress and breached its duty to Plaintiffs was by

3    using Plaintiffs' distress at their separation to coerce them to authorize their own

4    deportations. Compl. ¶¶ 62, 114-116, 213, 287-88, 306, 316. *Pauly*, the only case

5    Defendant cites, is inapposite, because "[t]he injuries [plaintiffs] claim are *entirely the*

6    *result* of allegedly inaccurate information provided by [a government official]." *Pauly v.*

7    *U.S. Dep't of Agric.*, 348 F.3d 1143, 1151 (9th Cir. 2003) (emphasis added). In contrast,

8    Plaintiffs' injuries are the result of Defendant's forcible separations.

9          **B.**    **Plaintiffs' Factual Allegations Regarding Their Initial Detention Are**

10                   **Not Grounds for Dismissal of Any Claims.**

11         Attempting to repackage Plaintiffs' allegations of Defendant's inhumane treatment

12   during Plaintiffs' initial detention, Defendant argues that Plaintiffs fail to state claims for

13   delayed medical treatment or conditions of confinement. Mot. at 27, 28-30.  But

14   Plaintiffs' claims for IIED and negligence do not hinge on Defendant's failure to provide

15   Obet with medical care, *see* Compl. ¶¶ 90-91, 272-73, 307, 319, or the inhumane

16   detention conditions in which Plaintiffs were held, *id.* ¶¶ 77-94, 169-76, 268-72, 307,

17   317. Rather, these allegations demonstrate Defendant's tortious conduct surrounding the

18   separations that support Plaintiffs' claims of IIED, negligence, and loss of consortium.

19         Similarly, Plaintiffs' allegations regarding their inhumane initial detention are not

20   "claims based on constitutional violations," Mot. at 29. The cases Defendant cites are

21   inapposite. In *Aguilar*, the scope of the plaintiff's IIED claim was limited to

22   constitutional allegations regarding "general conditions, practices, rules, or restrictions of

23   pretrial confinement." *Aguilar v. United States* No. 16-CV-048, 2017 WL 6034652, at *4

24   (S.D. Tex. June 7, 2017). Here by contrast, Plaintiffs' claims sweep more broadly than

25

26

27

28

the conditions of confinement and delayed medical treatment.[11]

Defendant's argument that "Plaintiffs' allegations regarding the conditions of their confinement are insufficient to state a claim for IIED under Arizona law" fails for this reason alone, *see* Mot. at 29. But its attempt to minimize these conditions as "the kinds of ordinary discomforts and inconveniences of detention" also should be rejected. The separations were unlawful and malicious, violated Plaintiffs' right to family integrity, and caused serious, lasting harm. *See, e.g.*, Compl. ¶¶ 17-20, 98-101, 187-190, 255-58, 296-302. This Court, and others, have found the Government's conduct in ripping apart families in this manner to be shocking and outrageous. *See C.M.*, 2020 WL 1698191, at *2 (citing *Martinez*, 2018 WL 3359562, at *10-12); *Ms. L.*, 310 F. Supp. 3d at 1145. Further, the two out-of-circuit Eighth Amendment cases that Defendant cites—neither of which applied Arizona law or addressed an IIED claim—have no relevance to Plaintiffs' IIED claim. *See Wilson v. Lynaugh*, 878 F.2d 846, 847, 849 (5th Cir. 1989) (exposure to tobacco smoke); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (lack of access to toiletries for a few days).

### C. Plaintiffs State Claims for IIED, Negligence, and Loss of Consortium.

Plaintiffs plausibly alleged claims of IIED, negligence, and loss of consortium. The Government does not argue that the allegations in the Complaint fail to satisfy the elements of these torts under Arizona law—as opposed to the strawmen claims discussed above. Accordingly, the Court should deny the Government's motion to dismiss.

