IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.P.F., et al., | No. CV-20-00065-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

This case arose out of the federal government's forced separation of alien parents from their children along the United States–Mexico border. Pending before the Court is Defendant United States' Motion and Memorandum in Support of the United States' Motion to Dismiss (Doc. 21 ("Mot.")).

**I.   BACKGROUND**

In an effort to deter border crossings from Central America, the Trump Administration implemented a policy of separating families at the United States–Mexico border through a pilot program beginning in July 2017. (Doc. 34, First Am. Compl. ("FAC") ¶¶ 9, 11, 59–60, 482.) Pursuant to this policy, the United States targeted families for prosecution, separated children from parents, classified the children as Unaccompanied Minor Children ("UAC"), and sent the children across the country without documenting the familial relationship. (*Id.* ¶¶ 60–62, 73–74.) In April 2018, the U.S. Attorney General announced a formal policy of family separation. (*Id.* ¶ 65.) In June 2018, a federal district court enjoined this practice after recognizing its likely unconstitutionality. *Ms. L. v. U.S*

*Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1149 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019).  Around the same time, the Trump Administration issued an executive order formally ending this policy.  (FAC ¶ 77 (citing Exec. Order No. 13841, 83 FR 29, 435).)  In total, the United States separated thousands of families pursuant to this policy.  (*Id.* ¶¶ 15, 75, 491.)

Plaintiffs are six fathers ("Plaintiff Fathers") and their children ("Plaintiff Children") (collectively, "Plaintiffs") who came to the United States in November 2017 and May 2018 seeking asylum from violent persecution in their home country of Guatemala.  (Doc. 29, Pls.' Opp'n to Mot. ("Opp'n") at 2; FAC ¶ 1, 31–43.)  Shortly after crossing the border into Arizona, Plaintiffs were detained by Customs and Border Protection ("CBP") officers, stripped of their possessions, and placed in CBP facilities.  (Opp'n at 2.)  Plaintiffs were held in *hieleras*—"small, freezing concrete cells crowded with twenty to thirty other migrant families."  (*Id.*)  CBP officials provided Plaintiffs with limited food and water and no room to lie down.  (*Id.*)

CBP officials separated Plaintiffs and shipped the children to facilities run by government contractors in New York, Michigan, and Texas.  (*Id.*; FAC ¶¶ 36, 155, 215, 230, 303, 339, 383, 452.)  While in these facilities, three of Plaintiff Children were physically and sexually touched, or otherwise abused, by other children in the facility.  (Opp'n at 2; FAC ¶¶ 16, 156, 232, 303.)  Meanwhile, Plaintiff Fathers were shuffled around ICE facilities in Arizona, Georgia, and Texas.  (Opp'n at 2; FAC ¶¶ 32, 34, 36, 38, 41, 43.)  Plaintiff Fathers were provided no information concerning their children's whereabouts and were unable to speak to their children for several weeks.  (Opp'n at 2.)

Each Plaintiff Father was separated from his child for a period ranging from eight weeks to eight months.  (FAC ¶ 16.) At no point were Plaintiff Fathers charged with a crime or found to be unfit to retain custody of their children.  (*Id.*)  As a result of the forced separation, Plaintiffs suffered and continue to suffer mental and emotional trauma.  (*Id.*)

Plaintiffs filed suit on January 10, 2020, alleging three causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680: (1) intentional

infliction of emotional distress ("IIED"); (2) negligence; and (3) loss of child's consortium. (Doc. 1, Compl. ¶¶ 303–330.) On April 14, 2020, the Court granted Plaintiffs' Motion to Transfer. (Doc. 26, 4/14/20 Order; Doc. 10, Mot. to Transfer.) On March 17, 2020, the United States filed its Motion, challenging the Court's jurisdiction and the sufficiency of Plaintiffs' claims. (Mot.) On May 18, 2020, Plaintiffs filed their Opposition ("Opposition"). (Opp'n.) On June 17, 2020, the United States filed its Reply. (Doc. 32, Reply in Supp. of Mot. ("Reply").) On July 16, 2020, Plaintiffs filed their Amended Complaint, adding four fathers and their children to this suit. (FAC.) Because the additional four Plaintiff families are similarly situated to the original two, the Court determined that the Motion, Opposition, and Reply would be considered as directed at the Amended Complaint, and declined to permit additional briefing. (*See* 7/15/20 Order.)

