**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| **APF, et al.,** | ) | |
| | ) | No. **CV-20-065-PHX-SRB** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | September 3, 2020 |
| **United States of America,** | ) | 1:49 p.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


**BEFORE:   THE HONORABLE SUSAN R. BOLTON, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC SCHEDULING CONFERENCE**


Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**T E L E P H O N I C**
**A P P E A R A N C E S**

For the Plaintiff:
  Southern Poverty Law Center
  By: **Gillian Brett Gillers**, Esq.
      **James Melvin Knoepp**, Esq.
  P.O. Box 1287
  Decatur, Georgia 30031


  Covington & Burling
  By: **Jason Andrew Carey**, Esq.
      **Matthew Jay Schlesinger**, Esq.
      **Terra White Fulham**, Esq.
  1 City Center, 850 10th Street NW
  Washington, DC 20001

  Coppersmith Brockelman
  By: **Keith Beauchamp**, Esq.
  2800 North Central Avenue, Suite 1900
  Phoenix, Arizona 85004

For the Defendant:
  U.S. Department of Justice
  By: **Philip Davis MacWilliams**, Esq.
  P.O. Box 888
  Washington, DC 20044

1   (Proceedings begin at 1:49 p.m.)
2       THE CLERK:  Civil case 20-065, APF and others versus
3   United States of America.  Time set for telephonic scheduling
4   conference.
5       Counsel, please announce your presence for the record.  13:49:42
6       MS. GILLERS:  This is Gillian Gillers from the
7   Southern Poverty Law Center.
8       MS. FULHAM:  This is Terra Fulham from Covington &
9   Burling for plaintiffs.
10      MR. SCHLESINGER:  This is Matt Schlesinger from  13:49:58
11  Covington & Burling for plaintiffs.
12      MR. CAREY:  This is Jason Carey from Covington &
13  Burling for plaintiffs.
14      MR. BEAUCHAMP:  Good afternoon, Your Honor, Keith
15  Beauchamp from Coppersmith Brockelman, also for the plaintiffs.  13:50:10
16      MR. KNOEPP:  James Knoepp from the Southern Poverty
17  Law Center for the plaintiffs.
18      MR. MACWILLIAMS:  This is Phil MacWilliams, Department
19  of Justice, for defendant United States.
20      THE COURT:  Sounds like you're out numbered,  13:50:33
21  Mr. MacWilliams.
22      MR. MACWILLIAMS:  Yes, Your Honor.  That always seems
23  to be the case.
24      THE COURT:  Who will be speaking on behalf of
25  plaintiffs during this case management conference?  13:50:43

1          MS. GILLERS: I will. This is Gillian from the
2   Southern Poverty Law Center.
3          THE COURT: This is the time set for our case
4   management conference. I have reviewed the Joint Case
5   Management Report.
6          We're going to try to enter at least some parts of a
7   scheduling order today, but I wanted to talk about a couple of
8   overarching issues that are raised by the Joint Case Management
9   Report, specifically as it relates to the coordination of this
10  case in terms of discovery and disclosure with the other case
11  that I have, CM versus United States, which is 19-5217.
12         I've granted an order requesting the transfer of this
13  case to this division so that they could progress together and
14  in substantially the same way.
15         Clearly in this case the discovery and disclosure that
16  the Government is going to make -- be making, that is not
17  specific to the individual plaintiffs, but rather is related to
18  the decisions that were made to have the policy and enforce the
19  policy, and perhaps end the policy, would be the same.
20         Now, I recognize that there may be differences between
21  how one group of plaintiffs' counsel and the other group of
22  plaintiffs' counsel may want to proceed with the prosecution of
23  the case, but I would expect the differences in the
24  Government's disclosure and the discovery sought from the
25  Government to be substantially the same.

