Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
(602) 381-5490
Phoenix, AZ 85004
kbeauchamp@cblawyers.com
agaona@cblawyers.com

[Additional Counsel Listed on Signature Page]

Counsel for A.P.F. Plaintiffs

Philip D. MacWilliams
Theodore W. Atkinson
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station
P.O. Box 888
Washington, D.C. 20044
(202) 616-4285
Phil.MacWilliams@usdoj.gov
Theodore.Atkinson@usdoj.gov

Counsel for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV-19-05217-PHX-SRB<br><br>**JOINT STATUS REPORT** |
| A.P.F. on his own behalf and on behalf of his minor child, O.B., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV-20-00065-PHX-SRB |

{00532951.3 }

In accordance with the Court's direction during the status conference on December 10, 2020, and the Court's orders regarding the same (*C.M.* ECF No. 81; *A.P.F.* ECF No. 70), the parties submit this Joint Status Report.

## **Plaintiffs' Position**

Plaintiffs propose that Defendant complete its production pursuant to the Mandatory Initial Discovery Pilot ("MIDP") by **April 2, 2021**. As detailed below, after applying the Technology Assisted Review ("TAR") process, Defendant has less than 90,000 policy-level documents to review from the one million documents it estimated would be collected. An April 2 deadline gives Defendant more than nine weeks from the completion of the TAR review process to complete its productions, and is a three-month extension of the original deadline set by the Court.[1]

Policy Level Custodian Documents Collected Pursuant to MIDP

On December 9, 2020, the parties submitted a Joint Status Report to the Court. *See C.M.* ECF No. 78; *A.P.F.* ECF No. 69. In that Report, the parties informed the Court that Defendant had collected and was in the process of reviewing documents from the Department of Justice ("DOJ") and that, given the volume of documents collected from the other agencies, the parties intended to use the TAR process to reduce the number of documents for review from agencies other than DOJ. *See id.* at 5. At that time, Defendant stated that it anticipated that approximately 1 million documents would be included in the TAR process, and that after the TAR process was run and "[t]o the extent such a date can be estimated at this point, the United States proposes a deadline to produce substantially all such ESI by April 30, 2021." *Id.* at 11-12. Plaintiffs, by contrast, proposed a substantial completion deadline of February 12, 2021. *See id.* at 7.

After reviewing the parties' proposals, the Court ordered Defendant to produce the documents collected from DOJ by December 31, 2020 (for non-White House

---

[1] That deadline is also reasonable in the context of this case considering that it is one year from the date that the Court denied Defendant's motion to dismiss in *C.M. See C.M.* ECF No. 31 (March 30, 2020).

communications) and January 31, 2021 (for White House communications), and that, with respect to the documents from the remaining agencies, "the TAR validation process . . . be completed no later than January 15, 2021" at which point "Defense counsel will . . . be in a position to advise how long it will take Defense counsel to complete the production with a log and a realistic deadline by when plaintiffs can expect to receive the documents on a rolling basis." Minute Entry dated 12/10/2020 (*C.M.* ECF No. 81; *A.P.F.* ECF No. 70).

      Defendant completed its production of the DOJ documents in accordance with the Court's schedule and, on January 15, 2021, the parties conferred regarding the TAR validation process.[2] Defendant informed Plaintiffs that it had made substantial progress on the validation, but that it required more time to complete the process. Plaintiffs consented to the additional time, and on January 26, 2021, Defendant provided Plaintiffs with the results of the completed TAR validation. Defendant informed Plaintiffs that TAR identified 89,708 documents, inclusive of attachments, as having a high likelihood of being relevant.[3] This number likely will be reduced after the documents are further de-duplicated.[4]

---

[2] Although the DOJ productions were made in a timely fashion, the documents are heavily redacted and the privilege logs accompanying the productions are extensive. Based on their review to date, Plaintiffs believe the redactions are significantly overbroad and that many of Defendant's privilege assertions are improper, and sent a letter to Defendant on January 29 detailing their initial concerns. The parties will meet and confer in good faith but it is likely that the parties will seek the Court's guidance in resolving the privilege issues in the near future.

[3] In addition to the policy documents run through the TAR process, Plaintiffs also expect Defendant to review some number of documents that were excluded from the TAR process. Plaintiffs have asked Defendant to provide additional information and a plan to review certain categories or samples of these documents, which Defendant has indicated were not conducive to a TAR analysis. Defendant has not yet provided Plaintiffs with its analysis of these documents or with a plan to sample these documents for relevance.

