1   Keith Beauchamp (012434)
    D. Andrew Gaona (028414)
2   COPPERSMITH BROCKELMAN PLC
    2800 N. Central Avenue, Suite 1900
3   Telephone: (602) 381-5490
    Phoenix, AZ 85004
4   kbeauchamp@cblawyers.com
    agaona@cblawyers.com
5
    *Counsel for A.P.F. Plaintiffs*
6
    [*Additional Counsel for Plaintiffs Listed on Signature Page*]
7

8                  **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF ARIZONA**

10  | C.M., on her own behalf and on behalf of her minor child, B.M., et al., | No. CV-19-05217-PHX-SRB |
11  | | |
    | Plaintiffs, | **MOTION AND MEMORANDUM** |
12  | | **IN SUPPORT OF PLAINTIFFS'** |
    | v. | **MOTION TO COMPEL** |
13  | | **PRODUCTION OF RELEVANT** |
    | United States of America, | **DOCUMENTS** |
14  | | |
    | Defendant. | |
15  | | **(Oral Argument Requested)** |
16
    | A.P.F. on his own behalf and on behalf of his minor child, O.B., et al., | No. CV-20-00065-PHX-SRB |
17  | | |
18  | Plaintiffs, | |
19  | v. | |
20  | United States of America, | |
21  | Defendant. | |
22

23          Plaintiffs seek a subset of the documents that the U.S. Department of Justice

24  ("DOJ") Office of Inspector General ("OIG") considered and relied upon in drafting a

25  report which examines DOJ's implementation of its Zero Tolerance Policy and DOJ's

26  role as a "driving force" in the separation of immigrant families at the Southwest

27  border in 2017 and 2018 (the "OIG Report").  On March 11, 2021, the Court ordered

28  the government to produce all documents "specifically referenced" in the OIG Report.

{00539628.1 }

In this motion, Plaintiffs seek to compel the production of additional documents relied upon by the OIG, which were explicitly referenced in an appendix to the report.  The documents Plaintiffs seek include, among other things, written responses to a draft OIG Report from key officials Gene Hamilton, Rod Rosenstein, and the Office of the Deputy Attorney General ("ODAG"), policy and guidance documents about Zero Tolerance and family separations, and conference and meeting agendas, summaries, and notes.

The bases for the government's refusal to produce these documents— relevance, burden, and privilege—lack merit.  The documents formed the basis for OIG's examination and criticisms of the government's decision to separate families, and thus are highly relevant to Plaintiffs' claims of intentional infliction of emotional distress and negligence, as well as to the government's asserted defenses.  The government has already collected the documents, thus minimizing any burden concerns, and the government's blanket privilege assertions lack the specificity and substantiation required under the Federal Rules.

Plaintiffs submit with this Motion an exhibit, pursuant to LR Civ 37.1(a), that sets forth the discovery request, the answer received, and the reasons the government's answers are deficient.  *See* Ex. 1, LR Civ 37.1(a) Attachment.

### BACKGROUND & PROCEDURAL HISTORY

These actions seek damages for asylum-seeking families forcibly separated by the United States, and assert claims of intentional infliction of emotional distress and negligence under the Federal Tort Claims Act.[1]  Plaintiffs in both cases were separated from their respective children pursuant to a policy and practice developed by high-ranking government officials to intentionally traumatize migrant families, in an effort to deter others from seeking asylum in the United States.  *See C.M.* Compl., at ¶ 1, ECF No. 1; *A.P.F.* Am. Compl. at ¶¶ 20–21, 50, ECF No. 34.  This practice

---

[1] *A.P.F.* Plaintiffs also bring related claims for loss of child's consortium.

{00539628.1 }

1    began in 2017 and was expanded after the DOJ's announcement of the Zero

2    Tolerance Policy in 2018.  *C.M.* Comp. ECF 1 at 22–26; *A.P.F.* Am. Compl. ECF 34

3    at ¶¶ 59–65.  All *C.M.* Plaintiff families and four of the six *A.P.F.* Plaintiff families

4    were separated during the period in which the Zero Tolerance Policy was in effect.

