1  Keith Beauchamp (012434)
   D. Andrew Gaona (028414)
2  COPPERSMITH BROCKELMAN PLC
   2800 N. Central Avenue, Suite 1900
3  Telephone: (602) 381-5490
   Phoenix, AZ 85004
4  kbeauchamp@cblawyers.com
   agaona@cblawyers.com
5
6  *Counsel for A.P.F. Plaintiffs*
7  *(Additional Counsel for Plaintiffs Listed on the Signature Page)*
8
9              **UNITED STATES DISTRICT COURT**
10                **DISTRICT OF ARIZONA**
11  C.M., on her own behalf and on behalf of     No. CV-19-05217-PHX-SRB
    her minor child, B.M., et al.,
12                                                **REPLY IN FURTHER SUPPORT OF**
                      Plaintiffs,                 **PLAINTIFFS' MOTION TO COMPEL**
13                                                **DISCOVERY WITHHELD BY THE**
                          v.                      **GOVERNMENT BASED ON**
14                                                **IMPROPER PRIVILEGE ASSERTIONS**
15  United States of America,
                                                  (Oral Argument Requested)
16                    Defendant.
17  A.P.F. on his own behalf and on behalf of    No. CV-20-00065-PHX-SRB
    his minor child, O.B., et al.,
18
                      Plaintiffs,
19
                          v.
20
21  United States of America,
22                    Defendant.
23
24
25
26
27
28

{00544313.1 }

# INTRODUCTION

As described in the motion, Plaintiffs provided the government multiple opportunities to address its privilege designation deficiencies; yet, the government narrowed its privilege designations only after Plaintiffs sought judicial intervention.  (Mot. (*C.M.*, ECF No. 93 at 1–2; *A.P.F.*, ECF No. 90) at 1–2)  The government's revisions concede that the majority of its original designations were improper, retaining only 18% of its deliberative process privilege claims, 12% of its presidential communications privilege claims,[1] and 40% of its attorney-client or work product claims.

Despite this narrowing, many of the government's remaining privilege assertions are improper.  The deliberative process privilege is inapplicable because the government's intent, decisionmaking, and alleged misconduct are at issue.  The government's arguments to the contrary mischaracterize Ninth Circuit precedent.  The government's deliberative process privilege assertions suffer from numerous deficiencies, and Plaintiffs could overcome the privilege, even if it applied, because their need for the information outweighs the government's confidentiality concerns.  As to the attorney-client privilege and work product protection, the government's revised privilege logs still do not establish the required elements of these privileges, and based on what can be gleaned from them, the government's assertions continue to be overbroad.  For the reasons set forth below and in the motion, Plaintiffs' motion to compel should be granted.

# ARGUMENT

I. **The Government Has Improperly Redacted Documents Based on the Deliberative Process Privilege**

A. **The Privilege Is Unavailable in these Cases Because the Government's Intent, Misconduct, and Decisionmaking Process Are at Issue**

The "dominant view" among jurists is that the deliberative process privilege is "vitiated entirely" when the "government's decisionmaking process is central" or when the

---

[1] The government now asserts the presidential communications privilege as to only nine unique documents.  (Opp. (*C.M.*, ECF No. 99; *A.P.F.*, ECF No. 96) at 17)  Plaintiffs do not challenge these designations.

case involves the government's intent or misconduct.  *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) (collecting cases); *see Moore v. Valder*, 2001 WL 37120629, at *2 (D.D.C. July 31, 2001) (describing this view as "well-settled"). Relying on *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019), the government argues that this dominant view does not apply in the Ninth Circuit.  (Opp. (*C.M.*, ECF No. 99; *A.P.F.*, ECF No. 96) at 4–6)  But the government's reliance on *Karnoski* is misplaced as *Karnoski* did not analyze the availability of these exceptions.

As the government acknowledges, district courts within this Circuit have found that the "privilege is unavailable" when the government's "decisionmaking process is itself at issue."  (Opp. at 5 n.2)  The government discounts these decisions because they predate *Karnoski*.  (*Id.*)  After remand in *Karnoski*, however, the district court "adopted the reasoning and conclusions of the . . . [U.S. District Court for the District of Columbia in a related action], which found that the deliberative process privilege could 'not be used to shield discovery into [the government's] decision-making process and intent when the extent and scope of that decision-making process is a central issue in this lawsuit.'" *Karnoski v. Trump*, 2019 WL 6894510, at *1 (W.D. Wash. Dec. 18, 2019) (quoting *Doe 2 v. Esper*, 2019 WL 4394842, at *7 (D.D.C. Sept. 13, 2019)) (citing *Karnoski*, 2019 WL 6130826, at *2), *order clarified*, 2020 WL 606493 (W.D. Wash. Feb. 7, 2020).

