# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **C.M., et al.,** | ) | |
| | ) | No.  **CV–19–5217–PHX–SRB** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **United States of America,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| **A.P.F., et al.,** | ) | |
| | ) | No.  **CV–20–65–PHX–SRB** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | January 27, 2022 |
| **United States of America,** | ) | 10:31 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE SUSAN R. BOLTON, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC STATUS CONFERENCE AND MOTION HEARING**

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **T E L E P H O N I C**
                     **A P P E A R A N C E S**

2

3   For the C.M. Plaintiffs:
         Arnold & Porter Kaye Scholer
4        By:  **Diana E. Reiter,** Esq.
              **Harry K. Fidler,** Esq.
5             **Mark A. Osmond,** Esq.
              **Erik Christopher Walsh,** Esq.
6        250 West 55th Street
         New York, New York 10019

7

         Arnold & Porter
8        By:  **Emily Anne Reeder-Ricchetti,** Esq.
         601 Massachusetts Avenue NW
9        Washington, DC 20001

10       Kairys Rudovsky Messing Feinberg & Lin
         By:  **Jonathan Howard Feinberg,** Esq.
11       718 Arch Street, Suite 501
         Philadelphia, Pennsylvania 19106

12

         American Immigration Council
13       By:  **Katherine Melloy Goettel,** Esq.
         1331 G. Street, Suite 200
14       Washington, DC 20005

15       National Immigration Litigation Alliance
         By:  **Trina Realmuto,** Esq.
16       10 Griggs Terrace
         Brookline, Massachusetts 02446

17

    For the A.P.F. Plaintiffs:
18       Covington & Burling
         By:  **Terra White Fulham,** Esq.
19            **Teresa Sanghee Park,** Esq.
         850 10th Street NW
20       Washington, DC 20001

21       Coppersmith Brockelman
         By:  **Keith Beauchamp,** Esq.
22       2800 North Central Avenue, Suite 1900
         Phoenix, Arizona 85004

23

         Southern Poverty Law Center
24       By:  **James Melvin Knoepp,** Esq.
         P.O. Box 1287
25       Decatur, Georgia 30031

1                    **T E L E P H O N I C**
                     **A P P E A R A N C E S**
2

3   For the Defendant:
         U.S. Department of Justice
4        By:  **Philip Davis MacWilliams,** Esq.
              **Irina Maya Majumdar,** Esq.
5        P.O. Box 888
         Washington, DC 20044

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

—CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022—

1        (Proceedings begin at 10:31 a.m.)

2            THE CLERK:  Civil case 19-5217, C.M. versus United

3    States of America.  Time set for telephonic status conference

4    and motion hearing.

5            And civil case 20-065, A.P.F. versus United States of       10:32:00

6    America.  Time set for telephonic status conference and motion

7    hearing.

8            THE COURT:  Good morning.

9            I actually want to address with Mr. MacWilliams the

10   proposed scheduling dates that the plaintiffs in each case have    10:32:22

11   suggested in their status report.

12           As I read it, it said that -- and I assume referring

13   to defendant it meant you, Mr. MacWilliams, had informed the

14   plaintiffs that you weren't in a position to file a joint

15   report in time for this conference.                                10:32:51

16           What I want to know is when you might have the ability

17   to tell me if you're in agreement with or in disagreement with

18   the dates proposed and also the various numbers that have

19   been -- have changed with respect to depositions.

20           MR. MACWILLIAMS:  Yes, Your Honor.  Some of that I can     10:33:20

21   answer right now, which is with respect to the latter, the

22   change in depositions.  The Government doesn't -- does not

23   agree to that.  We think the number that was established some

24   time ago should remain, at least for now.

25           So that's our position.                                    10:33:40

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022

1      When it comes to the dates, I mean, the position

2   stated in the filing didn't quite tell the full story.  We have

3   talked about this with plaintiffs, and I think we're going to

4   very likely agree on a date.  I just didn't want to set new

5   deadlines or propose new deadlines until after this hearing was    10:33:57

6   over.

7      I mean, there's some pretty significant motions to

8   compel being discussed, and I thought it would be more prudent

9   to see how these resolved and how that may impact discovery

10   before the parties bind themselves to new dates.                  10:34:12

11      So I think the answer to your question, when will we

12   know, I think pretty quickly after this hearing today.  We can

13   get something, I think, jointly proposed on file in a matter of

14   days, frankly.

15      THE COURT:  Okay.  Well, then let's turn to the               10:34:25

16   motions.

17      The first motion I want to address is the one claiming

18   that the Government withheld documents based on improper

19   privilege assertions.  And frankly, I'm not exactly sure where

20   the parties stand today with respect to what they believe has    10:34:52

21   been disclosed that might still be asserting improper

22   privilege.

23      My understanding from reading the motion response and

24   reply is that between the time the motion was filed and the

25   response was filed, that the Government made significant          10:35:17

1   additional disclosures of documents that had previously been

2   redacted and/or had previously had privilege claims.  And then

3   when I read the reply I got the impression that there had been

4   even further disclosures of documents previously redacted or

5   withheld.                                                    10:35:44

6        So why don't -- Miss Reiter, you're going to address

7   this.  Why don't you tell me where you believe we are with

8   respect to any continued improper privilege assertions.

9        MS. REITER:  Certainly, Your Honor.

10       You're correct that the Government has narrowed its    10:36:08

11  privilege assertions.  However, the Government is still

12  asserting the deliberative process privilege as to 399

13  documents.  And plaintiffs' position is that the Government has

14  not met its burden of establishing that the deliberative

15  process privilege applies here.                             10:36:26

16       In addition, the Government is claiming the

17  attorney/client privilege and work product protection as to

18  approximately 120 documents.  And again, we do not believe that

19  the Government has met its burden to establish that those

20  privileges apply.                                           10:36:43

21       And so if Your Honor -- if that answers Your Honor's

22  question, I can continue to explain why that is our position.

23       THE COURT:  Let me ask you before you give me further

24  explanation.  The attorney/client privilege is usually a pretty

25  easy call.  The work privilege privilege -- or the work product  10:37:05

———— CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022 ————

1    privilege is not such an easy call to make in many cases.

2         Has the Government in these 120 documents claimed both

3    privileges as to all of them, or only one or the other as to

4    all of them or some of them?

5         MS. REITER:  As to the vast majority of the documents,     10:37:33

6    the Government has asserted both the attorney/client privilege

7    and the work product protection, Your Honor.

8         THE COURT:  And what is –– is it still your claim that

9    it's a deficient privilege log?

10        MS. REITER:  Yes, Your Honor.     10:37:57

11        So despite the opportunity that the Government had to

12   cure the deficiencies that we identified a year ago, the

13   Government still has not provided descriptions that meet its

14   burden to show that the documents contain legal advice or were

15   prepared in anticipation of litigation.  And instead the     10:38:14

16   Government is effectively asking plaintiffs and this Court to

17   assume that the privileges were properly invoked, because all

18   of the DOJ custodians are lawyers, and agencies can be clients.

19        But if that were enough, then any documents sent or

20   received by a Government lawyer would be privileged.     10:38:33

21        And I think it might be helpful for me to demonstrate

22   the deficiencies through some examples.

23        The Government asserts the attorney/client privilege

24   and work product protection with respect to a document

25   described as, quote, DOJ draft memo principals working group on     10:38:47

——— CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022 ———

1    border crossings.  There's no mention of an attorney, a client,

2    legal advice, or the anticipation of litigation.  The entire

3    document is redacted.  And it's unclear how plaintiffs are

4    supposed to evaluate whether the privileges are properly

5    asserted with respect to that document.                          10:39:06

6         And I'll give one more example, Your Honor.  They

7    assert these privileges as to a document described as, quote,

8    Results of Survey of Southwest Border U.S. Attorneys' Offices

9    on Efforts to Implement the Zero Tolerance Policy with a report

10   on statistics on 1325 and other prosecutions.                    10:39:25

11        Again, no reference to legal advice or the

12   anticipation of litigation.  And the information provided is

13   simply not enough for us to be able to evaluate whether the

14   privileges are properly asserted.

