# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

C.M., et al.,                           )
                                        )  No.  CV-19-5217-PHX-SRB
          Plaintiffs,                   )
                                        )
          vs.                           )
                                        )
United States of America,               )
                                        )
          Defendant.                    )
_____ )
                                        )
A.P.F., et al.,                         )
                                        )  No.  CV-20-65-PHX-SRB
          Plaintiffs,                   )
                                        )
          vs.                           )  Phoenix, Arizona
                                        )  June 2, 2022
United States of America,               )  11:02 a.m.
                                        )
          Defendant.                    )
_____ )


BEFORE:  THE HONORABLE SUSAN R. BOLTON, SENIOR JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

ZOOM DISCOVERY DISPUTE HEARING


Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022

1
**Z O O M
A P P E A R A N C E S**

2

3  For the C.M. Plaintiffs:
       Arnold & Porter Kaye Scholer
4      By:  **Diana E. Reiter,** Esq.
            **Erik Christopher Walsh,** Esq.
5      250 West 55th Street
       New York, New York 10019
6
       Kairys Rudovsky Messing Feinberg & Lin
7      By:  **Jonathan Howard Feinberg,** Esq.
       718 Arch Street, Suite 501
8      Philadelphia, Pennsylvania 19106

9      American Immigration Council
       By:  **Katherine Melloy Goettel,** Esq.
10     1331 G. Street, Suite 200
       Washington, DC 20005
11
       National Immigration Litigation Alliance
12     By:  **Trina Realmuto,** Esq.
            **Mary Kenney,** Esq.
13     10 Griggs Terrace
       Brookline, Massachusetts 02446
14
       National Immigration Litigation Alliance
15     By:  **Mark Michael Fleming,** Esq.
       208 South LaSalle, Suite 1300
16     Chicago, Illinois 60604

17     Arnold & Porter
       By:  **Lucy Sarah McMillan,** Esq.
18          **Kaitlyn Schaeffer,** Esq.
       250 West 55th Street
19     New York, New York 10019

20

21

22

23

24

25

1

2                        **Z O O M**
                    **A P P E A R A N C E S**
3

4  For the A.P.F. Plaintiffs:
        Covington & Burling
5       By:  **Terra White Fulham**, Esq.
             **Teresa Sanghee Park**, Esq.
6            **Kristin Marie Cobb**, Esq.
        850 10th Street NW
7       Washington, DC 20001

8       Southern Poverty Law Center
        By:  **James Melvin Knoepp**, Esq.
9            **Sharada Jambulapati**, Esq.
             **Norma Ventura**, Esq.
10      P.O. Box 1287
        Decatur, Georgia 30031

11

12  For the Defendant:
        U.S. Department of Justice
13      By:  **Philip Davis MacWilliams**, Esq.
             **Irina Maya Majumdar**, Esq.
14           **Walter Edward Parker IV**, Esq.
        P.O. Box 888
15      Washington, DC 20044

16

17

18

19

20

21

22

23

24

25

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022

1       (Proceedings begin at 11:02 a.m.)

2          THE CLERK:  Civil case 19-5217, C.M. versus United

3   States of America.  Time set for discovery dispute hearing.

4          And civil case 20-065, A.P.F. and others versus the

5   United States of America, also set for discovery dispute

6   hearing.

7          THE COURT:  And I know that we have counsel who are

8   not being shown on video, you've already given your

9   appearances, they'll be reflected in the minutes.  And the

10   three counsel who are on video with me are the ones who will be

11   speaking and taking the lead.

12          So I'll begin as I always do by asking, at whose

13   request are we having this conference?

14          MS. REITER:  At plaintiffs' request, Your Honor.

15          THE COURT:  Miss Reiter, would you describe the

16   current dispute?

17          MS. REITER:  Certainly.

18          So last week plaintiffs deposed two policy level

19   government officials.

20          During the deposition of Tricia Swartz, a senior staff

21   member at the Office of Refugee Resettlement, Miss Swartz was

22   shown several documents in which other HHS officials described

23   a February 14, 2017 meeting held by Kevin McAleenan, the acting

24   commissioner of CBP, in which, according to the documents, DHS

25   proposed, quote, separating children and family units from

00:00:17

00:00:34

00:00:52

00:01:04

00:01:29

1  their parents and referring them to ORR as unaccompanied alien

2  children, UACs, and that DHS would do this, quote, as a

3  deterrent to families who have not yet entered the United

4  States.

5       So although the documents describe the February 14th  00:01:46

6  meeting, and Miss Swartz testified that she attended, the

7  Government instructed her not to answer questions about the

8  discussion at the meeting on the ground that the information

9  sought is protected by the deliberative process privilege.

