BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Trial Attorney
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 305-2609
Facsimile: (202) 616-5200

Attorneys for the United States of America

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S., on his own behalf and on behalf of his minor child H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own half and on behalf of his minor child, B.P.,

Plaintiffs,

v.

United States of America,

Defendant.

No. CV-20-00065-PHX-SRB

**MOTION AND MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO COMPEL THE ADULT PLAINTIFFS TO SUBMIT TO RULE 35 PSYCHOLOGICAL EXAMINATIONS AND SECOND MOTION TO EXTEND EXPERT DISCOVERY DEADLINES**

Pursuant to Federal Rule of Civil Procedure 35(a), Defendant United States of America hereby moves this Court for an order (1) compelling Plaintiffs A.P.F., J.V.S., J.D.G., H.P.M., M.C.L., and R.Z.G. (collectively, the "Adult Plaintiffs") to each attend a psychological examination to be conducted by Dr. Ricardo Winkel, Ph.D., at a date, time, and location that is agreeable to all interested parties; and (2) extending Defendant's time in which to serve its expert disclosures, which are presently due September 23, 2022, to 60 days after this court decides this motion, and to similarly extend the remaining expert disclosure deadlines accordingly.

This motion is supported by the below memorandum of points and authorities and the exhibits submitted herewith.

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.2(j)**

Pursuant to Rule 7.2(j) of the Local Rules of Civil Procedure, counsel for the United States certifies that the parties personally conferred regarding this matter and that Plaintiffs oppose each of these requests.

**INTRODUCTION**

In this action seeking damages for intentional infliction of emotional distress, negligence, and loss of consortium, Plaintiffs allege that they have sustained severe, ongoing, and permanent mental and emotional injuries and lasting damage to the parent-child relationship resulting from the separation of parents and children at the United States-Mexico border in 2017 or 2018. Plaintiffs intend to support their claims of injury through expert testimony and have each submitted to multiple mental health evaluations by their own experts. It is standard practice for plaintiffs alleging severe emotional injury

to be examined by the opposing party's expert; indeed, in a similar family-separation case pending in the Southern District of Florida, the adult plaintiff consented to an examination by the United States' expert under the same terms that the United States proposes here. Nevertheless, Plaintiffs will not agree to submit to evaluations by the United States' experts under any circumstances. The United States hereby moves for an order compelling each Adult Plaintiff in this action to submit to a Rule 35 examination by its retained expert, Dr. Ricardo Winkel, Ph.D., a licensed psychologist in the State of California. *See* Exhibit 1.

If permitted by the Court, Dr. Winkel would perform non-invasive psychological examinations of the Adult Plaintiffs, each exam consisting of a clinical interview portion and a standardized testing portion. These examinations—to occur at dates, times, and locations that are mutually convenient for the parties—would permit Dr. Winkel to develop findings on each Adult Plaintiff's current psychological condition and prognosis, as well as on the cause or causes of each Adult Plaintiff's presentation, all of which are central issues in this litigation and matters on which Plaintiffs themselves intend to introduce expert testimony. Thus, good cause exists to order the examinations. Fed. R. Civ. P. 35(a)(2)(A).

The United States also seeks a 60-day extension of its deadline to serve expert psychological reports to allow the Court to decide this contested issue and, if the matter is resolved in the United States' favor, to allow sufficient time for Dr. Winkel to conduct the examinations of the six Adult Plaintiffs and to prepare his reports.[1] In the alternative, if

[1] The United States is not seeking Rule 35 examinations of Plaintiffs O.B., H.Y., M.G., A.D., A.J., and B.P. (collectively, the "Minor Plaintiffs") at this time. However, the

the Court declines to order the examinations, the United States seeks an extension of 30 days to allow sufficient time for Dr. Winkel and the government's child and adolescent psychology expert, Dr. Andrew Wenger, Ph.D., to complete their reports in light of the fact that they will not have access to the Plaintiffs in forming their opinions. As described below, there is good cause for this extension motion given the negotiations between the parties and the government's recent receipt of the raw data underlying Plaintiffs' experts' reports.

