BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Trial Attorney
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
175 N Street, NE
Room 11-1330
Washington, DC 20530
Telephone: (202) 305-2609
Facsimile: (202) 616-5200

Attorneys for the United States of America

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; J.V.S., on his own behalf and on behalf of his minor child H.Y.; J.D.G. on his own behalf and on behalf of his minor child, M.G.; H.P.M. on his own behalf and on behalf of his minor child, A.D.; M.C.L. on his own behalf and on behalf of his minor child, A.J.; and R.Z.G. on his own half and on behalf of his minor child, B.P., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-20-00065-PHX-SRB <br><br> **DEFENDANT UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL THE ADULT PLAINTIFFS TO SUBMIT TO RULE 35 PSYCHOLOGICAL EXAMINATIONS AND SECOND MOTION TO EXTEND EXPERT DISCOVERY DEADLINES** |

Plaintiffs concede that they have put their mental conditions "in controversy" in this litigation by alleging serious and ongoing mental and emotional injuries.  Plaintiffs nevertheless assert that there is no good cause for the United States' requested Rule 35 examinations, but their arguments are without merit.  The President has denounced the prior practice of separating children from their parents at the United States-Mexico border and condemned "the human tragedy" that occurred.  But Plaintiffs' claims of liability and their requests for damages must be assessed on an individual basis; indeed, presumably for that reason, Plaintiffs themselves each sat for multiple examinations by their own chosen experts.  Defendant plainly has "good cause" to conduct the same examinations that Plaintiffs themselves deemed necessary to prove their case.  And those examinations are particularly important here, given that Plaintiffs' allegations of mental and emotional injury are not an incidental part of their claims, but instead form the core basis for their damages claim.

The United States did not, as Plaintiffs contend, unreasonably delay in seeking the examinations.  Rather, the United States undertook good-faith efforts to narrow the issues before filing this motion—including reviewing Plaintiffs' expert disclosures, conferring with Plaintiffs, and proposing to conduct such examinations under the same conditions agreed to in another similar family-separation litigation.  When those efforts proved unsuccessful, Defendants moved promptly to compel the examinations of the Adult Plaintiffs.  The United States proposes to conduct those examinations under reasonable conditions that are no more intrusive than the conditions under which Plaintiffs conducted their own examinations.  Further, Plaintiffs' failure to provide complete expert disclosures

until three weeks *after* their August 25, 2022 disclosures deadline justifies an extension of time for the United States to serve its expert disclosures.  Accordingly, the United States' motions to compel the Adult Plaintiffs to submit to Rule 35 psychological examinations and to extend its expert disclosures deadline should be granted.

## **ARGUMENT**

### A. **Good Cause Exists for Rule 35 Examinations of the Adult Plaintiffs, and the Proposed Parameters of Such Examinations are Reasonable**

Contrary to Plaintiffs' suggestion, Pls.' Opp. (ECF No. 294) at 6, the United States does not argue that good cause for the Rule 35 examinations exists merely because the Adult Plaintiffs' mental health is in controversy.  Although the "in controversy" and "good cause" requirements often merge in cases like this one, as explained in the United States' motion, Plaintiffs' claims of intentional infliction of emotional distress, allegations of specific mental disorders and of ongoing emotional distress, and designation of experts to support their emotional distress claims all support a finding of good cause under the law of this Circuit.  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 290) at 4-9.  Plaintiffs acknowledge that these are factors that courts consider in determining the existence of good cause for Rule 35 examinations.  *See* Pls.' Opp. (ECF No. 294) at 5-6 (noting that good cause factors that courts will consider include, *inter alia*, whether plaintiff plans to prove his or her claim through expert testimony and whether plaintiff is claiming ongoing emotional distress (citing *Halliday v. Spjute*, 2015 U.S. Dist. LEXIS 85211 (E.D. Cal. June 30, 2015)); *see also Alvarado v. Northwest Fire Dist.*, 2020 U.S. Dist. LEXIS 79584, *7-8 (D. Ariz. May 5, 2020) (finding Rule 35 exam appropriate where plaintiff claimed severe emotional distress, alleged a specific disorder, and acknowledged that her severe

emotional distress was in issue).

