UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **C.M., et al.,** | ) | |
| | ) | No. **CV-19-5217-SRB** |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **United States of America,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| **A.P.F., et al.,** | ) | |
| | ) | No. **CV-20-65-SRB** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | October 25, 2022 |
| **Untied States of America,** | ) | 1:59 p.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

BEFORE:   THE HONORABLE SUSAN R. BOLTON, JUDGE

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC DISCOVERY DISPUTE HEARING**


Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**T E L E P H O N I C**
**A P P E A R A N C E S**

For the C.M. Plaintiffs:

    ARNOLD & PORTER KAYE SCHOLER, LLP
    By:  **Ms. Lucy S. McMillan, Esq.**
    250 West 55th Street
    New York, NY 10019-9710


For the A.P.F. Plaintiffs:

    COVINGTON & BURLING, LLP
    By:  **Ms. Kristin M. Cobb, Esq.**
    850 10th St. NW
    Washington, DC 20001-4596


For the Defendant:

    U.S. Department of Justice
    By:  **Mr. Philip D. MacWilliams, Esq.**
        **Ms. Ashley R. Garman, Esq.**
    P.O. Box 888
    Washington, DC 20044

**P R O C E E D I N G S**

COURTROOM DEPUTY: We are on the record in CV 19-5217 and CV 20-65, in the 5217 case it is C.M. versus United States of America, and in the 65 case it is A.P.F. versus United States of America.

THE COURT: Good afternoon. At whose request are we having this conference?

MS. COBB: Good afternoon, Your Honor. My name is Kristin Cobb. I represent A.P.F. plaintiffs in this case. And we have requested this hearing to discuss a couple of discovery issues.

THE COURT: Well, why don't you begin by telling me what the first one is.

MS. COBB: So I'll be handling the first one and Ms. McMillan from the C.M. team will be handling the second one.

The C.M. and A.P.F. plaintiffs seek to depose Kirstjen Nielsen, the former Secretary of the Department of Homeland Security. Defendant has refused to consent to Ms. Nielsen's deposition. And under the amended CMO, plaintiffs are required to seek leave from Your Honor to conduct her deposition.

We ask that we be granted, because Ms. Nielsen is central to the issues in our case and possesses highly relevant, non duplicative information that plaintiffs are entitled to.

1         THE COURT:  Okay.  I'm going to stop you right there.
2         Based on the motion for extension of discovery, I
3 thought that this might be the issue that you wanted to
4 discuss.  And I really don't believe that this one is
5 appropriate for just:  Fill me in and I'll make a ruling.
6 Instead I'm going to ask you to file a motion explaining the
7 reasons why you believe that it's necessary to depose the
8 former secretary, Mr. MacWilliams can respond, and plaintiffs
9 can reply.
10         MS. COBB:  Okay.  Plaintiffs are prepared to file that
11 briefing this week and we would request expedited briefing.
12         THE COURT:  Why?
13         Well, let me find out if that's okay with
14 Mr. MacWilliams before I say yes or no.
15         How much time do you need to respond, Mr. MacWilliams?
16         MR. MACWILLIAMS:  Well, how much will you give me?
17 Definitely the -- what's under the local rules, which I believe
18 is 14 days, at least, but I would like to have that right,
19 unless I shortchange myself but --
20         THE COURT:  No, I think it's 14.  That's what you want
21 is 14.
22         Why do I need to have it quicker than that, Ms. Cobb?
23 You can always reply expedited.
24         MS. COBB:  Understood.  I think the fact discovery has
25 been closed in this case for a long time and dispositive motion

1  deadline is coming up on February 6th.  I know there is some
2  outstanding issues that may impact that, but we're really
3  trying to wrap up fact discovery so that we can start moving
4  into our dispositive motion phase of this case.
5           THE COURT:  Okay.  I'm not going to order expedited
6  briefing.  The briefing can take place under the time limits
7  set out in the local rules.
8           Okay.  What's issue number two, Ms. McMillan?
9           MS. MCMILLAN:  Yes, Your Honor.  Thank you.
10          Plaintiffs would like to discuss a significant
11 discovery issue concerning late production and destruction of
12 documents.
13          Over the past month-and-a-half, well after the close
14 of discovery, defendants have produced highly relevant
15 handwritten notes for a number of key custodians, including
16 former DHS secretaries Kelly and Nielsen, former acting
17 secretary Elaine Duke, the former commissioner of Customs and
18 Border Protection, Kevin McAleenan, and the former head of
19 ICE's enforcement and removal operations, Matthew Albence.
20 Mr. McAleenan's notes alone were 99 pages of highly relevant
21 information.  And these late productions are still ongoing.
22 Just yesterday we received production from the government with
23 notes from former secretary Kelly that go directly to one of
24 plaintiffs' central claims.
25          In addition, on October 7th, the government informed

