David B. Rosenbaum (009819)
Travis C. Hunt (035491)
BriAnne N. Illich Meeds (036094)
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9000
drosenbaum@omlaw.com
thunt@omlaw.com
billichmeeds@omlaw.com
*Counsel for C.M. Plaintiffs*

Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5493
kbeauchamp@cblawyers.com
agaona@cblawyers.com
*Counsel for A.P.F. Plaintiffs*

*(Additional Counsel for Plaintiffs Listed on the Signature Page)*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| C.M., on her own behalf and on behalf of her minor child, B.M.; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:19-cv-05217-SRB<br><br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS** |
| A.P.F. on his own behalf and on behalf of his minor child, O.B.; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. 2:20-cv-00065-SRB |

## I. INTRODUCTION

Defendant argues that Plaintiffs seek "unjust" (Opp'n at 13–14) sanctions for Defendant's late production of a "small subset of documents" (*id.* at 2) that merely slipped through the cracks. But Defendant did not inadvertently miss a few relevant documents. Instead, Defendant failed to identify, collect, and produce an entire category of documents from key custodians, despite representing to Plaintiffs that it was doing so, and Defendant made multiple late productions of documents containing thousands of relevant comments.

As early as June 2020, Defendant identified Mr. McAleenan, Ms. Nielsen, Mr. Albence, Mr. Blank, Ms. Duke, Mr. Wolf, and Mr. Kelly as custodians. McMillan Decl. to Mot. ¶ 11(c) and Ex. C. And as early as October 2020, Defendant confirmed that "relevant hard copy documents are being collected from the identified custodians and produced." McMillan Decl. to Mot. ¶ 11(a) and Ex. A. This, we now know, did not occur with respect to at least Mr. McAleenan, Ms. Nielsen, Mr. Albence, Mr. Blank, Ms. Duke, Mr. Wolf, Mr. Kelly, and possibly others.[1]

Rather, it was only after Mr. Homan's September 2022 deposition revealed that Defendant had not, in fact, "collected . . . and produced" Mr. Blank's notes, that Defendant began identifying, collecting, and producing notes from these key custodians. McMillan Decl. to Mot. ¶ 11(a) and Ex. A; McMillan Decl. to Mot. ¶ 11(i) and Ex. I.[2]

Defendant's failure to collect handwritten notes and hard-copy documents from key custodians is a violation of the MIDP, which "requires the parties to identify all

---

[1] Defendant claims that it produced "hardcopy documents, and handwritten notes" during the MIDP period, Opp'n at 2, but it does not state from which custodians it collected those documents, or that it made any attempt to collect those documents from any of the key custodians at issue in this motion. In correspondence with Plaintiffs, Defendant has identified only four CBP custodians, out of the approximately 36 CBP custodians, for whom it collected and produced hard-copy documents during the MIDP period. Defendant did not identify any DHS or ICE custodians from whom it collected and produced hard-copy documents during this period. *See* McMillan Decl. to Mot. ¶ 11(i) and Ex. I; McMillan Decl. to Mot. ¶ 11(a) and Ex. A.

[2] While Defendant asserts that it renewed its effort to collect and produce handwritten and hard-copy documents in June 2022 (after the majority of the depositions had taken place), it does not appear that Defendant asked Mr. McAleenan, Ms. Nielsen, Mr. Blank, Mr. Wolf or Mr. Kelly whether they maintained notes at that time, as those notes, with the exception of Mr. Blank's notes which were destroyed, were not produced until October and November 2022.

