Keith Beauchamp (012434)
D. Andrew Gaona (028414)
COPPERSMITH BROCKELMAN PLC
2800 N. Central Avenue, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 381-5490
kbeauchamp@cblawyers.com
agaona@cblawyers.com
*Counsel for A.P.F. Plaintiffs*

*(Additional Counsel for Plaintiffs Listed on the Signature Page)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| A.P.F., on his own behalf and on behalf of his minor child, O.B.; et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>United States of America,<br><br>        Defendant. | No. 2:20-cv-00065-SRB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Oral Argument:<br><br>June 13, 2023 10:00 a.m. |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ......................................................... 1

II.   ARGUMENT ................................................................................. 1

      A.    The Court Has Jurisdiction Over Plaintiffs' Claims........................... 1

            1.    Plaintiffs Do Not Seek Damages For "Institutional" Torts. .................. 2

            2.    The Discretionary Function Exception Does Not Apply. ...................... 3

                  a.    The Challenged Conduct Is Unconstitutional and
                        Unlawful. ................................................................ 4

                  b.    Plaintiffs' Separation Had No Legitimate Policy
                        Rationale. ............................................................... 7

                  c.    Border Patrol Agents' Failure to Reunify Joel and
                        Mariela Is Not Shielded by the Discretionary Function
                        Exception. ................................................................ 8

            3.    The Misrepresentation Exception Does Not Apply............................... 9

      B.    Plaintiffs Have Established the Liability Elements of IIED........................... 10

      C.    Plaintiffs Have Established the Liability Elements of Negligence.................. 15

III.  CONCLUSION ................................................................................. 18

1

2

# TABLE OF AUTHORITIES

**CASES**                                                                  Page(s)

*A.F.P. v. United States,*
   2022 WL 2704570 (E.D. Cal. July 12, 2022)........................................2, 3

*A.P.F. v. United States,*
   492 F. Supp. 3d 989 (D. Ariz. 2020)........................................3, 5, 10

*Aguchak v. United States,*
   747 F. App'x 503 (9th Cir. 2018)........................................14

*Aguilar v. ICE,*
   510 F.3d 1 (1st Cir. 2007)........................................6

*Alfrey v. United States,*
   276 F.3d 557 (9th Cir. 2002)........................................6, 7

*Avina v. United States,*
   681 F.3d 1127 (9th Cir. 2012)........................................11

*Bell v. Wolfish,*
   441 U.S. 520 (1979)........................................6

*Berkovitz v. United States,*
   486 U.S. 531 (1988)........................................6, 8

*Block v. Neal,*
   460 U.S. 289 (1983)........................................10

*Bodett v. Coxcom, Inc.,*
   366 F.3d 736 (9th Cir. 2004)........................................12

*C.M. v. United States,*
   2020 WL 1698191 (D. Ariz. Mar. 30, 2020)........................................15

*C.M. v. United States,*
   2023 WL 3261612 (W.D. Tex. May 4, 2023)........................................12

*Caban v. United States,*
   728 F.2d 68 (2d Cir. 1984)........................................12

*Calderon v. United States,*
   123 F.3d 947 (7th Cir. 1997)........................................6

*Cloes v. City of Mesquite,*
  582 F. App'x 721 (9th Cir. 2014)..........................................................................4

*Cobler v. United States,*
  2022 WL 625710 (D. Ariz. Jan. 12, 2022).........................................................17

*Coreas–Giron v. Holder,*
  422 F. App'x 602 (9th Cir. 2011).........................................................................5

*Coulthurst v. United States,*
  214 F.3d 106 (2d Cir. 2000) ................................................................................8

*D.B. v. Cardall,*
  826 F.3d 721 (4th Cir. 2016) ...............................................................................5

*D.J.C.V. v. United States,*
  605 F. Supp. 3d 571 (S.D.N.Y. 2022) ...............................................................12

*DeJonghe v. E.F. Hutton & Co.,*
  830 P.2d 862 (Ariz. Ct. App. 1991) ...................................................................18

*Demetrulias v. Wal-Mart Stores Inc.,*
  917 F.Supp. 2d 993 (D. Ariz. 2013)...................................................................12

*E.L.A. v. United States,*
  2022 WL 2046135 (W.D. Wash. June 3, 2022) .................................................17

*Ruiz ex rel. E.R. v. United States,*
  2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014).........................................7, 9, 12

*E.S.M. v. United States,*
  2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ...................................................2, 3

*Flores v. Johnson,*
  212 F. Supp. 3d 907 (C.D. Cal. 2015)..................................................................6

*Fuentes-Ortega v. United States,*
  2022 WL 16924223 (D. Ariz. Nov. 14, 2022) ..................................................2, 3

*Galvin v. Hay,*
  374 F.3d 739 (9th Cir. 2004)........................................................................4, 5, 8

*Gasho v. United States,*
  39 F.3d 1420 (9th Cir. 1994)..............................................................................11

*GATX/Airlog Co. v. United States,*
  286 F.3d 1168 (9th Cir. 2002)..............................................................................6

*Gilbert v. La Paz Cnty.*,
  2020 WL 2064099 (D. Ariz. Apr. 29, 2020)........................................16

*Harris v. United States*,
  2021 WL 2334385 (D. Ariz. June 8, 2021)...........................................17

*Hernandez v. Fritz Enters., Inc.*,
  2007 WL 2903030 (D. Ariz. Sept. 28, 2007)........................................17

*Jacinto-Castanon de Nolasco v. ICE*,
  319 F. Supp. 3d 491, 501 (D.D.C. 2018) ............................................12

*Lerner v. John Hancock Life Ins. Co.*,
  2011 WL 13185713 (D. Ariz. Mar. 21, 2011) ......................................11

*Lewis v. Dirt Sports LLC*,
  259 F. Supp. 3d 1039 (D. Ariz. 2017) ................................................18

*Maldonado v. Lloyd*,
  2018 WL 2089348 (S.D.N.Y. May 4, 2018)............................................5

*Markowitz v. Ariz. Parks Bd.*,
  706 P.2d 364 (Ariz. 1985) ..................................................................16

*Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*,
  241 F.3d 1208 (9th Cir. 2001)........................................................7, 8, 9

*Matson v. Safeway, Inc.*,
  2013 WL 6628257 (D. Ariz. Dec. 17, 2013).........................................14

*Mendez Ramirez v. Decker*,
  612 F. Supp. 3d 200 (S.D.N.Y. 2020) ..................................................5

*Miller v. United States*,
  163 F.3d 591 (9th Cir. 1998) ...........................................................3, 6

*Mintz v. Bell Atl. Sys. Leasing Int'l., Inc.*,
  905 P.2d 559 (Ariz. Ct. App. 1995) ....................................................11

*Mitchell v. United States*,
  149 F. Supp. 2d 1111 (D. Ariz. 1999) ..................................................6

*Moriarty v. Cnty. of San Diego*,
  2020 WL 5656689 (S.D. Cal. Sept. 23, 2020) ......................................12

*Ms. L. v. ICE*,
  302 F. Supp. 3d 1149 (S.D. Cal. 2018) .............................................4, 6