*First*, Plaintiffs have plausibly alleged that: (1) the Government's conduct in forcibly separating Plaintiffs' families and violating their right to family integrity—as well as related conduct associated with Plaintiffs' detention and prolonged separation— was extreme and outrageous, *see, e.g.*, Compl. ¶¶ 95-101, 187-90, 304, 309; (2) the

---

[11] Similarly, in *Thompson* and *Sutter*, plaintiffs' sole claims were constitutional violations. *Thompson v. United States*, No. 14-CV-0894, 2015 WL 5567934, *2 (M.D. Pa. Sept. 21, 2015); *Sutter v. United States*, No. 17-CV-07245, 2019 WL 1841905, at *4 (C.D. Cal. Mar. 12, 2019).

{00498084.1 }

Government intended to cause, or at a minimum recklessly disregarded the near certainty that it would cause, severe emotional distress as a result of its conduct, *see, e.g.*, *id.* ¶¶ 15-16, 45, 255-60, 263-67, 304; and (3) as a direct and proximate result, Plaintiffs have suffered severe emotional distress, *see, e.g.*, *id.* ¶¶ 156-65, 235-54, 297, 300-02, 310. These allegations are sufficient to state a claim for IIED. *See C.M.*, 2020 WL 1698191, at *2 (citing *Martinez*, 2018 WL 3359562, at *10-12); *Ms. L.*, 310 F. Supp. 3d at 1145; *see also Pankratz*, 155 Ariz. at 15 (upholding IIED verdict where defendants facilitated disappearance of plaintiff's child because "[c]ourts that have squarely faced the issue have concluded that the unilateral separation of a child from its parent can be extreme and outrageous conduct").

*Second*, Plaintiffs have plausibly alleged that Defendant owed them a duty of care; that it breached this duty; and that as a direct and proximate cause of this breach, Plaintiffs have suffered substantial damages. Compl. ¶¶ 95-101, 156-65, 187-90, 235-50, 252-60, 263-67, 313-23. These allegations state a claim for negligence. *See C.M.*, 2020 WL 1698191, at *2 (citing *Shartle*, 2020 WL 1158552, at *1-2); *see also DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11 (1985) (Arizona law imposes duty where a person "takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" (quoting Restatement of Torts 2d)).

*Third*, Plaintiffs have plausibly alleged that Abel and José lost their respective child's consortium because Obet and Herlinda have suffered severe, permanent, and disabling injuries that substantially interfere with their capacity to interact with their respective parents in a normally gratifying way. Compl. ¶¶ 152-63, 235-53, 325-29. These allegations are sufficient to state Abel and José's claim for loss of consortium. *See Bickler*, 2010 WL 2292985, at *6.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

{00498084.1 }

30

1   Respectfully submitted this 18th day of May, 2020.

2                                    COPPERSMITH BROCKELMAN PLC

3                                    By s/ Shelley Tolman
4                                         Keith Beauchamp
                                          Shelley Tolman
5
                                     SOUTHERN POVERTY LAW CENTER
6                                         Gillian Gillers*
7                                         Norma Ventura*

8                                    SOUTHERN POVERTY LAW CENTER
9                                         Paul R. Chavez*
                                          P.O. Box 370037
10                                        Miami, FL 33137
                                          Telephone: (786) 347-2056
11                                        paul.chavez@splcenter.org

12                                   COVINGTON & BURLING LLP
13                                        Matthew Schlesinger*
                                          Jason Carey*
14                                        Terra White Fulham*

15                                   COVINGTON & BURLING LLP
16                                        Swati R. Prakash*
                                          The New York Times Building
17                                        620 Eighth Avenue
18                                        New York, NY 10018-1405
                                          Telephone: (212) 841-1174
19                                        sprakash@cov.com

20                                   COVINGTON & BURLING LLP
21                                        Jessica R. Hanson*
                                          1999 Avenue of the Stars, Suite 3500
22                                        Los Angeles, CA 90067-4643
                                          Telephone: (424) 332-4800
23                                        jhanson@cov.com

24                                        *Attorneys for Plaintiffs*

25

26

27

28