## II.   RULE 12(B)(1) LACK OF JURISDICTION

The United States' Motion attacks the Amended Complaint on its face. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."). In ruling on such a motion, the Court accepts the allegations of the complaint as true and affords plaintiffs the benefit of all favorable inferences that can be drawn from the alleged facts. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Plaintiffs bear the burden of establishing a court's subject-matter jurisdiction. *See Kokkonen v. Guardian Life Ins*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331, 1346(b), and the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. (FAC ¶ 28.) The United States disputes that the FTCA confers jurisdiction. (Mot. at 9–25.)

### A.   FTCA Jurisdiction

The United States is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the United States. *United*

*States v. Mitchell*, 445 U.S. 535, 538 (1980).  The FTCA provides such consent "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Fazaga v. FBI*, 916 F.3d 1202, 1249 (9th Cir. 2019) (quoting 28 U.S.C. § 1346(b)(1)).  The FTCA's general waiver of immunity is subject to various exceptions and exclusions.  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006).  The "plaintiff bears the burden of persuading the court that it has subject[-]matter jurisdiction under the FTCA's general waiver of immunity," and the United States bears the burden of proving that an exception applies.  *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)).

The United States argues that the Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs have failed to prove the existence of a private analogue, and that even if they have, three exceptions and one exclusion apply.  (Mot. at 2.)

### 1. Private Analogue Requirement

To carry their burden of establishing subject-matter jurisdiction under the FTCA, Plaintiffs must show that "a private individual under like circumstances would be liable under state law."  *United States v. Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b).  To do this, Plaintiffs' allegations must demonstrate "a persuasive analogy with private conduct."  *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992) (quoting *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987)).  Recognizing that "the federal government 'could never be exactly like a private actor,'" the Ninth Circuit only requires courts to "find the most reasonable analogy" to private tortious conduct.  *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367 (9th Cir. 1986)).

Private individuals have been held liable for IIED, negligence, and loss of child's consortium in Arizona under reasonably similar circumstances.  This Court has already recognized the existence of a private analogy for IIED and negligence in nearly identical circumstances.  *See C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL

1698191, at *2 (D. Ariz. Mar. 30, 2020); *see also Martinez v. United States*, 2018 WL 3359562, at *10–12 (D. Ariz. July 10, 2018) (recognizing viability of IIED claim brought under FTCA where "[federal] agents' actions were motivated by malice"); *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020) (recognizing viability of negligence claim brought under FTCA where plaintiffs alleged federal employees' placement of a prisoner in a certain cell was negligent). Arizona law also awards damages for the loss of a child's consortium when a caretaker's actions cause "significant interference with the normal relationship between parent and child[.]" *Bickler v. Senior Lifestyle Corp.*, No. CV09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010) (quoting *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989)). The Court therefore has subject-matter jurisdiction over Plaintiffs' three causes of action unless the United States proves that an exception applies.

## 2.     Due Care Exception

The United States argues that the due care exception bars claims based on the separations. (Mot. at 2.) Following other courts in this circuit, the Court applies the two-prong test established by *Welch v. United States*[1] to determine whether the due care exception applies.[2] *See Ferguson v. United States*, No. 15CV1253 JM (DHB), 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016) (applying *Welch*'s two-part test); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006) (same). The due care exception applies if (1) a statute or regulation "specifically pr[e]scribes a

---

[1] 409 F.3d 646 (4th Cir. 2005).

[2] The Court rejects the United States' argument that *Borquez v. United States* controls and that under *Borquez*, the United States need only be "authorized" by statute or regulation to take the course of action that caused the harm. (Mot. at 13–14 (citing 773 F.2d 1050 (9th Cir. 1985).) In *Borquez*, plaintiffs brought an FTCA claim against the government for the negligent maintenance and operation of a dam. 773 F.2d at 1051. The government had previously transferred responsibility for maintaining and operating the dam to a corporation pursuant to a statute that explicitly and specifically authorized it to do so. *Id.* at 1052 (citing 43 U.S.C. § 499). Because the plaintiffs' claim "represent[ed] a challenge to the statutory authority of the government" to transfer responsibility for the dam to a corporation—a type of challenge the exception was designed to prohibit—the court held the exception applied. *Id.* Here, Plaintiffs are not challenging a statute's grant of authority to the government to separate Plaintiffs; they are seeking damages for harm caused by the execution of an executive policy. *Borquez* therefore does not apply.

course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (citing *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995)). Otherwise stated, the due care exception applies only when an official was "reasonably executing the mandates of" a statute or regulation. *Id.* at 651.

The United States cites no statute or regulation requiring the detention of individuals who are "amenable to prosecution"[3] in facilities different from those who are not "amenable to prosecution," or any statute more generally requiring the separation of Plaintiffs upon their entry into the country. (*See* Mot.) Nor could it: the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation. (*See* FAC ¶¶ 50–79.) Actions taken pursuant to executive policy are not shielded by the due care exception. *Garcia-Feliciano v. United States*, No. CIV. 12-1959 SCC, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (due care exception "would not apply here, however, because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct"). The United States has failed to prove that the due care exception applies.