1           And as I mentioned in the order, which both of you are
2   aware of, that I entered in connection with the discovery plan
3   that was proposed, which was document 61 in the CM versus
4   United States case, the burden of the documentary discovery
5   falls almost exclusively and not entirely exclusively on the                13:53:30
6   United States.  And that burden is substantial.
7           And so I recognize that the CM -- or that the APF
8   lawyers were not involved in the discussions of the discovery
9   plan that resulted in the Court's adoption of the agreed
10  portions of the plan and the resolution of the -- where they                13:54:00
11  were in disagreement, and you were also not parties to the
12  discussions that resulted in agreement -- largely in an
13  agreement on electronically stored information.  I believe that
14  that should be the starting point for the Government's
15  disclosure and discovery in this case.  And that after that                 13:54:24
16  happens, if there are other specific things that need to be
17  obtained, that that's when the discussion should happen about
18  that.
19          I don't think the Government should have to run
20  entirely separate searches of electronically stored information             13:54:46
21  for these two cases when it comes to the general information
22  that both sides will want to have concerning the policy of
23  family separation.
24          And I think that it's unfortunate that the APF lawyers
25  weren't invited and didn't participate in those discussions                  13:55:12

|   |   |   |
|---|---|---|
| 1 | earlier on, but the situation is that they did not.  And |   |
| 2 | I -- I'll be happy to hear from plaintiffs' counsel about this, |   |
| 3 | but I would like to proceed in this case under a substantially |   |
| 4 | similar order as the one that we are proceeding with in CM |   |
| 5 | versus United States. | 13:55:43 |
| 6 |       That order I think and the -- also allows for there to |   |
| 7 | be additional discussion of additional discovery and |   |
| 8 | disclosure, particularly electronic discovery, after the |   |
| 9 | Government makes its disclosures. |   |
| 10 |       I would also say that it would be a waste of breath | 13:56:03 |
| 11 | for the plaintiffs to argue to take depositions in a way that |   |
| 12 | would be different from this plan.  And I'm particularly |   |
| 13 | thinking about how there was -- the discovery plan in the other |   |
| 14 | case had various stages.  And I specifically ordered resolving |   |
| 15 | a dispute between the parties that current and former heads of | 13:56:37 |
| 16 | federal agencies depositions, as well as any depositions of |   |
| 17 | current and former cabinet level officials or White House |   |
| 18 | officials and advisors would only occur at what would be the |   |
| 19 | sixth stage of discovery in that case. |   |
| 20 |       And again, not resolving the question as to whether or | 13:57:01 |
| 21 | not those depositions can take place and what the standard |   |
| 22 | would be to be able to take those depositions. |   |
| 23 |       And so I would like to hear from plaintiffs' counsel |   |
| 24 | as to why we couldn't proceed in that matter. |   |
| 25 |       I just remembered one other thing.  One of the other | 13:57:22 |

1   things that I disagreed with the defendants about was, after
2   the plaintiffs in CM and similarly in this case explained the
3   number of depositions they wanted initially, the defendant
4   simply said, and whatever that number is, we want the same
5   number.  And I explained in my order that there was no
6   justification and I didn't quite understand how that could
7   possibly be the case.
8           So I did not grant their parity in that number.  I
9   don't know why I would do it at this stage in this case either.
10          So I assume, Mr. MacWilliams, that as you obtain the
11  discovery and disclosure of electronically secured information
12  as agreed to in the CM case, that you were planning to make
13  that simultaneously available to the plaintiffs in this case.
14  Would that be true?
15          MR. MACWILLIAMS:  Yes, Your Honor.  The plan was if
16  there was the same approach with search terms and custodians,
17  there would be simultaneous productions.
18          THE COURT:  Okay.  So I think that -- and I didn't
19  really read that there was a difference in -- or that the
20  plaintiffs in this case were suggesting that it should come
21  sooner or at a different time frame.
22          So one thing that we know, from what Mr. MacWilliams
23  just said, is that the APF plaintiffs will receive the
24  electronically secured information on the same schedule that is
25  set out in the discovery plan and ESI search and disclosure.

CV-20-065-PHX-SRB - September 3, 2020

1    Explain to me why I should do something materially
2  different, Miss Gillers.
3             MS. GILLERS:  Thank you, Your Honor.
4             And I don't think there should be something materially
5  different.  We accept this agreement, but we do request some                13:59:40
6  modifications.
7             And I think it's important to appreciate that even the
8  policy level discovery includes two levels of policies
9  witnesses and custodians.  At one level you have everyone in
10 headquarters in D.C.  At the second level you have the midlevel             13:59:58
11 supervisor.
12            So, for instance, the custodian list in the CM case
13 include 15 -- around 15 people in the Yuma Border Patrol
14 sector, midlevel supervisors who know how the family separation
15 policy played out in that sector.  They may not have had                    14:00:16
16 specific interactions with the plaintiffs, but they understand
17 how the policy plays out.  And that's appropriate in the CM
18 case, because all of the CM plaintiffs were separated in the
19 Yuma Sector.
20            Now in our case four of our families were separated in           14:00:33
21 the Yuma Sector.  Two of our families were separated after
22 presenting at ports of entry in the Tucson Sector.
23            Now, we would request a parity of treatment here, and
24 would request policy level custodians who could speak to the
25 implementation of the family separation policy and practice in              14:00:55