[4] Defendant's production to date has contained a large number of duplicates. At Plaintiffs' suggestion, the parties are discussing potential methods to further de-duplicate Defendant's review universe. Plaintiffs are optimistic that the parties will be able to come to an agreement to further reduce Defendant's review universe through a mutually acceptable de-duplication process, and are awaiting the results of an initial de-duplication test from Defendant.

The number of documents to be reviewed by Defendant is a very small portion of the 1 million documents Defendant apparently collected. *See* ECF No. 78, at 11. Nevertheless, Defendant now requests that the Court set a substantial completion deadline of July 31, 2021 for the production of ESI—three months beyond the estimate Defendant provided to the Court and Plaintiffs in December, and seven months beyond the substantial completion deadline originally agreed to by the parties and ordered by the Court. *See id.* at 12; ECF No. 61 at 5 ("substantially all of the ESI production shall be complete by December 31, 2020"); *see also A.P.F.* ECF No. 56 at 4; *A.P.F.* ECF No. 69 at 12.

Plaintiffs' position is that Defendant's request for an additional six months to complete production of ESI is unreasonable. During a meet and confer on January 27, Defendant's counsel stated that Defendant would need six months to substantially complete the production because the documents will require multiple levels of review before they can be produced, including as many as four or five levels of review for interagency communications. This level of review appears excessive, particularly given that the Court has entered a protective order and a claw back order under Federal Rule of Evidence 502(d). *See, e.g.*, *Garcia Ramirez v. U.S. ICE* (D.D.C. Feb. 15, 2019), No. 18-cv-508, ECF. No. 111 at 2, 4-6 (noting that a "'line-by-line review of every single document by two levels of people' was 'a waste of resources' for an agency [DHS] purportedly 'strapped for resources,'" and that "'two layers of human review' for privilege is 'highly unnecessary,'" and ordering production of more than 17,000 documents in one week, recognizing the protection afforded by a Rule 502(d) agreement).

Based on Defendant's statements regarding the document totals at issue, Plaintiffs propose **April 2, 2021** as the substantial completion date—more than nine weeks after the completion of the TAR review process, and three months beyond the original deadline set by the Court. In *Al Otro Lado v. Wolf*, where the government estimated that "there may be as many as one million documents that Defendant will

need to review" using TAR, the court set deadlines for complete production within approximately 10 weeks of the court's order, and a deadline for production from five priority custodians within 30 days. *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC (S.D. Cal. Sept. 9, 2019), ECF No. 288, at 1-2; Joint Motion on Plaintiffs' Request to Compel Government's Timely Production of Documents at 25, *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC (S.D. Cal. Aug. 30, 2019), ECF No. 284. In addition, Plaintiffs request that Defendant be ordered to make ESI productions on a rolling basis, at least weekly, and that the parties be required to file a Joint Status Report informing the Court of the status of the productions on **March 1, 2021**.

Plaintiffs' October 30, 2020 Requests for Production of Documents

Defendant states that its timeline for production is affected by Plaintiffs' Requests for Production of Documents ("Plaintiffs' Document Requests"). *See infra* at 11-12. It is Plaintiffs' position that the documents requested via Plaintiffs' Document Requests should not delay the production timeline.

Plaintiffs' Document Requests were prompted by an October 6, 2020 *New York Times* article titled "'We Need to Take Away Children,' No Matter How Young, Justice Dept. Officials Said.*"*[5] Through that reporting, Plaintiffs learned for the first time that "[t]he Justice Department's top officials were 'a driving force' behind the policy that spurred the separation of thousands of families, many of them fleeing violence in Central America and seeking asylum in the United States" and that DOJ's Office of the Inspector General ("OIG") had investigated the Department's role. *See id.* According to the reporting, the U.S. Attorneys along the southwest border with Mexico pushed back against a policy of prosecuting parents and separating them from their children, but Attorney General Jeff Sessions and Deputy Attorney General Rod Rosenstein nonetheless required the U.S. Attorneys to do so, regardless of the age of

---

[5] Michael D. Shear, Katie Brenner, & Michael S. Schmidt, *'We Need to Take Away Children,' No Matter How Young, Justice Dept. Officials Said*, N.Y. TIMES (Oct. 6, 2020), available at https://www.nytimes.com/2020/10/06/us/politics/family-separation-border-immigration-jeff-sessions-rod-rosenstein.html.