5    *C.M.* Compl. ¶ 5, ECF No. 1; *A.P.F.* Am. Compl. at ¶¶ 86–115, 182–204, 205–273,

6    308–21, ECF No. 34.

7         Plaintiffs learned about the DOJ OIG Report when it was in still draft form,

8    from an October 6, 2020 *New York Times* article titled "'We Need to Take Away

9    Children,' No Matter How Young, Justice Dept. Officials Said.*"*[2]  Through that

10   reporting, Plaintiffs learned for the first time that "[t]he Justice Department's top

11   officials were 'a driving force' behind the policy that spurred the separation of

12   thousands of families," and that DOJ's OIG had investigated and issued a draft report

13   concerning DOJ's role in these separations.  *See id.*  Despite the clear relevance of

14   this information, the government did not identify the documents DOJ collected in

15   connection with the OIG's investigation in its initial or supplemental Mandatory

16   Initial Discovery Pilot Project ("MIDP") responses.

17        On October 30, 2020, *C.M.* Plaintiffs issued a Request for Production of

18   Documents ("Request") seeking documents relating to the OIG Report, including all

19   documents "relied upon or cited in the Draft Report or considered in drafting the Draft

20   Report."  *See* Ex. 1 ¶ 1; Ex. 2, Pls.' 1st Sets of Requests for Production of Documents

21   to United States.[3]  On November 30, 2020, Defendant served *C.M.* Plaintiffs with its

22   objections and responses to Plaintiffs' Request.[4]  *See* Ex. 1 ¶ 2; Ex. 3, Def.'s Resps. &

23   Objs. to Pls.' 1st Sets of Requests for Production of Documents.  The government

24

25   [2] Michael D. Shear, Katie Brenner, & Michael S. Schmidt, *'We Need to Take Away Children,' No Matter How Young, Justice Dept. Officials Said*, N.Y. Times (Oct. 6, 2020), https://www.nytimes.com/2020/10/06/us/politics/family-separation-border-
26   immigration-jeff-sessions-rod-rosenstein.html.

27   [3] On November 4, 2020, *A.P.F.* Plaintiffs issued a substantively identical request.

     [4] Defendant served *A.P.F.* Plaintiffs with substantively identical objections on
28   December 4, 2020.

1    objected, in part, on the ground that the Request asked for all documents relied upon

2    or cited in the Draft Report regardless of whether the documents were relevant to the

3    claims and defenses in this action.  *Id.*

4         The OIG publicly released the final report on January 14, 2021.  *See* Ex. 4,

5    Dep't of Justice, Off. of Inspector Gen., Review of the Department of Justice's

6    Planning and Implementation of Its Zero Tolerance Policy and Its Coordination with

7    the Departments of Homeland Security and Health and Human Services (Jan. 2021),

8    https://oig.justice.gov/sites/default/files/reports/21-028_0.pdf.  On January 15, 2021,

9    the parties had a telephonic conference, in which Plaintiffs offered to narrow their

10   Request now that they could identify the specific documents relied upon or cited in

11   the report that were most relevant to the claims and defenses in this action.  *See* Ex. 5,

12   LR Civ 7.2(j) Certification of Counsel.

13        On January 26, 2021, Plaintiffs provided two lists of requested documents

14   related to the OIG Report (the "narrowed Request").  In the first list, Plaintiffs

15   identified seventy-one documents cited in the body and footnotes of the OIG Report.

16   *See* Ex. 6, Email from E. Walsh to P. MacWilliams et al., Re: Plaintiffs' RFPs (Jan.

17   26, 2021).  Plaintiffs' second list identified a subset of the materials described in

18   Appendix 1 of the OIG Report, which were reviewed or created by the OIG in

19   connection with drafting its report.  *See id.* (identifying categories of Appendix 1

20   documents requested); *see also* Ex. 4 at 71–73.[5]

21        By email on February 12, 2021 and during a February 26, 2021 meet and

22   confer, the government confirmed its refusal to produce any documents specifically in

23   response to the narrowed Request, on the grounds that (1) the documents sought are

24   not relevant to these cases; (2) the requests are burdensome and not proportional to

25   the needs of the cases; (3) the requested documents are duplicative of the

26   _____

27   [5] Plaintiffs also withdrew part of their original Request, which sought
     communications concerning the draft Report and public reporting concerning the draft
     Report. Plaintiffs stated that they would not pursue these documents to the extent they

28   were not included in one of the other lists.