As the D.C. Circuit has reasoned, consistent with the decisions of multiple district courts within the Ninth Circuit, it "makes no sense to permit the government to use the privilege as a shield" when "the plaintiff's cause of action is directed at the government's intent" or where "governmental officials' deliberations" are at issue.[2]  *In re Subpoena*

---

[2] The D.C. Circuit adjudicates the deliberative process privilege more than other courts, and courts in other jurisdictions, including the Ninth Circuit, often cite D.C. Circuit case law when addressing the privilege.  *See, e.g.*, *Karnoski*, 926 F.3d at 1203 (citing *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008)); *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992) (citing *Formaldehyde Inst. v. Dep't of Health & Human Serv.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989)); *Lake Cty. Bd.*, 233 F.R.D. at 526 (noting Seventh Circuit's adoption of D.C. Circuit's definitions of "predecisional" and "deliberative").

1 *Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C.

2 Cir. 1998), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998); *see, e.g.*, *Karnoski*, 2019 WL

3 6894510, at *1; Mot. at 4 (citing cases).  The government's invocation of the privilege in

4 such cases would prevent plaintiffs from proving their claims, as key evidence would not

5 be produced.[3]  The government notes that an aim of the privilege is to avoid chilling agency

6 deliberations.  (Opp. at 13, 15)  But there is no legitimate government interest in chilling

7 *misconduct*, which is why the privilege does not apply when government misconduct is

8 credibly alleged.  *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (application of

9 privilege where "documents . . . may shed light on government misconduct" would "not

10 serve 'the public's interest in honest, effective government'" (quoting *Texaco Puerto Rico,*

11 *Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)).  Because the

12 government's intent, misconduct, and decisionmaking processes are at issue, the privilege

13 does not apply here.

**B.**     **Numerous Deficiencies Undermine the Government's Invocation of the**
14         **Privilege**

15

16          The government has not cured deficiencies in its invocation of the privilege.  The

17 government has withheld evidence related to the implementation of the Zero Tolerance

18 Policy on the rationale that it is predecisional with respect to "various . . . policy decisions

19 necessary to implement the Zero Tolerance Memorandum or other policy decisions

20 concerning border security and immigration."  (Weinsheimer Decl. (*C.M.*, ECF No. 99-1;

21 *A.P.F.*, ECF No. 96-1) ¶ 12; Opp. at 10–11)  But the specific decision as to which the

22 documents are predecisional remains unclear.  *See Maricopa Audubon Soc. v. U.S. Forest*

23 *Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997) ("agency must identify a specific decision to

24 which the document is predecisional"); *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388

25

26 [3] The government emphasizes that its production of the withheld information would reveal
the agency's mental processes.  (Govt. Opp. at 8–9, 11)  That is precisely why the
27 information should be disclosed.  Plaintiffs claim intentional infliction of emotional
distress, and these mental processes are relevant.  The deliberative process privilege should
28 be a "nonsequitur" under these circumstances.  *In re Subpoena*, 145 F.3d at 1422.

F. Supp. 2d 1086, 1103 (C.D. Cal. 2005) ("vague and generalized descriptions" of decisions are insufficient).

Vague descriptions of implementation decisions mask the fact that the government is withholding highly relevant post-decisional material. For example, the government has redacted "summaries of efforts by Southwest Border districts on implementing increased criminal immigration prosecution efforts under the Zero Tolerance Policy." (Priv. Log. (*C.M.*, ECF No. 99-3; *A.P.F.*, ECF No. 96-3) at CD-US-00011438A) These summaries, dated May 7 and 8, 2018, postdate the April 6, 2018 announcement of the Zero Tolerance Policy and the Department of Homeland Security's May 4, 2018 related decision to refer all family units for prosecution.[4] The Court should reject the government's mischaracterization of post-decisional documents as predecisional. *See Buffalo Field Campaign v. U. S. Dep't of the Interior, Nat'l Park Serv.*, 2020 WL 3790725, at *4 (D. Mont. July 7, 2020) (documents about "continued implementation" are "not predecisional"); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 5972702, at *5 (N.D. Cal. Nov. 30, 2017) (privilege inapplicable to "documents concerning ongoing considerations about what agencies should do with broad regulatory authority").