15        Now to be sure, some of the Government's descriptions       10:39:42

16   use the terms "legal advice" or "legal review," but courts have

17   explained that merely reciting the elements of the privilege is

18   insufficient.  The Government has to explain why the documents

19   reflect confidential attorney/client communication, and for

20   work product they have to explain why the document was prepared  10:39:59

21   in anticipation of litigation.  And the Government does not

22   attempt to satisfy these requirements as to many documents.

23        And I just want to note that providing the details

24   here that the case law requires is particularly important

25   because so many of the DOJ lawyers were making policy rather     10:40:16

1    than providing legal advice.

2          And the Government also still asserts the privilege

3    over documents that appear to concern factual information,

4    neither of which qualifies as legal advice.

5          So plaintiffs want the documents to which we are          10:40:33

6    entitled, and that requires a proper privilege log that can be

7    evaluated.  And so, Your Honor, we're asking the Court to order

8    the Government to promptly revise its logs to properly invoke

9    the attorney/client privilege and the work product protection.

10         THE COURT:  Okay.  Let me switch to Miss Majumdar.          10:40:50

11         Don't you think you have to tell us whether it's

12   attorney/client or work product?

13         MS. MAJUMDAR:  Your Honor --

14         THE COURT:  Because work product is a -- not an

15   absolute privilege.  There is an exception if the party seeking   10:41:08

16   work product can make a certain showing that there's no other

17   way for them to get this type of information.

18         Attorney/client privilege, however, is absolute.  If

19   it's attorney/client, there's just not an exception unless the

20   privilege is waived.  And that's not a claim that's being made    10:41:29

21   here.

22         So when you lump them both together as to the majority

23   of these documents, it seems to me that has to be split.  If

24   it's attorney/client privilege, as I said at the outset, it's

25   an easy call.  If it's work product, first it has to qualify as   10:41:48

——**CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022**——

1   work product, and second, I have to decide that despite it

2   being work product, it may still be discoverable.

3         MS. MAJUMDAR:  Yes, Your Honor.

4         So with respect to the claims of attorney/client

5   privilege and attorney work product, the Government maintains          10:42:09

6   that for all documents which attorney/client privilege has been

7   asserted, the attorney work product is also applicable in

8   this -- in these documents.

9         With respect to the privilege log, plaintiffs have

10  also received more than just the privilege log.  The documents          10:42:28

11  are very minimally redacted, and they reveal the information

12  that plaintiffs seek.  They state who the attorneys were on the

13  emails, they state who the clients were on the emails as well.

14        And the privilege log, which Miss Reiter has selected

15  some portions of the privilege log, but the majority of those          10:42:48

16  portions of the finalized privilege log from the April

17  reproduction describe what -- the legal analysis and discussion

18  that took place and why those documents would be subject to the

19  attorney/client and work product privileges.

20        THE COURT:  And this supplemental privilege log was          10:43:07

21  provided when?

22        MS. MAJUMDAR:  That was provided on April 9th.  It was

23  also attached as Exhibits 2 and 3 to the Weinsheimer

24  declaration.

25        THE COURT:  Okay.  Thank you.          10:43:26

—— **CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022** ——

1      Let me --

2      MS. REITER:  Your Honor.

3      THE COURT:  I'm going to go back to Miss Reiter.

4      Well, no, I'm not.  I'm going to ask you about the

5  deliberative process.                                    10:43:49

6      And I'm familiar with the deliberative process

7  privilege.  I'm familiar with the reasons that it exists.  But

8  why are these documents, these almost 400 documents that you've

9  withheld on the grounds of deliberative process --

10     Well, first let me clarify this -- with this question.  10:44:16

11  Are these documents withheld 100 percent or are they similarly

12  disclosed but redacted to redact what you believe is the

13  deliberative process portion of the documents?

14     MS. MAJUMDAR:  So the majority of the documents

15  are -- have line-by-line redactions.                     10:44:40

16     THE COURT:  Okay.

17     MS. MAJUMDAR:  But there are some documents,

18  specifically the reports, which were redacted in their

19  entirety.

20     THE COURT:  Okay.  And these are -- are these all    10:44:49

21  documents that were within the custody of the Justice

22  Department even if they originated in one of the Executive

23  Branch agencies?

24     MS. MAJUMDAR:  Yes.  All of these documents that are

25  subject of this motion to compel were within the DOJ -- within  10:45:16

1    DOJ's custody.

2           THE COURT:  So whose deliberative process was

3    involved?

4           MS. MAJUMDAR:  So the majority of these documents, the

5    deliberative process relates to the Department of Justice's          10:45:29

6    deliberative process, because they were -- they were edited

7    substantially and discussed by attorneys within the Department

8    of Justice.

9           THE COURT:  So as an example -- and I'm just going to

10   make this up rather than have you give me a specific example.        10:45:45

11   The Border Patrol might have submitted a proposal for analysis

12   with the Justice Department, and the document might be

13   information from different lawyers about what they think should

14   be the policy, or if this policy is okay as it is or needs to

15   be tweaked a little bit.  Is it that kind of deliberative           10:46:15

16   process, the deliberative process of the lawyers and the

17   Justice Department, with respect sometimes to documents

18   submitted to them by Executive Branch agencies?

19          MS. MAJUMDAR:  Your Honor, for the purposes of

20   answering that question, I think it might be more helpful to go     10:46:34

21   through the categories that the Department of Justice

22   identified these documents fall into.

23          THE COURT:  Okay.

24          MS. MAJUMDAR:  So in preparing for this argument, we

25   identified 35 unique documents -- and by "unique documents" I'm     10:46:47

CV-19-5217-PHX-SRB - CV-20-65-PHX-SRB - January 27, 2022

1   speaking in broad strokes.  So there may be variants to these

2   documents and email threads that have different resolutions,

3   but for assessing the deliberative process privilege there are

4   35 documents.

5          Now the Justice Department has created three                    10:47:08

6   categories that these documents fall into.  The first is draft

7   reports and executive orders.  The second is draft substantive

8   agendas and summaries.  And the third is documents related to

9   implementing the Zero Tolerance memorandum.

10         So beginning with the first category, there are four           10:47:28

11  unique documents within that category; three reports and one

12  draft executive order.

13         So for the three reports there is a report on securing

14  the southern border of the United States, a report on ending

15  catch and release at the border of the United States, and a       10:47:48

16  companion and overlapping report that's entitled Report on

17  Resources and Authority Required to Expedite the End of Catch

18  and Release Practices.

19         All three of these reports were generated by DOJ in

20  response to presidential memoranda from early April of 2018.      10:48:07

21  So --

22         THE COURT:  So have the final reports been disclosed?

23         MS. MAJUMDAR:  Your Honor, I'm unsure what happened to

24  those three reports.  I believe they might not have actually

25  been finalized.  And under Fish & Wildlife the documents can      10:48:26

1   still be deliberative if nothing happens with them and if they

2   just die on the vine.

3          I'm unclear about the status of what happened to those

4   reports.

5          THE COURT:  To the extent there were any executive          10:48:44

6   orders issued, those -- well, they wouldn't have to be

7   disclosed, they're public.  We all know what executive orders

8   were ultimately issued.

9          MS. MAJUMDAR:  Right.  And there was only --

10         THE COURT:  Go ahead.          10:48:59

11         MS. MAJUMDAR:  Sorry to interrupt you.

12         There was only one executive order that the Department

13  of Justice have asserted the deliberative process privilege

14  over, and that is the draft Executive Order 13841 Affording

15  Congress an Opportunity to Address Family Separations.  And as          10:49:14

16  all the parties are aware, that executive order is made public.