10      Among other things, they instructed her not to answer  00:02:02

11  questions about what was discussed at the meeting, who

12  presented the proposal and whether attendees had raised

13  concerns about it.

14      Given that the meeting and the separation proposal

15  discussed at the meeting are central to plaintiffs' claims, as  00:02:15

16  I'll explain, and given that the Government has produced

17  numerous documents about this meeting and the 2017 DHS proposal

18  to separate families, we called the Court in the middle of the

19  deposition to seek a ruling on whether the Government's

20  instructions were improper.  Your Honor was not available, so  00:02:33

21  we moved on with the depositions and advised the Government

22  that we planned to request this conference.

23      The following day counsel for the Government again

24  instructed another witness not to respond to similar questions

25  about meetings and other discussions related to the 2017 DHS  00:02:49

—CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022—

1    family separation proposal.

2            And because those discussions that we asked about go

3    to the heart of plaintiffs' claims in these cases, under the

4    Warner test that Your Honor has previously applied, the

5    deliberative process privilege doesn't apply, plaintiffs are          00:03:07

6    entitled to the testimony sought, and the instructions to the

7    witnesses were improper.

8            And since this issue will arise at several depositions

9    that are already scheduled to take place this month, including

10   one currently scheduled for Tuesday, we wanted to promptly          00:03:22

11   raise it with the Court.

12           Now, with the Court's permission I'd like to explain

13   why the 2017 DHS policy discussions are highly relevant to

14   plaintiffs' claims.

15           THE COURT:  No.  I was going to turn to Government's          00:03:36

16   counsel, but for some reason she dropped off the video.

17           Is she still on?

18           Hopefully she'll rejoin in a moment.

19           Mr. MacWilliams, are you there?  Can you activate your

20   audio?                                                               00:05:04

21           Did he go off too?

22       (Discussion off the record between the Court and courtroom

23   deputy.)

24           THE COURT:  Okay.  We seem to have lost the -- both

25   the audio and the video with the two attorneys from DOJ,           00:05:20

—CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022—

1  Miss Majumdar and Mr. MacWilliams.  I guess he was in the same

2  room with her.

3          So I'm going to see if Maureen can do something to see

4  if they're trying to get back in.

5          So we probably shouldn't discuss this in their          00:05:44

6  absence.

7          MS. REITER:  Understood, Your Honor.

8      (Discussion off the record between the Court and courtroom

9  deputy.)

10          THE COURT:  We just got an email, I don't know if you   00:08:17

11  got it too, saying that they froze, dropped off, they're trying

12  to get back in.

13          MS. REITER:  Thank you.

14          THE COURT:  When are the next depositions set?

15          MS. REITER:  Your Honor, the next one is Tuesday,       00:10:44

16  June 7th.

17      (Discussion off the record between the Court and courtroom

18  deputy.)

19          THE COURT:  All right.  Somebody from our systems is

20  going to call her and see if he can help her get -- solve       00:11:52

21  whatever this problem is.

22          So I'm going to recess.

23          And here's -- if we can get this going again by 11:30

24  or so, we'll reconvene.  I have a noon meeting, so that's a

25  hard cutoff.  So if we have 20, 25 minutes, we'll be fine.      00:12:12

1        I could also reschedule for this afternoon.  I know

2   that some of you are in a different time zone.  But the soonest

3   I could do it this afternoon would be 2:15 in Arizona, which

4   would be 5:15 in the east.

5        So let's see what happens.  Hopefully we can get          00:12:43

6   the -- I don't know why the Department of Justice has this

7   problem, but we'll see if we can get them back in the next 15

8   minutes or so, and we'll resume.

9        Court is in recess.

10   (Recess at 11:15 a.m., until 11:23 a.m.)                      00:13:01

11        THE COURT:  We're back on the record, and we have been

12   rejoined by counsel for the Department of Justice.