## ARGUMENT

### A. Each Adult Plaintiff Has Placed His Psychological Condition in Controversy and Good Cause Exists for the Rule 35 Examinations

Under Federal Rule of Civil Procedure 35(a), the Court may order a party to "submit to a physical or mental examination by a suitably licensed or certified examiner" where a party's mental or physical condition is "in controversy," upon motion and a showing of "good cause." Fed. R. Civ. P. 35(a). Where, as here, a plaintiff claims an ongoing mental injury, the factors reviewed in determining "good cause" often merge with those requirements necessary to find that the plaintiff's mental condition is "in controversy." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 200 (N.D. Tex. 1995) (citing *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994)). As the Supreme Court of the United States has held, "[a] plaintiff in a negligence action who asserts mental

United States includes in this request an extension of its deadline to serve psychological expert reports related to the Minor Plaintiffs, so that it may have the benefit of the results of the Rule 35 examinations of the Adult Plaintiffs, if ordered by the Court, before determining whether to proceed with seeking contested examinations of the Minor Plaintiffs. If the United States decides that it is necessary to seek the exams of the Minor Plaintiffs, the United States will make every effort to continue to meet and confer with Plaintiffs to resolve the issue without court intervention and will endeavor to file any motion expeditiously.

or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964).

In this case, each Adult Plaintiff has squarely placed his mental condition and prognosis, as well as the cause or causes of his current psychological presentation, "in controversy." All of the Plaintiffs assert claims against the United States for intentional infliction of emotional distress ("IIED"). *See* First Amended Complaint ("Compl.") ¶¶ 527-535 (ECF No. 34). In Arizona, an IIED claim requires, among other elements, a showing that the plaintiff suffered "severe emotional distress," *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citing *Ford v. Revlon, Inc.*, 153 Ariz. 38 (1987)), and here each Adult Plaintiff has alleged mental and/or emotional injuries that he contends rise to this level. *See, e.g.*, Compl., ¶ 24 (alleging that Adult Plaintiffs each suffered emotional trauma and continue to experience associated ongoing physical, mental, and emotional symptoms).[2]

Plaintiffs allege that their mental and emotional injuries are ongoing and permanent in nature, and that they are causally related to the allegedly tortious government conduct. *See, e.g.,* Compl., ¶¶ 21-22, 24, 26 (identifying claimed injuries stemming from separation, including ongoing and permanent mental and emotional harm and "increased risk of developing additional mental health disorders" in the future); ¶¶ 529-534 (alleging that

[2] Beyond the allegations in these two paragraphs, each Adult Plaintiff also makes more detailed allegations of enduring emotional, mental, and physical injuries which he attributes to distress from the separation. *See* Compl., ¶¶ 178-179 (A.P.F.); ¶¶ 257-264 (J.V.S.); ¶¶ 306-307 (J.D.G.); ¶¶ 366-368 (H.P.M.); ¶¶ 411-412 (M.C.L.); ¶¶ 472-473 (R.Z.G.).

government's alleged conduct directly and proximately caused Plaintiffs to suffer severe emotional distress and to "continue to suffer the lasting effects of that distress today").

The foregoing allegations alone sufficiently demonstrate that each Adult Plaintiff has placed his mental state "in controversy" for purposes of Rule 35 and that an examination of each Adult Plaintiff is warranted. Numerous cases from this District and within the Ninth Circuit confirm that Rule 35 examinations are appropriate when a plaintiff alleges emotional distress, as in an IIED action. *See Alvarado v. Northwest Fire Dist.*, 2020 U.S. Dist. LEXIS 79584, *7-8 (D. Ariz. May 5, 2020) (claim of emotional distress, accompanied by, *inter alia*, a cause of action for IIED, an allegation of a specific mental or psychiatric injury or disorder, *or* a claim of unusually severe emotional distress, is sufficient to support Rule 35 examination) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)); *Ragge v. MCA/Universal*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) (plaintiff's allegation in complaint that emotional distress is ongoing is sufficient to establish good cause to compel a Rule 35 mental examination).

Beyond the allegations in the complaint, Plaintiffs' recent expert disclosures demonstrate Plaintiffs' intention to offer expert testimony from numerous mental health professionals—licensed psychologists and social workers—in support of their claims. On August 25, 2022, Plaintiffs served a total of 13 expert reports[3] upon the United States that reveal that each Adult Plaintiff (and each Minor Plaintiff as well) has undergone at least two mental health evaluations by one of Plaintiffs' retained experts. Collectively,

---

[3] Twelve of these reports—each relating to the mental health evaluations conducted of each of the 12 Plaintiffs—actually consist of two separate reports: one report from an initial evaluation, and a second report from a follow-up evaluation. The thirteenth report is from a psychologist who did not evaluate any of the Plaintiffs.

Plaintiffs' experts opine that each Adult Plaintiff suffered emotional trauma as a direct result of the separation from his child at the border and that his symptoms of emotional distress are ongoing.