Nevertheless, Plaintiffs challenge the existence of good cause for the requested Rule 35 examinations of the Adult Plaintiffs on two grounds. First, they assert that the United States has not identified any deficiencies with Plaintiffs' experts' reports. Pls.' Opp. (ECF No. 294) at 7-8. Second, they contend that the examinations are unnecessary because the government supposedly already has all of the information that it needs. *Id.* at 8-9. Both arguments are incorrect.

First, the government has no obligation to identify "deficiencies in Plaintiffs' experts analyses or methodologies" in order to seek Rule 35 examinations. Plaintiffs point to *Riel v. Ayers*, 2010 WL 1980251 (E.D. Cal. May 17, 2010), for such a purported obligation, but *Riel* is legally and factually inapposite. *Riel* involved a *habeas* proceeding, in which the relevant issue was the petitioner's mental capacity during the commission of a crime 24 years prior to the respondent's requested Rule 35 examination. *Riel* was not, as here, a tort lawsuit brought by plaintiffs seeking damages for severe and ongoing mental emotional distress allegedly caused by the defendant's actions. Indeed, the district court in *Riel* explicitly distinguished the case law on Rule 35 examinations in tort cases involving allegations of ongoing emotional distress. *Riel*, 2010 WL 1980251 at *1 n.2 (noting that the mental exam sought by the *habeas* respondent in *Riel* was "significantly different" than exams sought by defendants in personal injury suits alleging emotional distress, because the respondent was "seek[ing] to determine petitioner's mental condition over twenty years ago" *rather than assessing the nature and extent of an alleged injury*).[1]

---

[1] The district court in *Riel* also noted that most cases considering Rule 35 motions involve defendants' requests to examine plaintiffs who allege mental distress as a result of some

3

1   Given its unique legal and factual posture, the *Riel* court found that good cause in that case

2   demanded the respondent show how a mental examination of the *habeas* petitioner in 2010

3   could possibly demonstrate the petitioner's mental state in the late 1980s or rebut

4   petitioner's expert's findings from an examination more than ten years previously.

5   Ultimately, the *Riel* court found that the respondent failed to make that showing. *Riel*,

6   2010 WL 1980251 at **4-6.

7          This litigation differs markedly from *Riel*. Here, Plaintiffs allege ongoing severe

8   mental and emotional harm resulting from Defendant's actions. Accordingly, each

9   Plaintiff's current mental and emotional state and prognosis, and the causes of each

10   Plaintiff's current presentation, are all highly relevant to the claims and defenses in this

11   action. Moreover, because this is a tort lawsuit, the requirement in a *habeas* proceeding

12   that a party seeking any discovery make "specific allegations" that the party could prevail

13   on the merits if it obtained the requested discovery, *Riel*, 2010 WL 1980251 at *1, is

14   simply inapplicable. Accordingly, Plaintiffs' reliance on *Riel* is misplaced, and Plaintiffs

15   have offered no support for their contention that the government must identify flaws in

16   Plaintiffs' experts' examinations in order to conduct its own examinations.[2]

17          Plaintiffs next rely on *Halliday* to argue that the requested Rule 35 examinations

18   are unnecessary because the United States already has obtained certain information

19   through other sources. Pls.' Opp. (ECF 294) at 8. But *Halliday* does not stand for that

---

action by defendants—as is the case here. The *Riel* court found that Rule 35 cases were
factually inapplicable to the issue presented therein. *Riel*, 2010 WL 1980251 at *2.

[2] Although Defendant need not identify deficiencies in Plaintiffs' experts' analyses and
methodologies in its Rule 35 motion, Defendant's expert may well do so in his reports.

proposition.  Rather, *Halliday* merely observed that whether the party seeking an

examination can obtain the desired information by other means is one factor, *among*

*several others*, to be considered in the good cause inquiry.  *Halliday* does not hold that the

mere possibility that a party can obtain information elsewhere renders good cause lacking.