1   plaintiffs that the notes of another key custodian, Thomas
2   Blank, who is the chief of staff to the former acting director
3   of ICE, were destroyed.  The former acting director's
4   deposition testimony indicates that his chief of staff's notes
5   likely contained highly relevant information.
6           THE COURT:  Okay.  Hold on.  It seems to me those are
7   going to be separate issues, destruction versus late
8   disclosure, so why don't you just address your concern or what
9   you want me to do about late disclosure.  I'm sure you're happy
10  you got it even if it was too late, but what's the consequence
11  that you think there should be?
12          MS. MCMILLAN:  Yes.  Well, plaintiffs have asked --
13  there is a couple of consequences that we're requesting.  First
14  of all, plaintiffs have asked the government multiple times for
15  an explanation as to why these notes were not produced in 2020
16  under the mandatory initial discovery program disclosures.  And
17  the government has not told plaintiffs this information and has
18  not been willing to share with plaintiffs what it did do to
19  collect documents in 2020, and so plaintiffs have serious
20  concerns that additional notes may have gone missing or be
21  destroyed.
22          And so the first thing we're asking is that the Court
23  order defendants to tell plaintiffs and the Court what it did
24  to collect documents so that we can assess whether there are
25  additional concerns.

1         And with respect to these late produced documents, we
2    are seeking the ability to have these documents admitted into
3    evidence and deemed admissible, and that the plaintiffs be
4    permitted to comment on these documents at trial.
5         The government has suggested reopening depositions.
6    We do not think that that is going to sufficiently remedy the
7    late disclosure.  These are documents that are from --
8         THE COURT:  I'm not sure I understand what the dispute
9    is.  I understand there has been late disclosure.  Where is the
10   dispute?
11        MS. MCMILLAN:  The dispute is, first, in finding out
12   additional information about what the government did to collect
13   documents and whether there are additional missing documents.
14        And the second dispute is the remedy, in terms of
15   whether or not to reopen depositions, versus a remedy of
16   deeming these documents admissible for trial.
17        THE COURT:  Okay.  So do I understand that you don't
18   want to reopen discovery, you instead want to have them deemed
19   admissible, and the government says, no, it won't agree to
20   that?
21        MS. MCMILLAN:  Yes.  Yes, Your Honor.
22        THE COURT:  Okay.  The government would rather you go
23   back and re-depose these people about their notes?
24        MS. MCMILLAN:  I believe that is the government's
25   position.

1          THE COURT:  Is that your position, Mr. MacWilliams?

2          MR. MACWILLIAMS:  Yes, Your Honor.  We think that
3   there is still ample room for plaintiffs and government counsel
4   to work out, since we're reopening depositions, to address
5   these late discovered notes.

6          I think it's premature to move ahead to, essentially,
7   sanctions.  We're three months out from the discovery -- I'm
8   sorry, the dispositive motion deadline.  I think there is
9   plenty of time to resolve this issue, and if it involves
10  reopening some depositions, we're certainly open to that to
11  resolve it.

12         THE COURT:  Why are you opposed to them being deemed
13  admissible?  I mean, you don't question the genuineness of
14  them.  And if the information in there is relevant, why should
15  we do anything else, particularly, if plaintiffs don't want to
16  go back and re-question these witnesses, some of whom I'm sure
17  are difficult to schedule.

18         MR. MACWILLIAMS:  That may be true, Your Honor.  I
19  think admissibility, the problem with just agreeing to
20  admissibility period is that there are multiple layers of
21  hearsay analysis to go through.  I think it would be a very
22  complex type of analysis to say, pointblank, these are
23  admissible for any purpose, and I think I'd do more, you know,
24  more detail than that.

25         But they're not just asking about admissibility, Your

1  Honor.  They are some pretty harsh remedies or sanctions
2  they're seeking, which is, you know, the government can't rebut
3  certain facts because of the disclosure.  I think that's what
4  Ms. McMillan included.
5            THE COURT:  Why couldn't you rebut certain things?  I
6  mean, if one of these individuals wrote in their notes
7  something, you could question them about it if they become a
8  witness at trial.  I don't see what the problem is,
9  Mr. MacWilliams.
10           MR. MACWILLIAMS:  I agree.  The government should be
11 able to do that.  My point is I think plaintiffs' counsel are
12 trying to prevent us.  That's part of the remedy they're
13 seeking is we're not allowed to do something like that.
14           THE COURT:  I guess we didn't get there.  All I heard
15 was they wanted to have them deemed admissible based on their
16 late production rather than go back and depose people about
17 their notes, which might be a basis to find that they'd be
18 admissible.
19           MR. MACWILLIAMS:  Okay.  Maybe I skipped ahead.  I
20 think I've had conversations with other parties, so maybe I
21 just interjected something that Ms. McMillan didn't get to yet,
22 but -- so it's beyond the mere admissibility is really the
23 government's concerns.
24           THE COURT:  So what is it -- does it go beyond
25 admissibility that you're asking for, Ms. McMillan?