'documents' that 'may be relevant to any party's claims and defenses' and to produce those documents alongside their initial MIDP response (or make them available on that date)." *Brennan v. New 4125 LLC*, No. CV-18-01717-PHX-DWL, 2019 WL 1150799, at *7 (D. Ariz. Mar. 13, 2019) (quoting D. Ariz. G.O. 17-08 § B.3) (emphasis added). The MIDP is clear, moreover, that a "party is not excused from providing [relevant discovery] because it has not fully investigated its case." D. Ariz. G.O. 17-08 § A.3. Defendant's failure to abide by the MIDP is negligent at the very least. *Khalaj v. City of Phoenix*, No. CV-17-01199-PHX-GMS (JZB), 2021 WL 222408, at *4 (D. Ariz. Jan. 22, 2021) (sanctions may be imposed even for negligent failure to provide discovery); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) ("discovery sanctions, including an adverse inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence."); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012) ("[T]he failure to collect records—either paper or electronic—from key players constitutes gross negligence or willfulness . . . .").

With regard to the Annotated Documents, Plaintiffs do not suggest that there was bad faith on the part of Defendant in producing the Annotated Documents after the discovery deadline. Defendant nonetheless failed to produce thousands of comments and annotations relevant to this matter in time for Plaintiffs to use the comments and annotations in depositions. That failure should have consequences.

"The purpose of depositions," Defendant writes, "is to determine the facts of the case while the witness is under the scrutiny of examination." Opp'n at 14 (citing *Blair v. CBE Group, Inc.*, Civil No. 13–CV–00134–MMA (WVG), 2015 WL 3397629, at *10 (S.D. Cal. May 26, 2015)). By negligently depriving Plaintiffs of the notes and unstripped ICE documents, Defendant hindered Plaintiffs in doing just that—determining the facts of the case. And, as courts in this District have acknowledged, belated disclosure prevents a

1 party from seeking related discovery—a harm that Defendant ignores. *SiteLock LLC v.*

2 *GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 2895503, at *9 (D. Ariz.

3 July 9, 2021), *reconsideration denied*, No. CV-19-02746-PHX-DWL, 2021 WL 9597871

4 (D. Ariz. July 21, 2021).[3]

5     The sanctions Plaintiffs seek are narrowly tailored and fair. With respect to the hard-

6 copy documents and handwritten notes, just as any party in this matter who fails to timely

7 disclose information that *helps* their case "will be precluded from using it in the case,"

8 *C.M.* ECF No. 47 ¶ 4 n.1, any party who fails to timely disclose information that *hurts*

9 their case should be precluded from contesting the untimely disclosed documents during

10 trial. *See* Mot. at 4. And the sanction Plaintiffs seek for the Annotated Documents—

11 deeming the documents admissible in a bench trial—is the bare minimum required to put

12 Plaintiffs where they would have been had the documents been timely disclosed. *Id.* at 14–

13 16.

14 **II.   ARGUMENT**

15     **A.   The MIDP applied to Mr. McAleenan's and Mr. Kelly's notes**

16         **1.   The notes were within Defendant's control**

17     Defendant argues that the MIDP does not apply to Mr. McAleenan's and Mr. Kelly's

18 notes because "[d]uring the course of this litigation, their handwritten notes were in their

19 personal possession," and the MIDP did not obligate Defendant to "locate and collect

20 documents, including handwritten notes, exclusively in the personal possession of former

21 employees of which it was not aware." Opp'n at 8. Defendant cites *Drake v. Chop*

22 *Hospitality LLC*, for the proposition that the MIDP only required a party to "produce

23

24

---

[3] While Defendant argues that it produced some Annotated Documents prior to Mr. McAleenan's and Mr. Homan's depositions, and the remainder four days prior to the DHS 30(b)(6) deposition, this did not cure the harm to Plaintiffs. The Annotated Documents are ICE documents that would have been relevant to a number of ICE deponents that had already been deposed, including Mr. Albence, Mellissa Harper, Nancy Zanello, Christine Hoopes, and Robert Guadian. Moreover, the Annotated Documents are dense documents that contain numerous detailed comments, and Plaintiffs could not reasonably be expected to review and analyze such a large volume of documents in such a short time period.

- 3 -

documents *in their possession, custody, or control*." *Id.* at 7-8 (citing Case No. 20 C 1574, 2021 WL 2939978, *2 (N.D. Ill. July 13, 2021) (Defendant's emphasis).