*Ms. L. v. ICE,*
   310 F. Supp. 3d 1133 (S.D. Cal. 2019) ................................................16

*Myers v. United States,*
   652 F.3d 1021 (9th Cir. 2011) ...........................................................7, 9

*Myles v. United States,*
   47 F.4th 1005 (9th Cir. 2022) ...................................................................7

*Nurse v. United States,*
   226 F.3d 996 (9th Cir. 2000) ...............................................................6, 8

*O'Toole v. United States,*
   295 F.3d 1029 (9th Cir. 2002) .........................................................5, 7, 8

*Pauly v. U.S. Dep't of Agric.,*
   348 F.3d 1143 (9th Cir. 2003) ..............................................................10

*Pereyra v. United States,*
   2008 WL 11394371 (D. Ariz. Sept. 26, 2008) ....................................6

*Petty v. Arizona,*
   2018 WL 2220665 (D. Ariz. May 15, 2018) ......................................17

*Pierre-Canel v. Am. Airlines,*
   375 F. Supp. 3d 1044 (D. Ariz. 2019) .................................................10

*In re Plyam,*
   530 B.R. 456 (B.A.P. 9th Cir. 2015) ...................................................14

*Ramirez v. Glendale Union High Sch. Dist. No. 205,*
   2006 WL 8439630 (D. Ariz. Sept. 2, 2006) .......................................17

*Rudolph v. Ariz. B.A.S.S. Fed'n,*
   898 P.2d 1000 (Ariz. Ct. App. 1995) ..................................................18

*Savage v. Boies,*
   272 P.2d 349 (Ariz. 1954) ...................................................................11

*Sheehan v. United States,*
   896 F.2d 1168 (9th Cir. 1990) ...............................................................9

*Estate of Smith v. Shartle,*
   2020 WL 1158552 (D. Ariz. Mar. 10, 2020) .....................................15

*State v. Knowlton,*
   2019 WL 4513476 (Ariz. Ct. App. Sept. 19, 2019) ...........................18

*Wilbur P.G. v. United States,*
2022 WL 3024319 (N.D. Cal. May 10, 2022) ...................................................2, 3

*Williams v. Ryan,*
2020 WL 6487372 (D. Ariz. Nov. 4, 2020) .........................................................12

**STATUTES**

6 U.S.C. § 279(g)(2) ............................................................................................5, 6

8 U.S.C. § 1231(g)(1) ...............................................................................................6

8 U.S.C. § 1232(b)(3) ..........................................................................................5, 6

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 46 .......................................................................14

Restatement (Second) of Torts § 500 .....................................................................14

# TABLE OF ABBREVIATIONS

"**Plaintiffs**" refers to Plaintiffs A.P.F. ("Abel") and his son, O.B. ("Obet"); J.V.S. ("José") and his daughter, H.Y. ("Herlinda"); J.D.G. ("Joel") and his daughter, M.G. ("Mariela"); H.P.M. ("Heriberto") and his daughter, A.D. ("Alicia"); M.C.L. ("Mario") and his son, A.J. ("Antonio"); and R.Z.G. ("Rolando") and his daughter B.P. ("Bertha"), six asylum-seeking families who were forcibly separated by United States federal agents.

- **"Adult Plaintiffs"** refers to Abel, José, Joel, Heriberto, Mario and Rolando.
- **"Child Plaintiffs"** refers to Obet, Herlinda, Mariela, Alicia, Antonio, and Bertha.
- "**2017 Plaintiffs**" refers to Mario and Rolando (**"2017 Adult Plaintiffs"**) and Antonio and Bertha (**"2017 Child Plaintiffs"**).
- "**2018 Plaintiffs**" refers to Abel, José, Joel, and Heriberto ("**2018 Adult Plaintiffs**") and Obet, Herlinda, Mariela, and Alicia ("**2018 Child Plaintiffs**").

"**Br.**" refers to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 362.

"**SOF**" refers to Plaintiffs' Statement of Facts in Support of Motion for Summary Judgment, ECF No. 367.

"**Opp.**" refers to Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 392.

"**A.P.F. Opp.**" refers to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, ECF No. 396.

"**SSOF**" refers to Plaintiffs' Amended Rule 56.1 Controverting and Supplemental Statement of Facts In Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, ECF No. 406.

"**Border Patrol**" refers to the U.S. Border Patrol.

"**CBP**" refers to DHS's Customs and Border Protection agency.

"**DHS**" refers to the Department of Homeland Security.

"**FTCA**" refers to the Federal Tort Claims Act.

"**IIED**" refers to the tort of intentional infliction of emotional distress.

"**ICE**" refers to DHS's Immigration and Customs Enforcement agency.

"**ORR**" refers to the Department of Health and Human Services's Office of Refugee Resettlement.

"**UAC**" refers to an "unaccompanied alien child."

## I.      PRELIMINARY STATEMENT

The government does not dispute the basic, awful facts that have forever stained the history of our country and scarred Plaintiffs in this case: individual federal employees, acting within the scope of their employment, forcibly took children from their parents—and then kept them separated for months, with no plan for tracking, facilitating communication between, or reunifying those families.  It would be obvious to any reasonable person, and in fact *was* obvious to government officials, that such actions would cause exactly the trauma that Plaintiffs suffered.  Yet those officials separated families anyway, with reckless disregard of the harm it would cause.  Such conduct was unquestionably extreme and outrageous, and it breached the government's duty of reasonable care to Plaintiffs.  Under Arizona law, Plaintiffs have established the government's liability for IIED and negligence.

Unable to dispute the facts and even acknowledging the horrid nature of its conduct, the government nonetheless asks the Court to absolve it on the basis of technical defenses never intended to allow the government to escape liability for such egregious, harmful acts. The government's arguments depend on mischaracterizing Plaintiffs' claims as challenging its ability to make policy, arrest and detain, or make logistical choices.  But that is not what this case is about.  Plaintiff fathers and their children challenge the conduct of specific government employees in separating them from each other and then failing to keep track of them, facilitate communication between them, or reunify them for months.  Those actions violated Plaintiffs' constitutional rights and well-established legal mandates, had no legitimate policy rationale, and are actionable under Arizona tort law.  No FTCA exception or Arizona privilege shields the government from liability for such conduct.  Plaintiffs therefore request entry of partial summary judgment as to the liability elements of their IIED and negligence claims.

## II.     ARGUMENT

### A.      The Court Has Jurisdiction Over Plaintiffs' Claims.

The government largely repeats the sovereign immunity arguments made in its summary judgment motion, *see* Opp. at 6–18, to which Plaintiffs responded in their opposition to that motion, *see* A.P.F. Opp. at 10–28.  Plaintiffs briefly respond further below.