### 3. Discretionary Function Exception

The United States argues that the discretionary function exception bars claims arising out of and resulting from the separations, including the frequency of communication between parent and child, the conditions of confinement, the government's failure to document the familial relationship, and the treatment of Plaintiff Children while in foster care. (Mot. at 2, 18–19.)

The discretionary function exception bars claims arising from governmental actions that (1) "involv[e] an element of judgment or choice" and (2) are "based on considerations

---

[3] The United States suggests that its family-separation policy was authorized by 8 U.S.C. § 1232(b)(3), which requires the government to transfer alien children into the custody of the U.S. Department of Health and Human Services ("HHS") after determining that an alien child is "unaccompanied." (Mot. 5, 14, 22; Reply at 4, 6.) The United States argues that an alien child is "unaccompanied," and subject to § 1232(b)(3)'s custodial-transfer requirement, whenever the parent is "amenable to prosecution." (Mot. at 3.) The United States fails to explain how a parent who is merely "amenable" to prosecution—but has not been charged with a crime—is, for that reason, unavailable to care for his child. (*See generally* Mot.) The Court rejects the United States' attempt to recast Plaintiffs' arguments as a challenge to the government's interpretation of § 1232(b)(3).

of public policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (quotations omitted). This exception does not shield unconstitutional government conduct. *Nurse v. United States*, 226 F.3d 996, 1002 n.3 (9th Cir. 2000).

Plaintiffs have plausibly alleged that the government's separation of their families violated their constitutional rights. In a related suit brought by a class of migrant parents, a district court found that the government's practice of separating families, and the procedures used to implement this practice, likely violated due process. *Ms. L.*, 310 F. Supp. 3d at 1144–46. The court stated:

> A practice of this sort implemented in this way is likely to be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,' interferes with rights "'implicit in the concept of ordered liberty[,]'" and is so '"brutal" and "offensive" that it [does] not comport with traditional ideas of fair play and decency.'

*Id.* at 1145–46 (citations omitted). Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs. *See Plascencia v. United States*, No. EDCV1702515JGBSPX, 2018 WL 6133713, at *9 (C.D. Cal. May 25, 2018) (discretionary function exception does not apply when Plaintiffs allege injuries resulting from unconstitutional conduct in immigration-related detention). Because each of Plaintiffs' causes of action stem from this separation, none are barred by the discretionary function exception.

The Court rejects the United States' re-categorization of Plaintiffs' factual allegations as standalone claims. Allegations related to conditions of confinement (including the degree of permitted communication), treatment of Plaintiff Children during and after the separations (including during foster care), and the government's tracking system (or lack thereof) are factual allegations primarily aimed at demonstrating the harm resulting from the separations. Plaintiffs' Amended Complaint incorporates all facts into each count; evaluating which facts could or could not prove a claim is premature. (*See* FAC ¶¶ 527, 536, 549; *C.M.*, 2020 WL 1698191, at *4 (rejecting similar argument).) The

United States has failed to prove that the discretionary function exception applies.

### 4. Misrepresentation Exception

The United States argues that claims based on the government's purported interference with Plaintiffs' asylum claims are barred by the misrepresentation exception. (Mot. at 27–28.) The misrepresentation exception bars "[a]ny claim arising out of . . . misrepresentation [or] deceit[.]" 28 U.S.C. § 2680(h). This exception "covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation." *Pauly v. U.S. Dep't of Agriculture*, 348 F.3d 1143, 1151 (9th Cir. 2003) (citing *United States v. Neustadt*, 366 U.S. 696, 702 (1961)).

The United States argues that to the extent Plaintiffs' IIED and negligence claims are based on misrepresentations made by the government in an attempt to "compel them to abandon their asylum claims," they are barred. (Mot. at 27–28.) Plaintiffs' Amended Complaint, however, mentions these misrepresentations in only two out of over five hundred paragraphs. (FAC ¶¶ 511–12.) These two factual allegations do not affect the Court's jurisdiction over Plaintiffs' three causes of action—IIED, negligence, and loss of child's consortium—which Plaintiffs have already established. These two factual allegations, standing alone, are insufficient to prove that the misrepresentation exception applies.