1  the Tucson Sector.
2          An additional point that I'd like to make is that
3  those two families presented at ports of entry.  In the CM case
4  all of the plaintiffs were separated after being apprehended
5  between ports of entry.  Now that's true for four of our
6  families, not two -- for two of our families.
7          We know from the publically available documents that
8  different agencies were involved in the separation of people at
9  ports of entry than those that received between ports.  Between
10 ports of entry it was Border Patrol, at ports of entry it seems
11 to be -- and this will be confirmed in document discovery, it
12 seems to be the Office of Field Operations within CBP.
13         Now this calls for slightly different and I think
14 additional document and depositions discovery, even at the
15 policy level.
16         THE COURT:  What -- what makes you think that they
17 were operating under different types of document --
18 documentation of policy?
19         MS. GILLERS:  Your Honor, yeah --
20         THE COURT:  Are you telling me that you think that the
21 electronically secured information searches are somehow only
22 going to produce information that would be related to people
23 that were apprehended not at ports of entry, and somehow
24 exclude any policy different -- some policy difference for
25 somebody who was -- who arrived at a port of entry and was

1 seeking entry there?

2 MS. GILLERS: Well, they're slightly different
3 custodians. In one case the custodian would be -- and the CM
4 list has the custodians. It has 15 custodians, some Border
5 Patrol in the Yuma Sector. And presumably these custodians or
6 these witnesses are going to be talking to each other about
7 what happens after -- under what circumstances do you separate
8 a family, what happens after the separation, how do you track
9 it. And I think that is going to be -- that may be slightly
10 different sector to sector.

11 We have reason to believe that there wasn't always a
12 loft of guidance from the top, and the way that this policy was
13 rolled out was very disorganized.

14 Now again in terms of any documents --

15 THE COURT: Who is the different custodian that you
16 think is not included within the searches that are going to be
17 done by the Government pursuant to the agreements and the
18 orders in the CM case?

19 MS. GILLERS: Well, we did have a conversation with
20 the Government this week, and the Government agreed to go back
21 and talk to CBP and ICE to determine the custodians that would
22 be unique to our case.

23 But simultaneously I am compiling a list of probable
24 custodians based on our own review of FOIA records obtained for
25 our clients and our review of the public records.

| | | |
|---|---|---|
| 1 | THE COURT: So I guess I don't know what you're | |
| 2 | suggesting. If we haven't identified the custodians, I can't | |
| 3 | exactly enter an order on what additional searches have to be | |
| 4 | done by the Government of different custodians. | |
| 5 | MS. GILLERS: I would request, Your Honor, that you | 14:04:34 |
| 6 | give the parties some time to negotiate additional custodians | |
| 7 | that are relevant to the APF case, and that we meet and confer | |
| 8 | about that and come to a consensus. | |
| 9 | THE COURT: Okay. I think that I agree with you about | |
| 10 | that. | 14:04:53 |
| 11 | But the way I would frame it is this way: I think | |
| 12 | that the parties should meet and confer on a supplemental | |
| 13 | discovery plan. | |
| 14 | So you've seen the ESI agreement, you've seen the | |
| 15 | discovery plan, the agreed part, the disagreed part, and my | 14:05:19 |
| 16 | order. And so I don't want you to go back and come up with all | |
| 17 | of those things again, because of the fact that they would be | |
| 18 | encompassing of all of that, with the exception of plaintiff | |
| 19 | specific discovery. I want you to confer and come up with an | |
| 20 | agreement on supplemental discovery. And if you can agree, I | 14:05:49 |
| 21 | would be delighted. If you are in disagreement, then similar | |
| 22 | to the way it was done in the CM case, you can each set out | |
| 23 | your position as to why this additional supplementary discovery | |
| 24 | is needed. | |
| 25 | I'm not hearing a disagreement about the time frames | 14:06:14 |