{00532951.3}                                  5

the children. *See id.* The reporting also revealed that the OIG's draft report of its investigation found that "[t]he department's single-minded focus on increasing prosecutions came at the expense of careful and effective implementation of the policy, especially with regard to prosecution of family-unit adults and the resulting child separations[.]" *See id.*

Despite the clear relevance of this information, Defendant did not identify Rod Rosenstein or any of the U.S. Attorneys who objected to the policy, such as John Bash and Elizabeth Strange, as persons likely to have relevant, discoverable information in its initial or supplemental MIDP responses or on its proposed custodian list for ESI discovery. Nor did Defendant identify as relevant documents collected by DOJ in connection with the OIG's investigation or communications between the U.S. Attorneys along the southwest border and DOJ headquarters. Accordingly, on October 30, 2020, *C.M.* Plaintiffs issued two Requests for Production of Documents seeking documents relating to the OIG's draft report, including all documents "relied upon or cited in the Draft Report or considered in drafting the Draft Report." On November 4, 2020, *A.P.F.* Plaintiffs issued substantively identical requests.

On November 30, 2020, Defendant served *C.M.* Plaintiffs with its objections to Plaintiffs' Document Requests.[6] On January 14, 2021, the OIG released its final report (the "OIG Report") and on January 15, the parties had a meet and confer to discuss Plaintiffs' Document Requests and Defendant's objections thereto. The parties are working together in good faith to reach an agreement about the documents that will be produced in response to Plaintiffs' Document Requests. In an effort to facilitate and narrow Plaintiffs' original request for documents relied upon or cited in the OIG Report, after the OIG Report was made public, Plaintiffs provided Defendant with a list of documents cited in the OIG Report or considered in drafting that report that Plaintiffs seek. Defendant has informed Plaintiffs that it will need to review

---

[6] Defendant served *A.P.F.* Plaintiffs with substantively identical objections on December 4, 2020.

{00532951.3}                                6

approximately 27,000 emails that were previously collected by DOJ in connection with the OIG investigation.

Although Plaintiffs are hopeful that the parties will be able to reach agreement on the documents that must be reviewed and produced pursuant to Plaintiffs' Document Requests, Plaintiffs do not agree with Defendant's assertion that Defendant needs additional time to complete its MIDP production because Defendant also needs to respond to Plaintiffs' Document Requests. The information sought in the Document Requests should have been included in Defendant's MIDP disclosures and the relevant DOJ custodians should have been identified in Defendant's ESI custodian list. Defendant's failure to satisfy its MIDP obligations—such that Plaintiffs were not informed of DOJ's central role as a "driving force" behind the family separation policy until the public reporting of that role in the October 6 *New York Times* article—should not excuse Defendant from producing documents on a timely basis. Moreover, the documents Plaintiffs request have already been collected by DOJ in connection with the OIG Report, and do not require Defendant to perform additional searches. Finally, when Defendant agreed to—and the Court ordered—a December 31 deadline for substantial completion of MIDP production, Defendant had already agreed to 25 requests for production per side. *C.M.* ECF Nos. 60 at 9, 61 at 5. The service of these contemplated document requests should not now justify a seven-month extension for Defendant's MIDP production. As such, Plaintiffs reiterate their request that Defendant be required to complete its document productions by April 2.

**Defendant's Position**

In *C.M. v. United States*, Case No. 2:19-cv-05217, the parties submitted a Joint Discovery Plan (*C.M.* ECF 60), which the Court adopted for *C.M.* and *A.P.F. v. United States*, Case No. CV-20-00065-PHX-SRB (*C.M.* ECF 61; *A.P.F.* ECF 44, 56). The Joint Discovery Plan sets forth several stages of discovery and when they are to occur. Stage 1 is the period for production of electronically-stored information (ESI)

{00532951.3}                                    7

and written discovery requests.  The Court ordered that substantially all of the ESI production was to be complete by December 31, 2020.  (*C.M.* ECF 61).

In November 2020, the United States filed a status report regarding the status of ESI discovery in these actions, alerting the Court to the challenges presented by the high volume of ESI and the need for an extension of the December 31, 2020 deadline to produce substantially all of the ESI, and requesting a status conference on the matter.  (*C.M.* ECF 69; *A.P.F.* ECF 61).