{00539628.1 }                                    4

1    government's productions pursuant to MIDP and its responses to a separate request

2    for production; and (4) the OIG-related documents are privileged.  *See* Ex. 7, P.

3    McWilliams Email to T. Fulham et al., RE: CM/APF - Outstanding Items (Feb. 12,

4    2021).

5          During a telephonic conference with the Court on March 11, 2021, the Court

6    ordered the government to produce "any documents specifically referenced in the

7    OIG report" no later than March 25, 2021, after finding that the government's

8    "objection regarding relevance is not a legitimate or well-taken objection" to

9    producing such documents.  Minute Order re: March 11, 2021 Telephonic Discovery

10   Dispute Hearing, *C.M.* ECF No. 89; *A.P.F.* ECF No. 85.  The Court requested

11   briefing concerning the production of documents "not specifically referenced in the

12   OIG report." *Id.*

13         In light of the March 11, 2021 conference and order, Plaintiffs are further

14   limiting the narrowed Request.  In this motion, Plaintiffs seek only the following

15   categories of documents from the narrowed Request (*see* Ex. 6) (the "revised

16   narrowed Request"):

17   •    Written submissions of Gene Hamilton, Rod Rosenstein, and the ODAG in

18        response to their reviews of the draft OIG report;

19   •    Policy and guidance documents relating to the Zero Tolerance policy and/or

20        family separation from the Office of the Attorney General, ODAG, Executive

21        Office for Immigration Review, Executive Office for United States Attorneys,

22        and the Southwest border U.S. Attorney's Offices ("USAO"), including but

23        not limited to Attorney General memoranda, press releases, speeches, district-

24        specific and internal prosecution guidelines from the USAO for the District of

25        Arizona, Yuma Border Patrol Sector guidelines on referrals of suspected

26        illegal entry offenders for prosecution, and U.S. Department of Health and

27        Human Services ("HHS") Office of Refugee Resettlement policies;

28

{00539628.1 }                              5

- Policies and documents related to the Zero Tolerance policy and/or family separation from the U.S. Department of Homeland Security ("DHS"), HHS, and the federal court system;

- Court documents, memoranda, and correspondence from federal judges and Federal Public Defenders;

- Statistical and resource reports and assessments from the DOJ, DOJ components, and the CBP;

- Deliberative policy proposals, draft policy documents, and internal decision documents from DOJ and DHS;

- Conference and meeting agendas, summaries, and notes, intergovernmental agreements, memoranda of understanding; and

- The 10,000 pages of emails, records, and handwritten notes provided to the OIG by DOJ and its components relating to the planning, implementation, and coordination of the Zero Tolerance Policy.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  The factors informing proportionality are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "'The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'"  *Pellerin v. Wagner*, No. 2:14-CV-02318 JWS, 2016 WL 950792, at \*1 (D. Ariz. Mar. 14, 2016) (quoting *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).

**ARGUMENT**

**I.      The Documents Sought Are Relevant and Important to Resolve the Issues**

The documents Plaintiffs seek in their revised narrowed Request are plainly relevant—both to Plaintiffs' claims and to the government's asserted defenses—and are important to resolving the issues in these cases.  *See* Fed. R. Civ. P. 26(b)(1).

The OIG Report examines the DOJ's role in the government's policy and practice of separating migrant families at the Southwest border in 2017 and 2018, and concludes that DOJ's "single-minded focus on increasing immigration prosecutions came at the expense of careful and appropriate consideration of the impact of family unit prosecutions and child separations."  Ex. 4 at i.  In fact, the report strongly suggests that then Attorney General Jeff Sessions *intended* that families be separated and wanted the separations to occur in order to deter migration.  For example, the report details a May 2018 conference call in which, according to notes summarizing the call, Sessions told U.S. Attorneys of Southwest border districts: "***we need to take away children***; if care about kids, don't bring them in; won't give amnesty to [ ] people with kids."  Ex. 4 at 39 (emphasis added).