The government also argues that the documents are "predecisional to other [non-DOJ] agency policies and decisions that were required to implement the Zero Tolerance Policy." (Opp. at 11) No other agency, however, has invoked the deliberative process privilege in the three months since the government produced the material, and counsel's attempt to invoke the privilege on these other agencies' behalf must be rejected. *See*

---

[4] *Id.* at CD-US-00011439A ("Document from USAO [U.S. Attorney's Office] in Arizona regarding implementation of zero tolerance policy"), CD-US-00011445A (New Mexico version of document), CD-US-00011447A (Southern District of Texas), CD-US-00011449A (Western District of Texas); *see also id.* at CD-US-00011538A ("Internal DOJ discussion regarding EOUSA [Executive Office for U.S. Attorneys] inquiry conveying SWB [southwest border] USAOs regarding implementation of zero tolerance policy and processing family units"); CD-US-00007881A ("Email communicating/summarizing email from USAEO with legal analysis of and prosecution status under Zero Tolerance Policy").

1  *Unknown Parties v. Johnson*, 2016 WL 8199308, at *4 (D. Ariz. July 21, 2016) ("agency

2  head, or his delegate" must invoke privilege, not "counsel").

3  The government likewise has redacted factual information in its reproduction, even

4  though "[f]acts and evidence are not protected by the deliberative process privilege."

5  *Norton v. Arpaio*, 2016 WL 11513612, at *2 (D. Ariz. Aug. 4, 2016) (quotation marks

6  omitted); *Karnoski*, 926 F.3d at 1204 (government must "segregate and disclose non-

7  privileged factual information within a document").  Specifically, the government has

8  redacted multiple relevant reports.  (Opp. at 7)  While conceding that the reports contain

9  factual information, the government asserts that this information "is so inextricably

10  intertwined with policy making processes that it itself is part of the deliberative process."

11  (*Id.* at 9 n.7 (quotation marks omitted))  Yet the government has the burden to establish

12  that factual information is non-segregable, and the Weinsheimer declaration (*C.M.*, ECF

13  No. 99-1; *A.P.F.*, ECF No. 96-1) is silent on this point.  The government's conclusory

14  assertion about the intertwined nature of the information is insufficient.  *See, e.g.*, *Pac.*

15  *Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) ("conclusory"

16  affidavit insufficient to meet burden); *Scalia v. Int'l Longshore & Warehouse Union*, 336

17  F.R.D. 603, 615–16 (N.D. Cal. 2020) (burden may be met through "an affidavit" but burden

18  unsatisfied where it was "impossible to tell . . . whether the described memoranda and

19  reports contain . . . facts . . . not intertwined with analysis").  Accordingly, the government

20  must produce factual information within any otherwise privileged documents.

21
   **C.      Plaintiffs' Need for the Documents Overrides the Government's**
22  **Confidentiality Concerns**

23  Even if the deliberative process privilege were available and properly asserted,

24  Plaintiffs' need for the redacted information outweighs the government's interest in non-

25  disclosure.  All eight factors of the applicable balancing test favor Plaintiffs (*see* Mot. at

26  8–12), and the government's arguments to the contrary are not persuasive.

27  *First*, the government is withholding relevant information—reports and

28  correspondence about family separation and border security, meeting agendas and

{00544313.1 }                                    - 5 -

summaries (that contain family separation-related information), and documents about the implementation of the Zero Tolerance Policy.  (Opp. at 6)  The government inaccurately characterizes this information as "peripheral" to Plaintiffs' claims.  (*Id.* at 12)  A defendant, however, is not the arbiter of whether documents are relevant enough to be produced in unredacted form, and the government's judgment here is suspect.   When opposing Plaintiffs' motion to produce Department of Justice Office of the Inspector General ("DOJ OIG") documents, the government argued that the Zero Tolerance Policy was "at best, marginally relevant."  (*See* Opp. (*C.M.*, ECF No. 97; *A.P.F.*, ECF No. 94) at 5)   In this motion, however, the government acknowledges the policy's significance.  (Opp. at 1 (Zero-Tolerance Policy used to "'intentionally separate children from their parents'")).  As an example of an "irrelevant" document, the government incredulously cites a May 3, 2018 meeting agenda where senior White House advisors reportedly voted on whether to separate families.  (Opp. at 13; Mot. at 9)  Plaintiffs are entitled to review the portions of the agenda relating to family separations or implementation of the Zero Tolerance Policy since the DHS policy of referring families was implemented the next day.  (*C.M.*, ECF No. 98 at 4; *A.P.F.*, ECF No. 95 at 4)