17         THE COURT:  So you've -- the second category is draft

18  agendas.  The final agendas of any meetings have been

19  disclosed?

20         MS. MAJUMDAR:  The Government maintains that the final          10:49:32

21  agendas would also be protected by the deliberative process

22  privilege.

23         If I could describe the documents within that

24  category, unless Your Honor has any other questions.

25         THE COURT:  Go ahead.          10:49:45

1        MS. MAJUMDAR:  Okay.  So there is 15 unique documents

2    within that category.  And breaking those documents down even

3    further, five of those documents are redacted in their entirety

4    for the presidential communications privilege, which plaintiffs

5    in their reply stated that they no longer challenge.  So those          10:50:02

6    five documents, the applicability of the deliberative process

7    privilege is not really at issue.

8        There are two additional documents on top of that

9    where the presidential communications privilege applies to the

10   vast majority of the redactions, but there may be some -- the          10:50:19

11   deliberative process privilege was slightly broader.  And so

12   that's an additional two documents that relate to that.

13       And there's an additional two documents that are

14   undisputedly not even tangentially relevant to plaintiffs'

15   claim.  One of those documents was produced in response to the         10:50:39

16   Government's document production policy, which requires that

17   attachments and family members be produced.  So if the document

18   parent was relevant, the family members would have to be

19   produced.

20       So the Government is asserting the deliberative                    10:50:58

21   process privilege over the family member that was produced that

22   has nothing to do with plaintiffs' claim.

23       And I can speak further about the subject matter and

24   what was addressed in these draft agendas and summaries if

25   Your Honor would like.                                                 10:51:15

1          THE COURT:  Tell me about the third category,

2    implementation of the policies.

3          MS. MAJUMDAR:  Sure.  So that category has 16

4    documents.  And documents in that category are not

5    predecisional to the creation of the Zero Tolerance memorandum,     10:51:30

6    but are predecisional to various subsequent policy decisions

7    which were required to implement the Zero Tolerance memorandum

8    or other policy decisions concerning the broader border

9    security and immigration.  And --

10          THE COURT:  So when you say they're not predecisional,     10:51:47

11    are you saying these -- the dates on these documents are after

12    the Zero Tolerance Policy was announced?

13          MS. MAJUMDAR:  Right.  Those documents were dated

14    after April 6, which is when Attorney General Jeff Sessions

15    issued the Zero Tolerance memorandum.  But they are     10:52:07

16    predecisional to subsequent policy decisions, either to

17    implement the Zero Tolerance memorandum or concerning broader

18    border security and immigration.

19          THE COURT:  And you -- were there final versions of

20    these documents that are the ones you claim are predecisional     10:52:31

21    concerning the implementation of the policy?

22          MS. MAJUMDAR:  So to the extent that there were any

23    final versions, those would be produced to plaintiff.  But a

24    lot of these documents were ideas and thoughts that came

25    through the Department of Justice, which were never actually     10:52:54

1   executed, but were debated and contemplated by Department of

2   Justice employees.

3           THE COURT:  So you referred to 35 documents, and

4   plaintiffs referred to 399.  What's the difference?  Where's

5   the discrepancy by tenfold?                                10:53:17

6           MS. MAJUMDAR:  So 399 documents total were produced,

7   but those 399 documents comprise -- those -- the 35 documents

8   that I referenced encompass the variants of the 399 documents.

9           So there's not 399 unique different documents, there's

10  really 35 unique documents.                                10:53:43

11          THE COURT:  Okay.  Do you understand that,

12  Miss Reiter?  Because I don't.

13          MS. REITER:  I don't, Your Honor.

14          A lot of these documents were email chains and the

15  dates on the email chains are different.  So even if they     10:53:59

16  relate to the same subject matter, the privilege log suggests

17  that these are different emails, or at least continuations of

18  an email chain.

19          So I, likewise, am confused about the 35 purported

20  unique documents.                                          10:54:13

21          THE COURT:  I'm not really following how 399 turned

22  into 35.

23          MS. MAJUMDAR:  Yes, Your Honor.

24          THE COURT:  I am familiar with how email chains can

25  result in hundreds and hundreds of documents, and when you look  10:54:27

—— CV-19-5217-PHX-SRB - CV-20-65-PHX-SRB - January 27, 2022 ——

1    at it it's one long document.

2         MS. MAJUMDAR:  Yes, Your Honor.  That has -- that

3    makes up a large portion of the production of documents by the

4    numbers.  So there are many email chains where they're really

5    discussing the same subject matter.  And just for the purposes        10:54:45

6    of simplifying this motion, the Government grouped them into --

7    as one document, because they referenced the same topics.

8         And for instance with the draft reports and executive

9    orders, for one of the reports -- let's just take the Report on

10   Securing the Southern Border of the United States, there were        10:55:06

11   approximately 50 versions of that report that were circulated,

12   all of which the Government claims the deliberative process

13   privilege over.  But for purposes of understanding, because the

14   privilege would apply the same to these reports, that would be

15   counted as one single document.                                       10:55:24

16         THE COURT:  I got it.  Thank you.

17         But -- I think I asked you this already, but just to

18   have it clear on the record, the deliberative process privilege

19   that you're claiming is within the Department of Justice, and

20   not the deliberative process within one of the Executive Branch       10:55:44

21   agencies that might have been the subject of or the requestor

22   in any of these documents; is that correct?

23         MS. MAJUMDAR:  Yes.  We're only claiming the DOJ

24   privileges.

25         THE COURT:  Okay.  Thank you.                                   10:56:05

1          Did you want to say anything else on this,

2   Miss Reiter?

3          MS. REITER:  Yes, Your Honor.

4          I just want to point out that one email on a chain

5   can, of course, be very significant.  Even if it references the          10:56:15

6   same topics there can be side conversations that are

7   significant.  So it's not necessarily the case that one can

8   paint with a broad brush as to every email in a chain.

9          And, Your Honor, I would like to address the

10  categories, but I'll pause and see if you're ready to hear from          10:56:30

11  me on that.

12          THE COURT:  Go ahead.

13          MS. REITER:  So, Your Honor, I will address the

14  categories.  I want to make two quick points first, if I may.

15          First of all, we dispute that the documents are          10:56:44

16  minimally redacted.  The documents -- even if the documents

17  tell us who sent the emails, the substance of the documents are

18  redacted.  We cited many examples of that in our brief.  We're

19  happy to cite additional ones or submit examples.  But the

20  examples that I described already were based on the          10:57:03

21  reproduction and the revised privilege log, and those examples

22  are entirely redacted.

23          Second, I want to make a threshold point, which is

24  that courts across the country, including district courts in

25  the Ninth Circuit, follow the D.C. Circuit's holding in *In re:*          10:57:18

1    *Subpoena*, that the deliberative process privilege, quote, does

2    not enter the picture at all where the Government's intent and

3    decision-making process are at issue.

4         And here plaintiffs' intentional infliction of

5    emotional distress claims turn on whether the Government, by          10:57:34

6    devising and implementing the Family Separation Policy,

7    intended to cause immigrant families emotional distress.

8         The deliberative process privilege likewise is

9    inapplicable where there's reason to believe the documents

10   sought may shed light on Government misconduct.  And as the           10:57:53

11   Court already held in denying the Government's motion to

12   dismiss, plaintiffs here have plausibly alleged that the

13   Government's separation of their families violated their

14   constitutional rights.

15        So under either principle the deliberative process              10:58:06

16   privilege is inapplicable in this case.

17        But I do want to address the specific categories,

18   because even if Your Honor disagrees, and even setting aside

19   whether the privilege can be overcome, the Government has not

20   met its heavy burden to establish that the deliberative              10:58:24

21   privilege -- deliberative process privilege applies to the

22   specific documents at issue.