13        And just as you dropped off I was going to ask you a

14   question, which is, this -- these conversations may well be

15   subject to the deliberative process privilege, but that is a   00:21:06

16   privilege that is not absolute like the attorney/client

17   privilege.

18        What could be more central to this case than the

19   reasons for the adoption of the Family Separation Policy, and

20   where could those reasons be better found than in a high level  00:21:33

21   discussion with Mr. McAleenan?

22        MS. MAJUMDAR:  Sure, Your Honor.

23        And I missed a little bit of Miss Reiter's

24   introduction, so if I'm repeating something or misstating

25   something, please let me know.                                 00:21:51

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022

1          But before I answer your question, Your Honor, I do

2     want to address a preliminary matter.  And that is that the

3     Government believes that this hearing is premature.

4          As Your Honor is aware, there's two pending motions

5     before this Court; one is a motion on a judicial determination          00:22:06

6     of a privilege claim, and the other is plaintiffs' motion to

7     compel in camera review of documents.

8          The briefings on these documents are not complete, and

9     I believe they will be complete on Tuesday of next week.

10         The Government had laid out in its briefing why these          00:22:25

11    documents -- the Government had addressed the 2017 discussions

12    in these briefings, and we believe that addressing testimony

13    that would be held at depositions is a little bit of putting

14    the cart before the horse, because a ruling on those two

15    motions we believe would obviate the need for the Court's          00:22:49

16    involvement, just like it did with respect to the ruling on the

17    documents related to the Zero Tolerance Policy.

18         But to address your question, the discussions in 2017

19    were not discussions related to the Zero Tolerance Policy.

20    Your Honor has held that the Zero Tolerance Policy is          00:23:11

21    inextricably interwoven with family separation.  Families in

22    these cases were separated during the Zero Tolerance time

23    frame, so discussions from 2017 of policies that were not

24    enacted are of little relevance to their claims.

25         And we have laid this out in more detail in our          00:23:32

—— **CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022** ——

1   briefings, which is why we believe that ruling on this question

2   should be reserved until after briefing had been completed.

3           THE COURT:  Well, how can you say that this wasn't

4   implemented just because there was -- several months passed

5   before the Family Separation Policy was implemented?                    00:23:53

6           MS. MAJUMDAR:  So, Your Honor, the Family Separation

7   Policy as plaintiffs have stated it never really existed.  What

8   existed was the Zero Tolerance Policy which started in April of

9   2018, and a later CBP Referral Policy which was signed by

10  Secretary Nielsen in May of 2018.  So this is a time frame            00:24:16

11  where plaintiffs were separated.

12          What plaintiffs are seeking right now is discussion of

13  policies related to civil detention that were circulated but

14  not enacted in early of 2017.

15          We have testimony from the CBP and ICE witnesses and         00:24:35

16  from Jean Hamilton, who was at DHS at the time, that these

17  separation policies, as plaintiffs' put it, never existed and

18  they were never enacted.

19          THE COURT:  Well, what's different?  What's different

20  about what was being discussed in 2017 and what was enacted in        00:24:54

21  2018?

22          MS. MAJUMDAR:  So, Your Honor, this is laid out in

23  detail in the Government's briefing.

24          THE COURT:  Well, give me a short version of it.

25          MS. MAJUMDAR:  Sure.  Sure.                                   00:25:10

CV-19-5217-PHX-SRB – CV-20-65-PHX-SRB – June 2, 2022

1      Without going into too much detail and getting into

2  the heart of what the Government believes is the deliberative

3  process privilege, in 2017 there were discussions related to

4  civil detention which may have resulted in family separations.

5      Now, the Zero Tolerance Policy which was enacted in                   00:25:29

6  2018 was a prosecution policy where families would be -- where

7  adults and family members would be prosecuted.  And because the

8  adult and family -- and the family member were prosecuted, then

9  the children would be separated from the adult.

10      THE COURT:  This is a continuing argument that the          00:25:49

11  Government's been making.  But none of these plaintiff -- adult

12  plaintiffs were ever prosecuted.  All of these adult plaintiffs

13  were put into civil detention.  None of them were ever charged

14  with a crime.  None of them were ever detained criminally.

15      And I know that the Government continues to make this          00:26:15

16  argument, and they've come up with an expression of their own

17  called amenable to prosecution that -- as I said, that's an

18  argument.