Although not necessary to a finding of good cause under Rule 35, Plaintiffs' intended use of expert testimony to support their emotional distress claims further underscores the existence of good cause here. Courts in this district and circuit have repeatedly granted motions for Rule 35 examinations where the opposing party designated experts who testified about their mental condition. *See Alvarado*, 2020 U.S. Dist. LEXIS 79584, *7-8 (noting that one factor courts look to in deciding a Rule 35 motion is the plaintiff's offer of expert testimony to support the plaintiff's emotional distress claim) (quoting *Turner*, 161 F.R.D. at 95); *see also Lahr*, 164 F.R.D. at 200; *Halliday v. Spjute*, 2015 U.S. Dist. LEXIS 85211, *5 (E.D. Cal. Jun. 30, 2015) ("[G]ood cause for the psychological examinations exists because Plaintiffs have designated experts who can testify to their mental condition.").

Indeed, courts have recognized that one of the purposes of Rule 35 is to "preserve the equal footing of the parties" to evaluate a plaintiff who has a secured an expert opinion on his physical or mental condition. *See Ragge*, 165 F.R.D. at 608. "A defendant should have a balanced opportunity to assess the plaintiff's allegations and proof concerning emotional distress damages, and a plaintiff's chosen expert should not be the only expert who ever actually examined the plaintiff'." *Halliday*, 2015 U.S. Dist. LEXIS 85211, *5 (internal quotation marks, alterations, and citation omitted).

Finally, courts have rejected the argument that a party should forgo Rule 35 examinations because the opposing party has conducted the relevant examinations, or because depositions of Plaintiffs or their experts are available as an alternative. "The purpose of the retained expert is to advocate within reasonable grounds on behalf of the person for whom retained," *Perona v. Time Warner Cable Inc.*, 2016 U.S. Dist. LEXIS 202950, **13-14 (C.D. Cal. May 5, 2016). Accordingly, courts have permitted Rule 35 examinations even in instances where "sufficient documentation of plaintiff's medical condition is accessible to defendant" through a plaintiff's expert report. *Id.* Similarly, courts have permitted examinations even when "defendant has already deposed plaintiff," because a deposition cannot "contain a thorough assessment of [plaintiff's] current emotional and medical condition." *Doe v. District of Columbia*, 229 F.R.D. 24, 27 (D.D.C. 2005); *see Vangieson v. Austin*, 2021 WL 3908618, *6 (S.D. Cal. Aug. 16, 2021) ("Plaintiff's mental condition has also been documented in medical records and through deposition testimony of Plaintiff and his wife, but this does not preclude a Rule 35 exam.").[4]

In sum, Rule 35 is to be construed liberally in favor of allowing examinations, *Clark v. City of Tucson*, 2009 U.S. Dist. LEXIS 135505, *3 (D. Ariz. Jul. 13, 2009) (citations omitted); *see also Silva v. Mercado Food Enter.*, 2012 U.S. Dist. LEXIS 6463, **17-18 (E.D. Cal.) (citing *Schlangenhauf*, 379 U.S. at 114-15), and such examinations

[4] In this case, in light of Plaintiffs' objections, the United States chose to review Plaintiffs' reports first to consider whether it would have the United States' experts conduct their own examinations. The United States is filing this motion because it has confirmed, after consulting with its adult psychology expert, that taking this step was necessary, for the reasons stated above, and because Plaintiffs have refused to consent to such examinations under any circumstances.

are clearly warranted here for the reasons set forth above. Each Adult Plaintiff's mental condition is squarely "in controversy"—and indeed is central to each Adult Plaintiff's damages claim—and good cause exists to permit a psychological examination of each Adult Plaintiff to assess the cause, nature, and prognosis of his claimed mental health-related injuries.

**B. Dr. Winkel Is an Appropriate Expert to Examine the Adult Plaintiffs**

A defendant seeking a Rule 35 examination of a plaintiff generally has the right to choose its own examiner, and courts will appoint a different examiner only if a plaintiff "raises a valid objection." *Newman v. San Joaquin Delta Cmty. College Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011) (citing *Ragge*, 165 F.R.D. at 609). The United States proposes that Dr. Winkel conduct the examinations of the Adult Plaintiffs.