*See Halliday*, 2015 U.S. Dist. LEXIS 85211 at **4-5.  Rather, it is "[o]nly if no additional

relevant information could be gained by an examination should defendant's expert be

denied examination."  *Perona v. Time Warner Cable*, 2016 U.S. Dist. LEXIS 202950 *14

(C.D. Cal. May 5, 2016) (citation and internal quotation marks omitted).  As the United

States demonstrated in its motion, information relevant to both liability and damages will

be obtained through the requested Rule 35 examinations of the Adult Plaintiffs.

Moreover, as the United States explained in its motion, it should not be precluded

from conducting Rule 35 examinations because Plaintiffs have been deposed, have

submitted expert reports, and have produced some document discovery regarding their

mental conditions.[3]  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 290) at 8 (citing

cases).  Those discovery devices are not substitutes for examinations performed by an

expert psychologist.  *See also Ashley v. City & County of San Francisco*, 2013 U.S. Dist.

LEXIS 77134, **7-8 (N.D. Cal. May 30, 2013) (even though defense expert could review

plaintiff's videotaped deposition and medical records, "Defendants have the right to

perform their own assessment, because one of the purposes of Rule 35 is to level the

playing field in cases where physical or mental condition is at issue").

---

[3] As noted below, many of the Adult Plaintiffs have not received any treatment for their claimed psychological or emotional injuries, and therefore the only mental health professional who has examined those Plaintiffs is a Plaintiff-retained expert.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

28

Plaintiffs also assert that their claims of ongoing and permanent severe emotional distress caused by the separations are "consistent with all the evidence in the case," Pls.' Opp. (ECF No. 294) at 8-9, but this is not supported by the discovery record.  Many of the Adult Plaintiffs have not seen *any* mental health providers for their alleged injuries—aside from Plaintiffs' retained experts—resulting in an absence of treatment records.  *See*, *e.g.*, Exhibit 1 (J.D.G. Dep. Tr.) at 151:5-12; Exhibit 2 (M.C.L. Dep. Tr.) at 161:22—162:2; Exhibit 3 (R.Z.G. Dep. Tr.) at 136:2-22; Exhibit 4 (H.P.M. Dep. Tr.) at 130:11-13.[4] Moreover, the record contains evidence that is inconsistent with allegations that these particular Plaintiffs continue to suffer from ongoing and permanent severe emotional injuries or that raises questions regarding causation.  *See, e.g.*, Exhibit 5 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Exhibit 6 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); Exhibit 7 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).[5]  Thus, given the questions regarding the nature, extent, and

---

[4] Plaintiff R.Z.G. testified that after the separation he saw a doctor in Guatemala once for stomach problems and was told he was suffering from "fear," Exhibit 3 (R.Z.G. Dep. Tr.) at 133:19—135:20, and Plaintiff H.P.M. testified ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Exhibit 4 (H.P.M. Dep. Tr.) at 125:11—128:1, but neither Plaintiff has produced records of treatment.

[5] The government provides these record citations by way of example only, and not as all evidence adduced in discovery in contradiction of Plaintiffs' claims.

causes of the Adult Plaintiffs' claimed injuries—questions which are critical for both the liability and damages inquiry—good cause exists for the requested Rule 35 examinations even though other discovery methods have been permitted.