1         MS. MCMILLAN: Yes, Your Honor. We are asking that
2  they be deemed admissible and that plaintiffs be permitted to
3  comment on the documents without a sponsoring witness.
4         So, for example, if we have Mr. McAleenan's notes and
5  he's not at trial, that plaintiffs be able to reference those
6  notes in their closing or in other portions of the trial. And
7  we ask that the government not be able to rebut those specific
8  documents, because they were not available for depositions when
9  plaintiffs took them.
10        THE COURT: Well, I'm not sure what deemed -- it seems
11 a little broad. I mean, he could have a page in his notes of
12 his, you know, his grocery shopping list because he wasn't
13 paying close attention during the meeting. Don't we have to
14 have something that's relevant in these notes?
15        I can see where you don't -- you want, as a sanction,
16 that you don't have to call Mr. McAleenan and have him
17 authenticate his notes because you didn't have a chance to do
18 that when you deposed him and now they've been produced. But
19 shouldn't there be some -- I mean, I don't know what's in these
20 notes, and maybe everything is not relevant.
21        MS. MCMILLAN: Well, Your Honor, I think -- I mean, I
22 think the government did a review for relevance, but also the
23 notes, from what I've seen, I mean, there is 99 pages of them,
24 and they are on the topics relevant to this case. And I don't
25 imagine plaintiffs would want to introduce notes that were not

1  relevant at trial.  So the notes that plaintiffs deem to be
2  relevant to the case we're asking be deemed admissible for this
3  purpose and that the government not be able to rebut them at
4  trial.
5          THE COURT:  What do you mean by not rebut them?  So if
6  Mr. McAleenan is called to testify, you don't think they should
7  be able to ask -- the government should be able to ask him
8  about the notes, if there is something in the notes that they
9  want to clarify?
10         MS. MCMILLAN:  Yes, Your Honor, because -- we are
11 asking for that.  We're not saying that the government can't
12 use other documents to rebut a general point in the notes, but
13 the notes themselves were not available to plaintiffs during
14 the deposition.  And in order to cure that, a deposition going
15 back to these witnesses --
16         THE COURT:  No, no.  I reject the idea that you should
17 go back and have to re-depose these people because there has
18 been a late disclosure of their notes.
19         If you wanted to do that, I would certainly say yes,
20 but I don't think that you should be forced to do that.  There
21 is a lot -- there is just too much time and expense involved in
22 having to do that.  And I don't know who all these people are,
23 but I'm guessing they are just not going to say, okay, I can be
24 available tomorrow.
25         MS. MCMILLAN:  Correct, Your Honor.  And we also -- we

1  also, you know, we spent a lot of time during these depositions
2  trying to orient people in time and to show them depositions in
3  order to refresh their recollection.  Going back and pulling
4  out various late produced documents and just deposing them on
5  those will not be fruitful, in our opinion.
6            THE COURT:  I already said you didn't have to do that.
7            MS. MCMILLAN:  Okay.  Okay.  I will move on.
8            So, yes, we are asking, because the government did not
9  produce the notes, we are asking that the witnesses not be able
10 to come to trial and explain away the notes when the plaintiffs
11 did not have them in the first place when the depositions took
12 place.
13           THE COURT:  Okay.  This is an issue of sanctions not
14 an issue of discovery.  So, again, I'm going to have to see
15 this briefed and in writing.
16           I agree that there should be some concessions given to
17 the plaintiffs for this late disclosure.  You shouldn't have to
18 go back and have, Mr. McAleenan as an example, authenticate
19 those notes and say that they're really his, and say that he
20 wrote them contemporaneously so that you would have the basis
21 for admission.
22           But to have the foundation for admission is not the
23 same as admitting them.  And it seems -- I just don't see how
24 you wouldn't have to still get over the hurdle of relevance,
25 potentially.  I'm not -- I can't envision the hearsay objection