As an initial matter, while Defendant states that Mr. McAleenan's notes were in his personal possession "[d]uring the course of this litigation," Defendant omits the fact that the *C.M.* Plaintiffs sent preservation notices to the government on February 22, 2019, months before Mr. McAleenan left the government's employ, and therefore *should have* been in the government's possession. McMillan Decl. to Reply ¶ 3(a) and Ex. A. Defendant does not explain why Mr. McAleenan's and Mr. Kelly's notes, which they prepared while in office, concern official government business, and have been designated by the government as Confidential (presumably on the grounds that they were 'law enforcement sensitive'), were not in the government's "possession." (Opp'n at 7-9).

Regardless, both Mr. McAleenan's and Mr. Kelly's notes were indisputably within the government's "control." Tellingly, Defendant does not argue otherwise. Defendant had both the legal right and the practical ability to obtain Mr. McAleenan's and Mr. Kelly's notes. *See Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020) ("Control is defined as the legal right to obtain documents upon demand." (quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999), *aff'd*, No. 20-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022))); *see also Perrong v. Sperian Energy Corp.*, Case No. 2:19-cv-00115-RFB-EJY, 2020 WL 6287723, at *8 (D. Nev. Oct. 27, 2020) (awarding spoliation sanctions where offending party "had the practical ability to obtain the documents" but did not do so); *Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) (ordering corporate defendant to produce transcripts of former and present employees' testimony before the SEC, even though the company could only obtain the testimony if the current and former employees requested it). As Defendant's opposition makes clear, once Defendant asked Mr. McAleenan and Mr. Kelly for notes pertaining to their official government duties taken during the time they were employed by the government, and, in the case of Mr. McAleenan, that were the subject of a preservation notice received during his time in

government employ, both men turned the notes over without process or delay. Opp'n at 3–5.[4]

Compare this to Mr. Wolf's notes. There, Defendant informed Plaintiffs that DHS was unable to determine whether or not Mr. Wolf has any handwritten notes in his personal possession. As a result, Plaintiffs obtained Mr. Wolf's notes by serving a subpoena pursuant to Federal Rule of Civil Procedure 45. Opp'n at 5 n.4. Defendant made no such disclosure during the MIDP process with respect to Mr. Kelly and Mr. McAleenan, or with respect to any other current or former government employee. If it had, Plaintiffs would have issued third-party subpoenas to those individuals years ago.

Defendant's assertion that "it was not aware" of Mr. McAleenan's and Mr. Kelly's notes (*id.* at 8) does not excuse its failure to collect them. Under the MIDP's guidelines, it was Defendant's burden to "fully investigate its case." D. Ariz. G.O. 17-08 § A.3. Defendant should have done so at the latest by February 2022, the deadline for amending its MIDP disclosures, and sixteen months after it represented to Plaintiffs that "relevant hard copy documents *are* being collected from the identified custodians and produced." McMillan Decl. to Mot. ¶ 11(a) and Ex. A (emphasis added).

### 2.     Defendant's late production was not harmless

Defendant next argues that its late disclosure was harmless. Defendant misleadingly cites *SiteLock LCC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 323 (D. Ariz. 2022), as standing for the proposition that late production is harmless unless Plaintiffs "would have engaged in entirely *new* lines of questioning had those notes been produced prior to depositions." Opp'n at 10 (Defendant's emphasis); *see also id.* at 9–10 (summarizing the holding as "rejecting defendant's harmlessness argument where plaintiff identified *new* categories of evidence it would have pursued absent defendant's [discovery] violation." (Defendant's emphasis)). But *SiteLock* says no such thing.

---

[4] Defendant also prepared former government officials, including Mr. McAleenan and Mr. Homan, for their depositions, and represented them at those depositions, and Defendant concedes in its opposition brief that "[t]he United States has made available for deposition . . . former CBP Commissioner Kevin McAleenan and former ICE Acting Director Thomas Homan." Opp'n at 2.