1                    **1.      Plaintiffs Do Not Seek Damages For "Institutional" Torts.**

2          Plaintiffs seek damages for their individual forcible separations.  The separations

3    were cruel, lasted for months, and were carried out with reckless disregard for when (or

4    whether) parents would be able to locate, speak to, or reunite with their children and the

5    harm that would result.  This tortious misconduct is actionable under the FTCA because, as

6    Plaintiffs have made clear, it is attributable to specific federal employees: the Border Patrol

7    and ICE agents who separated Plaintiffs, as well as high-level officials including DHS

8    Secretary Nielsen, ICE Director Homan, ICE Executive Associate Director Albence, and

9    CBP Commissioner McAleenan.  A.P.F. Opp. at 10–12; SOF ¶¶ 11–72, 85–150; SSOF ¶¶ 6–

10   10, 19–20, 47–53; *see also* Am. Compl. ¶¶ 527–54.  That is all that the FTCA requires for

11   the Court to exercise jurisdiction over Plaintiffs' claims.  *See, e.g.*, *Fuentes-Ortega v. United*

12   *States*, 2022 WL 16924223, at *5 (D. Ariz. Nov. 14, 2022); *E.S.M. v. United States*, 2022

13   WL 11729644, at *2 (D. Ariz. Oct. 20, 2022).

14         The government's attempt to mischaracterize Plaintiffs' claims as impermissible

15   "institutional" tort claims challenging the government's policymaking *writ large* is based

16   on little more than Plaintiffs' use of "the government" in their motion.  Opp. at 6–8.

17   Plaintiffs use "the government" as shorthand for the individual federal employees acting

18   within the scope of their employment.  This phrasing does not convert their claims into

19   institutional tort claims and deprive the Court of jurisdiction.  *See A.F.P. v. United States*,

20   2022 WL 2704570, at *18 (E.D. Cal. July 12, 2022); *Wilbur P.G. v. United States*, 2022 WL

21   3024319, at *6 (N.D. Cal. May 10, 2022) ("[T]he proposition that a complaint containing

22   FTCA claims should be dismissed because some of the allegations in the complaint

23   reference the Government . . . would make little sense given that the FTCA requires a

24   'plaintiff [to] sue[] the United States itself.'").

25         Nor does the relevance of facts concerning the DHS Referral Policy to the elements

26   of Plaintiffs' state law IIED and negligence claims transform those individual claims into

27   institutional torts.  For instance, facts relating to the implementation of the DHS Referral

28   Policy provide evidence of the extreme and outrageous nature of the separations.  Br. at 18–

22; *see also A.P.F. v. United States*, 492 F. Supp. 3d 989, 996–97 (D. Ariz. 2020) (facts related to implementation demonstrate "the harm resulting from the separations").  And facts confirming that Nielsen, McAleenan, Homan, and other officials had substantial information of the harm that would result from family separations, but still proceeded with family separations anyways, establish reckless disregard in support of IIED.[1]  These facts further show the government's negligence.  Br. at 28–29.

Courts in this Circuit have consistently rejected the government's institutional tort argument and exercised jurisdiction over FTCA actions brought by separated families where, as here, the plaintiffs' claims are based on employee-level misconduct.  *See, e.g.*, *Fuentes-Ortega*, 2022 WL 16924223, at *5; *E.S.M.*, 2022 WL 11729644, at *2; *A.F.P.*, 2022 WL 2704570, at *18; *Wilbur P.G.*, 2022 WL 3024319, at *6.  The government's argument should again be rejected here.

## 2.    The Discretionary Function Exception Does Not Apply.

The government bears the burden of establishing that the challenged conduct is both discretionary and "involves the type of judgment that the discretionary function exception is designed to shield."  *Miller v. United States*, 163 F.3d 591, 593–94 (9th Cir. 1998).  Contrary to the government's contention, Plaintiffs do not challenge "decisions whether and when to pursue referral for prosecution of an amenable adult," "final referral decisions," decisions "relating to whether to refer a case to the U.S. Attorney's Office," or "when to seek an ORR placement for a child when a parent was to be processed for a prosecution referral."[2]   Opp. at 8–10.  The government thus cannot meet its burden under the discretionary function exception by mischaracterizing Plaintiffs' claims.

---

[1]  Likewise, that officials, including ICE Director Homan, were aware of the harm of family separations in 2017, SOF ¶¶ 11–27, establishes that the 2017 Plaintiffs' separations by ICE officers were carried out with reckless disregard.

[2]  Plaintiffs do not challenge the "*timing* of seeking placement with ORR when the DHS Referral Policy was in effect," Opp. at 10 n.10 (emphasis added); *see also id.* at 8, 21, but rather the *ability* of Border Patrol agents to designate the accompanied 2018 Child Plaintiffs as UACs in violation of the TVPRA.

As to the conduct that Plaintiffs *do* challenge—the separation of the 2018 Plaintiffs despite the fact that Plaintiff fathers were not prosecuted and the children were not unaccompanied; the separation of the 2017 Plaintiffs without any meaningful determination of safety risk; the manner and circumstances of Plaintiffs' separations; and the failure to provide adequate information regarding whereabouts, facilitate adequate communication, or reunify parent and child (until required by court order), *see* Br. 18–22—the discretionary function exception does not apply because that conduct (1) is unconstitutional and unlawful, and was therefore not discretionary; and (2) is not the kind of conduct the discretionary function exception was designed to shield, *see* A.P.F. Opp. at 13–28.

a.        ***The Challenged Conduct Is Unconstitutional and Unlawful.***

The undisputed facts show that Plaintiffs were separated without reasonable justification in violation of their constitutional rights and in violation of legal mandates. The discretionary function exception therefore does not shield the government's conduct. It is axiomatic that "[f]ederal officials do not possess discretion to violate constitutional rights." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (quotation omitted); *Cloes v. City of Mesquite*, 582 F. App'x 721, 727 (9th Cir. 2014) ("[A]cts that violate the Constitution cannot be viewed as discretionary."); *see also Ms. L. v. ICE*, 302 F. Supp. 3d 1149, 1161 (S.D. Cal. 2018) (recognizing that "non-citizens physically on U.S. soil have constitutional rights, including the right to due process of law," which includes the "right to family integrity or familial association"). As discussed further below and in Plaintiffs' opposition to the government's motion for summary judgment, the government's separation of Plaintiff families shocks the conscience and was unjustifiable by any governmental interest, *see* A.P.F. Opp. at 13–20, and thus violated their rights to family integrity and familial association as a matter of substantive due process.[3] Additionally, the government's failure

---

[3] The government argues that "because a substantive Due Process Clause violation cannot be premised on negligent conduct," Plaintiffs' negligence claim must be "barred by the DFE" even if it were liable for IIED based on its employees' unconstitutional conduct. Opp. at 25 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1989)). A holding that the discretionary function exception does not shield the challenged conduct in this case— because the conduct violated the Constitution, a legal mandate, or was not the type of

to provide the 2017 Plaintiffs an opportunity to be heard before their separation violated their procedural due process rights. *Id*. at 20.