### 5. Independent Contractor Exclusion

Citing *Logue v. United States*,[4] *Autery v. United States*,[5] and *Walding v. United States*,[6] the United States argues that Plaintiffs' claims based on the alleged abuse of their children in foster care are barred by the independent contractor exclusion to the FTCA. (Mot. at 2, 21.) But *Logue*, *Autery*, and *Walding* merely recognize that FTCA liability, by its text, does not extend to contractors. *See* 28 U.S.C. § 2671 ("As used [in the FTCA] the term 'Federal agency'. . . does not include any contractor with the United States"); *see Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) ("Courts have construed the

---

[4] 412 U.S. 521 (1973).
[5] 424 F.3d 944 (9th Cir. 2005).
[6] 955 F. Supp. 2d 759 (W.D. Tex. 2013).

independent contractor exception to protect the United States from vicarious liability for the negligent acts of its independent contractors.").

The Amended Complaint alleges that three Plaintiff Children suffered abuse while held in federal custody at facilities operated by contractors. (FAC ¶ 16.) The Amended Complaint traces this harm back to CBP officials' separation of Plaintiff families. (FAC ¶¶ 15, 534, 547.) These separations were carried out by government employees pursuant to executive policy. (FAC ¶¶ 45, 59–79.) Had the families remained intact, no foster-case abuse would have occurred. (*See* FAC ¶¶ 534, 547.)

At this stage in the proceedings, Plaintiffs' allegations are sufficient to preclude dismissal on the basis that an entity other than the United States caused the alleged harm. *See Wolfe*, 392 F.3d at 362 (stating that at motion-to-dismiss stage, court "assume[s] [plaintiff]'s allegations to be true and draw all reasonable inferences in his favor"). All three of Plaintiffs' causes of action—IIED, negligence, and loss of child's consortium—arise from the government's separation of Plaintiff families. "The independent contractor exception . . . has no bearing on the United States' FTCA liability for its own acts or omissions." *Edison*, 822 F.3d at 518. To the extent the United States argues that the contractors caused Plaintiffs' harm, and not the government, this raises a fact-intensive issue inappropriate for resolution at this stage. *See Barrett v. Harris*, 86 P.3d 954, 958 (Ariz. Ct. App. 2004) ("A plaintiff proves proximate cause, also referred to as legal cause, by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred.") (footnote omitted).

*Walding*, on which the United States principally relies, involves circumstances and claims materially distinct from those alleged here. While this case overlaps with *Walding* to the extent Plaintiffs seek damages for the abuse suffered while in custody of the Office of Refugee Resettlement and detained in a facility operated by government contractors, the similarity ends there. 955 F. Supp. 2d at 762. *Walding* plaintiffs sued under the theories

that the government (1) negligently selected and supervised the contractors running the detention facility, and (2) was vicariously liable for the contractors' negligence. *Id.* at 763. Here, in contrast, Plaintiffs seek recovery for harm caused by the government's policy and practice of separating families. *Walding* plaintiffs' harm was untraceable to an overarching executive policy and thus more attenuated to governmental conduct than Plaintiffs' harm, which Plaintiffs allege was proximately caused by the federal government's family-separation policy. (FAC ¶¶ 534, 547.) The United States has failed to prove that the contractor exclusion applies.

## III.  RULE 12(B)(6) FAILURE TO STATE A CLAIM

Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

The United States argues that the following claims are not cognizable under Arizona law: (1) claims based on the separations; (2) claims based on interference with asylum claims; (3) claims based on conditions of confinement; and (4) Plaintiff A.P.F.'s claim based upon the alleged failure to provide timely medical treatment to his son. (Mot. at 2,

25–30).

To prove jurisdiction under the FTCA, Plaintiffs had to prove the existence of a private analogue under state law. This required Plaintiffs to demonstrate that "a private individual under like circumstances would be liable under state law." *Muniz*, 374 U.S. at 153; 28 U.S.C. § 1346(b). The Court has already determined that Plaintiffs demonstrated a private analogue for each cause of action. *See supra* Section II(A)(1). For the same reasons, the Court concludes that Plaintiffs have demonstrated that their claims of IIED, negligence, and loss of child's consortium are cognizable under Arizona law.

## IV. CONCLUSION

Plaintiffs have demonstrated that "a private individual under like circumstances would be liable under state law" for the allegedly tortious conduct committed by the United States. By making this showing, Plaintiffs have also demonstrated that their causes of action are cognizable under Arizona law. The United States has failed to demonstrate that an exception to the FTCA's general waiver of immunity applies. Therefore, the Court has subject-matter jurisdiction and Plaintiffs' three causes of action are cognizable under Arizona law.

**IT IS ORDERED** denying the United States' Motion and Memorandum in Support of the United States' Motion to Dismiss (Doc. 21).

Dated this 27th day of July, 2020.

*Susan R. Bolton*
Susan R. Bolton
United States District Judge