1  that have been set out in the discovery plan that was adopted
2  in the CM case.  Would that be correct?
3          MS. GILLERS:  Your Honor, I do have some concern
4  about -- it seems to me that there will be three 30(b)(6)
5  depositions at stage two, and three policy level depositions at        14:06:44
6  stage three under that plan.  And I understand that Your Honor
7  set an initial number of ten policy level depositions.
8          It's not clear to me whether there's six or ten
9  depositions before April, but I would think that ten is
10 significantly too low.  And I understand that Your Honor will          14:07:06
11 entertain requests for additional depositions, but given the
12 magnitude of the record in this case and the number of
13 individuals involved, and the fact that there will be
14 significant efficiencies resulting to the Government through
15 coordination, I would think that additional depositions would         14:07:25
16 be appropriate here.
17         And we would be willing to meet and confer with the CM
18 counsel as well as the Government after receipt of written
19 discovery to try to agree about an appropriate number and time
20 limit.                                                                 14:07:42
21         THE COURT:  That does put in mind what I want to say
22 right now in the form of an order.  And that is that the
23 plaintiffs' counsel in this case and plaintiffs' counsel in the
24 CM case and defense counsel who are common to both cases must
25 be present at all of these common depositions.  And they may          14:08:04

1   not be taken separately in the two cases.

2            So when it comes to these policy level depositions
3   that have been permitted in my order in the CM case, they shall
4   be jointly taken in both cases, and coordinated with
5   plaintiffs' counsel in both cases, so that there is no
6   duplicate deposition taken in these cases.

7            I'm assuming that that was the plan anyway, but since
8   none of these plaintiffs' counsel participated in the earlier
9   discussions with CM counsel and the Government's counsel, I
10  wanted to make that clear on the record that I expect those
11  depositions to be taken in both cases at the same time.

12           So I think that you do need to do what the -- what we
13  did in the other case, which is that I want to give you time to
14  come up with what I have just described as a supplemental
15  discovery plan.  By what date would the parties propose that
16  they submit such a plan to the Court?

17           MS. GILLERS:  I would think we could do that
18  relatively soon, Your Honor.

19           THE COURT:  Thirty days?

20           MS. GILLERS:  That makes sense to me.

21           THE COURT:  What do you think, Mr. MacMillan (sic)?

22           MR. MACWILLIAMS:  That would work fine, Your Honor.
23  Thank you.

24           THE COURT:  Okay.  Today's the 3rd of September.  Let
25  me -- I'm going to give you a specific date.

14:08:33
14:08:59
14:09:30
14:09:50
14:10:02

1    The 5th of October?  October 5th to submit a
2    supplemental discovery plan.  The idea being that I'm not going
3    to enter an -- that this will assume that the discovery plan
4    that is in existence in the other case, to the extent it is not
5    plaintiff specific discovery, will be the plan for this case,
6    to potentially be supplemented upon agreement or upon court
7    order after considering the parties' positions.
8            I just wanted to speak for a minute or two about the
9    specific dates that are set out.  And I didn't have time to
10   check to see if these coordinate with the discovery schedule
11   that we've set up in the other case.
12           Do they, Mr. MacMillan?
13           So, for example, completion of fact discovery by
14   August of next year, expert disclosures in -- beginning in
15   October of 2021, et cetera, do those coordinate with the dates
16   that we established in the other case?
17           MR. MACWILLIAMS:  Well, Your Honor, there's not exact
18   overlap.  Basically this case just, you know, involves the same
19   amount of time as the CM case, just starting a few months
20   later.  So whereas discovery in CM, fact discovery, ends in I
21   think mid June of next year, this would be August.  So
22   everything is bumped back two months.
23           THE COURT:  Okay.  If everything is two months into
24   the future, that's fine.  I just wanted to make sure nothing
25   was earlier.

14:10:34

14:11:09

14:11:27

14:11:52

14:12:06

1    MR. MACWILLIAMS: No. No, Your Honor.

2    THE COURT: Okay. So we'll consider those as part of
3 our case management order.

4    Are there any other issues that we need to discuss
5 today? From the plaintiff?

6    MS. GILLERS: One issue that I wanted to raise, we did
7 send a letter to the defendants with specific identifiable
8 documents in the public record that we would hope to receive
9 through MIDP. And I do understand there is a -- there's a
10 process to search using terms and custodians. But we believe
11 that independent of that there are -- there has been production
12 pursuant to FOIA, to Congress, and there have been documents
13 gathered in the course of governmental investigations that
14 don't require the use of search terms to locate. And we would
15 hope that those would be produced in a more timely manner under
16 MIDP.