A status conference was held on December 3, 2020.  (*C.M.* ECF 75; *A.P.F.* ECF 67).  The Court continued the status conference to December 10, 2020, and ordered the parties to file a joint status report by December 9, 2020 stating their respective positions regarding the production of ESI.  (*Id.*)

On December 9, 2020, the parties filed a joint status report. (*C.M.* ECF 78; *A.P.F.* ECF 69).  As noted in that joint status report, the parties agreed to the use of Technology Assisted Review (TAR) for certain "policy-level" ESI.  (*Id.*)

The status conference continued on December 10, 2020, and the Court ordered the production of certain categories of ESI on or before specific dates.  (*C.M.* ECF 81; *A.P.F.* ECF 70).  In accordance with the Court's order, the United States produced (1) the Department of Justice ("DOJ") ESI, excluding documents containing or reflecting communications with the White House, and an accompanying privilege log, on December 31, 2020;[7] (2) the Plaintiff-specific ESI (via rolling productions) on and before December 31, 2020; and (3) the DOJ ESI containing or reflecting

---

[7] The order stated that such ESI was to be produced by January 31, 2021.  However, in accordance with the Court's direction from the bench at the status conference, the United States produced the ESI by December 31, 2020. (*C.M.* ECF 81; *A.P.F.* ECF 70).

Plaintiffs' statement that the ESI produced to date contained "a large number of duplicates" requires clarification.   ESI is de-duplicated in accordance with the parties' Agreement Regarding The Format For Production of Documents And Related Matters ("ESI Protocols") (*C.M.* ECF 60-1).   Insofar as Plaintiffs are referencing documents containing the same textual content – often referred to as textual near duplicates – the parties are in discussions regarding whether, and to what extent, such documents can be addressed for future productions.

{00532951.3}                                  8

communications with the White House, and an accompanying privilege log, on January 15, 2021.[8]

Furthermore, with respect to the remaining "policy-level" ESI, the Court ordered the TAR validation process to complete January 15, 2021, following which counsel for the United States would be in a better position to propose a deadline for production of the ESI. (*C.M.* ECF 81; *A.P.F.* ECF 70).

Following the December 10, 2020 status conference, the United States commenced the TAR training or "active learning" phase of the TAR process.[9] On January 13, 2021, the United States performed the validation test, based on which it was determined that additional training should continue. Following additional training, the validation test was again performed on January 25, 2021, based on which the United States determined that the training or "active learning" phase was complete. As a result of this process, there are approximately 90,000 documents to be reviewed during the human review stage for responsiveness, privilege, and confidentiality.

The United States proposes a deadline for the substantial completion of ESI discovery of July 31, 2021, which provides the United States six months for the review and production, on a rolling basis, of the ESI.[10] The United States takes

---

[8] The order did not specify when such documents were to be produced, noting that issues of executive privilege were to be addressed at a later date. But the United States produced such documents in accordance with the Court's direction from the bench to produce this sub-set of DOJ ESI by January 31, 2021. (*C.M.* ECF 81; *A.P.F.* ECF 70).

[9] Briefly, and as noted in the United States' position in the December 9, 2020 joint status report, TAR involves a multi-step process, including a training phase and document review phase. During the training phase, subject matter experts (SMEs) (*i.e.*, attorney reviewers) code documents for responsiveness, and the active learning system presents the SMEs with additional documents to code for responsiveness. It is through this process that the active learning system is trained to rank documents according to their likelihood of being responsive. The training phase can be determined to be complete once certain tests are performed to validate the active learning process. When the training phase is complete, the human review phase can commence for responsiveness, confidentiality, and privilege.

[10] On January 23, 2021, the United States began producing to Plaintiffs documents identified as responsive during the TAR process.

seriously its obligation to timely complete its review and production of ESI in these cases, and submits that the proposed deadline provides for a realistic, albeit still very challenging, timetable in which to substantially complete ESI production. The proposed deadline is based on careful considerations of the volume of ESI, the complexity of this discovery, and available resources.

In its order continuing the December 3, 2020 status conference and ordering the submission of a joint status report, the Court ordered counsel for the United States to be prepared to advise the Court of a proposed timeline for the completion of its review of the ESI. (*C.M.* ECF 75; *A.P.F.* ECF 67). Accordingly, the United States stated: "Because of the uncertainties explained above regarding the time necessary for the training phase and the volume of documents to be part of the review phase, a reasonable timeframe for the production of substantially all ESI is speculative at this point. To the extent such a date can be estimated at this point, the United States proposes a deadline to produce substantially all such ESI by April 30, 2021." Of course, this was merely an estimate, and the United States is now in a far better position to assess the additional necessary time for the review of the ESI now that it knows the volume of ESI to be reviewed, and has obtained greater insight into the nature of the documents as a result of the document review performed during the TAR training process. The volume of ESI to be reviewed remains substantial, which in itself warrants affording significant time for review and production.[11] Moreover, the nature of the ESI presents additional complexities not often present in most civil litigation. In particular, as the Court is aware, the policy-related discovery is, to a large extent, directed at high-level (included Cabinet level) governmental officials and

---

[11] The United States does not agree with Plaintiffs' characterization of the review process as requiring that the documents undergo "four or five levels of review" prior to production. Furthermore, pursuant to the ESI protocols that the parties agreed to, productions are to occur on a rolling basis, but there is no requirement therein that such productions are to occur according to a specific schedule. (*C.M.* ECF 60-1). The United States intends to make rolling productions as expeditiously as possible, but a requirement of weekly productions is not consistent with the parties' agreement or necessarily feasible.