The report also discusses DHS's decision in early May 2018 to refer all adults apprehended for illegal entry—including those who were part of family units—to DOJ for prosecution, and reveals that DOJ was "a driving force behind" that decision.  Ex. 4 at 32–33.  The report further indicates that top DOJ and DHS officials knew that not all migrants whom DHS apprehended after they crossed the border unlawfully could or would be prosecuted, and that these officials caused families to be separated even when no criminal charges were brought, as was the case with Plaintiffs.  *See* Ex. 4 at 27–29, 40, 42, 66.  The report reveals DOJ's role in urging DHS to effectuate "administrative separation" or "civil separation" apart from any separation associated with a referral for prosecution.  Ex. 4 at 30–31, 40.

1    The report also details concerns raised by judges, prosecutors and other

2    stakeholders as early as 2017 regarding the problems associated with tracking and

3    reunifying separated families, as well as the Office of Refugee Resettlement's

4    capacity to accommodate separated children, and concludes that DOJ failed to address

5    these problems before expanding the practice of family separation in the spring of

6    2018. Ex. 4 at 15–17, 19, 33–34. As the report outlines, DOJ headquarters largely

7    ignored concerns raised by U.S. Attorneys about the separation of very young

8    children, and about how separated families would be tracked and reunified. Ex. 4 at

9    38–43. The Report concludes that DOJ leadership "failed to effectively prepare for,

10   or manage, the implementation of the zero tolerance policy," and that DOJ "did not

11   effectively coordinate" with other agencies involved in the family separations,

12   including DHS and HHS. Ex. 4 at i.

13        These revelations are highly relevant to Plaintiffs' allegations that the

14   government's policy and practice of separating families was intended to inflict harm,

15   for the purpose of deterring other migrants from seeking asylum, and that it was

16   implemented with intentional or reckless disregard for the emotional and physical

17   wellbeing of separated families. *See, e.g.*, *A.P.F.* Am. Compl. ¶¶ 51–79, 486–90,

18   497–512, ECF No. 34; *C.M.* Compl. ¶¶ 27–69, 387–93, ECF No. 1. Indeed, this

19   Court has already recognized the relevance of the OIG Report itself, and of the

20   documents specifically cited in the text and footnotes of the report, and has ordered

21   their production. *See C.M.* ECF No. 89; *A.P.F.* ECF No. 85.

22        Plaintiffs now seek discrete categories of documents that were considered in

23   drafting the OIG Report, but which may not be cited directly in the body of the report,

24   listed on pages 5–6, *supra*. These documents are relevant because they form the basis

25   for the OIG Report's conclusions and analysis relating to family separations. For

26   instance, responses to the draft OIG Report from Gene Hamilton, Rod Rosenstein,

27   and the ODAG are relevant in light of the key roles these witnesses played in the

28   implementation of the Zero Tolerance Policy and family separations, as outlined in

{00539628.1 }

8

the Report.  There can be no dispute as to the relevance of the policy and guidance documents, emails, records and handwritten notes relating to the Zero Tolerance Policy and/or family separation referenced in the appendix.  Court documents and correspondence from federal judges and federal public defenders are relevant because these individuals raised serious concerns and criticisms about the separation and tracking of children, reflecting knowledge by DOJ headquarters and other high-level officials of problems that they failed to adequately address.  Ex. 4 at 43–49. Statistical and resource reports will likely reflect that the government was separating far more people than it was prosecuting, reflecting that the prosecutions were pretextual and that the government's true goal was to inflict harm through family separation.  *See* Ex. 4 at 27–29, 40, 42, 66; *CM* Compl. ¶ 34, ECF No. 1; *APF* Am. Compl. ¶ 67, ECF No. 34.  Conference and meeting agendas, summaries and notes are important because many communications about family separations referenced in the OIG Report occurred through meetings and calls, including regular meetings and calls between Sessions and DHS Secretary Kirstjen Nielsen.  *See, e.g.,* Ex. 4 at 17, 26, 27, 29, 30–31, 35, 36, 39, 41.