The government concedes that the redacted draft reports and related correspondence would "reveal the agency's mental process." (Opp. at 8)  As discussed above (*supra* at 3 n.3), this mental process is highly relevant to the government's state of mind, which is an element of Plaintiffs' intentional infliction of emotional distress claim.  *See, e.g.*, *Goss v. United States*, 2020 WL 871247, at \*7 (D. Ariz. Feb. 21, 2020).  The government admits that "portions" of redacted documents "discuss family separations" and "arguably may be relevant to Plaintiffs' claims."  (Opp. at 12)  Though the government argues that other information should not be disclosed, the operative protective order would prevent public disclosure.  The Weinsheimer declaration (*C.M.*, ECF No. 99-1; *A.P.F.*, ECF No. 96-1)

does not explain why this is insufficient.[5]  *See Mayfield v. Cty. of Los Angeles*, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) (agency head must explain "why a protective order would be inadequate").

The government is also withholding documents related to the implementation of Zero Tolerance.  (Opp. at 6)  The government notes that "DOJ has removed its claims of the deliberative process privilege over all documents in the December 31 and January 15 productions that are predecisional and deliberative to the issuance of the Zero Tolerance Memorandum."  (*Id.* at 12)  Presumably, this is because the Zero Tolerance Policy is relevant to this case.  Yet, the government withholds information about the implementation of the policy, including the DHS decision to refer families for prosecution, which the *government* has argued led to the separations in these cases.  (*See* Mot. to Dismiss (*C.M.*, ECF No. 18; *A.P.F.*, ECF No. 21) at 8–9)  The government cannot reasonably concede the discoverability of information about the creation of the policy but withhold information about its implementation.  By the government's own account, the documents concern problems with the policy's implementation, which is relevant to Plaintiffs' intentional infliction of emotional distress and negligence claims.  *See, e.g.*, Priv. Log. (*C.M.*, ECF No. 99-3; *A.P.F.*, ECF No. 96-3) at CD-US-00013857A ("Email discussion between US[AE]O and among DOJ senior officials about processing and manpower difficulties faced by CBP in implementing the Zero Tolerance Policy, and coordination for examining and resolving CBP concerns"), CD-US-00012231A (redacting answers  to "various questions" about "the implementation of the Zero Tolerance Policy and details about family separation"), CD-US-00014239A (apparent continuation of same discussion), and CD-US-00014328A (same).

---

[5]  If the Court reviews documents *in camera* (*see* Opp. at 13 n.10), Plaintiffs request that the Court not exclusively review the documents that the government selected and that it also review the following documents: CD-US-00007881A, CD-US-00011438A, CD-US-00011439A, CD-US-00011538A, CD-US-00012231A, CD-US-00013857A, CD-US-00014239A, CD-US-00014328A.

1
2
3
4
5
6
7
8
9
10

*Second*, the government incorrectly argues that the availability of other evidence weighs against disclosure because "final executive orders, public statements, and investigatory reports" related to family separation are publicly available.  (Opp. at 13–14)  Public statements and executive orders do not provide information about, for example, the deliberations that led to the family separation policy, the government's intent in developing the policy, or failures in its implementation.[6]  *See Del Socorro Quintero Perez v. United States*, 2016 WL 499025, at *6 (S.D. Cal. Feb. 9, 2016) (rejecting argument that an already-produced revised policy was comparable evidence to an internal review of the original policy because the revised policy was "of limited importance if Plaintiffs cannot connect the dots as to why certain decisions were made").

11
12
13
14
15
16
17
18
19
20
21

The government's reliance on reports concerning family separation issued by agency Inspector Generals and Congress—including the DOJ OIG report—fares no better.  Paradoxically, the government has refused to produce documents the DOJ OIG relied upon.  (*See C.M.*, ECF Nos. 92, 97, 98; *A.P.F.* ECF Nos. 89, 94, 95)  Regardless, reports summarizing government documents are not a substitute for the documents themselves.  *See Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1162, *vacated on other grounds*, 926 F.3d 1180 (9th Cir. 2019) ("[P]roduction of non-privileged documents and an administrative record d[id] not obviate Plaintiffs' need for responsive documents concerning the deliberative process."); *see also Karnoski*, 926 F.3d at 1206 (second factor favored plaintiffs since "[t]he evidence sought is primarily, if not exclusively, under Defendants' control").