23        The Government's categories do not capture all of the

24   documents, they cover documents over many different time

25   periods and are, frankly, just too general to be useful.  The        10:58:40

 1   documents instead are best categorized based on time periods,

 2   because the timeline, as some of Your Honor's questions

 3   suggested, is relevant to whether the documents are

 4   predecisional and for the balancing test analysis.

 5        So we would propose that the first category of          10:58:59

 6   documents are those related to the decision to use the Zero

 7   Tolerance Policy to separate families.  These are documents

 8   from before May 4th of 2018.  That category of documents goes

 9   directly to the Government's intent in developing the policy

10   and its misconduct in failing to develop any plan for tracking  10:59:20

11   the children, among other issues.

12        And so under *In re: Subpoena*, the deliberative process

13   privilege is not applicable to these documents at all.  And

14   even if it were, under the balancing test plaintiffs' need for

15   these documents strongly outweighs the Government's interest in  10:59:37

16   nondisclosure.

17        And these documents include, for instance, agendas and

18   talking points from a May 3rd meeting at which the Government

19   reportedly voted on whether to separate families.  This is

20   clearly critical evidence in this case.                       10:59:53

21        The second category overlaps with one of the

22   Government's categories, and it's documents related to

23   implementation of the policy, which would cover roughly May 4th

24   through June 20th, which is when the executive order purporting

25   to end family separation was issued.                          11:00:10

**———CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022———**

1          These documents are not protected by the deliberative

2    process privilege because they relate to the Government's

3    implementation of a decision that had already been made.  And

4    we cite case law finding that documents regarding continued

5    implementation of an established policy is not predecisional.          11:00:27

6          And the Government has not identified any other

7    specific decisions to which these documents are predecisional.

8    I think counsel said the documents are predecisional to various

9    policy decisions related to implementation.  That is not

10   specific enough under the Ninth Circuit's decision in *Maricopa*.   11:00:47

11         And even setting that aside, under the balancing test,

12   these documents are also highly relevant to plaintiffs'

13   negligence claim and go to the Government's misconduct.  And

14   the way the policy was communicated during this period likely

15   also sheds light on the Government's intent.                          11:01:06

16         The third category is documents related to the

17   development of the executive order which purported to end

18   family separation on June 20th.

19         THE COURT:  Is that 13 -- is that 13841?

20         MS. REITER:  That's correct, Your Honor.                         11:01:22

21         THE COURT:  Okay.  Go ahead.

22         MS. REITER:  And even if some of those documents are

23   predecisional to the executive order, and I acknowledge some of

24   those may be, our view is the balancing test still favors

25   disclosure because they're likely, again, to shed light on the        11:01:38

——— CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022 ———

1    Government's intent and misconduct.

2         And what I mean by that is, the executive order ending

3    the policy presumably was prompted at least in part by the

4    significant problems with the policy and its implementation.

5         And so under these categories, all of these documents          11:01:54

6    should be produced regardless of whether Your Honor applies

7    *In re: Subpoena* or applies the balancing test.

8         THE COURT:  Okay.  Miss Reiter, I've heard enough.

9         MS. REITER:  Yes, Your Honor.

10        THE COURT:  I am going to take this motion under          11:02:11

11   advisement, and I am going to order the Government to provide

12   me, for in camera inspection, the 120 documents to which

13   attorney/client privilege or work product privilege has been

14   asserted, along with the most recent privilege log related to

15   those 120 documents.  And those documents, of course, will be          11:02:43

16   submitted to me in an unredacted form.

17        Similarly, I am going to order the Government to

18   provide what they call the 35 documents to which the

19   deliberative process privilege has been asserted, with the

20   specific assertion of the privilege, what you said about the          11:03:15

21   privilege.  And, of course, in an unredacted form.

22        Miss Majumdar, by what date can you have those

23   documents sent to me along with the objection and the privilege

24   log?

25        MS. MAJUMDAR:  Would one week be reasonable,          11:03:37

1   Your Honor?

2          THE COURT:  It certainly would be.

3          MS. MAJUMDAR:  February 3rd.

4          THE COURT:  That would be fine.

5          MS. MAJUMDAR:  Okay.  Thank you.                    11:03:46

6          THE COURT:  All right.  Then we're going to move on

7   to --

8          MS. MAJUMDAR:  Your Honor --

9          MS. REITER:  Your Honor, this is Diana Reiter again.

10  If I may just make one more request.                       11:03:56

11         The plaintiffs would request that the Government

12  provide plaintiffs with the Bates numbers for the 35 documents,

13  since we do not know what the 35 documents are that they're

14  referring to.

15         And in addition, plaintiffs would request that       11:04:09

16  plaintiffs be entitled to identify at least some documents for

17  in camera review so that it is not entirely the Government that

18  is identifying the documents that the Court should review.

19         THE COURT:  Can you do that with respect to those

20  Bates numbers on the deliberative process documents?         11:04:28

21         Obviously the 120 attorney/client work privilege

22  everybody knows what they are.

23         MS. MAJUMDAR:  Just for clarification purposes,

24  Your Honor, is plaintiff asking for the Bates numbers of --

25         THE COURT:  Of the unredacted documents that you're   11:04:48

─── **CV-19-5217-PHX-SRB - CV-20-65-PHX-SRB - January 27, 2022** ───

1    going to give me that you characterized as 35 documents to

2    which the deliberative process privilege was asserted.

3          MS. MAJUMDAR:  Yes, we can provide the Bates numbers.

4          And just for clarification purposes, Your Honor is

5    just asking for one document from each of the                    11:05:06

6    categories -- sorry, not from each of the categories, but from

7    each of the 35 unique documents; is that correct?

8          THE COURT:  I don't understand.  I thought I was

9    getting 35 -- what you called 35 documents.

10         MS. MAJUMDAR:  Okay.  I understand what you're saying,   11:05:22

11   Your Honor.

12         THE COURT:  If you're telling me I could just look at

13   one and I'd be able to decide all of them based on one, I'd be

14   happy to do that.

15         MS. MAJUMDAR:  No, no, I apologize for any confusion.    11:05:34

16   You will be getting 35 documents.

17         THE COURT:  Okay.  And right now I am going to

18   withhold -- until Miss Reiter sees what I've got, I don't know

19   whether she might want to request that you give me more.

20         But I'm not going to automatically agree to take more,   11:05:56

21   Miss Reiter.  So when you see what I get in terms of the Bates

22   numbers, if you believe there's some other documents that I

23   should see that are not encompassed within those Bates numbers,

24   you can make a written request.

25         MS. REITER:  Understood, Your Honor.  Thank you.         11:06:15

——— CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022 ———

1          MS. MAJUMDAR:  And, Your Honor, I apologize, one more

2    point of clarification.

3          Would you like the documents entirely redacted or with

4    transparent redactions so you would be able to see which

5    portions of the documents plaintiffs already have?          11:06:28

6          THE COURT:  Oh, exactly what you just said, the second

7    version.  So that -- yeah, if you give them to me unredacted,

8    but they're not transparent, then I have no idea what the

9    plaintiffs have.

10         So yes, transparent redactions, please.          11:06:45

11         MS. MAJUMDAR:  Great.  Thank you, Your Honor.

12         THE COURT:  Okay.  Now we're going to talk about the

13    motion to compel the production of relevant documents.

14         And who's addressing this for the plaintiffs,

15    Mr. Fidler?          11:07:07

16         MS. FULHAM:  No, Your Honor.  This is Miss Fulham,

17    Terra Fulham for the A.P.F. plaintiffs.  But we'll be handling

18    the argument for both sets of plaintiffs.

19         THE COURT:  Okay.  First, what is the present status

20    of this motion to compel?          11:07:32

21         MS. FULHAM:  The present status of this motion to

22    compel is that plaintiffs have issued a narrow request, most

23    recently it was narrowed in the reply brief.  And to date our

24    understanding is the Government has not produced any documents

25    in response to that narrowed request.          11:07:53

1          THE COURT:  So at the present time, what you have

2    stated in the reply are the documents that you're seeking?