19      But the reality, that no one disputes, is that this

20  Family Separation Policy that is the subject of these two          00:26:37

21  lawsuits was civil detention and separation and turning of the

22  children over to the Department of Health and Human Services or

23  ORR and declaring them unaccompanied.

24      If this is the discussion in 2017 that eventually

25  became the Family Separation Policy that is part of the Zero          00:27:11

1    Tolerance Policy, why isn't the motivation, which plaintiffs

2    would argue never changed, which was that this was really to

3    just discourage families from -- it was to act as a deterrent

4    to other families who would enter the United States with minor

5    children, why isn't this highly relevant?  It seems to me that          00:27:48

6    it is.

7               MS. MAJUMDAR:  Well, Your Honor -- sorry to interrupt

8    you.

9               Your Honor, as a preliminary matter, the plaintiffs

10   were not prosecuted, but they still went through the criminal           00:28:03

11   process.  They weren't just placed in civil detention.  Many of

12   the plaintiffs were referred for prosecution.  And whether or

13   not -- a decision to prosecute would have been made by the

14   U.S. Attorney's Office at the time.  And it was that plaintiffs

15   were referred by CBP for prosecution and that initiated the             00:28:25

16   criminal process.

17              So even if the plaintiffs were not actually

18   prosecuted, this still related to family separations during a

19   time of a criminal process to prosecute adults and family

20   units.                                                                  00:28:46

21              And, Your Honor, I do want to reiterate that

22   additional discussion on this matter is laid out in the

23   Government's briefing.

24              THE COURT:  Has the Government designated some or all

25   of the last week's depositions or the depositions upcoming next        00:29:08

1   week as subject to the confidentiality agreement and the

2   protective order?

3          MS. MAJUMDAR:  The Government will.  I believe that

4   happens when we have the transcript, and then we inform the

5   individual taking -- in charge of running the deposition that          00:29:30

6   we would be -- we would be cutting the deposition subject to

7   the confidential order.

8          THE COURT:  Why shouldn't I just let these questions

9   be answered and let the protective order guide that, rather

10  than the potential for significant delay in taking these          00:29:53

11  depositions because you want me to rule on a not yet fully

12  briefed motion that's going to be relevant to this question of

13  confidentiality?

14         MS. MAJUMDAR:  Yes, Your Honor.

15         Well, at this point in time the two deponents,          00:30:13

16  Mr. Hamilton and Miss Swartz, are not available.  And to have

17  the witnesses answer the questions would be to reopen -- would

18  be to reopen depositions.

19         THE COURT:  But I was told -- and I'm sorry that I

20  asked this question while you weren't present, because I wanted          00:30:32

21  to see what was going to happen if we couldn't get you back.

22         But I asked -- I asked when the next deposition was

23  scheduled, and I was told it's next Tuesday, June 7th.  I

24  didn't ask whether these issues would come up again, but I'm

25  guessing the answer to that question is yes.          00:30:54

UNITED STATES DISTRICT COURT

1      MS. MAJUMDAR:  Yes, Your Honor, it is possible that

2  this issue would come up at the next deposition, which is

3  June 7th.  But the Government has maintained for months now

4  that policy depositions which relate to these earlier time

5  frames should be paused until the deliberative process          00:31:13

6  privilege disputes can be resolved.

7      So, Your Honor, if you were to rule on this issue

8  today, what would happen is kind of -- it would be a little bit

9  of a tricky process.  So if you were to rule on this issue

10 today, and you were to rule in plaintiffs' favor, and          00:31:32

11 plaintiffs would be allowed to question Mr. Wolf, who is the

12 next deposition, about these policy decisions from 2017,

13 plaintiffs would be able to elicit deposition testimony about

14 these policy decisions.

15     However, because the motion to compel and the             00:31:51

16 privilege document, which is a claw back document, essentially,

17 because those motions are still pending before Your Honor,

18 plaintiffs would not be able to ask Mr. Wolf about the

19 document.  And it's very likely that plaintiffs would intend to

20 show Mr. Wolf some of these documents, in particular the claw   00:32:09

21 back document which is a DHS document which discusses an ICE

22 policy proposal.