Dr. Winkel is a licensed psychologist in the State of California, *see* Exhibit 1, with more than 30 years of experience practicing clinical and forensic psychology, and has native fluency in Spanish. *See* Exhibit 2 (Declaration of Ricardo Winkel, Ph.D. ("Winkel Decl.")), ¶¶ 1-3; *see also generally* Exhibit 3 (Curriculum Vitae of Ricardo Winkel, Ph.D.). Dr. Winkel has conducted more than a thousand psychological examinations during his career, including at least four hundred in Spanish. Exhibit 2 (Winkel Decl.), ¶ 5.

Counsel for the United States provided Plaintiffs' counsel with Dr. Winkel's curriculum vitae on July 1, 2022, and Plaintiffs' counsel has not advised the United States that its objections to the exams relate to the United States' choice of expert, nor have they raised any objection to his qualifications to conduct the examinations. Any such objection

would be meritless, because Dr. Winkel is amply qualified through his licensure, education, training, and decades of experience to conduct the examinations of the Adult Plaintiffs. *See Newman,* 272 F.R.D. at 511 (whether someone is "suitably licensed or certified" to conduct a Rule 35 examination is a function of whether he or she has the requisite level of expertise to conduct the proposed exam) (citing Fed. R. Civ. P. 35(a) Advisory Committee Note (1991 amend.)).

**C. The Proposed Parameters of the Proposed Examinations are Reasonable**

Plaintiffs have objected to the United States conducting *any* examinations under Rule 35, on the basis that they do not believe good cause exists for the examinations, and they have declined the United States' efforts to explore whether the parties could reach an agreement on the parameters of any examinations.

**1. Location and Date of Examination**

The United States agrees to conduct each examination in the preferred geographic location of the Plaintiff to be examined, wherever possible, and on a date and time that is mutually agreeable to the examinee and examiner. Counsel for the United States previously asked Plaintiffs' counsel to provide each Plaintiff's dates of availability and preferred city and state for the examination. But, in light of Plaintiffs' continuing objection to any examinations, the United States has not received a response to those particular requests. If and when Plaintiffs provide this information, counsel for the United States would work with Dr. Winkel to confirm that there are no professional licensing-based obstacles to proceeding with the examination in the preferred state—such as extensive backlogs in obtaining necessary temporary licenses—and would work with

Plaintiffs' counsel to determine a mutually acceptable venue, date, and time for the examination.

In the event that an examination in a Plaintiff's preferred state cannot be accommodated due to licensing requirements, the United States would work with Plaintiffs to arrange for the examination in the nearest geographical location where the examiner may conduct the examination consistent with state licensure requirements. This proposal, which seeks to accommodate each Adult Plaintiff to the greatest extent possible—and largely at the expense of the United States—is reasonable, particularly in light of case law suggesting that usually, a plaintiff must pay for travel to the forum in which she or he has chosen to bring suit. *See Anderson v. Ariz. PRN LLC*, 2016 U.S. Dist. LEXIS 13591, *6 (D. Ariz. Feb. 4, 2016) (citing *McCloskey v. UPS Gen. Servs. Co.*, 17 F.R.D. 268, 270 (D. Or. 1997)).

**2. Substance and Duration of Examination**

Dr. Winkel would perform psychological examinations of the Adult Plaintiffs. These examinations would not exceed eight hours in total duration, including breaks, and would consist of approximately four hours of a clinical interview and four hours of testing. Exhibit 2 (Winkel Decl.), ¶ 8. The testing portion would consist of the administration of the following: (1) a personality and emotional functioning test, which generally takes between one to two hours to complete; (2) a trauma-specific test, which generally takes between thirty minutes to one hour to complete; and (3) a free-standing symptom validity test, which takes approximately 45 minutes to complete. *Id.*, ¶ 9.

Accordingly, the proposed examinations, in nature and duration, are well within the bounds of what courts have determined to be appropriate. *See Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 364 (D. Colo. 2004) (Rule 35 examination may include recognized and appropriate psychological testing); *Newman v. San Joaquin Delta Community College Dist.*, 272 F.R.D. 505, 513 (E.D. Cal. 2011) (10-hour mental exam, to be held over two days in five-hour sessions, was reasonable); *Halliday v. Spjute*, 2015 U.S. Dist. LEXIS 85211, **7-8 (E.D. Cal. Jun. 30, 2015) (ordering eight-hour psychological exam, held over two day period in four-hour sessions).