Additionally, although the government has condemned the prior practice of separating parents from children, acknowledged that many families have suffered, and made mental health resources available for separated families in general, those statements and actions do not establish the nature or extent of any harm that *these specific Plaintiffs* suffered as a result of their separations, or inform the damages analysis.  In this litigation, each Plaintiff—like any other plaintiff bringing a claim for intentional infliction of emotional distress under Arizona law—must prove, among other elements, that he in fact suffered "severe emotional distress" caused by the government's conduct.  *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (en banc) (citations omitted).  A determination of whether a plaintiff suffered severe emotional distress requires an individualized assessment of that plaintiff's symptoms, *see E.E.O.C. v. GLC Restaurants, Inc.*, 2006 U.S. Dist. LEXIS 78270, at **27-28 (D. Ariz. Oct. 26, 2006), and cannot be established merely by reference to what one might expect or predict as a general matter.  And beyond the "severe emotional distress" inquiry, considering causation and damages in the context of a tort claim for emotional distress requires particularized assessment of numerous factors, such as, for example, a plaintiff's current presentation, prognosis, treatment needs, and possible alternative or contributing causes.  Presumably, it is for these very reasons that Plaintiffs retained their own experts to conduct mental health evaluations of each Plaintiff.  The United States should be afforded an equal opportunity

to conduct its own individualized assessments to defend against Plaintiffs' liability and damages claims.

Furthermore, contrary to Plaintiffs' assertions, the United States' proposed parameters for the requested Rule 35 examinations are well within the bounds of what courts have found reasonable, are consistent with those in another family-separation case pending in another district, and are less burdensome than the multiple examinations conducted by Plaintiffs' own experts.  The proposed content (*i.e.*, a clinical interview and standardized testing) and duration (*i.e.*, not to exceed eight hours, inclusive of breaks) of the requested examinations is entirely reasonable.[6]  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 290) at 11-12 (collecting cases).  Moreover, the United States' proposal makes accommodations for each Plaintiff's language preference, *see id.* at 11-12 (Defendant's expert, a native Spanish speaker, will conduct the examination in the examinee's preferred language, and will proceed through a translator if necessary), and the Plaintiff's preferred geographic location, *see id.* at 10-11 (explaining that Defendant will conduct the examination in the preferred geographic location of the Plaintiff to be examined, wherever possible).  And under the government's proposal, the examinations will not be audio or video recorded—just as Plaintiffs' experts' examinations were not.[7]

---

[6] Indeed, Plaintiffs' own experts conducted *two* separate examinations of each Plaintiff, each one lasting multiple hours, and, in some cases, spanning over multiple days.

[7] Plaintiffs argue, without explanation or support, that recording the examination will provide emotional support to the examinee.  *See* Pls.' Opp. (ECF No. 294) at 10.  To the extent Plaintiffs have concerns about emotional support and comfort for the examinee, Defendant's expert—to whom Plaintiffs have not objected—will use his extensive professional experience and training to conduct the examination in a professional manner. He will afford the examinee all needed breaks and will allow family or friends to wait outside the examination room to provide comfort during breaks and following the examination.

Any potential temporary licensing issues also do not provide a basis for denying the Rule 35 examinations.  The United States' expert faces no licensing restrictions in Arizona, where Plaintiffs chose to bring this lawsuit.  And although plaintiffs are usually required to travel to the forum state for Rule 35 examinations, 8B Fed. Prac. & Proc. Civ. § 2234 (3d ed.), the United States has agreed to conduct the examinations, if authorized, in the Plaintiff's preferred geographic location wherever possible.[8]  As noted in its motion, the United States previously requested that Plaintiffs provide their preferred city and state for each examination, but Plaintiffs never provided that information.  *See* Defs. Mot.' for Rule 35 Examinations (ECF No. 290) at 10.  Based on Defendant's current understanding, three of the six Adult Plaintiffs currently reside in Florida or California, which present no licensing issues for Defendant's expert.  As for the other three Adult Plaintiffs, Defendant's expert will make all reasonable efforts to obtain temporary licenses in or near Plaintiffs' preferred geographic locations, and Defendant will do its best to minimize any travel by Plaintiffs.[9]  This proposal is reasonable, especially since some of the Plaintiffs traveled significant distances—including, in some cases, out of their states of residence— to be examined by their retained experts.

---

[8] Temporary licensing requirements vary from state to state, so Defendant needs to know the state in which the examination will occur before its expert applies for a temporary license.  It is the government's understanding that through Spring/Summer 2022, many states had relaxed or waived temporary licensure requirements as a result of the COVID-19 pandemic.  Since that time, however, many states have re-tightened their licensure requirements.