1   right now, but it just doesn't seem to me that just flat out,
2   okay, you can admit these and use them for any purpose is
3   necessarily the sanction that should be imposed.
4           I do think the government shouldn't be able to object
5   because you can't lay the foundation because Mr. McAleenan may
6   not be there, or the others as well.  But I think that you need
7   to flesh out what the issues are, what the sanction is that
8   you're requesting, and let the government respond in writing.
9   There is clearly no urgency on this one.
10          MS. MCMILLAN:  Yes, Your Honor.  And in terms of
11  understanding what the government did to collect handwritten
12  notes, we are requesting some more information on that, because
13  we're not confident that we have all the handwritten notes that
14  were created at the time.
15          THE COURT:  I've heard this concern before.  It is not
16  one that I share.  I understand that Mr. MacWilliams has done a
17  whole lot to try to collect everything that he possibly can.
18  We've had a lot of discussions about the methodology that we'd
19  use, the time that would be taken.  And I'm sure that he is
20  continuing -- just the fact that he's produced all these things
21  so late shows that they are still making all the efforts that
22  need to be made.  This is not easy to do.
23          So I do not share your concern that would require
24  Mr. MacWilliams to provide you with some extensive explanation
25  for all the steps he's taken for the past couple of years to

1   collect the many, many thousands of documents that have been
2   produced.
3           I want to know in writing what the remedy should be
4   for this production that is being made after the close of
5   discovery and after the deposition of the individuals whose
6   handwritten notes were late produced.  That's all I need to
7   know about.  I'm not going to order Mr. MacWilliams to provide
8   you the explanations you're requesting.
9           MS. MCMILLAN:  Understood, Your Honor.
10          THE COURT:  Anything else?
11          MS. MCMILLAN:  Just returning to the issue of
12  Mr. Blank's notes that were destroyed.  For that we have
13  requested -- and the government is still considering this
14  request, but I wanted to raise it today since we're before you.
15  We have requested the ability to take the deposition of
16  Mr. Blank so that we could ask him about his retention policies
17  and the circumstances around the destruction.
18          THE COURT:  Who is he?
19          MS. MCMILLAN:  He is the former chief of staff to the
20  former head of ICE.  And he -- the former head of ICE testified
21  during his deposition that Mr. Blank took notes during all
22  their weekly staff meetings, including meetings regarding
23  family separation and prosecution issues.
24          THE COURT:  And, Mr. MacWilliams, these notes have
25  been destroyed?

1   MR. MACWILLIAMS:  Yes, that's my understanding, Your
2  Honor.  It appears to have happened in June of 2019 as this
3  individual was leaving the government.  That's as much as I
4  know about it, so, understandably, Ms. McMillan wants a
5  deposition to learn more information.
6   THE COURT:  And you're agreeable to it; is that
7  correct?
8   MR. MACWILLIAMS:  Well, I have to caveat that a
9  little, Your Honor, in two ways.  Number one, these are former
10 employees, so they have to be subpoenaed, so the most the
11 government can do is not oppose, right?  And it's still being
12 considered internally.  I can report that there is certainly an
13 openness to it, as long as, you know, the plaintiffs and
14 government can work out proper agreements on the scope of the
15 deposition, things like that, but I think it's something that's
16 likely to happen.
17  THE COURT:  So it doesn't sound like there is anything
18 for me to resolve at this moment with respect to those
19 destroyed -- I mean, after you get whatever the explanation is,
20 maybe there will be more to talk about.
21  But it sounds like, Ms. McMillan, that you and
22 Mr. MacWilliams are going to be able to come to an agreement
23 with respect to the deposition, and then it will just be a
24 question of subpoenaing this person, wherever he may now be.
25  Have you been doing most of these by video then?

| | |
|---|---|
| 1 | MR. MACWILLIAMS: The deposition -- sorry, I don't |
| 2 | know if that was for me or -- some of them in person locally, |
| 3 | some of them by Zoom, so we can do either one. |
| 4 | THE COURT: Okay. |
| 5 | MS. MCMILLAN: And, finally, Your Honor, if I may, |
| 6 | also, this is not necessarily for you to decide today, but in |
| 7 | the interest of letting you know what's happening and making |
| 8 | sure that we're, you know, raising everything, there are other |
| 9 | late produced documents that we are in the process of meeting |
| 10 | and conferring with the government. We hope to resolve those |
| 11 | issues, but they might come up before you as well. |
| 12 | THE COURT: Okay. All right. Thank you. I'll look |
| 13 | forward to your written motions. |
| 14 | MS. MCMILLAN: Thank you very much. |
| 15 | THE COURT: Court is in recess until 2:30. |
| 16 | (Proceedings concluded at 2:19 p.m.) |
| 17 | *          *          * |

C E R T I F I C A T E

I, CHRISTINE M. COALY, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 26th day of October, 2022.


/s/ Christine M. Coaly_____
Christine M. Coaly, RMR, CRR