1    Instead, *SiteLock*, which concerns a party's failure to disclose an affirmative defense
2    theory, says only this: late disclosure is not harmless where the moving party has
3    "'identified specific categories of evidence it would have pursued via the discovery
4    process had it been aware of [the non-moving party's] intent to pursue' [a particular
5    theory]." *SiteLock*, 562 F. Supp. 3d at 323. This language supports Plaintiffs' motion for
6    sanctions, which argues that Plaintiffs would have pursued specific lines of questioning
7    challenging witnesses' assertions, had Plaintiffs been aware that the handwritten notes and
8    hard-copy documents existed, and had Defendant properly disclosed them as required by
9    MIDP. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ McMillan Decl. to Mot. ¶ 11(r) and Ex. R. at 222:7–
11   20. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12   ▮▮▮▮▮▮▮▮▮▮ McMillan Decl. to Mot. ¶ 11(s) and Ex. S, ▮▮▮▮▮▮▮▮▮▮▮▮▮
13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14   This District's case law makes clear that Defendant's late production was not
15   harmless. "[A]ny last day disclosures which should have been made earlier prejudice
16   Plaintiffs and are not harmless." *Leland v. Cnty. of Yavapai*, No. CV178159PCTSPLDMF,
17   2019 WL 1547016, at *3 (D. Ariz. Mar. 18, 2019), *report and recommendation adopted*,
18   No. CV-17-08159-PCT-SPL, 2019 WL 1531875 (D. Ariz. Apr. 9, 2019) (MIDP case).
19   "This is true even where the trial date is not imminent." *Id.*

20   **B.    Sanctions are appropriate for Defendant's late production of the**
21   **remaining notes and hard-copy documents**

22   Defendant concedes that the MIDP applied to the remaining late-produced notes and
23   hard-copy documents, Opp'n at 10, but argues that there was no violation because: only "a
24   small number of documents were produced late," *id.*; Defendant "timely produced tens of
25   thousands of documents," *id.*; this is a "complex, large litigation," *id.* at 11; and discovery
26   does "not demand perfection." *Id.* (citation omitted). The size and purported complexity of
27   Defendant's electronic productions are red herrings. This is not a situation in which
28   Defendant stumbled upon a small number of documents after conducting a diligent search.

Instead, it appears that Defendant did not seek the documents despite its representations that it would do so.

Defendant was duty-bound to *identify*, collect, and produce relevant hard-copy documents (including handwritten notes) belonging to Mr. Albence, Ms. Duke, Mr. Kelly, and Ms. Nielsen. *See, e.g.*, *Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3299625, at *13 (D. Ariz. Aug. 2, 2021) (onus on counsel to identify own custodians' discoverable information). And Defendant specifically represented that it was doing just that in 2020. McMillan Decl. to Mot. ¶ 11(a) and Ex. A. In fact, Defendant only began collecting Mr. Albence's and Ms. Duke's hard-copy documents in June 2022, and it only began producing those documents in August 2022—after the close of fact discovery in July 2022 and after Mr. Albence's deposition in June 2022.[5] McMillan Decl. to Mot. ¶ 11(i) and Ex. I.

Defendant attempts to minimize the importance of these late productions by asserting that they constituted a small percentage of the total production. But it is not the *number* of late-produced documents that is the problem, it is the *significance* of the documents. The documents at issue here contain contemporaneous handwritten notes and margin annotations penned by the key custodians in the case, and, in some cases, contradict witness testimony.

Defendant further attempts to downplay the significance of the remaining late-produced documents by claiming that 16 of 73 late-produced handwritten notes were exact duplicates of documents produced before the MIDP deadline, yet Defendant does not identify the 16 purportedly duplicative documents. Opp'n at 10–11. Moreover, even if Defendant's assertion were true, that still leaves 57 documents that were not timely produced. In an attempt to neutralize the remaining documents, Defendant asserts, without

---

[5] Despite Defendant's assertion that it promptly notified Plaintiffs when it found handwritten notes, that is not true in the case of Mr. Albence and Ms. Duke. Defendant did not notify Plaintiffs until October 14, 2022 that it had collected and produced Mr. Albence's and Ms. Duke's hard copy documents two months earlier. McMillan Decl. to Mot. ¶ 11(i) and Ex. I.