Likewise, the government makes no attempt to justify its designation of the 2018 Child Plaintiffs as unaccompanied children ("UACs") in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA").   Indeed, where a government employee's actions "violate[ ] a legal mandate," the conduct cannot be discretionary.  *Galvin*, 374 F.3d at 758; *accord O'Toole v. United States*, 295 F.3d 1029, 1033 n.9 (9th Cir. 2002).  Here, the 2018 Plaintiffs were separated because once Border Patrol "intended to refer" the 2018 Adults for prosecution, Border Patrol designated their children as UACs, requiring their transfer to ORR custody within 72 hours.  8 U.S.C. § 1232(b)(3); SSOF ¶¶ 34, 59, 71, 79, 88.  But whether or not a child *is a UAC* in the first place is not a discretionary choice—a child is "unaccompanied" *only* if he or she meets the TVPRA's definition of "UAC" under 6 U.S.C. § 279(g)(2), which requires finding that a parent is unavailable to provide care.[4] A.P.F. Opp. at 21–24.  None of the 2018 Adult Plaintiffs, however, were ever found to be unavailable to their children: not only were they *always* available, but they were also *never* prosecuted.  *See* SOF ¶¶ 86–92, 97–101, 110–13, 117–22, 130–32, 139–43.  Border Patrol's designation of the 2018 Child Plaintiffs as UACs (and their subsequent transfer to ORR custody), even though the 2018 Adults were available to care for their children, violated the TVPRA.

---

conduct the exception protects—will determine only whether this Court has jurisdiction to hear Plaintiffs' claims.  There is no case law establishing that an actionable negligence claim under Arizona law is incompatible with an assertion that a substantive due process violation, arising out of the same set of facts, precludes application of the discretionary function exception, and the government cites none.  To the contrary, cases have proceeded with both. *See, e.g.*, *A.P.F.*, 492 F. Supp. 3d at 996 ("Because each of Plaintiffs' causes of action stem from this separation, none are barred by the discretionary function exception.").

[4] "[I]f the individual does not satisfy the definition, the government has no nebulous discretionary authority to treat the individual as a UAC."  *D.B. v. Cardall*, 826 F.3d 721, 749 n.4 (4th Cir. 2016) (Floyd, J., dissenting); *see also Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 216 (S.D.N.Y. 2020); *Maldonado v. Lloyd*, 2018 WL 2089348, at *5 (S.D.N.Y. May 4, 2018); *Coreas–Giron v. Holder*, 422 F. App'x 602, 603 (9th Cir. 2011).

The government argues that "when to seek an ORR placement" was a discretionary decision, and it focuses on the government's desire to move children out of Border Patrol stations quickly.  Opp. at 8–13.  But, as the government recognizes, *see id.* at 10–13, the TVPRA imposes statutory time constraints on agents to transfer UACs to ORR custody.  Thus, whether and when to transfer a UAC to ORR custody is not a discretionary determination.  In any event, under the TVPRA, the 72-hour time frame to transfer a minor to ORR does not start until the minor meets the statutory definition of an "unaccompanied alien child."  8 U.S.C. § 1232(b)(3); 6 U.S.C. § 279(g)(2).  Here, because the Plaintiff children were not unaccompanied, the TVPRA's 72-hour time limit never started.[5]

The same directives applied when ICE separated the 2017 Plaintiffs and, contrary to the government's assertion, Opp. at 18, ICE's detention authority did not give it the discretion to separate 2017 Plaintiffs, *see Ms. L.*, 302 F. Supp. 3d at 1159–62 (holding that 8 U.S.C. § 1231(g)(1) does not give ICE discretion to separate asylum seekers); *Aguilar v. ICE*, 510 F.3d 1, 20 (1st Cir. 2007) (noting that if "a statute does not explicitly specify a particular authority as discretionary," it "does not bar judicial review").  As the government has not demonstrated that the challenged conduct was subject to discretion,[6] or that the challenged conduct did not violate the Constitution and legal mandates, it has not met its burden to show the discretionary function exception applies.  *See Miller*, 163 F.3d at 593; *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).[7]

---

[5] Similarly, while the government states that *Flores* requires it to transfer minors out of Border Patrol custody as "expeditiously as possible," Opp. at 10–11, the *Flores* court interpreted "expeditiously as possible" to mean within *20 days* for accompanied minors apprehended with a parent.  *Flores v. Johnson*, 212 F. Supp. 3d 907, 913–14 (C.D. Cal. 2015), *aff'd in part, rev'd in part Flores v. Lynch*, 828 F.3d 898, 904 (9th Cir. 2016).

[6] *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged.").

[7] The cases the government cites do not hold otherwise.  *Pereyra v. United States*, 2008 WL 11394371, at *6 (D. Ariz. Sept. 26, 2008), does not involve conduct that violated a legal mandate.  *Bell v. Wolfish*, 441 U.S. 520 (1979), does not involve FTCA claims, and *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002), *Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114–15 (D. Ariz. 1999), and *Calderon v. United States*, 123 F.3d 947, 951 (7th

1

### b.   *Plaintiffs' Separation Had No Legitimate Policy Rationale.*

2       Moreover, the challenged conduct had no legitimate policy rationale and is not the

3   kind of conduct the discretionary function exception was designed to shield.  *See Myles v.*

4   *United States*, 47 F.4th 1005, 1012 (9th Cir. 2022); *see also* A.P.F. Opp. at 26–28.  The

5   government asserts that Border Patrol's separations of the 2018 Plaintiffs were susceptible

6   to policy analysis because they were carried out in the face of "constraints and exigencies

7   associated with noncitizens, particularly minors."  Opp. at 10–13.  In other words, the

8   government complains that it faced logistical difficulties.  But failure to adhere to an

9   affirmative obligation because it is difficult or resources are constrained is not a legitimate

10  policy concern.  *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208,

11  1216–17 (9th Cir. 2001) ("[S]afety measures, once undertaken, cannot be shortchanged in

12  the name of policy."); *O'Toole*, 295 F.3d at 1037 ("Were we to view inadequate funding

13  alone as sufficient to garner the protection of the discretionary function exception, we would

14  read the rule too narrowly and the exception too broadly . . . . [T]he FTCA, as a remedial

15  statute, should be construed liberally, and its exceptions should be read narrowly.").

16      Similarly, the policy-level officials' lack of planning cannot be shielded as a "policy

17  choice" as their conduct evidences a clear "failure to adhere to accepted professional

18  standards," which "is not 'susceptible to a policy analysis'" and is not protected by the

19  discretionary function exception.  *Marlys Bear Med.*, 241 F.3d at 1217 (citation omitted).

20  Considerations of public safety and child welfare are matters of professional judgment that

21  are not susceptible to competing considerations of social, economic, or political policy.  *See*

22  *Myers v. United States*, 652 F.3d 1021, 1031 (9th Cir. 2011); *see also Ruiz ex rel. E.R. v.*

23  *United States*, 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014) (rejecting discretionary

24  function exception defense where Border Patrol officers detained a four-year-old child and

25  waited fourteen hours before contacting her parents because the officers' actions appeared

26  "to be the result of negligence or laziness").  Reframing the 2018 Plaintiffs' separations,

27

28  Cir. 1997), do not involve constitutional violations.  Moreover, *Alfrey* held that where the
    government violated a legal mandate, the conduct was not discretionary and a negligence
    claim could proceed.  276 F. 3d at 563.

which caused them harm and violated their constitutional rights, as planning deficiencies does not immunize such conduct from liability under the FTCA.