17    THE COURT: And I think that when Mr. MacWilliams and
18 I have spoken in the other case that there has been significant
19 gathering of documents not pursuant to electronic search that
20 would encompass the types of documents we're talking about.

21    Am I remembering that correctly, Mr. MacWilliams?

22    MR. MACWILLIAMS: Yes, Your Honor. There's been some
23 productions in CM.

24    And what plaintiffs are talking about is ongoing. And
25 so, you know, the type of documents they're suggesting we look

1  for, you know, falls within what we're -- have been doing and
2  will continue to do.  I can't tell you it's all relevant to
3  this case or wouldn't be objectionable, but it's part of the
4  ongoing process to be looking for that kind of stuff, beyond
5  running search terms across emails and the like.  There's other
6  avenues of discovery that we're pursuing for this kind of stuff
7  the plaintiffs are referring to.
8         THE COURT:  Okay.  Does that satisfy your concern,
9  Miss Gillers?
10        MS. GILLERS:  Yes.  Thank you, Your Honor.
11        THE COURT:  Is there anything else?
12        MS. GILLERS:  I don't believe so.
13        My understanding is that we will -- the supplemental
14 discovery plan will include both plaintiff specific discovery
15 and any supplemental policy level policy discovery, and that
16 Your Honor will defer a ruling on those issues until we submit
17 that plan; is that correct?
18        THE COURT:  Yes.  And to the extent that -- I think
19 I've already referred to how I resolved one disagreement with
20 respect to certain high level official depositions.  If you
21 start having the same disagreements that I resolved in my order
22 in CM, please don't, look at that order instead, because that's
23 probably how the resolution will also come about.
24        MS. GILLERS:  I understand.  Thank you.
25        THE COURT:  Mr. MacWilliams, did you want to raise

—— CV-20-065-PHX-SRB - September 3, 2020 ——

1  anything else with me?

2          MR. MACWILLIAMS: Yes, Your Honor. I have a couple
3  follow-up questions.

4          The first one is regarding the policy level
5  depositions. What I'm not sure about -- in CM, at least as
6  part of the order that was entered, they start with ten policy
7  depositions. And you said you want policy depositions jointly
8  taken. So what I'm not sure on, does that mean they all have
9  to be jointly taken, there's ten total for both cases? Or just
10 the ones that we decided jointly?

11         Our position in the report was, look, it's the same
12 information, should be the same witnesses. Let's not do ten
13 for this case and ten for CM and it comes up with 20 total.
14 It's the same subject matter, it should be ten period. And
15 that's what I'm looking for some clarification on.

16         THE COURT: I'm going to agree with you on that. This
17 isn't a way to get -- when I put the limit of ten, it wasn't
18 with the idea that then I'd give the other case ten more and so
19 in both cases then you'd end up with 20. Because I could see
20 where between APF and CM you might come up with 20 that you
21 want to depose, but if you both want to be there and both want
22 to depose them, then that's one in each case totaling ten, it's
23 not 20.

24         So I agree with you on that, Mr. MacWilliams, that
25 unless there's a policy level person who is not common to both

14:15:33
14:15:58
14:16:16
14:16:39
14:17:02

1  cases, that would be the only circumstance of one that would be
2  kind of, I guess, number 11.
3          And that's part of what I think these plaintiffs want
4  to talk to you about in terms of coming up with the discovery
5  plan, is the potential suggestion that because two of these               14:17:25
6  plaintiffs surrendered themselves at a port of entry in the
7  Tucson Sector rather than being apprehended between ports of
8  entry in the Yuma Sector, that maybe there might be some policy
9  level person who is different in this case than in the other
10 case where everyone was apprehended in the Yuma Sector between            14:17:52
11 ports of entry.
12         Does that satisfy your query?
13         MR. MACWILLIAMS:  It does, Your Honor.  Thank you.
14         THE COURT:  Okay.
15         All right.  Then I will enter a very limited case               14:18:10
16 management order based on the dates that you've set out in your
17 Joint Case Management Report that will also include that a
18 discovery plan -- a supplemental discovery plan be provided to
19 the Court by October 5th.
20         Thank you very much.                                             14:18:31
21    (Proceedings concluded at 2:18 p.m.)
22
23                            -oOo-
24
25

C E R T I F I C A T E

I, CANDY L. POTTER, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 14th day of September, 2020.


s/Candy L. Potter_____
Candy L. Potter, RMR, CRR