{00532951.3}   10

supervisory employees, seeking documents relating to their policy-making functions and the implementation of policies. In addition, the ESI includes inter-agency communications, which necessitates coordination among multiple agencies and components in order to evaluate and consistently apply privilege assertions. Likewise, responsive documents containing or reflecting communications with the White House necessitates further review by the White House, as was the case with the DOJ ESI.

These documents require a very careful and coordinated review for and treatment of privileged and confidential information. Thus, like the United States' experience to date with policy-level ESI for these actions, the upcoming document review will be more time-consuming than is typical for most civil tort cases. The existence of a claw back order should not be grounds to impose a timeline that does not allow sufficient opportunity for the review of documents for privileged information prior to production. Not only would such an approach inappropriately permit an opposing party to obtain privileged materials, it would inject greater inefficiencies into the discovery process given the potential for disputes, and need for court involvement, regarding efforts to claw back privileged materials.

Furthermore, given Plaintiffs' stated intention to challenge the United States' assertions of privilege, the period for document review and production must afford sufficient time for the parties to address those challenges and, if necessary, time for the court to resolve any issues that the parties are unable.

Finally, as noted above, Stage 1 discovery is not limited to the ESI, but also written discovery propounded by the parties. To date, there are two pending requests for production to which the United States must continue to devote its limited resources, while simultaneously conducting its review and production of the ESI. Thus, the time necessary to complete the review and production of all discovery within Stage 1 involves considerations beyond just the volume and complexity of the ESI itself.

1  In referencing the requests for production, the United States is simply pointing out that when evaluating the amount of time necessary for review and production of the ESI, there are several factors to consider beyond the ESI itself, including the competing priorities presented by other discovery activity.  The United States respectfully submits that this joint status report is not the proper time or vehicle for the parties to bring before the Court any potential issues or disagreements relating to other discovery or, more generally, the proper scope of discovery in these cases. Therefore, in response, the United States notes its strong disagreement with any assertion that the discovery sought in the requests for production already should have been part of the MIDP process, and submits that to the extent there are or will be disagreements among the parties regarding discovery they cannot resolve, those issues can be brought to the Court at the appropriate time.

For these reasons, the United States respectfully proposes July 31, 2021 as the deadline for the substantial completion of the production of ESI.

Respectfully submitted this 1st day of February, 2021.

COPPERSMITH BROCKELMAN PLC

By s/ Keith Beauchamp
   Keith Beauchamp
   D. Andrew Gaona

SOUTHERN POVERTY LAW CENTER
   Norma Ventura*
   Gillian Gillers*
   James Knoepp*
   P.O. Box 1287
   Decatur, GA 30031
   Telephone: (404) 521-6700
   norma.ventura@splcenter.org
   gillian.gillers@splcenter.org
   jim.knoepp@splcenter.org

SOUTHERN POVERTY LAW CENTER
   Paul R. Chavez*
   P.O. Box 370037
   Miami, FL 33137
   Telephone: (786) 347-2056
   paul.chavez@splcenter.org

COVINGTON & BURLING LLP
   Matthew Schlesinger*
   Jason Carey*
   Terra White Fulham*
   One City Center, 850 Tenth Street, NW
   Washington, DC 20001-4956
   Telephone: (202) 662-5581
   mschlesinger@cov.com
   jcarey@cov.com
   tfulham@cov.com

COVINGTON & BURLING LLP
   Swati R. Prakash*
   The New York Times Building
   620 Eighth Avenue
   New York, NY 10018-1405
   Telephone: (212) 841-1174
   sprakash@cov.com

COVINGTON & BURLING LLP
   Jessica R. Hanson*
   1999 Avenue of the Stars, Suite 3500
   Los Angeles, CA 90067-4643
   Telephone: (424) 332-4800
   jhanson@cov.com

[*Admitted pro hac vice]

*Attorneys for A.P.F. Plaintiffs*

U.S. DEPARTMENT OF JUSTICE

By <u>s/ Phil MacWilliams (w/ permission)</u>
   Philip D. MacWilliams
   Theodore W. Atkinson

*Attorneys for the United States of America*