The requested documents will therefore shed light on the development and implementation of the government's family separation policy (of which Plaintiffs were victims), including the government's intent to inflict harm and the carelessness that characterized the implementation of the family separations.  Such information is central to Plaintiffs' claims of intentional infliction of emotional distress and negligence.  *See, e.g.*, *A.P.F.* Am. Compl. ¶¶ 51–79, 486–519, ECF No. 34; *C.M.* Compl. ¶¶ 27–69, 387–93, ECF No. 1.

The materials sought are also relevant to the government's asserted defenses in these cases.  For example, in its motions to dismiss, the government argued that Plaintiffs' claims were barred under the due care and discretionary function exceptions to the Federal Tort Claims Act because Plaintiffs' separations were the result of the adult Plaintiffs' referrals for prosecution pursuant to DOJ's Zero

1  Tolerance Policy.  *See* Motion and Memorandum in Support of the United States of

2  America's Motion to Dismiss at 13, *C.M.* ECF No. 18 (Dec. 23, 2019); Motion and

3  Memorandum in Support of the United States of America's Motion to Dismiss at 13,

4  *A.P.F.* ECF No. 21.  The government still maintains that these defenses apply.  *See*

5  *C.M.* Answer at 2, ECF No. 37; *A.P.F.* Answer at 2, ECF No. 29.  Moreover,

6  according to documents produced in discovery, government officials justified

7  Plaintiffs' separations on the grounds that the adult Plaintiffs were "amenable to

8  prosecution"—under the Zero Tolerance Policy—even though none was prosecuted.

9        Similarly, as a defense, Defendant has asserted that the United States "acted

10  with due care and diligence at all relevant times."  *See C.M.* Answer at 3, ECF No. 37;

11  *A.P.F.* Answer at 2, ECF No. 29.  The OIG Report, however, concludes that DOJ

12  leadership "failed to effectively prepare for, or manage, the implementation of the

13  zero tolerance policy," Ex. 4 at i, and that DOJ "did not effectively coordinate" with

14  other agencies involved in the family separations, including DHS and HHS, *id.* at 9.

15  The OIG Report—and therefore the materials relied upon in drafting this report—are

16  plainly relevant and important to the claims and defenses in this case.

17  **II.      The Government's Burden and Proportionality Objections Lack Merit**

18        The government's unsubstantiated, boilerplate objections concerning burden,

19  overbreadth, and proportionality are insufficient under the Federal Rules of Civil

20  Procedure.  *See Blemaster v. Sabo*, No. 2:16-CV-04557 JWS, 2017 WL 4843241, at

21  *3–4 (D. Ariz. Oct. 25, 2017) (noting that "boilerplate objections" were

22  "inappropriate, tantamount to no objection at all."); *Doe v. Swift Transp. Co.*, No.

23  2:10-CV-00899 JWS, 2015 WL 4307800, at *1 (D. Ariz. July 15, 2015) ("[T]he party

24  opposing discovery has the burden to demonstrate that discovery should not be

25  allowed due to burden or cost and must explain and support its objections with

26  competent evidence.").

27        The government has failed to provide any evidence in support of its burden and

28  overbreadth-based objections.  For example, the government has not provided

1   Plaintiffs with an estimate of the volume of documents potentially responsive to

2   Plaintiffs' narrowed Request (despite having received the narrowed Request over

3   seven weeks ago), even though such totals are undoubtedly known to DOJ.  In fact,

4   any burden is minimal because these documents were already identified and collected

5   by the OIG.  Producing them will not require the government to conduct any new

6   searches or collections.