22
23

*Third*, the government concedes, as it must, that its role in the litigation favors disclosure.  (Opp. at 14)

24
25
26
27
28

---

[6] The government cites *Arizona Dream Act Coal. v. Brewer*, 2014 WL 171923 (D. Ariz. Jan. 15, 2014), *see* Opp. at 13–14, which supports Plaintiffs' position.  There, the court granted the plaintiffs' motion to compel in part because "documents concerning the government's intent and purpose in crafting" the policy at issue were "highly relevant," and the government had a "central role in the events at issue."  *Arizona Dream Act Coal.*, 2014 WL 171923, at *3.  The same reasoning applies here.

1   *Fourth*, concerning the extent to which disclosure would hinder frank and
2   independent discussion, the government contends that this factor weighs in its favor
3   because the documents at issue involve senior DOJ officials and because Plaintiffs seek
4   money damages.  (Opp. at 15)  But courts in this Circuit routinely hold that this factor
5   favors disclosure when a protective order is in place.  (Mot. at 10) (citing cases)  Further,
6   for the same reasons discussed *supra*, Section I.A., any concerns about hindering frank and
7   independent discussion are misplaced here where the discussions are credibly alleged to
8   involve government misconduct.  *See In re Sealed Case*, 121 F.3d at 738.

9       As to the *fifth*, *sixth*, and *seventh* factors, courts find that these considerations favor
10  disclosure where, as here, government officials allegedly engaged in misconduct and
11  violated plaintiffs' rights.  (Mot. at 10–11 (collecting cases))  The government does not
12  deny that Plaintiffs allege government misconduct.  (Opp. at 16 n.13)  Nor can the
13  government deny the seriousness of this litigation while simultaneously quoting President
14  Biden as "condemn[ing] the human tragedy that occurred when our immigration laws were
15  used to intentionally separate children from their parents or legal guardians . . . during the
16  Trump Administration."  (*Id.* at 1 (quotation marks omitted))  These cases seek relief for
17  the victims of this tragedy.  Plaintiffs and our society as a whole have a strong interest in
18  accurate judicial fact finding.

19      Finally, the government suggests that the *eighth* factor simply considers whether a
20  plaintiff pleads "'substantial'" constitutional claims (*id.* at 16 n.13).  The government is
21  wrong.  *See, e.g.*, *California State Foster Parent Ass'n v. Wagner*, 2008 WL 2872775, at
22  *6 (N.D. Cal. July 23, 2008) (litigation sufficiently serious where "the issue . . . is whether
23  the state of California has complied with [a] federal [statute]").  In any event, this Court
24  has found that "Plaintiffs have plausibly alleged that the government's separation of their
25  families violated their constitutional rights"—an issue that is relevant to the government's
26  discretionary function exception defense.  (Mot. to Dismiss (*C.M.*, ECF No. 31; *A.P.F.*,
27  ECF No. 36) at 7)  Because all eight factors favor disclosure, Plaintiffs' need for the
28  documents outweighs the government's confidentiality concerns.

1

2

**II.**      **The Government Has Not Established the Elements Necessary to Assert the Attorney-Client Privilege or Work Product Doctrine**

3

4

5

6

7

8

9

The government removed over 60% of the attorney-client and work product claims it made in the two example privilege logs Plaintiffs challenged (approximately 415 documents), and made numerous revisions to its privilege log.  These revisions, prompted only by this motion to compel, (1) demonstrate the government's improper assertions of attorney-client privilege and work product protection, and (2) underscore the need for an order requiring the government to reexamine and narrow its privilege claims in all of the privilege logs that it has produced to date and in any future logs.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The government's revised assertions remain deficient.  As to the attorney-client privilege, the government (1) refuses to identify the attorney providing the legal advice and the client to whom the advice is being rendered; (2) asserts privilege over what appear to be factual or policy documents; and (3) fails to segregate attorney-client privileged redactions from other redactions.  (Opp. at 19–20)  The government asserts that it did not have to meet the prima facie requirements for asserting the privilege because all DOJ custodians are lawyers.  (*Id.* at 20)  Because a government agency can be a client, the government reasons that "there was no need to specifically identify on the logs the 'client.'" (*Id.*)  But Plaintiffs' point is that the government must establish each element of the privilege, including the specific attorney and client purportedly giving and receiving legal advice, and the legal nature of the advice being sought or rendered to show that the DOJ attorney was acting as a lawyer rather than furnishing policy or non-legal advice.  *See United States v. Richey*, 632 F.3d 559, 566–67 (9th Cir. 2011).  The government has not done so, making its privilege assertions deficient.  This is particularly so for documents containing policy or factual information, which indisputably must be differentiated from legal advice.  (*See, e.g.*, Priv. Log. (*C.M.*, ECF No. 99-3; *A.P.F.*, ECF No. 96-3) at CD-US-00011296A ("Results of survey of Southwest Border USAOs on efforts to implement the Zero Tolerance Policy, with report of statistics on 1325 and other prosecutions"))  The government also fails to differentiate the redactions made among the multiple privileges