3          MS. FULHAM:  That is correct.

4          THE COURT:  So let me ask Mr. MacWilliams, are you

5    still objecting to the production of all of the documents that          11:08:12

6    are now being requested in the narrowed version in the reply?

7          MR. MACWILLIAMS:  We are, Your Honor.

8          If I could -- if I could follow that up with one point

9    of clarification.  I don't think it's accurate to say that the

10   Government's never produced any documents meeting -- like fall          11:08:34

11   within these categories.  There's been a lot of discovery from

12   DOJ and the U.S. Attorneys' Offices, I mean, thousands of

13   documents, which very well meet these descriptions.

14         So to answer your question though, the Government's

15   position is, we shouldn't have to produce more or look for          11:08:52

16   more.  And as a result, that's why our objection still stands.

17         THE COURT:  So I understand in part that the narrowed

18   request had to do with the information in the response about

19   how these documents are organized or disorganized within the

20   Office of Inspector General.  And --          11:09:20

21         MR. MACWILLIAMS:  I think -- I'm sorry, Your Honor.  I

22   didn't mean to interrupt.

23         THE COURT:  No, I was actually asking Miss Fulham

24   that.

25         Is that partially the reason why you've narrowed your          11:09:31

—— CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022 ——

1  request?

2      MS. FULHAM:  Yes.  The narrowed request was in

3  response to the Government's opposition and the information

4  that we received for the first time in the opposition about the

5  volume of documents that the OIG collected in the course of its          11:09:46

6  review, as well as how those documents were organized and

7  maintained.

8      THE COURT:  To date have you received the comments to

9  the draft report that were submitted before the report became

10  final?                                                                    11:10:06

11      MS. FULHAM:  These are the submissions from

12  Mr. Hamilton, Mr. Rosenstein and the Office of the Attorney

13  General?

14      THE COURT:  I believe so.

15      MS. FULHAM:  Okay.  No, we have not received those.      11:10:15

16      THE COURT:  So, Mr. MacWilliams, I'm not completely

17  familiar with how the Office of Inspector General operates

18  within the Justice Department, but I have a little bit of

19  familiarity with GAO reports.

20      And when GAO does an investigation, my understanding      11:10:42

21  is is that they submit their draft report, much like the

22  Inspector General did here, to the parties who are the subject

23  of the investigation, and ask them for comments on the draft

24  report.  Those comments are then reviewed and a final report is

25  issued, which may or may not have been changed as a result of      11:11:06

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022

1  the comments.

2          But that the comments also become part of the public

3  record because they often explain disagreement with the

4  findings or add facts that were not considered or allegedly not

5  considered.                                                      11:11:30

6          Why is that not the way this one should be?  That when

7  the OIG sent out this draft and said, this is what my report's

8  going to say, what do you think, and they come back and say, I

9  think it's great, think it's wrong, think you should include

10 this, think you should delete that.  Why shouldn't that be      11:11:49

11 discoverable?

12         MR. MACWILLIAMS:  Well, Your Honor, there's a couple

13 reasons for that.

14         For the other sort of things that plaintiffs are

15 looking for I can put together an argument about burden, but    11:12:05

16 when it comes to the written submissions, those are -- you are

17 correct in how it works, and those are probably identifiable

18 documents that the OIG could put its hands on.

19         But putting aside the larger issue of how much more

20 discovery does plaintiff need from DOJ, we can get into that,   11:12:22

21 there's also the question of privilege.  And I mean, it's one

22 thing to say, there might be some relevant information in here.

23 If they have the report --

24         THE COURT:  Okay.  Let's just --

25         MR. MACWILLIAMS:  -- the question is why --            11:12:35

1     THE COURT:  What privilege?  This is the Office of

2  Inspector General who's supposed to be operating independently

3  of the Department of Justice.  What privilege would there be to

4  a comment on the draft report that was submitted before the

5  report was finalized?                                            11:12:59

6     MR. MACWILLIAMS:  Well, correct.  Well, Your Honor, I

7  don't want to get into a premature fight over privilege until

8  it's something that could be briefed, but this would be the

9  Inspector General Office's privilege as opposed to DOJ's larger

10  privilege that we're discussing in the other motion to compel.   11:13:18

11     So before I could agree to turn over these written

12  submissions -- which may very well involve a back and forth

13  with investigators.  I mean, until we know exactly what's in

14  there --

15     THE COURT:  I'm asking you about something very            11:13:29

16  specific.  I'm not asking you about back and forth with

17  investigators.  I'm not talking about the universe of documents

18  that are in the possession of the OIG that were collected in

19  the course of this investigation.  I'm asking you about three

20  things that were submitted from outside the OIG to the OIG      11:13:56

21  commenting on the draft report.

22     MR. MACWILLIAMS:  Right.  I understand, Your Honor.

23     In my conversations with the Inspector General's

24  Office about this, they've asserted that -- oftentimes in these

25  written submissions -- we're not talking -- necessarily talking  11:14:19

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022

1   about like a final response that may be appended to the end of

2   the report, which may very well be the case here.  It's certain

3   people who were interviewed.  And they're given an opportunity

4   to, as you said, respond and maybe correct things if they think

5   something was wrong.                                          11:14:39

6       The issue here, the way it's been explained to me, is

7   that oftentimes those responses can reveal questions that were

8   asked, investigative methods, things of that nature.  So that's

9   why the OIG would want to take a close look, not necessarily to

10  like deal with facts or things like that, but things that would  11:14:59

11  reveal the investigator's methods.  That's what they're looking

12  for when they would do a privilege review of these types of

13  submissions.

14      THE COURT:  I'm not disagreeing with you about that,

15  but that does not in any way address comments that were made by  11:15:14

16  three individuals outside the OIG to the draft report.  That

17  doesn't involve the investigators, it doesn't involve any

18  deliberative process, if there is such a privilege to be

19  asserted to some of these documents.  This is, comment on the

20  draft before we finalize it, and they are outside the OIG.      11:15:43

21      MR. MACWILLIAMS:  But it's going to the OIG, I think,

22  Your Honor.  If I'm understanding your question.

23      This isn't -- what plaintiffs are asking for on page 9

24  of the reply are written submissions of Gene Hamilton, Rod

25  Rosenstein and the Office of Deputy Attorney General in         11:16:03

1   response to their review of the draft OIG report.  What they're

2   asking for is the submissions from these two individuals in

3   this one office to the investigators commenting on the report.

4        So I don't know -- I don't think it's outside the OIG

5   investigation.                                                    11:16:20

6        THE COURT:  Have you looked at them?  Do you know what

7   they are?

8        MR. MACWILLIAMS:  No, Your Honor, I don't.

9        THE COURT:  I happen to think that these are

10  discoverable if they're not the subject of a privilege.  I'm     11:16:28

11  not -- I agree with you in part, that every single document

12  that has been looked at that has been amassed that isn't

13  particularly easily recovered should not be disclosed in light

14  of the fact that you have already disclosed all of the

15  documents that are referenced in the report itself.              11:16:54

16       But these to me seem to be really critical documents

17  to know whether or not and what these persons who were

18  important subjects of the investigation said in response to the

19  draft report to the OIG.

20       MR. MACWILLIAMS:  I understand what you're asking for,      11:17:27

21  Your Honor.  I just -- what I'm trying to avoid here is an

22  order to -- it's one thing to order that they be produced.

23  It's another thing to order already that they have to be

24  produced and no privilege at all can apply to them.  It's that

25  second part I'm trying to avoid here.  Because I would prefer    11:17:45

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022

1   the Inspector General's Office have a chance to -- I know he's

2   had the opportunity -- I don't know if there will be, but if

3   there's anything that needs to be redacted based on their

4   privilege, to have the opportunity to do that.