23     So at that point plaintiffs would still request that

24 depositions be kept open or reopened to show Mr. Wolf those

25 documents and ask him questions about the documents.           00:32:29

1          So ruling as to the testimony would not resolve this

2   impending document dispute and would not obviate the need for

3   reopening depositions.

4          And the Government maintains that a ruling on these

5   documents would most likely allow the parties to work out this          00:32:49

6   issue on its own, as the parties have done with relation to the

7   documents from the Zero Tolerance Policy time frame that

8   Your Honor has already ruled on.

9          THE COURT:  Okay.  Thank you.

10          Miss Reiter.          00:33:04

11          MS. REITER:  Yes, Your Honor.  Thank you.

12          I'd like to correct the record first on a couple of

13   things.

14          The first is that our clients never left DHS custody.

15   So, yes, three of them were referred, two of them were never          00:33:13

16   referred.  But their prosecutions were declined, yet they were

17   separated anyway in civil detention.

18          So Your Honor has it absolutely right.  Plaintiffs'

19   separations here were consistent with the DHS policy proposal

20   that was being discussed throughout 2017.          00:33:31

21          And even if officially the policy was a prosecution

22   policy, that, as plaintiffs have maintained throughout the

23   litigation, was pretext for a much broader policy that

24   separated everyone apprehended regardless of whether they were

25   prosecuted, as is the case with our plaintiffs.          00:33:50

1        With respect to the timing issue, we have a

2   discovery schedule here.  Fact discovery is scheduled to end

3   on July 15th.  We think the Government has continued to

4   improperly withhold information based on the deliberative

5   process privilege when it's clear that the information is          00:34:08

6   highly relevant.

7        Your Honor, it's really -- it's hard to conceive of

8   evidence that is more relevant to this case than the

9   discussions of a policy that ultimately was applied to our

10  clients who were never prosecuted.                                 00:34:23

11       So our view is that the designations shouldn't --

12  these improper designations should not delay our schedule, we

13  should be permitted to proceed with the depositions, and we

14  should be permitted to ask questions about the 2017 DHS policy

15  discussions.                                                       00:34:41

16       THE COURT:  I agree.  I don't want there to be any

17  further delay.

18       I don't know how long it will take me to rule on the

19  not yet fully briefed motions.  But certainly it would require

20  an extension of the discovery deadlines that I do not want to      00:34:59

21  have to extend.

22       I am going to direct that the witnesses not be

23  instructed but, rather, be permitted to answer questions

24  concerning the discussions of the Family Separation Policy on

25  February 14th, 2017, and thereafter, that ultimately resulted      00:35:32

1    in the family separations starting in April of 2018.

2         And if I'm wrong, this is subject to the protective

3    order and may never then be something that can be used as

4    evidence in this case.

5         But I think, based on the highly relevant nature of         00:36:05

6    these discussions, even if the Government would like to draw

7    some kind of a bright-line between discussion of family

8    separation in 2017 with the discussion of Zero Tolerance in

9    2018, I think, as I've said before, that's an argument that the

10   Government is making, and not a fact that there's some         00:36:29

11   bright-line between them.  And I believe that it can be

12   explored pursuant to the existing protective order.

13        And if, in fact, this goes beyond what would be an

14   exception to the deliberative process privilege, and the Court

15   later determines that it is protected by deliberative process,  00:36:49

16   it can be protected, because it's not going to become public as

17   these depositions are taken.

18        So I am going to direct that the upcoming witnesses

19   answer questions concerning the Family Separation Policy that

20   apparently was the subject of a high level meeting on          00:37:13

21   February 14, 2017.

22        Was there anything else on plaintiffs' agenda for

23   discussion today?

24        MS. REITER:  Not from me, Your Honor.

25        THE COURT:  Miss Fulham?                                  00:37:31

1          MS. FULHAM:  Nothing from me, Your Honor.

2          THE COURT:  Anything else from the Government,

3    Miss Majumdar?

4          MS. MAJUMDAR:  No, Your Honor.

5          THE COURT:  Okay.  I had one other question that is a          00:37:43

6    related and somewhat unrelated matter.

7          I am aware that in a case that's pending before

8    Judge Rayes of this court, that a motion has been filed for

9    consolidated policy level discussion -- or policy level

10   discovery, rather.  And I took a look at that motion, and it          00:38:12

11   had this somewhat ambiguous statement that plaintiffs do not

12   oppose the filing of this motion.