Indeed, in a similar family-separation case pending in the Southern District of Florida, *R.Y.M.R. v. United States*, 1:20-cv-23598, the United States was permitted to conduct Rule 35 examinations of both the adult and the minor child plaintiff. In that case, Plaintiffs' counsel agreed to a Rule 35 examination (of eight hours' duration) of the adult plaintiff, and did not oppose a Rule 35 examination of the child plaintiff. Although the parties could not completely agree on the parameters of the minor's examination, the court authorized the examination under certain terms. Here, the United States proposed the same parameters for both the adult and minor examinations, but Plaintiffs rejected the proposal, even with respect to the Adult Plaintiffs.

Finally, with respect to the language in which the examinations will be conducted, Dr. Winkel is fully fluent in Spanish and English, has ample experience conducting psychological examinations in Spanish and English, and would conduct the examination in whichever of these languages the examinee prefers. Exhibit 2 (Winkel Decl.), ¶¶ 3,5,11.

To the extent that a Plaintiff cannot fully communicate in either Spanish or English, the examination would proceed through a translator. Exhibit 2 (Winkel Decl.), ¶ 11.

**D. Regardless of the Court's Decision on the Rule 35 Issue, Good Cause Exists to Extend the Current Deadline for the United States to Provide its Expert Disclosures**

Pursuant to Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure, the United States respectfully requests that the Court extend its expert-disclosure deadline to 60 days after it decides this motion, if the Court orders the requested Rule 35 examinations, or, if the Court denies the government's request for any Rule 35 examinations, to 30 days after such denial. Plaintiffs oppose these requests.

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). Defendant submits that good cause exists to extend the current deadline for the United States to provide its expert disclosures, for three reasons. First, an extension would facilitate the examinations requested above, if the Court grants permission for them to proceed. Second, even if those examinations are denied, an extension would be appropriate given Plaintiffs' recent disclosure, just seven days ago, of a large amount of underlying facts and data considered by Plaintiffs' experts in forming their opinions that Defendant's experts must consider prior to completing their reports. Third, the United States made good-faith efforts to reach an accommodation with Plaintiffs' counsel regarding examinations by Defendant's expert—including by proposing the same parameters adopted by the *R.Y.M.R.* court, as mentioned above—and those meet-and-confer discussions continued until just two days

ago, when Plaintiffs advised that there were no conditions under which they would agree to Rule 35 exams by Defendant's experts.

This is the United States' second request for an extension of its September 23, 2022 expert disclosures deadline and all remaining expert discovery deadlines. On August 12, 2022, before Plaintiffs had served their expert disclosures, the United States sought a 60-day extension. *See* Defendant's First Motion to Extend Certain Discovery Deadlines and Dispositive Motion Deadlines, dated August 12, 2022 (ECF No. 271). As explained in Defendant's August 12 motion, the purpose of that extension request was to enable the United States to review Plaintiffs' mental health experts' reports before determining whether to seek psychological examinations of any or all Plaintiffs by the United States' psychology experts under Federal Rule of Civil Procure 35—and to thereby potentially avoid contested motions practice concerning Rule 35 examinations or at least narrow the issues in dispute—or, if motions practice could not be avoided, to allow sufficient time for the United States to obtain a decision on any Rule 35 motions, for any examinations to take place, and for the government's experts to prepare their reports. *See id.* Plaintiffs opposed Defendant's August 12 motion on the grounds that it was premature, *see* Opposition, dated August 16, 2022 (ECF No. 276). The Court agreed with Plaintiffs and denied the motion as premature. *See* Order, dated August 18, 2022 (ECF No. 279).

Subsequently, on August 25, 2022, Plaintiffs produced a total of 13 expert reports, 12 of which are reports by mental health professionals who conducted initial and follow-up mental health evaluations of Plaintiffs. Plaintiffs' expert disclosures reveal that each Plaintiff intends to support his or her claims with expert testimony—from a mental health

professional who conducted an individualized examination of the Plaintiff—regarding the Plaintiff's mental and emotional health and prognosis and the causes of the Plaintiff's presentation. Upon receiving and reviewing Plaintiffs' expert disclosures, the United States resumed a dialogue with Plaintiffs regarding Rule 35 examinations of Plaintiffs by the government's expert psychologists. Specifically, in an effort to avoid contested motions practice and reach an agreement that might be acceptable to all parties, the United States contacted Plaintiffs on September 9, 2022, seeking Plaintiffs' position on Rule 35 examinations with the same parameters as in *R.Y.M.R.*, discussed above. Plaintiffs advised that they needed additional information before they could evaluate the government's proposal. The parties conferred by telephone regarding these issues on September 15, 2022. Subsequently, however, on September 20, 2022, Plaintiffs advised the United States that they did not believe that good cause existed for any Rule 35 examinations and therefore that they would not be engaging further in any negotiations regarding parameters of examinations until they are in receipt of the government's motion to compel Rule 35 examinations.