[9] For example, one Adult Plaintiff currently resides in Georgia, whose neighbor state of Florida presents no licensing issues for the United States' expert.

1
2

**B. The United States Has Not Unreasonably Delayed in Seeking the Rule 35 Examinations, and Good Cause Exists to Extend the Expert Discovery Deadlines**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The United States did not unreasonably delay in seeking an extension of its expert disclosures deadline, as Plaintiffs claim.  The United States sought an extension of its expert disclosures deadline on August 12, 2022—*before* Plaintiffs' expert disclosure deadline (ECF No. 271).  But Plaintiffs argued then that the United States' request was premature, and the United States' motion was denied on that basis (ECF No. 279).  Upon reviewing Plaintiffs' expert reports, the United States revisited the topic of Rule 35 examinations, as Plaintiffs invited it to do.[10]  The government reached out to Plaintiffs in an attempt to reach an agreement without court intervention, and the parties engaged in good-faith negotiations.  *See* Defs.' Mot. for Rule 35 Examinations (ECF No. 290) at 15. Only once Plaintiffs advised the United States that they would not agree to Rule 35 examinations under any circumstances and would not engage further in any negotiations regarding parameters of examinations until they are in receipt of the United States' motion to compel Rule 35 examinations did this motion become necessary.  *Id.*[11]

19
20
21
22
23

[10] *See* Pls.' Opp. to Defs.' 1st Mot. for Ext. (ECF No. 276) at 3 ("[I]f Defendant decides to seek Rule 35 examinations [after receiving Plaintiffs' expert reports], the parties can discuss the need and any potential scheduling adjustments when the issue becomes ripe.").

24
25
26
27
28

[11] The United States' requested extension is warranted not only to ensure adequate time to conduct the Rule 35 examinations, if permitted, but also to enable Defendant's experts to complete their reports.  While they have been working diligently on reviewing Plaintiffs' expert disclosures and preparing their own reports, the uncertainty regarding the Rule 35 examinations necessarily has created uncertainty regarding the scope of Defendant's experts' reports.  And, as explained below, Defendant's experts have been hindered by Plaintiffs' nearly three-week delay in providing the raw data underlying their expert's opinions.

Moreover, Plaintiffs largely ignore that the United States' extension request is independently premised upon Plaintiffs' failure to timely provide complete expert disclosures.  *See* Scheduling Order at 4 (ECF No. 144) ("Plaintiffs shall provide full and complete expert disclosures, as required by Rule 26(a)(2)(A) - (C) of the Federal Rules of Civil Procedure, no later than August 25, 2022.").  It is undisputed that Plaintiffs' expert disclosures did not contain all "the facts or data considered by the [expert] witness in forming [their opinion]," as required by Rule 26(a)(2)(B)(ii).  In forming their opinions, Plaintiffs' experts purportedly relied on responses to certain tests or questionnaires the experts administered to each of the Plaintiffs.  Yet Plaintiffs did not provide the United States with any of Plaintiffs' responses to those tests or questionnaires—*i.e.*, the raw data—until September 15, 2022, and only after the United States specifically requested it. The United States' experts are entitled to review and consider that material in forming their opinions.  Accordingly, separate and apart from the United States' request for Rule 35 examinations of the Adult Plaintiffs, an extension of its expert disclosures deadline related to all Plaintiffs is warranted based on Plaintiffs' delay.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the United States' motion in its entirety.

Submitted this 13th day of October, 2022.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General,
Civil Division
JAMES G. TOUHEY, JR.
Director, Torts Branch

*s/ Ashley R. Garman*

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ASHLEY R. GARMAN
Trial Attorney
N.Y. Bar No. 4904009
SARAH E. KLEIN
Florida Bar No. 119533
E-mail: Ashley.R.Garman@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 305-2609

Attorneys for the United States of America