- 7 -

1  offering any proof, that "the substance of those documents is similar to other documents
2  that already had been produced to Plaintiffs or are publicly available." *Id.* at 11. But "the
3  party facing sanctions bears the burden of proving that its failure to disclose the required
4  information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Penn.*,
5  673 F.3d 1240, 1246 (9th Cir. 2012). Here, Defendant's unsupported and conclusory
6  assertions do not meet that burden.

7  Regardless, there cannot be serious dispute that the contemporaneous handwritten
8  notes of key custodians are highly relevant and significant. *See* Mot. at 8–12. ▇
9  ▇
10 ▇
11 ▇ [6] *See*
12 McMillan Decl. to Reply ¶ 3(b) and Ex. B. Had they been timely produced, Plaintiffs
13 undoubtedly would have used these notes during Mr. Albence's deposition.

14  **C.  Annotated ICE Documents**

15  Defendant argues that Plaintiffs are not entitled to sanctions with respect to the
16 Annotated Documents because Defendant's production error was inadvertent. Opp'n at 12.
17 Although Plaintiffs take Defendant at its word that its mis-production was inadvertent (*see*
18 Mot. at 7), it was also negligent. For two years, Defendant produced documents that had
19 been stripped of relevant track changes and comments. This necessarily means that for two
20 years, Defendant failed to quality control its production.

21  Defendant cites one District of Kansas case, not binding here, for the proposition
22 that a "technical oversight when producing documents from an electronic document
23 management database" is not sanctionable. Opp'n at 12 (citing *Radiologix, Inc. v.*
24 *Radiology & Nuclear Med., LLC*, No. 15-4927-DDC-KGS, 2019 WL 354972, at *7 (D.
25 Kan. Jan. 29, 2019)). That case is distinguishable. There, when the production missteps
26 were discovered, the court delayed the trial for a year and reopened discovery, leading to

---

28  [6] Since Plaintiffs did not have these notes prior to Mr. Albence's deposition and many of the notes are undated, Plaintiffs cannot discern the exact date for each page of the notes.

additional document productions and depositions. *Id.* at *5. The movant then sought sanctions for the prejudice it suffered from the *delay in the case*—not from the late productions themselves, which had been cured by the additional discovery. The court disagreed that the movant had been prejudiced by the delay, especially since its own discovery conduct was also "less than ideal." *Id.* at *8. Here, Plaintiffs are entitled to some remedy for Defendant's failure to produce the Annotated Documents until after the close of discovery. Unlike the court in *Radiologix*, as discussed during the recent court conference in this matter, Plaintiffs believe reopening depositions, engaging in further motion practice as to which witnesses Plaintiffs are entitled to depose and for how long, and therefore postponing the case would be inappropriate here. *C.M.* ECF No. 308.

With respect to harmlessness, Defendant's argument concerning the Annotated Documents turns, once again, on its misreading of *SiteLock*. The question is not, as Defendant would have it, whether "those comments would have afforded new lines of deposition questioning," Opp'n at 12, but whether the production of approximately 1,300 ICE documents containing relevant comments and track changes after the close of fact discovery prejudiced Plaintiffs by, among other things, precluding Plaintiffs from using them in depositions to question witnesses. The answer is yes. *See supra* at 5–6; *see also Leland*, 2019 WL 1547016, at *3.[7]

### D.   Plaintiff's requested sanctions are narrowly tailored and just

Defendant continues to advance the argument that the appropriate sanction to impose *on Defendant* is to *force Plaintiffs* to retake depositions, despite the Court's inclination not to reopen depositions. Opp'n at 15; ECF 308 ("I reject the idea that [Plaintiffs] should go back and have to re-depose these people because there has been a late disclosure of their