As to the 2017 Plaintiffs, the government cites the policy objectives underlying ICE's detention authority and "the need for the expeditious transfer of noncitizen minors." Opp. at 18. But the record does not reflect any meaningful determination by ICE that the public's safety or the 2017 Child Plaintiffs' welfare was at risk. Rather, the undisputed facts show that the decisions to separate were made in mere minutes, SOF ¶¶ 130, 139, and no rationale for these separations was recorded, SSOF ¶ 96. Such conduct is not susceptible to policy analysis, *Coulthurst v. United States*, 214 F.3d 106, 110 (2d Cir. 2000), and the government cannot provide a post-hoc rationale now, *see Marlys Bear Med.*, 241 F.3d at 1216.

### c.  Border Patrol Agents' Failure to Reunify Joel and Mariela Is Not Shielded by the Discretionary Function Exception.

The government also argues the discretionary function exception immunizes Border Patrol agents' decision to transfer Mariela to ORR custody instead of reunifying her with her father Joel, even though they were "at the same facility within a few-minute walk of each other" for a "day-and-a-half or more" *after* the U.S. Attorney's Office confirmed it would not accept Joel's case for prosecution.[8] SOF ¶ 122; SOF Ex. 74; Opp. at 15–16. It asserts that Yuma Station's "decision not to create a process for that scenario" was "a discretionary determination that was susceptible to policy analysis." Opp. at 15–16. This argument is meritless and misconstrues Plaintiffs' claims. The undisputed facts show that Joel was available to Mariela both before and after his prosecution was declined, but-for the government's separation of the family. SOF ¶¶ 116–17; 122–23; *see also* SSOF ¶¶ 87–90. Thus, for the same reasons that separating Joel and Mariela in the first place was not discretionary because it violated the Constitution and the TVPRA, the government's continued separation of and failure to reunify them after Joel's prosecution was declined was not subject to discretion. *See supra* Section II.A.2.b; *see also, e.g.*, *Galvin*, 374 F.3d at 758; *O'Toole*, 295 F.3d at 1033; *Nurse*, 226 F.3d at 1002; *Berkovitz*, 486 U.S. at 536.

---

[8] As a result, it was two months before Joel and Mariela were reunited. SOF ¶ 127.

And even if their continued separation did not violate mandatory legal duties, the undisputed facts make obvious that the government's assertion that this conduct was a discretionary choice is an impermissible and unsupported post-hoc rationalization.  *See Marlys Bear Med.*, 241 F.3d at 1216 (This "inquiry . . . is not meant to open the door to ex post rationalizations by the Government in an attempt to invoke the discretionary function shield.").  The government cites no documents showing that Yuma Station Border Patrol agents made a discretionary determination to not have processes in place to reunify families after a prosecution had been declined.  It only cites its purported expert, agent Shawn Jordan. Opp. at 15.  But Jordan testified merely that Border Patrol "did not have a process in place" that would allow reunification even to be possible in this scenario, Opp. Ex. A Att. 5 (Jordan 174–75)—*not* that agents made a policy-based "decision not to create a process for that scenario," Opp. at 15.  Indeed, Jordan "was not at the time contemporaneously aware that children were there with their parents."  Opp. Ex. A Att. 5 (Jordan 174).  The government's argument that agents balanced legitimate policy considerations to create a discretionary policy not to reunify separated families in a situation like Joel and Mariela's is not supported by the record,[9] and thus the discretionary function exception does not apply.  *Marlys Bear Med.*, 241 F.3d at 1216–17; *Myers*, 652 F.3d at 1031; *Ruiz*, 2014 WL 4662241, at *8.

### 3.    The Misrepresentation Exception Does Not Apply.

Though Heriberto has no misrepresentation cause of action, the government nonetheless asserts that because Heriberto was deported without his daughter under false pretenses, SSOF ¶¶ 75–76, SOF ¶ 103, the FTCA's misrepresentation exception precludes his claim, Opp. at 18.  Heriberto's claims are for IIED, negligence, and loss of consortium, and they arise out of the government's conduct in separating him from his six-year-old daughter.[10]  Such claims are not precluded by the misrepresentation exception.  *Sheehan v.*

---

[9] Moreover, it is undisputed that ICE and Border Patrol officials took steps to ensure families would *not* be reunified in this circumstance so as not to "undermine[] the entire effort."  SOF ¶ 64; *see* Br. at 9–10.

[10] Heriberto's deportation on the basis of false pretenses goes to the extreme and outrageousness of the government's conduct.  In any case, even if "one aspect of the Government's conduct is not actionable under the 'misrepresentation' exception," a plaintiff

*United States*, 896 F.2d 1168, 1169 (9th Cir. 1990), *amended*, 917 F.2d 424 (9th Cir. 1990) (holding that "a claim for intentional infliction of emotional distress is not excluded from FTCA by § 2680(h)"); *cf. Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1151–52 (9th Cir. 2003) (claim for "fraud in the inducement" barred by § 2680(h) where injuries were "entirely the result of allegedly inaccurate information provided by" a government employee); *see also A.P.F.*, 492 F. Supp. 3d at 997 (rejecting government's argument the misrepresentation exception deprives the Court of jurisdiction over Plaintiffs' IIED and negligence claims).

### B.      Plaintiffs Have Established the Liability Elements of IIED.

As Plaintiffs have explained, the undisputed facts show that government officials and agents separated Plaintiffs, forcibly and cruelly; did not keep track of them or allow them to meaningfully communicate during their separation; and failed to reunify them for months, Br. at 18–22—conduct that multiple government officials have *admitted* was extreme and outrageous, SOF ¶¶ 81–84.  The undisputed facts also establish that government officials knew—indeed intended—the exact harm that separating families would and did cause Plaintiffs, Br. at 22–26, and chose to separate them with reckless disregard of that harm.[11] Such facts are sufficient for summary judgment as to the liability elements of Plaintiffs' IIED claim.  Br. at 18–26.  The government asks the Court to ignore these facts and argues that it is not liable for IIED because (1) the separation conduct at issue followed from lawful arrest and detention of Plaintiffs, and is therefore "privileged" under Arizona law; and (2) there is a dispute as to whether Secretary Nielsen intended to cause emotional distress or recklessly disregarded that emotional distress would result.  Opp. at 19–23.  These arguments are meritless.

*First*, Plaintiffs' IIED claims are actionable under Arizona law.  The government tries to avoid IIED liability by conflating its "unconscionable," "cruel," and "shameful"

---

is not "barred from pursuing a distinct claim arising out of other aspects of the Government's conduct."  *Block v. Neal*, 460 U.S. 289, 298 (1983).