7           To accommodate the government's concerns about burden, however, Plaintiffs

8   have already agreed to narrow their Request.  At the March 11 conference with the

9   Court, counsel for Defendant mischaracterized Plaintiffs' narrowed Request as a

10  "broader[,] amorphous request of pretty much everything else the OIG collected or

11  touched or even created its own work product."  Ex. 8, Transcript of March 11, 2021

12  Discovery Dispute Conference at 25.  Plaintiffs do not seek all documents collected or

13  relied upon by the DOJ OIG in connection with its review.  Rather, Plaintiffs have

14  identified specific categories of documents explicitly referenced in the OIG Report's

15  Appendix 1, limited these categories to the time period of January 1, 2017 through

16  June 26, 2018, and further limited the Request as discussed on pages 5–6, *supra*.

17  Plaintiffs are foregoing other categories of documents referenced in Appendix 1, such

18  as notes of the OIG's interviews of DOJ officials, the "approximately 200,000 emails

19  and calendar data files [the OIG] obtained through searches of the electronic

20  correspondence" and documents related to site visits conducted by the OIG.  Ex. 4, at

21  71–73.

22          Finally, the government incorrectly claims the narrowed Request is not

23  proportional to the needs of the case, on the basis that the government's document

24

25

26

27

28

1   productions pursuant to MIDP and a separate request for production, RFP No. 2,[6]

2   were sufficient.  However, the MIDP and RFP No. 2 productions did not include

3   several categories of highly relevant documents sought in Plaintiffs' narrowed

4   Request, including written submissions to the OIG of Gene Hamilton, Rod

5   Rosenstein, and the ODAG, and handwritten notes of relevant meetings and calls.

6   Moreover, the government did not include Rod Rosenstein—who the OIG Report

7   makes clear is a key witness—as a custodian for the government's MIDP collection or

8   for its collection in response to RFP No. 2.  Finally, to the extent there is any overlap

9   between the documents sought in the narrowed Request and the documents produced

10  under MIDP or in response to RFP No. 2, that overlap further undercuts the

11  government's argument that producing documents uniquely responsive to the

12  narrowed Request would be overly burdensome.

13          The other factors informing proportionality also favor Plaintiffs.  *See* Fed. R.

14  Civ. P. 26(b)(1).  The issues at stake in this action are important and include

15  allegations that the U.S. government intentionally traumatized thousands of migrants,

16  like Plaintiffs, in order to deter migration.  The documents being withheld by the

17  United States are not otherwise accessible to Plaintiffs.  And, as explained above, the

18  importance of these documents far outweighs the burden associated with producing

19  them, given that these documents have already been collected by the DOJ OIG.

20  **III.    The Government's Blanket Privilege Assertion is Insufficient**

21          Defendant has also made an improper blanket privilege objection to the

22  production of the requested documents.  Defendant objected to Plaintiffs' original

23  Request on the grounds that the documents sought "are subject to, among other

24  

---

[6] Simultaneously with the Request at issue, Plaintiffs issued a second RFP seeking
25  "[d]ocuments and [c]ommunications to and from DOJ Headquarters and the U.S.
Attorneys' Offices along the Southwestern Border, and Documents and
26  Communications within U.S. Attorneys' Offices along the Southwestern Border,
concerning the El Paso Initiative and/or the Zero Tolerance Policy."  Following a
27  meet and confer, Defendant agreed to produce the requested communications "limited
to reasonably accessible documents previously collected" by the relevant U.S.
28  Attorneys' Offices in connection with the OIG Report.  *See* Ex. 3 at 7.

things, the law enforcement investigatory privilege, deliberative process privilege, and attorney-client privilege." Ex. 3, Def.'s Objs. & Resps. at 5.  It reiterated a blanket privilege assertion in response to Plaintiffs' narrowed request.  Ex. 6, P. McWilliams Email to T. Fulham et al., RE: CM/APF - Outstanding Items (Feb. 12, 2021) ("Regarding Plaintiffs' request relating to the OIG report, the United States' position remains that, *in addition to seeking privileged information*, it is overbroad, seeks information not relevant to these cases, and is not proportional to the needs of the case.") (emphasis added).  The government's conclusory references to these privileges are insufficient to justify withholding responsive materials based on any privilege.