asserted in one document, preventing Plaintiffs from evaluating the government's privilege claims.  (*Id.* at CD-US-00009138A ("Draft EO of Affording Congress an Opportunity to Address Family Separation, with comment in margin from government staff; markup reflecting legal analysis"), CD-US-00011095A ("DOJ draft memo Principals Working Group on Border Crossings"))  The government must differentiate its privilege assertions, and withdraw its assertions of attorney-client privilege over policy and factual documents.

Finally, as to the work product protection, the government's reliance on *ACLU v. U. S. Dep't of Just.*, 880 F.3d 473 (9th Cir. 2018), elides the court's warning that "not every document prepared by a DOJ attorney can be withheld on the basis that the agency may some day become involved in related litigation."  *Id.* at 487.  If no specific litigation is identified, the government has the burden of proving that the legal analysis in a document pertains to a "frequent litigating position."  The government has not done so here.  Rather, the revised privilege logs include rote assertions that "legal analysis" was provided.  This description is insufficient under *ACLU*.  The government's approach would allow DOJ to essentially provide no description of a communication's subject matter at all, which the Court should not allow.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court direct the government to: (1) produce all documents withheld or redacted based on the deliberative process privilege, and (2) produce all materials improperly withheld or redacted under the attorney-client privilege and work product doctrine, and revise its privilege logs so that the attorney-client privilege and work product claims are properly identified and substantiated.

RESPECTFULLY SUBMITTED this 5th day of January, 2022.

COPPERSMITH BROCKELMAN PLC

By s/ Keith Beauchamp
Keith Beauchamp
D. Andrew Gaona

*(Additional Counsel for Plaintiffs Listed on the Following Page)*

SOUTHERN POVERTY LAW CENTER
Norma Ventura*
James Knoepp*
P.O. Box 1287
Decatur, GA 30031 Telephone: (404) 521-6700
norma.ventura@splcenter.org
jim.knoepp@splcenter.org

COVINGTON & BURLING LLP
Matthew Schlesinger*
Jason Carey*
Teresa Park*
Terra White Fulham*
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-5581
mschlesinger@cov.com
jcarey@cov.com
tpark@cov.com
tfulham@cov.com

SOUTHERN POVERTY LAW CENTER
Paul R. Chavez*
P.O. Box 370037
Miami, FL 33137
Telephone: (786) 347-2056
paul.chavez@splcenter.org

*Attorneys for A.P.F. Plaintiffs*

* *Admitted pro hac vice*

Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Mark Osmond*
Kaitlin Schaeffer*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street | New York, New
York 10019-9710
212-836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
mark.osmond@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com

Jonathan H. Feinberg*
Kairys, Rudovsky, Messing, Feinberg
   & Lin LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
215-925-4400
jfeinberg@krlawphila.com

R. Stanton Jones*
Emily Reeder*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
202-942-5000
stanton.jones@arnoldporter.com
emily.reeder@arnoldporter.com

Mark Fleming*
National Immigrant Justice Center
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
312-660-1370
mfleming@heartlandalliance.org

Trina Realmuto*
Mary Kenney*
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
617-819-4447
Trina@immigrationlitigation.org
Mary@immigrationlitigation.org

Katherine Melloy Goettel*
Emma Winger*
American Immigration Council
1331 G Street NW, Suite 200
Washington, DC 20005
202-507-7552
kgoettel@immcouncil.org
ewinger@immcouncil.org

*Attorneys for CM Plaintiffs*

* Admitted pro hac vice