5           And if plaintiffs and myself want to talk about that      11:18:00

6   afterwards and there's a dispute, we can bring it to the Court,

7   which I would like to avoid.

8           But I'm trying to avoid an order now to say that no

9   privilege at all applies to these written submissions and to

10  produce them right now unredacted.  I'm trying to protect the    11:18:16

11  Inspector General's privilege here as best as I can, but before

12  they've had a chance to really review it and make it a

13  privilege call.

14          THE COURT:  Okay.  Other than these -- I'm going to

15  turn to Miss Fulham now.                                         11:18:32

16          Other than these documents that are the responses of

17  the three individuals that you've named to the draft report,

18  what else are you still seeking from the OIG?

19          MS. FULHAM:  Yes.  Happy to address that.

20          So the second category of documents that we're seeking   11:18:54

21  are statistical and resource reports and assessments from DOJ,

22  DOJ components and the Customs and Border Patrol related to the

23  Zero Tolerance Policy.  And we know they exist because they're

24  expressly referenced in the OIG report.

25          In terms of relevance, the statistical and resource       11:19:13

1  reports will likely show the Government was separating far more

2  people than it was prosecuting, which supports plaintiffs'

3  allegation that the prosecutions were pretextual and the

4  Government's goal was to inflict harm through the family

5  separation.                                                    11:19:30

6        These types of documents, as far as we understand,

7  were not included in the DOJ's MIDP productions, except to the

8  extent that they may have been attached to or included in

9  responsive emails on an ad hoc basis.

10       So this specific request is trying to address a gap in  11:19:44

11  the productions we've received to date.

12       THE COURT:  So let me interrupt a second.

13       You understand these statistic and resource reports

14  are reports that were compiled by the DOJ, not the OIG.  But

15  were submitted to the OIG by the -- by someone within the     11:20:07

16  Justice Department.

17       MS. FULHAM:  Yes.  Sorry.  You cut out for just a

18  moment there.

19       But, yes, my understanding is that these were reports

20  that were compiled either by DOJ, or it sounds like the Customs 11:20:20

21  and Border Patrol as well, that relate to the Zero Tolerance

22  Policy.

23       THE COURT:  Okay.  And what's the third category?

24       MS. FULHAM:  The third category is that we are seeking

25  handwritten notes that were provided to the OIG regarding      11:20:37

1    planning, implementation and coordination of the Zero Tolerance

2    Policy.  These documents are important because, as the OIG

3    report makes clear, many of the communications about family

4    separation occurred through meetings and calls, such as

5    meetings between the Attorney General and DHS Secretary, and          11:20:55

6    weekly meetings between the Deputy Attorney General and

7    U.S. Attorneys on the southwest border.

8         These documents we think should have been produced --

9    identified and produced as well as part of the Government's

10   MIDP productions.                                                     11:21:13

11        We have received a limited number of handwritten

12   notes.  They were produced largely in response to the Court's

13   order to produce the documents cited specifically in the text

14   of the OIG reports.  But we think that there are likely

15   additional relevant handwritten notes.                               11:21:30

16        And the Government has indicated the documents

17   collected by the OIG are stored by source, so it should be able

18   to readily identify these types of documents and produce them.

19        THE COURT:  Okay.

20        MS. FULHAM:  And --

21        THE COURT:  What, is there another category?

22        MS. FULHAM:  Yes, there is one more category,

23   Your Honor.

24        The last category that we seek are emails, records and

25   other documents collected from two individuals, Deputy Attorney      11:21:55

—— **CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022** ——

1    General Rod Rosenstein and Matthew Whitaker, who at the time

2    was the Attorney General's Chief of Staff.  And the OIG report

3    makes clear that Mr. Rosenstein and Mr. Whitaker played key

4    roles in the implementation of the Zero Tolerance Policy and

5    were likely to have relevant communications both within DOJ and      11:22:19

6    with other Government agencies.

7         Given the importance of their roles, these are also

8    custodians that we think should have been included in the

9    Government's MIDP productions.  They were not.  And so we

10   didn't learn of their involvement until there was public             11:22:36

11   reporting on the draft OIG report.

12        THE COURT:  So these are documents -- the statistics,

13   the handwritten notes, and the emails are DOJ documents that

14   you now know exist because of the OIG report and are not

15   necessarily to be produced by the OIG, but to be produced           11:23:03

16   pursuant to your request for production of documents to the

17   Department of Justice.  Is that accurate?

18        MS. FULHAM:  That's -- yes, that's correct.

19        I think that we don't necessarily want these documents

20   specifically because they were collected by the OIG.  I think        11:23:24

21   the publication of this OIG report has highlighted that there

22   were gaps in the productions we have received from the

23   Department of Justice.  And that there are highly relevant

24   documents -- documents that are highly relevant to the

25   plaintiffs' claims and the Government's defenses that we are         11:23:41

1    requesting.

2            THE COURT:  Is there any other category?

3            MS. FULHAM:  Those are the categories, those four

4    categories.

5            THE COURT:  Okay.  Mr. MacWilliams, my last question I    11:23:51

6    asked because a lot of the focus of your motion was the

7    difficulty of the OIG to locate and produce some documents.

8    But Miss Fulham has just clarified that that's not necessarily

9    the source of these documents, she just happens to know about

10   them because of the references from what has been reviewed from    11:24:19

11   the OIG's report.

12           And I want to start with the statistics and resource

13   reports by the DOJ and Customs & Border Protection with respect

14   to what was arrests, prosecutions, et cetera, on the southwest

15   border.                                                             11:24:48

16           If there were regular statistic and resource reports

17   being prepared during this limited time period, why would they

18   not be discoverable?

19           MR. MACWILLIAMS:  Well, Your Honor, a couple of points

20   on that -- on that category of documents.                          11:25:06

21           And before I start, I do want to clarify, these aren't

22   OIG documents in the sense they're ones that OIG created, but

23   they do reside with the OIG as part of the investigation.  That

24   would be our source for getting them.

25           THE COURT:  That might be --                               11:25:26

1        MR. MACWILLIAMS:  And I can walk you through what all

2    that would involve.

3        THE COURT:  Hold on.  That might be your source for

4    the easiest access to them, but they only have them because

5    they already existed within Customs & Border Protection or          11:25:35

6    various U.S. Attorneys' Offices, whoever was charged with

7    compiling this information.  You might just be able to find

8    them easily from the DOJ -- or from the Office of Inspector

9    General.  But they're not their documents, they're the

10   documents of Department of Justice and CBP.                          11:25:56

11       MR. MACWILLIAMS:  Correct.

12       But I want to clear up any misconception here.

13   There's nothing easy about this.

14       I mean, I think the way these categories have been

15   supposedly narrowed is largely an illusion, because these are        11:26:12

16   very broad categories of documents.  And as noted in the

17   declaration, the OIG collected over 500,000 documents for

18   purposes of its review and report.  And there's no -- and then

19   I'll get to the relevance and the importance in a second.

20       But just understanding the burden, and doing it by             11:26:38

21   going directly to the source in DOJ or other places, I think

22   we've already done that, but I'll get to that in a second as

23   well.

24       But there's no sort of carve-out category.  Of these

25   500,000 documents the OIG collected, we have the statistical       11:26:53

 1   reports over here.  They're in there -- even if you can

 2   identify what exactly plaintiffs are talking about here, it's

 3   in there somewhere.  And I don't know how really to look for

 4   it, other than going through half a million documents.