13         So I don't know if that meant the plaintiff in the

14   case before Judge Rayes, whether that was intended to include

15   the plaintiffs in this case.          00:38:41

16         And so what I wanted to know was whether or not any of

17   the parties in this case are going to file anything in support

18   of or in opposition to that motion?

19         Miss Reiter, you first.

20         MS. REITER:  Certainly, Your Honor.          00:38:56

21         That statement was not intended to include plaintiffs

22   in this case.  The Government did not tell plaintiffs that it

23   was their intention to file this motion and to try to

24   consolidate policy level discovery.  We learned about it when

25   that motion was filed.          00:39:11

UNITED STATES DISTRICT COURT

1        We asked Miss Majumdar what their intention was with

2   respect to consolidation and how it might affect our case a

3   couple of weeks ago.  We haven't heard anything.

4        It's not clear to us what the proposal is and,

5   therefore, it's somewhat difficult for us to weigh in on what          00:39:26

6   our position is, Your Honor.  But if Miss Majumdar is able to

7   clarify, we may well want an opportunity to file something in

8   opposition.

9        THE COURT:  And in her defense, I'm not sure she's

10  even counsel of record in that case, because the counsel of          00:39:44

11  record in that case is the United States Attorney's Office in

12  Arizona.

13       So -- but that answers my question, which is, I'm

14  going to hold back, assuming that plaintiffs in this case are

15  going to weigh in on one side of this or the other after you          00:40:04

16  get some clarification.

17       And then I will ask, Miss Majumdar, did you know about

18  this before it was filed?

19       MS. MAJUMDAR:  So, Your Honor, I personally did not

20  know about it before it was filed.  It's a United States          00:40:20

21  Attorney's Office case.

22       What Miss Reiter is referencing about the discussion,

23  I heard from counsel for plaintiffs on another matter, I

24  believe this was the week before last, and they requested

25  discussion on this -- on this motion.  And I said, please let          00:40:37

1    us know dates, we're happy to discuss it, and we didn't hear

2    anything further from plaintiffs on the matter.

3            THE COURT:  So this was filed without you being part

4    of the discussion of the filing of the motion.  So you could

5    even weigh in, theoretically, in opposition or in support.          00:41:01

6            But this answers my question.  I don't want anybody's

7    position on this today.  What I now know is that this is not an

8    unopposed motion, and I will await the filing from anybody who

9    wants to weigh in on that request from these two cases.

10           The other thing that I thought was curious,              00:41:30

11   Miss Majumdar, and you might want to have some discussions with

12   the Assistant United States Attorney about this, is that there

13   are -- there is another case in the Phoenix division that the

14   United States Attorney is handling where there was a motion to

15   transfer, which I denied.  And my understanding is that there    00:41:50

16   are two other cases in the district, in the Tucson division,

17   that we haven't heard anything from.

18           So it seems like everybody who's associated with the

19   Department of Justice should be on the same page on this.  So

20   you should be either encouraging or discouraging these things.   00:42:16

21   I just think that it would be helpful to all of us in these two

22   cases to have some consistency with what the Government's

23   position is as it relates to all of the cases that are pending.

24           I mean, why I would combine discovery in one case and

25   not in the other three, or decline to do it in one but do it in  00:42:40

1    another?  It just seems like perhaps you could initiate some

2    discussion with the assigned Assistant United States Attorneys

3    and come to some -- some agreeable consensus among the DOJ

4    people on this.

5           So that was the only thing that I had.                      00:43:08

6           Thank you all very much.

7           Court is in recess.

8        (Proceedings concluded at 11:45 a.m.)

9

10                          -oOo-                                        02:13:20

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    C E R T I F I C A T E

5

6          I, CANDY L. POTTER, do hereby certify that I am duly

7   appointed and qualified to act as Official Court Reporter for

8   the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10  a full, true, and accurate transcript of all of that portion of

11  the proceedings contained herein, had in the above-entitled

12  cause on the date specified therein, and that said transcript

13  was prepared under my direction and control.

14          DATED at Phoenix, Arizona, this 2nd day of June,

15  2022.

16

17

18                              s/Candy L. Potter_____
19                              Candy L. Potter, RMR, CRR

20

21

22

23

24

25