The government respectfully submits that, in the event that the Court grants Defendant's motion to compel the Adult Plaintiffs to submit to Rule 35 examinations, a 60-day extension is necessary in order to allow Dr. Winkel to schedule and complete the examinations of the Adult Plaintiffs and prepare his reports.[5] As noted above, should the Court order Rule 35 examinations of the Adult Plaintiffs, the United States will endeavor

[5] There are six Adult Plaintiffs to this action; however, Defendant is also moving for Rule 35 examinations of the five Adult Plaintiffs in *C.M., et al. v. United States*, No. CV-19-05217-PHX-SRB, which would also be conducted by Dr. Winkel.

to conduct those examinations in areas geographically convenient to the Plaintiffs, which will require Dr. Winkel to travel to multiple locations throughout the country and to obtain temporary licenses in multiple states. The United States is still considering whether to proceed with seeking contested examinations of the Minor Plaintiffs, in light of the Plaintiffs' objections, and so the 60-day extension would allow time for further discussions that could avert the need for judicial intervention.

In addition, good cause also exists to extend Defendant's expert disclosures deadline by 30 days, even if the government's examination motion is denied, for two reasons. First, Defendant's experts require additional time to analyze expert disclosure material that Plaintiffs only recently provided to the government and to incorporate analyses of this newly produced material in their opinions as appropriate. On August 29, 2022, two business days after receiving Plaintiffs' expert disclosures on August 25, the government requested that Plaintiffs provide all underlying facts and data considered by Plaintiffs' experts in forming their opinions—material that a party is required to produce as part of its Rule 26(a)(2)(B) disclosures. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). By way of example, the government noted that Plaintiffs' expert reports reference questionnaires and/or screening tests that the experts administered during their initial and supplemental mental health evaluations of the 12 Plaintiffs and from which the experts derived scores that informed their opinions.

Such material is encompassed by Fed. R. Civ. P. 26(a)(2)(B)(ii), *see Starkey v. McHugh*, No. 14-cv-02525-PSG, 2015 U.S. Dist. LEXIS 144464, **4-5 (N.D. Cal. Oct. 23, 2015), and therefore Plaintiffs were required to provide it on August 25, 2022, as part

of their "full and complete expert disclosures." *See* Amended Case Management Order, dated March 1, 2022, at p. 4 (ECF No. 144). Following the government's request, Plaintiffs agreed to provide this underlying testing data, but Plaintiffs provided it to the government only on September 15, 2022—eight days before the government's expert disclosures deadline. As a result, Defendant's experts have had insufficient time to fully analyze this data and consider it in forming their opinions, thus providing further good cause to extend Defendant's expert disclosures deadline.

Second, if the Court denies the motion for Rule 35 examinations, Defendants' experts will need additional time to complete their reports in light of the fact that that they will not have access to the Plaintiffs in forming their opinions.

If the Court grants the requested extension, Defendant submits there is good cause to extend the remaining expert discovery deadlines accordingly, in order to allow adequate time following the exchange of Defendants' expert disclosures for rebuttal reports and to conduct expert depositions.

The United States respectfully submits that these extensions need not delay final resolution of the case. The government does not seek to extend all dispositive motion briefing deadlines. Accordingly, the extension sought here would not prevent the filing of dispositive motions on the schedule previously entered by the Court, and so would not delay the eventual resolution of this matter.

For these reasons, Defendant respectfully requests that the Court enter an order extending the deadline for Defendant's expert disclosures to 60 days after this court decides this motion, and to similarly extend the remaining expert disclosure deadlines. If

the Court denies the government's motion for Rule 35 examinations, Defendant respectfully requests that the Court enter an order extending the deadline for Defendant's expert disclosures to 30 days after this court decides this motion.

**CONCLUSION**

The United States has demonstrated that each Adult Plaintiff's psychological condition is in controversy and that good cause exists to permit Rule 35 examinations of the Adult Plaintiffs by Dr. Winkel. The United States has further demonstrated that good cause exists to extend its deadline to serve its expert disclosures under Rule 26(a)(2)(A)-(C), and to similarly extend the remaining expert disclosure deadlines accordingly. Thus, the Court should grant this motion in full.

Submitted this 22nd day of September, 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General,
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Ashley R. Garman*
ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 305-2609

Attorneys for the United States of America