---

[7] While Defendant states that Plaintiffs only identified four comments in the Annotated Documents in support of the claim of prejudice, Opp'n at 12-13, the four comments were examples from the many relevant comments. Plaintiffs could have listed others.

notes."). Defendant's argument ignores the huge burden on Plaintiffs that Defendant's proposed "sanction" entails. It also ignores all the decisions by courts in this District that have rejected it. For example, the *Leland* court had this to say:

> The defense arguments that there is no harm from the last moment disclosures because the Court can re-open discovery and a trial date has not been set are not well taken. By Defendants' arguments, there will always be incentive for parties to make last moment disclosures rather than diligently pursuing discovery and engaging in required disclosure during the discovery period. If the Court is unwilling to preclude wrongful last moment disclosures, one party likely will not have an opportunity to meaningfully pursue or develop its case during the discovery window; at worst for the late disclosing party, the Court may order a limited amount of additional discovery. The MIDP Order in this and other cases eliminates such gamesmanship.

*Leland*, 2019 WL 1547016, at *4; *see also Nyerges*, 2021 WL 3299625, at *16 (rejecting the disobedient party's suggestion to reopen *two* depositions because it would cause undue delay and would inadequately deter discovery violations).

Defendant complains that the remedy Plaintiffs seek is "not 'just'" and "disproportionate." Opp'n at 14-15. Defendant overlooks, however, that the sanctions specifically articulated in Rule 37(b)(2) to remedy Defendant's violations are far harsher. The court may "strike out portions of pleadings; deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters; dismiss all or part of the action; or render a default judgment against the disobedient party." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (citing FRCP R. 37(b)(2)(A)).

By comparison, Plaintiffs' purely evidentiary sanction with respect to the late-produced hard-copy documents and handwritten notes is modest—and mirrors the very sanction this Court said would apply when a party fails to timely disclose, but then attempts to rely on, *helpful* evidence. "Parties who fail to timely disclose relevant information," the Court wrote, "will be precluded from using it in the case and may be subject to other sanctions." *C.M.* ECF No. 47 ¶ 4 n.1. Where, conversely, a party fails to timely disclose *unhelpful* evidence, it should be precluded from contesting it. Plaintiffs'

- 10 -

proposed remedy with respect to the Annotated Documents—that the documents be deemed admitted during a bench trial in which the Court is more than capable of giving appropriate weight to each piece of evidence—is narrowly tailored to address Defendant's failure to timely produce the documents, while acknowledging the lack of bad faith on the part of Defendant.

The requested sanctions give Plaintiffs no "tactical advantage." Opp'n at 16. They restore Plaintiffs to the *status quo ante*, and, just as importantly, give the MIDP teeth. "Courts should remember that the effectiveness of the MIDP will depend significantly on the willingness of judges to impose real consequences on parties who fail to comply with their mandatory discovery obligations," *Sec'y of Lab. v. Valley Wide Plastering Constr. Inc.*, No. CV-18-04756-PHX-GMS, 2022 WL 489741, at *5 (D. Ariz. Feb. 17, 2022) (citing District of Arizona's MIDP Users' Manual)—particularly where, as here, the disobedient party is the government, *Sumitomo*, 617 F.2d at 1369.

### III. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs requested sanctions.

By */s/ BriAnne N. Illich Meeds*

OSBORN MALEDON, P.A.
David B. Rosenbaum (009819)
Travis C. Hunt (035491)
BriAnne N. Illich Meeds (036094)

ARNOLD & PORTER KAYE SCHOLER LLP
Diana Reiter*
Erik Walsh*
Lucy McMillan*
Harry Fidler*
Kaitlyn Schaeffer*
Brian Auricchio*
Julia Kindlon*
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
diana.reiter@arnoldporter.com
erik.walsh@arnoldporter.com
lucy.mcmillan@arnoldporter.com
harry.fidler@arnoldporter.com
kaitlyn.schaeffer@arnoldporter.com

brian.auricchio@arnoldporter.com
julia.kindlon@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
R. Stanton Jones*
David Hibey*
Emily Reeder-Ricchetti*
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
stanton.jones@arnoldporter.com
david.hibey@arnoldporter.com
emily.reeder-ricchetti@arnoldporter.com