[11] For the purposes of IIED, it is enough that government officials and agents acted "with reckless disregard of the near-certainty that . . . distress would result."  *Pierre-Canel v. Am. Airlines*, 375 F. Supp. 3d 1044, 1055 (D. Ariz. 2019) (quoting *Watkins v. Arpaio*, 367 P.3d 72, 74–75 (Ariz. Ct. App. 2016)).  Although intent here is well-established in the facts, Plaintiffs do not need to prove intent to prevail on summary judgment.

separation of Plaintiffs, SOF ¶¶ 81–84, with its "exercise of its law enforcement authority" to arrest and detain Plaintiffs, Opp. at 19–23. But those two things cannot be conflated, and the government's citation to *Savage* proves the point. *Id.* at 19 (citing *Savage v. Boies*, 272 P.2d 349, 352 (Ariz. 1954)). There, the Arizona Supreme Court held that while the plaintiff could not bring an IIED claim merely on the basis of her "arrest and detention," she *could* bring an IIED claim for the emotional distress she suffered during her arrest as a result of the officers "falsely represent[ing] to [her] that her seven-months-old child [was] in the hospital" with critical injuries in order to "accomplish[] [the] arrest." 272 P.2d at 351–52.

Unsurprisingly then, the Ninth Circuit has permitted IIED claims pursuant to Arizona law in FTCA cases against government officials and agents exercising their law enforcement authority. *See, e.g.*, *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994) (holding that under Arizona law, if the plaintiff can prove "the arresting officers arrested them with the intent of inflicting emotional distress, the [plaintiffs] may assert . . . emotional distress claims"). The Ninth Circuit has reached similar conclusions when applying other states' IIED laws in FTCA cases involving the government's exercise of law enforcement authority. *See, e.g.*, *Avina v. United States*, 681 F.3d 1127, 1133 (9th Cir. 2012) (reversing that the government's conduct during execution of a valid search warrant, including pointing a gun at the head of a child, was not extreme and outrageous).

Plaintiffs' claims here are no different. Plaintiffs do not allege IIED on the basis of their arrest or detention by Border Patrol and ICE agents. Instead, they allege IIED on the basis of their forced separations, which were extreme and outrageous, and were carried out with the intent to cause harm—harm that would act as a deterrent to future migrants—or with (at least) reckless disregard for the harm they would cause. Br. at 18–26. The law enforcement privilege does not protect such conduct, and the government's cases do not suggest otherwise.[12] Nor does the discretionary function exception immunize such conduct,

---

[12] *See Mintz v. Bell Atl. Sys. Leasing Int'l., Inc.*, 905 P.2d 559, 663 (Ariz. Ct. App. 1995) (upholding dismissal of an IIED claim arising out of the employment context); *Lerner v. John Hancock Life Ins. Co.*, 2011 WL 13185713, at *3 (D. Ariz. Mar. 21, 2011) (permitting Plaintiff to amend the complaint to include an IIED claim based on allegations of improper

as explained above and in Plaintiffs' opposition to the government's summary judgment motion, A.P.F. Opp. at 13–27, despite the government's tired assertion to the contrary, Opp. at 21–23.

The government otherwise argues that there are fact disputes regarding whether its conduct was extreme and outrageous, namely that Plaintiffs were given notice of their separation and were able to communicate with each other periodically. *Id.* at 21–22. But these "disputes" are illusory. As to notice, the government points the Court to the testimony of a government official (who never interacted with Plaintiffs) and to the testimony of a Border Patrol Agent (who did not separate families, let alone recall Plaintiffs) to assert that Plaintiffs were on notice of their separations. *See id.* at 22 n.24. Such purported "facts" cannot controvert Plaintiffs' sworn testimony regarding their cruel and forcible separations, SOF ¶¶ 85–90, 98–99, 108–09, 111–12, 114, 118–20, 125, 131–32, 142–44, 146, or create a dispute of fact, *see*, *e.g.*, *Williams v. Ryan*, 2020 WL 6487372, at *2 n.2 (D. Ariz. Nov. 4, 2020), *aff'd*, 851 F. App'x 778 (9th Cir. 2021) ("Failure to remember factual information . . . is insufficient to show a material factual dispute . . . ."); *Moriarty v. Cnty. of San Diego*, 2020 WL 5656689, at *3 (S.D. Cal. Sept. 23, 2020) ("A witness' speculation about matters she had no personal knowledge of cannot create a genuine dispute of material fact sufficient to withstand summary judgment."). That Plaintiffs had some communications with each other is irrelevant. Courts have made clear that failure to facilitate regular or prompt communication among separated families is extreme and outrageous conduct that shocks the conscience. *See, e.g.*, *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 608 (S.D.N.Y. 2022); *Jacinto-Castanon de Nolasco v. ICE*, 319 F. Supp. 3d 491, 501 (D.D.C. 2018); *Ruiz*, 2014

---

conduct arising out of the employment context); *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 747 (9th Cir. 2004) (upholding summary judgment in favor of defendant in claim involving allegations of termination without notice or severance); *Demetrulias v. Wal-Mart Stores Inc.*, 917 F.Supp. 2d 993, 1012 (D. Ariz. 2013) (denying defendant's summary judgment motion on Plaintiff's IIED claim arising out of allegations of misconduct in the "special relationship" that exists between an insurer and the insured); *accord C.M. v. United States*, 2023 WL 3261612, at *45 (W.D. Tex. May 4, 2023) (finding cases cited by the government, including *Caban v. United States*, 728 F.2d 68, 71–72 (2d Cir. 1984), irrelevant to separated family's IIED and negligence claims because they did not claim false imprisonment).

WL 4662241, at *8.[13]   Here, there is no dispute that for periods of weeks and months, Plaintiff families were not able to communicate with each other at all.   SOF ¶¶ 90, 93, 102, 114, 124–26, 134, 146–47.

*Second*, the undisputed facts show that the relevant decision-makers, at a minimum, recklessly disregarded the harm that separating families would cause.   With respect to the 2018 Plaintiffs, the government argues that these facts cannot establish reckless disregard because they do not focus on "the actual decision-maker: Secretary Nielsen," who did not understand that separation "would cause severe emotional distress."   Opp. at 23–24.   The government is wrong on the law and the facts.   Plaintiffs are not aware of, nor does the government cite, a single Arizona case holding that the intent or reckless disregard mental state requirement for IIED can only be established with reference to a single decision-maker. To the contrary, the Arizona Supreme Court established in *Ford v. Revlon, Inc.* that reckless disregard sufficient for IIED could be found where *multiple individuals* in a corporation were on notice that an employee experienced continuous sexual harassment and assault at the hands of a co-worker and yet did nothing.   734 P.2d 580, 582, 585–86 (Ariz. 1987).   The facts here are no different.   Several government officials and decision-makers were on notice of the harm that separations would cause, both prior to the separation of the 2017 Plaintiffs, SOF ¶¶ 11–27, and the 2018 Plaintiffs, *id.* ¶¶ 28–31, 33, 36, 38, 43, 61.   They decided to separate anyway, and in fact took the position that reunifying families would "undermine[] the entire effort."   *Id.* ¶ 64; *see also id.* ¶¶ 59, 62, 65.

Even if Nielsen's knowledge was uniquely relevant to the 2018 Plaintiffs' IIED claim, which the government has previously disclaimed,[14] she was aware of the harm separations would cause.   Indeed, Nielsen's Chief of Staff testified that she was informed in

---

[13] *S.E.B.M.* is irrelevant. 2023 WL 2383784, at *16. There, the court was considering if the factual allegations of limited contact overcame the due care exception where the parent was charged, prosecuted, held in criminal custody, and then deported.