When a party withholds information under a claim of privilege, the party must (1) "expressly make that claim," and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  Moreover, "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *DeSilva v. Allergan USA, Inc.*, No. 8:19-CV-01606-JLS, 2020 WL 5947827, at *2 (C.D. Cal. Sept. 1, 2020).  Instead, "[a] party asserting a privilege must 'provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005)).

Here, the government's blanket privilege assertions lack the specificity and substantiation required under the Federal Rules.  Such blanket assertions are also inconsistent with the parties' Agreement Regarding the Format for Production of Documents and Related Matters, which require the parties to prepare privilege logs for any documents withheld or redacted on the basis of privilege.  *See C.M.* ECF No. 60-1, at 18–19.  Until the government articulates why it believes these privileges apply, it is impossible to assess whether the privileges have been properly invoked

{00539628.1 }                                        13

1    and asserted, and, to the extent they have been, whether they can be overcome.  *See*

2    *Roy v. Cty. of Los Angeles*, No. CV 12-09012-AB (FFMx), 2018 WL 914773, at \*12

3    (C.D. Cal. Feb. 7, 2018), *recon. den.*, 2018 WL 3439168 (C.D. Cal. July 11, 2018)

4    ("[T]he law enforcement privilege is not absolute; it is a qualified privilege that

5    requires balancing the public interest in nondisclosure against the need of the

6    particular litigant for access to the privileged information.") (internal quotation marks

7    and alterations omitted); *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB,

8    2016 WL 8199308, at \*3 (D. Ariz. July 21, 2016) (noting that the "deliberative

9    process privilege" is "qualified" and can be "overcome" when "the need for the

10   evidence overrides the government's interest in non-disclosure").

11                                   **CONCLUSION**

12          For the reasons discussed above, Plaintiffs request that the Court order

13   Defendant to (1) produce the revised narrowed Request as set forth on pages 5–6,

14   *supra*, and (2) provide a privilege log meeting the requirements of the parties'

15   Agreement Regarding the Format for Production of Documents and Related Matters,

16   to the extent that any documents responsive to this request are withheld or redacted on

17   the basis of privilege.

18

19

20

21

22

23

24

25

26

27

28

{00539628.1 }                                14

1         Respectfully submitted this 4th day of January, 2022.

2                                      COPPERSMITH BROCKELMAN PLC

3                                      By s/ Keith Beauchamp

4                                        Keith Beauchamp
                                    D. Andrew Gaona

5

6    SOUTHERN POVERTY LAW                          COVINGTON & BURLING LLP
    CENTER                                        Matthew Schlesinger*

7    Norma Ventura*                                Jason Carey*
    James Knoepp*                                 Teresa Park*
    P.O. Box 1287                                 Terra White Fulham*

8    Decatur, GA 30031 Telephone:                  One CityCenter, 850 Tenth Street, NW
    (404) 521-6700                                Washington, DC 20001-4956

9    norma.ventura@splcenter.org                   Telephone: (202) 662-5581
    jim.knoepp@splcenter.org                      mschlesinger@cov.com

10                                 jcarey@cov.com
                              tpark@cov.com

11                                 tfulham@cov.com

12   SOUTHERN POVERTY LAW
    CENTER

13   Paul R. Chavez*
    P.O. Box 370037

14   Miami, FL 33137
    Telephone: (786) 347-2056

15   paul.chavez@splcenter.org

16

17                           *Attorneys for A.P.F. Plaintiffs*

18   *Additional Counsel for Plaintiffs listed on following page.*

19

20

21

22

23

24

25

26

27

28

David B. Rosenbaum
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793

Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Mark Osmond*
Kaitlyn Schaeffer*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street | New York, New
York 10019-9710
212-836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
mark.osmond@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com

R. Stanton Jones*
Emily Reeder*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
emily.reeder@arnoldporter.com

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
  & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

Mark Fleming*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org

Trina Realmuto*
Mary Kenney*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
617-819-4447
Trina@immigrationlitigation.org
Mary@immigrationlitigation.org

Katherine Melloy Goettel*
Emma Winger*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org

*Attorneys for CM Plaintiffs*