 5              There's that burden issue.                          11:27:12

 6              And then -- but with that said, the other MIDP

 7   discovery has largely covered this.  We've gone to DOJ.  We've

 8   gone to ICE.  We've gone to CBP.  Your Honor, you're familiar

 9   with the volume of that and what that entailed.  To the extent

10   there's these kind of documents, that was in there.            11:27:33

11              And so we're sort of adding yet another -- another

12   step or another source to this, all while I'm not entirely

13   clear what plaintiffs are getting at here in terms of why this

14   matters.  I mean, I know Miss Fulham said, well, we can somehow

15   prove this was a pretext by looking at the statistics.  But to  11:27:53

16   what end?

17              I mean, they're not challenging -- when I refer to

18   Zero Tolerance, I'm talking about the actual DOJ prosecution

19   policy.  They're not challenging that.  What they're

20   challenging is the decision to separate these children from    11:28:09

21   their parents.  Okay.

22              This isn't a class action.  We're talking about these

23   particular plaintiffs.  And they were separated by DHS, and the

24   basis for that separation is reasons that DHS decided.

25              And DOJ has nothing to do with separations or        11:28:30

1    immigration detention and sending kids to ORR custody as

2    unaccompanied minors.  DOJ's role is prosecutions, to prosecute

3    or not to prosecute.  And what statistics there were regarding

4    8 U.S.C. 1325 prosecutions along the whole southwest border

5    during this time frame, I don't know what that's getting at.        11:28:57

6          THE COURT:  Well, I do, Mr. MacWilliams.  And I want

7    to remind you of that phrase that you -- I don't know who

8    invented it, that called these people amenable, these

9    plaintiffs, the adult plaintiffs, amenable to prosecution, as

10   if that meant they were in criminal detention when they were     11:29:21

11   not.

12          And the plaintiffs are attempting to make the case

13   that the Zero Tolerance Policy, that basically said every

14   single person who crosses the border not at a port of entry, or

15   who doesn't have a right to cross at a port of entry, is going    11:29:44

16   to be criminally prosecuted for illegal entry, knowing full

17   well that that was an impossibility.  It couldn't happen in the

18   five border courts.  They had numerical limitations on the

19   number of people that could be prosecuted on a daily basis.

20          And yet under this, well, this is a person who could     11:30:10

21   be prosecuted, therefore, they're going into civil detention

22   and their children can't be with them, instead they're going to

23   be considered unaccompanied minors, when in reality their

24   children could have been with them because it was civil, not

25   criminal detention.                                              11:30:32

—CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022—

1    And that -- we're not -- they might not be challenging

2  the Zero Tolerance Policy, but I think they're suggesting that

3  the Zero Tolerance Policy was used as an excuse for family

4  separation when the -- many of these individuals, and our five

5  plaintiffs in one case and the other adult plaintiffs in the                11:30:57

6  other, were not ever put in criminal detention or charged with

7  any crime.

8    So it's clearly relevant that the Zero Tolerance

9  Policy and the statistics and resource reports that were being

10  made that were showing that Zero Tolerance was in reality not              11:31:17

11  Zero Tolerance, never was and never could be.  I mean, it seems

12  to me that that's part of what the plaintiffs' case is, and

13  always has been.

14    MR. MACWILLIAMS:  Yes, Your Honor.  I understand that

15  point.                                                                     11:31:39

16    But when you look at the decision to separate,

17  whatever the grounds are, whether it's in this case amenability

18  to prosecution, criminal history, an illness, there's multiple

19  grounds, that is a decision made by DHS.  That's the point I'm

20  trying to make, is that's what they're challenging, is DHS's             11:31:58

21  decision to declare the child a UAC, an unaccompanied minor,

22  which necessitates separation, notwithstanding the fact that a

23  prosecution did not happen.  That's the crux of their case.

24    And I don't understand why the number of

25  prosecutions -- first of all, I think we all know that -- and           11:32:17

1   by the way, in addition to all the discovery that's happened in

2   this case, there's been many Inspector General reports, GAO

3   reports.  I mean, the idea that more people were arrested than

4   can possibly have been prosecuted, that's been covered pretty

5   well so far.  So I don't know why we need discovery on that        11:32:41

6   exact point.

7          And moreover, there's been a lot -- I mean, I can't

8   say I've seen every single document that has been produced, but

9   I've seen quite a bit.  I think documents that are -- you could

10  categorize as statistical and resource reports, whether they     11:32:59

11  were sent to DOJ or whether they were internally within CBP,

12  I've seen that stuff.  I'm sure plaintiffs have it.  I know

13  they do.

14         Unless -- I guess what I propose is if that's so

15  important to their case, why should the United States            11:33:16

16  Government have to sift through another half a million

17  documents looking for these things?  Why shouldn't plaintiff

18  have to say, here are all the reports we already have, please

19  fill in this one gap from this one day or from this one week,

20  or whatever the case may be, as opposed to just looking again    11:33:31

21  through this enormous pile of documents for something that is

22  relevant in Your Honor's eyes, but like in a -- by implication,

23  you know.

24         I mean, what they're really getting at is, they want

25  to know what the motivation behind the Zero Tolerance Policy      11:33:47

1    was, and that's exactly what's been the focus of this

2    discovery.  And to the extent there's documents talking about

3    that, they've been produced.  And we've had over 70 custodians.

4    And you're familiar with the volume of documents.  And that's

5    exactly what this discovery has been focused on, among other          11:34:05

6    things.

7            And to now sort of be able to put together some

8    statistical analysis which by inference shows that the

9    motivation may have been not what's publically stated as far as

10   enforcing criminal law, I think that's quite a huge burden on        11:34:20

11   the United States for something you want to kind of show by

12   implication.

13           I think there's much more –- other sources out there

14   that have covered this topic, that's covered this issue, and

15   are a much more direct source of evidence.                           11:34:35

16           THE COURT:  Okay.

17           MR. MACWILLIAMS:  That would be my response is, it's a

18   lot of work here for a needle in the haystack.

19           And they may very well –- from OIG reports, GAO

20   reports, and the discovery that's been done to date, they may       11:34:46

21   already very well have what they need.  And I think the burden

22   should be on them to identify what's missing, and then we can

23   see if we can backfill it, as opposed to pretty much just

24   starting over here from scratch and looking through this

25   enormous pile of documents.                                          11:35:02

1      THE COURT:  So do you know if you produced emails and

2    records that originated with a Mr. Rosenstein and Mr. Whitaker?

3      MR. MACWILLIAMS:  I know we have, Your Honor.

4    Those -- I'm not too sure about Mr. Whitaker.  I frankly have

5    not seen his name a whole lot.  I think in the OIG -- I'm                    11:35:23

6    talking about the DOJ OIG report, I think even he's in the

7    report, just didn't have that much to do with the Zero

8    Tolerance Policy.

9      With respect to Mr. Rosenstein, now bear in mind,

10   Your Honor, there's been the larger MIDP discovery and there's              11:35:39

11   been requests for productions where the United States -- and it

12   all ties together, where plaintiffs issued a request for

13   production that involved getting documents directly from the

14   United States Attorneys' Offices all along the southwest

15   border.  And that's the other request for production that's not             11:35:59

16   at issue here.

17      And so as a result of doing that, so even though we

18   didn't go directly -- even though Mr. Rosenstein wasn't a

19   custodian for purposes of the MIDP discovery, through that MIDP

20   discovery, and certainly through the discovery directly from               11:36:14

21   the U.S. Attorneys' Offices, that involves quite a few

22   communications with Mr. Rosenstein to the U.S. Attorneys'

23   Offices along the southwest border, as well as internally here

24   in the Department of Justice.

25      THE COURT:  Okay.                                                        11:36:31

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022

1          All right.  What else do you want to say on this,

2    Miss Fulham?

3          MS. FULHAM:  Well, just to focus specifically on the

4    last point that Mr. MacWilliams was making regarding

5    Mr. Rosenstein, my -- plaintiffs' understanding, based on the          11:36:44

6    productions that we have reviewed to date in the case, that

7    we've received fewer than 150 emails that go to or from

8    Mr. Rosenstein, with the vast majority of those coming from

9    just four email chains.