ARNOLD & PORTER KAYE SCHOLER LLP
Sean Morris*
777 South Figueroa Street
Los Angeles, CA 90017-5844
sean.morris@arnoldporter.com

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN LLP
Jonathan H. Feinberg*
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
Telephone: (215) 925-4400
jfeinberg@krlawphila.com

NATIONAL IMMIGRANT JUSTICE CENTER
Mark Fleming*
Mark Feldman*
224 S. Michigan Ave., Suite 600
Chicago, IL 60604
Telephone: (312) 660-1370
mfleming@heartlandalliance.org
mfeldman@heartlandalliance.org

NATIONAL IMMIGRATION LITIGATION ALLIANCE
Trina Realmuto*
Mary Kenney*
10 Griggs Terrace
Brookline, MA 02446
Telephone: (617) 819-4447
trina@immigrationlitigation.org
mary@immigrationlitigation.org

AMERICAN IMMIGRATION COUNCIL
Katherine Melloy Goettel*
Emma Winger*
Gianna Borroto*
1331 G Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 507-7512
Telephone: (202) 742-5619
kgoettel@immcouncil.org
ewinger@immcouncil.org

| | |
|---|---|
| 1 | gborroto@immcouncil.org |
| 2 | *Attorneys for Plaintiffs C.M. et al.* |
| | *\* Admitted pro hac vice* |
| 3 | |
| 4 | By */s/ Keith Beauchamp* |
| | COPPERSMITH BROCKELMAN PLC |
| 5 | Keith Beauchamp |
| | D. Andrew Gaona |
| 6 | |
| 7 | COVINGTON & BURLING LLP |
| | Matthew J. Schlesinger\* |
| 8 | Jason A. Carey\* |
| | Jennifer L. Saulino\* |
| 9 | Terra White Fulham\* |
| | Teresa S. Park\* |
| 10 | Kathleen E. Paley\* |
| | Kavita R. Pillai\* |
| 11 | Emily R. Woods\* |
| | Kristin M. Cobb\* |
| 12 | Shadman Zaman\* |
| 13 | Stephen Rees\*† |
| | Paulina Slagter\* |
| 14 | Samuel Greeley\* |
| | Joshua Silver\* |
| 15 | Patrick Lee\* |
| | One City Center, 850 Tenth Street, NW |
| 16 | Washington, DC 20001-4956 |
| | Telephone: (202) 662-5581 |
| 17 | mschlesinger@cov.com |
| | jcarey@cov.com |
| 18 | jsaulino@cov.com |
| | tfulham@cov.com |
| 19 | tpark@cov.com |
| | kpaley@cov.com |
| 20 | kpillai@cov.com |
| 21 | rwoods@cov.com |
| | kcobb@cov.com |
| 22 | szaman@cov.com |
| | srees@cov.com |
| 23 | pslagter@cov.com |
| | sgreeley@cov.com |
| 24 | jsilver@cov.com |
| | plee@cov.com |
| 25 | |
| 26 | SOUTHERN POVERTY LAW CENTER |
| | Norma Ventura\* |
| 27 | James Knoepp\* |
| | Sharada Jambulapati\* |
| 28 | P.O. Box 1287 |
| | Decatur, GA 30031 |

1  Telephone: (404) 521-6700
2  norma.ventura@splcenter.org
   jim.knoepp@splcenter.org
3  sharada.jambulapati@splcenter.org

4  SOUTHERN POVERTY LAW CENTER
   Paul R. Chavez*
5  P.O. Box 370037
   Miami, FL 33137
6  Telephone: (786) 347-2056
7  paul.chavez@splcenter.org

8  *Attorneys for Plaintiffs A.P.F. et al.*
   *\* Admitted pro hac vice*
9  *† Admitted only in Illinois, not admitted in the District of Columbia, and*
10 *supervised by principals of the firm.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28