[14] Plaintiffs reiterate that the government previously argued that Plaintiffs did not need to depose Nielsen because her intent and knowledge could be discerned from "the deposition testimony of former CBP Commissioner McAleenan, former ICE Director Homan, and the other 13 policy-level government witnesses, [and] the United States' voluminous document productions." Opp. to Mot. to Depose Nielsen at 8, ECF No. 309. The government's assertion here is in bad faith.

early 2018 "about the possibility that separation of families would be detrimental to the health, safety and well-being of children."  SOF ¶ 31.  The government claims that "record evidence," i.e., Nielsen's congressional testimony, proves otherwise.  Opp. at 24 (citing Opp. Ex. B at 42–43).  Putting aside whether this testimony was credible, the government excludes the very *next* page of the transcript where Nielsen *admits* that she was aware of the *6 separate warnings* that the American Academy of Pediatrics gave to DHS regarding the harm of family separations,[15] including the "toxic stress" that it would impose, SOF ¶¶ 29, 31.  Such "[c]onclusory allegations, unsupported by factual material are insufficient to defeat a motion for summary judgment."  *Matson v. Safeway, Inc.*, 2013 WL 6628257, at *2 (D. Ariz. Dec. 17, 2013).

The government also argues that Nielsen considered a wide range of factors when adopting the DHS Referral Policy, Opp. at 24, and on such bases did not understand "there to be a near certainty that the Referral Policy would cause severe emotional distress," *id*. (citing Opp. Ex. B at 42–43).  As noted multiple times, Plaintiffs' IIED claim focuses on the government's conduct in separating them, not mere issuance of the DHS Referral Policy.  In any case, for reckless disregard, the question is not whether Nielsen "hope[d] or even expect[ed] that [her] conduct [would] prove harmless," it is whether she realized or *should have realized* "the 'strong probability that harm may result.'"  *In re Plyam*, 530 B.R. 456, 467 (B.A.P. 9th Cir. 2015) (emphasis added) (citing Restatement (Second) of Torts § 500 cmt. f); *see also* Restatement (Second) of Torts § 46 cmt. i (defining "reckless" in the context of infliction of emotional distress with reference to Restatement (Second) of Torts § 500); *Aguchak v. United States*, 747 F. App'x 503, 505 (9th Cir. 2018) (citing Restatement (Second) of Torts § 500 in affirming that the evidence established the government was reckless because it "knew, or should have known" the "risk and severity of harm").  The

---

[15] *The Way Forward on Border Security: Hearing Before the H.R. Comm. on Homeland Security*, 166th Cong.  Serial No.  116-4 (March 6, 2019), *available at* https://www.govinfo.gov/content/pkg/CHRG-116hhrg35380/html/CHRG-116hhrg35380.htm ("Ms. Underwood: . . . [T]he American Academy of Pediatrics wrote to DHS 6 times to explain how family separation hurts children, and made a number of public statements . . . are you aware of those warnings?  Secretary Nielsen: I am . . . .").

undisputed facts show that government officials, including Nielsen, had substantial information that separation would impose trauma, and that the government did not have adequate systems in place to facilitate communication or reunification of separated families. *See, e.g.*, SOF ¶¶ 11–27, 29, 31, 42–43, 47–54, 67–70, 72, 80.  In other words, government officials knew or should have known the near certainty of harm separations would cause, yet they allowed separations to proceed.  Such facts establish that the 2018 Plaintiffs' separations were carried out with reckless disregard of the harm they would cause.[16]

With respect to the 2017 Plaintiffs, the government argues that because their separations were made on an individualized basis by ICE officials, information available to multiple government officials and agents that separating families would cause harm is too "attenuated" to find reckless disregard.  Opp. at 24–25.  Again, *Revlon* makes clear that information available to multiple individuals in an organization can provide the basis for finding reckless disregard.  734 P.2d at 582, 585–86.  Here, ICE Director Homan and other government officials knew or should have known in 2017 that separating families would cause harm, SOF ¶¶ 12–13, 14–27, but they allowed ICE officers to separate the 2017 Plaintiffs anyway in utter reckless disregard of the harm it would and did cause.  Summary judgment should be entered for Plaintiffs on the liability elements of their IIED claim.

## C.     Plaintiffs Have Established the Liability Elements of Negligence.

Plaintiffs have established, and this Court has already held in a nearly identical case, that the government owed Plaintiffs a duty of care under Arizona law.  Br. at 27–28; *C.M. v. United States*, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020) ("Federal immigration officials too, are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care."); *see also, e.g., Estate of Smith v. Shartle*, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020) ("BOP has a duty to ensure the safety of the persons who reside at the facility.").  Plaintiffs have also established that Nielsen, McAleenan, Homan,

---

[16] The government's assertion that because issuance of the DHS Referral Policy was privileged, it cannot give rise to IIED, Opp. at 24, is irrelevant.  Plaintiffs challenge their separations, not the government's ability to issue policy.  *See supra* Section II.A.1. Separating families is not privileged conduct.

Albence, and the Border Patrol officers and ICE agents who separated Plaintiffs breached this duty and failed to provide Plaintiffs reasonable care, or even *minimal* care, when they forcibly separated Plaintiffs, failed to provide contact between them for weeks at a time, failed to devise any plans for reuniting those families, and, in fact, did not reunify families for months until forced to do so by a court order.  *See, e.g.*, SOF ¶¶ 75–80, 88, 90, 93–95, 97, 102, 106, 110, 114–15, 117, 124–27, 129–30, 134, 137, 139, 146–47, 150; Br. 28–29. On such facts, summary judgment should be entered for Plaintiffs on the liability elements of their negligence claim.[17]

The government does not meaningfully respond to these arguments, nor does it raise material factual disputes.[18]  Instead, it argues first that its conduct in separating Plaintiffs and not reunifying them cannot establish negligence because there is no duty to maintain family unity while an adult is detained pending federal immigration proceedings, and that such duty is not established by government manuals nor can such duty arise from the Constitution.  Opp. at 26–27.  This misses the point.  Under Arizona law, the relevant inquiry is whether "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff," *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985), and this Court's finding of duty is consistent with the findings of other courts, *see, e.g.*, *Gilbert v. La Paz Cnty.*, 2020 WL 2064099, at

---

[17] As discussed in Section II.A.2 *supra* and note 3, the discretionary function exception does not apply to Plaintiffs' negligence claim.  Furthermore, the government cites no authority that negligence claims are not actionable under Arizona law in the context of lawful arrest or detention.