10         Given the importance of his role and his regular          11:37:01

11   significant direct communications, both with the DHS Secretary

12   and with U.S. Attorneys on a regular basis, he should have been

13   a custodian.  He is a clear -- clearly of import.

14         And if the Government had conducted the proper due

15   diligence on the front end with respect to its MIDP responses,          11:37:22

16   I think he would have been a custodian.  He was not, and so we

17   would request that his records be produced.

18         If the Government has concerns about volume,

19   plaintiffs are certainly amenable to discussing and negotiating

20   ways to reduce that volume.          11:37:41

21         THE COURT:  All right.  Thank you.

22         This motion to compel production of documents sought

23   documents that the Department of Justice Office of Inspector

24   General considered and relied upon in drafting their report.

25         And I am ruling today that with the exception of the          11:37:59

UNITED STATES DISTRICT COURT

1    responses to the drafts of the report, that the request for

2    production will be denied.

3           The burden in my view is -- on the Office of the

4    Inspector General is too great when they were merely the

5    collector of documents.  Whether or not some of these documents                11:38:27

6    should be produced through another source, the Court is not

7    making a definitive ruling on.

8           But I will say that to the extent that you've already

9    received regularly prepared statistics and resource reports

10   from the Department of Justice, the Offices of the                              11:38:49

11   U.S. Attorneys along the border, Customs & Border Protection,

12   DHS, that Mr. MacWilliams makes a valid point that you should

13   say what's missing.  We know you have some of these already.

14   And I don't think that it should be up to the Office of

15   Inspector General to have to wade through its documents in                      11:39:11

16   order to find documents that originated from other sources.

17          But my exception is that, I believe that the responses

18   to the drafts from the three individuals that have been

19   identified as having submitted responses are discoverable.

20          And, Mr. MacWilliams, I know that you want me to                          11:39:36

21   qualify this, but I'm really not sure why I should.

22          MR. MACWILLIAMS:  Your Honor, were you -- are you

23   waiting for me to respond to that --

24          THE COURT:  Yes, I am.

25          MR. MACWILLIAMS:  -- or is that your order?  Okay.  I                     11:39:54

—— **CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – January 27, 2022** ——

1   wasn't sure if that was your order or a question.

2          Well, like I said, Your Honor, it's somewhere in our

3   opposition.  As I said in the opposition, I really want to

4   avoid a premature fight over privilege, but there was some

5   pretty good case law in there cited as to why this exact sort          11:40:09

6   of thing, communications with an Inspector General regarding

7   its reports or its investigation, are privileged.

8          And I'm not saying the entire document is privileged,

9   but there might be some things in there that may be privileged,

10  which reveal information about how the investigation was          11:40:28

11  conducted.

12          THE COURT:  Okay.  I'm going to order that you produce

13  it.  I'm not going to order that it be produced in its entirety

14  and without redaction.  But to the extent there are any

15  redactions, you are to specifically advise the plaintiffs as to          11:40:42

16  the basis of the specific redactions and what the claim is,

17  whether it's deliberative process, work product, or

18  attorney/client privilege, and not lump them all together.

19          And I'm going to order the production within 30 days.

20          I have a question about the other cases,          11:41:03

21  Mr. MacWilliams, that I know exist both in this district and in

22  other districts.  Are we ahead or behind?

23          MR. MACWILLIAMS:  Your Honor, we're still pretty far

24  ahead.  I think -- to my count I think there's currently 20

25  cases in District Court cases throughout the country, some of          11:41:30

1    which, like you said, are here in Arizona, at least one other

2    in Arizona, maybe a couple more.  Those are all in various

3    stages of proceedings.  I think with one exception they all

4    either still have motions to dismiss pending or they're still

5    in the stage of briefing a motion to dismiss.                        11:41:49

6          So as far as discovery goes, we're still pretty far

7    ahead.

8          THE COURT:  Okay.  Because I was going to say, I hope

9    we didn't just waste our time because some other judge in some

10   other district already ordered you to make this production.          11:42:05

11         But if we're still ahead, then maybe some other judge

12   in some other district will look at what we're doing and decide

13   whether to follow along or not.

14         Did you want to discuss anything else about this

15   case -- these two cases this morning, Mr. MacWilliams?               11:42:25

16         MR. MACWILLIAMS:  I think that's all I had,

17   Your Honor.

18         THE COURT:  And from either Miss Reiter or

19   Miss Fulham?

20         MS. REITER:  I have nothing further, Your Honor.              11:42:49

21   Thank you.

22         This is Diana Reiter.

23         MS. FULHAM:  This is Miss Fulham.

24         Nothing further.

25         THE COURT:  Okay.                                             11:42:56

1          MR. WALSH:  Your Honor, I'm sorry to interrupt.  This

2     is Erik Walsh for C.M. plaintiffs.

3          And I just wanted to come back to the discovery

4     schedule that we started off with and one request there.

5          THE COURT:  Okay.                                   11:43:09

6          MR. WALSH:  Mr. MacWilliams indicated that at some

7     point after this conference we could get together and come up

8     with a joint proposed schedule.  As set out in our status

9     report, we've already tried to do that with the Government, and

10    we do not have a joint proposed schedule.                 11:43:29

11          I think it would be useful to impose a deadline where

12    the parties are to submit a joint proposed schedule, just so we

13    can keep things moving.

14          THE COURT:  How much time do you think it should take,

15    Mr. Walsh, for this consultation and -- well, let's say -- I    11:43:44

16    want a joint schedule or a schedule that's joint and

17    disjointed.  So to the extent you agree, I want to see where

18    you agree, and to the extent you disagree, I want to see that

19    in the same report.

20          How much --                                         11:44:04

21          MR. WALSH:  Your Honor, I promise I don't mean this

22    flippantly, but the Government has known since our unopposed

23    motion on December 16th that scheduling was one of the purposes

24    of today's call.  So I would say tomorrow, but I realize that

25    that may be a little bit unrealistic.  So I would say by the    11:44:22

1    middle of next week.

2              THE COURT:  To consult or to submit it?

3              MR. WALSH:  To submit it, Your Honor.  We have

4    consulted already.

5              THE COURT:  Mr. MacWilliams.                    11:44:37

6              MR. MACWILLIAMS:  Yes, Your Honor.

7              THE COURT:  How much time do you think I should give

8    you before you submit a joint report containing your agreements

9    and disagreements concerning the schedule of the rest of the

10   case?                                                     11:44:53

11             MR. MACWILLIAMS:  I think -- I don't think it should

12   take too long at all.  I think the middle of next week would

13   work fine.

14             THE COURT:  Okay.  See, you're already in agreement on

15   something, so that bodes well for your discussions.       11:45:03

16             So I'm going to give you until next Friday to file

17   your joint report.

18             And that's all I have.  Does anybody else have

19   anything?

20             Okay.  Thank you all very much.                 11:45:23

21             I'm sorry we couldn't do this in person, but maybe

22   next time.

23             Counsel may all be excused.

24        (Proceedings concluded at 11:45 a.m.)

25                           -oOo-

UNITED STATES DISTRICT COURT

1
2
3
4            C E R T I F I C A T E
5
6        I, CANDY L. POTTER, do hereby certify that I am duly
7   appointed and qualified to act as Official Court Reporter for
8   the United States District Court for the District of Arizona.
9        I FURTHER CERTIFY that the foregoing pages constitute
10  a full, true, and accurate transcript of all of that portion of
11  the proceedings contained herein, had in the above-entitled
12  cause on the date specified therein, and that said transcript
13  was prepared under my direction and control.
14        DATED at Phoenix, Arizona, this 2nd day of February,
15  2022.
16
17
18
                        s/Candy L. Potter_____
19                      Candy L. Potter, RMR, CRR
20
21
22
23
24
25