[18] The government's only factual dispute seems to be that Plaintiffs' minimal contact with each other was "reasonable under the circumstances."  Opp. at 28 (citing *S.E.B.M.,* 2023 WL 2383784, at *16).  The determination in *S.E.B.M.* that the limited contact alleged in that case was reasonable, however, is irrelevant for the reasons outlined in note 13, *supra*, and, more important, is inapplicable because *S.E.BM.* concerned a negligence claim brought under New Mexico—not Arizona—law.  2023 WL 2383784, at *9, *16 (holding that the plaintiff's negligence claim had no state law analog).  Furthermore, other courts have rejected the government's position.  *See, e.g.*, *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1144 (S.D. Cal. 2019) ("[T]he practice of separating these families was implemented without any effective system or procedure for (1) tracking the children after they were separated from their parents, (2) enabling communication between the parents and their children after separation, and (3) reuniting the parents and children after the parents are returned to immigration custody following completion of their criminal sentence. This is a startling reality.").

*13 (D. Ariz. Apr. 29, 2020) ("Arizona has recognized that a duty to protect exists in certain special relationships such as guardian-ward and jailer-prisoner."); *Hernandez v. Fritz Enters.*, *Inc.*, 2007 WL 2903030, at *3 (D. Ariz. Sept. 28, 2007) ("[T]he government is under a duty to avoid creating situations that pose an unreasonable risk of harm to others under Arizona law."). The government's citation to *E.L.A. v. United States*, 2022 WL 2046135 (W.D. Wash. June 3, 2022), does not change the analysis because, in that case, the court assessed a negligence claim under Texas law, which is irrelevant here. Likewise, the Court can discard the government's argument that Plaintiffs only assert an "actionable duty" arising from the Constitution, *see* Opp. at 26, as Plaintiffs have established, and this Court has held, that the government had a duty to provide reasonable care under Arizona law.

The government next argues that Plaintiffs have failed to identify the applicable standard of care it owed to Plaintiffs. *Id.* at 27. The government is wrong. As Plaintiffs established in their opening brief, the standard is "reasonable care under the circumstances." Br. at 28 (quoting *Markowitz*, 706 P.2d at 368). The cases the government cites do not contradict this standard of care as applicable in the context of immigration detention, and regardless, are irrelevant because they are concerned with circumstances or claims not at issue here.[19] Moreover, while Plaintiffs do not rely on government manuals as the basis for the standard of care, the government's violations of its own standards is *evidence* of their unreasonable actions and that it breached the duty of care owed to Plaintiffs. *See Cobler v. United States*, 2022 WL 625710, at *9 (D. Ariz. Jan. 12, 2022) (reviewing Bureau of Prisons manuals and procedures to consider whether defendant's conduct "created an unreasonable risk of harm to Plaintiff and constituted a breach of a duty of care"). Nor is the Court required to turn to expert testimony on this point, as assessing such obvious failures to provide reasonable care is "not complex." *Id.* at *6 (finding that an expert was not required

---

[19] *Ramirez v. Glendale Union High Sch. Dist. No. 205*, 2006 WL 8439630, at *3–4 (D. Ariz. Sept. 2, 2006) focused on the supervision of mentally disabled students to find that the standard of care was not within the common knowledge of the general community; *Petty v. Arizona*, 2018 WL 2220665, at *3 (D. Ariz. May 15, 2018) involved *gross negligence*, a claim not asserted here; and *Harris v. United States*, 2021 WL 2334385, at *5–6 (D. Ariz. June 8, 2021) was a medical malpractice case where the standard of care is set by statute.

where the applicable standard would be obvious to a layperson); *accord DeJonghe v. E.F. Hutton & Co.*, 830 P.2d 862, 867 (Ariz. Ct. App. 1991) (expert testimony "is not necessary where the negligence is so grossly apparent that a lay person would have no difficulty recognizing it."); *Rudolph v. Ariz. B.A.S.S. Fed'n*, 898 P.2d 1000, 1004 (Ariz. Ct. App. 1995) (expert testimony is not needed where "persons unskilled in the relevant area are capable of understanding and are therefore able to decide relevant fact questions").

Last, Plaintiffs' IIED and negligence claims are not mutually exclusive. *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039 (D. Ariz. 2017) is inapposite because there the defendant *admitted* that their conduct was intentional, mooting the plaintiffs' negligence claims. *Id.* at 1046. Here, the government's opposition does not admit it intended to harm Plaintiffs, and in such circumstances "intentional tort and negligence theories both may be considered." *Id*. at 1046 n.5. More important, Plaintiffs have established multiple ways in which they were harmed, including being forcibly separated, being denied communication during their separations, and from not being reunified for months. This harm resulted from the acts of specific government officials and agents, and the Court can reasonably conclude that some of these acts were intentional while other acts were negligent. *See, e.g.*, *State v. Knowlton*, 2019 WL 4513476, at *2 (Ariz. Ct. App. Sept. 19, 2019) (convictions for aggravated assault and negligent homicide did "not necessarily conflict" where "[t]he jury could have found that Knowlton's state of mind was reckless as to E.J.'s aggravated assault and negligent as to F.N.'s homicide."). As Plaintiffs have established that they were owed a duty of care and the government breached that duty, summary judgment should be entered for Plaintiffs on the liability elements of their negligence claim.

**III.   CONCLUSION**

For these reasons, the Court should enter partial summary judgment as to the liability elements of Plaintiffs' IIED (Count I) and negligence claims (Count II).

1          Respectfully submitted this 24th day of May, 2023.

2

3     By  s/ Keith Beauchamp
      COPPERSMITH BROCKELMAN PLC
4     Keith Beauchamp
      D. Andrew Gaona
5
      COVINGTON & BURLING LLP
6     Matthew J. Schlesinger*
7     Jason A. Carey*
      Jennifer L. Saulino*
8     Terra White Fulham*
      Teresa S. Park*
9     Kathleen E. Paley*
      Kavita R. Pillai*
10    Kristin M. Cobb*
      Shadman Zaman*
11    Stephen Rees*
      Paulina Slagter*
12    Samuel Greeley*
      Joshua Silver*
13    Patrick Lee*
      Abigail Perri Barnes*
14    One City Center, 850 Tenth Street, NW
      Washington, DC 20001-4956
15    Telephone: (202) 662-5581
      mschlesinger@cov.com
16    jcarey@cov.com
17    jsaulino@cov.com
      tfulham@cov.com
18    tpark@cov.com
      kpaley@cov.com
19    kpillai@cov.com
      kcobb@cov.com
20    szaman@cov.com
      srees@cov.com
21    pslagter@cov.com
      sgreeley@cov.com
22    jsilver@cov.com
      plee@cov.com
23    abarnes@cov.com
24
      SOUTHERN POVERTY LAW CENTER
25    Norma Ventura*
      James Knoepp*
26    Sharada Jambulapati*
27    150 E. Ponce de Leon, Suite 340
      Decatur, GA 30030
28    Telephone: (404) 521-6700

norma.ventura@splcenter.org
jim.knoepp@splcenter.org
sharada.jambulapati@splcenter.org

SOUTHERN POVERTY LAW CENTER
Paul R. Chavez*
2 S. Biscayne Boulevard, Suite 3750
Miami, FL 33137
Telephone: (786) 347-2056
paul.chavez@splcenter.org

*Attorneys for Plaintiffs A.P.F. et al.*
*\* Admitted pro hac vice*